## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN WAITE, an individual; JOE ELY, an individual, and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>UMG RECORDINGS, INC., a Delaware corporation, and DOES 1 through 10,<br><br>                              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>   (1) **COPYRIGHT INFRINGEMENT; AND**<br><br>   (2) **DECLARATORY RELIEF**<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiffs JOHN WAITE, an individual ("Waite"), and JOE ELY ("Ely"), an individual, (collectively, "Plaintiffs") on behalf of themselves and all other similarly situated authors of sound recordings ("sound recordings") who have served Notices of Termination pursuant to §302 of the Copyright Act of 1976 upon Defendant UMG RECORDINGS, INC. (also known as "Universal Music Group and "UMG") (hereinafter "UMG" or "Defendant") and DOES 1-10 (collectively "Defendants"), allege as follows.

### NATURE OF THE ACTION

1.      Since the first Copyright Act was enacted in 1790, that Act, and the several successive copyright statutes have always had a feature which allows a second chance for authors (or their heirs) to reclaim copyrights from unwise grants made by authors early on in their careers, close to the creation of the works. While the particular features of those laws, and the length of the terms and statutory scheme of the terminations involved, have changed and evolved, the strong "second chance" concept has remained. In fact, the very first act, the Copyright Act of 1790, borrowed that concept from the English Statute of Anne, enacted in 1709, the first copyright law. The theme continued in the Copyright Acts of 1831, 1870, and 1909.

2.     Likewise, §203 of the Copyright Act of 1976 modified the Act of 1909 substantially, but continued the policy with full force. According to the Congressional Record, the purpose of the statute was to protect authors and their heirs from "the unequal bargaining position of authors" in dealing with unpublished works, because of "the impossibility of [an author] determining [his or her] work's prior value until it has been exploited." H.R.Rep. No. 94-1476, at 124 (1976). Section 203 provides that authors (a term that includes both songwriters and recording artists) may terminate grants of copyright ownership thirty-five (35) years after the initial grant, generally computed from the date of the publication of those works subject to the grant.

3.     But while the Copyright Act confers upon authors the valuable "second chance" that they so often need, the authors of sound recordings, in particular, who have attempted to avail themselves of this important protection have encountered not only resistance from many record labels, they have been subjected to the stubborn and unfounded disregard of their rights under the law and, in many instances, willful copyright infringement.

4.     Waite, Ely, and hundreds of other recording artists, have served Notices of Termination upon UMG pursuant to the provisions set forth in 17 U.S.C. §203, but UMG has routinely and systematically refused to honor them. These refusals are made, in every instance, on similar legal grounds, the first and foremost of which is UMG's position that the sound recordings created by recording artists under contract with UMG (or its affiliated or predecessor companies) are "works made for hire," and, therefore, not part of the subject matter of §203. UMG claims that the recordings are works made for hire because of contractual language that is found in every UMG recording agreement. As a result of UMG's policy, UMG has refused to acknowledge that any recording artist has the right to take over control of the sound recordings, or enter into an agreement with a different label for the exploitation of recordings, after the effective date of

154498.00601/116929581v.1

termination. In many instances, UMG has continued to exploit the recordings after the effective date, thereby engaging in willful copyright infringement of the United States copyright in those recordings. As a result of UMG's actions, UMG has effectively stymied any chance that the class plaintiffs have of entering into a new agreement with a third party, or even exploiting the recordings themselves, as is their right. As a result, these actions by UMG have effectively destroyed the very salability of the post-termination rights in the recordings that the Copyright Act expressly guarantees.

5.      On account of UMG's repeated, methodical, and willful copyright infringement, actual and statutory damages are the remedy. For those recordings for which the associated Notice of Termination has not reached its effective date of termination, the proper remedy is declaratory relief. With regard to both copyright infringement and all recordings for which a Notice of Termination has been sent to UMG, injunctive relief, addressing and preventing UMG's lawless behavior, is warranted. Therefore, Plaintiffs bring this class action for copyright infringement, declaratory relief, and injunctive relief, on behalf of themselves and all similarly situated recording artists who have sent Notices of Termination to UMG with an effective date of termination on or after January 1, 2013, as more precisely described in ¶15, below.

## THE PARTIES

6.      Plaintiff JOHN WAITE ("Waite") is a resident of Santa Monica, California. Waite is a British singer and songwriter, who began his career in the early 1970s as a member of the musical group The Babys. In 1983, he began a solo career and released several successful albums.

7.      Plaintiff JOE ELY ("Ely") is a resident of Austin, Texas. Ely has had a long career in music as a singer, songwriter, and guitarist. Since releasing his first solo album in 1977, he has recorded a total of eighteen studio albums on several

labels, including MCA, which is a predecessor to UMG. Ely has also been a performer on numerous albums by other recording artists, including The Clash and Rosie Flores.

8.      Defendant UMG RECORDINGS, INC. is a Delaware corporation with its principal place of business and global corporate headquarters located in Santa Monica, California. UMG also maintains U.S. headquarters at 1755 Broadway, New York City, New York offices, where Island Records, Def Jam Recordings, Republic Records, Decca Label Group, Spinefarm Records, Geffen Records, and other of UMG's labels are headquartered.  Also known as Universal Music Group, UMG is an American global music corporation that is a subsidiary of the French media conglomerate Vivendi Universal S.A.  UMG is considered one of the "Big Three" record labels, along with Sony Music and Warner Music Group. UMG is one of the world's largest recorded music and music publishing companies, and includes record labels such as Motown, Def Jam and Geffen. UMG is successor to, and was formerly named, PolyGram Records, Inc. UMG is a record label, as well as a global music conglomerate, and has released music under the Universal and Mercury imprints, and is the successor-in-interest to many record labels, including EMI, Capitol, Geffen, A & M, and Chrysalis imprints, among many others.

9.      The true names and capacities (whether individual, corporate, associate or otherwise) of the defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when such have been ascertained.  Upon information and belief, each of the Doe defendants herein is responsible in some manner for the occurrences herein alleged, and Plaintiffs' and class members' injuries as herein alleged were proximately caused by such defendants' acts or omissions.

4

10.    Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned in this Complaint, UMG and each of the Doe defendants were the agent of each other and, in doing the things alleged in this Complaint, were acting within the course and scope of such agency.

## JURISDICTION AND VENUE

11.    This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq.*, and also seeks declaratory relief with regard to several legal issues that arise from the language and interpretation of the Copyright Act.

12.    This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1338(a).

13.    This Court is empowered to issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§2201 and 2202.

14.    Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) and 1400(a) because UMG is subject to personal jurisdiction in this District and because a substantial part of the events or omissions by UMG giving rise to the claims occurred in this District.

## CLASS ALLEGATIONS

15.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. Proc. 23 on behalf of themselves and on behalf of a class of similarly situated recording artists, defined as:

> All recording artists (and statutory heirs and personal representatives of those recording artists, if applicable) who have served Notices of Termination on UMG pursuant to §203 of the Copyright Act (or who may serve such Notice in the pendency of this action), with an effective date of termination of January 1, 2013

154498.00601/116929581v.1

or later, and who have not entered into a further agreement with UMG (pursuant to §203(b)(4)) wherein UMG has been granted further rights therein.

16.     This action has been brought and may be properly maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed class are readily and easily ascertainable and identifiable.

17.     The members of the class are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that there are hundreds of members in the class who can be readily located, identified from various records and databases (including those maintained by UMG and the United States Copyright Office), and notified of this action.

18.     Plaintiffs' claims for copyright infringement and declaratory relief are typical of the claims of the members of the class, and Plaintiffs' interests are consistent with and not antagonistic to those of the other members of the class they seek to represent. Plaintiffs and all members of the class have sustained damages and face irreparable harm arising out of Defendants' continued infringement and disregard of the Notices of Termination as alleged herein and, thus, are entitled to recover actual damages and/or statutory damages and obtain injunctive relief to prevent further wrongful conduct by Defendants. In other instances, class members have had the salability of their sound recordings damaged and/or destroyed by UMG's behavior, and seek declaratory relief for the legal issues discussed below.

19.     Plaintiffs have no interests that are adverse to, or which conflict with, the interests of the absent members of the class and they are able to fairly and adequately represent and protect the interests of such a class. Plaintiffs

believe strongly in the protection of the rights of recording artists and are committed to protecting such rights. Plaintiffs have raised a viable claim for copyright infringement of the type reasonably expected to be raised by members of the class and will diligently and vigorously pursue that claim.  If necessary, Plaintiffs may seek leave of the Court to amend this Complaint to include additional class representatives to represent the class or additional claims as may be appropriate. Plaintiffs are represented by experienced, qualified, and competent counsel who are committed to prosecuting this action.

20.    Questions of fact and law (to the extent that any may exist) are common to all members of the class and would plainly predominate over any questions affecting only individual members of the class under Fed. R. Civ. Proc. 23(b)(3). These common legal and factual questions, to the extent that any may exist, do not vary from class member to class member, and can be determined without reference to the individual circumstances of any class member, including (without limitation) the following:

(A)    Whether sound recordings can ever be considered "works made for hire," as that term is defined in the Copyright Act, because the definition set forth in §101 of the Copyright Act does not include sound recordings as being one of the types of works that can be a work made for hire;

(B)    Whether the release of sound recordings that were created by a particular recording artist in "album" form, as is typical in the music industry, constitutes a "contribution of a collective work," or creates a "compilation," as those terms are used in §101 of the Copyright Act, thereby transforming the sound recordings into "works made for hire";

(C)    Whether a foreign choice of law provision in a recording agreement has any effect upon the application of United States copyright law to issues relating to the application of the Copyright Act (and §203

7

specifically) to the United States copyrights at issue, or whether such a clause raises viable claims of "breach of contract" against the recording artists for the act of exercising their rights under United States copyright law;

(D)    Whether UMG's position regarding "work made for hire" clauses violates §203(a)(5) of the Copyright Act;

(E)    Whether sound recordings created and delivered pursuant to a recording agreement are "commissioned works," as that term is used in §101 of the Copyright Act, thereby transforming the sound recordings into "works made for hire";

(F)    Whether recording artists are barred from exercising their rights under §203 of the Copyright Act if a "loan-out company," or, in the appellation utilized by UMG, a "Furnishing Company" was involved in the contractual transaction relating to the original grant;

(G)    Whether the exercise by recording artists of their rights under §203 of the Copyright Act to terminate the original grant, and to thereafter exploit the sound recordings after the effective date of termination, is a breach of contract by the recording artists of a clause in the recording agreement that, according to UMG, provides that recording artists may never exploit the sound recordings themselves;

(H)    Whether the assertion of rights by the recording artists under §203 of the Copyright Act is "time-barred" because, according to UMG, "claims regarding the initial ownership status of a work must be brought within three years of creation," and the act of serving a Notice of Termination is a claim "challenging that issue"; and

(I)    The basis and method for determining and computing damages, including statutory damages.

8

21.    Class certification is appropriate pursuant to Fed. R. Civ. Proc. 23(b)(2) because UMG has acted and/or refused to act on grounds that are generally applicable to the Class, which makes declaratory and injunctive relief with respect to Plaintiffs and the Class, as a whole, appropriate.

22.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all class members is impracticable. The claims of the individual members of the class may range from smaller sums to larger sums. Thus, for those class members with smaller claims, the expense and burden of individual litigation may not justify pursuing the claims individually. And even if every member of the class could afford to pursue individual litigation, the court system could not be so encumbered.  It would be unduly burdensome to those courts in which individual litigation of numerous cases would otherwise proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and court system, and protects the rights of each member of the class. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement – Against All Defendants)

23.    Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 22 above, as though fully set forth herein.

24.    Pursuant to §203 of the Copyright Act, recording artists have the right to serve a Notice of Termination to terminate the grant of rights made to a

record label, generally thirty-five (35) years after the publication of those recordings. The Notice is served upon the current grantee, and, with regard to Waite, Ely, and the members of the class, that current grantee is UMG.

<u>The Waite Albums</u>

25.     Waite, through a loan-out company, entered into a recording agreement with Chrysalis Records, Inc., a predecessor to UMG, in or about November 1981, and thereafter Chrysalis released the album *Ignition*. In September 1983, Waite, through another loan-out company, entered into another agreement with Capitol, and, thereafter, Capitol released the album *No Brakes*. In July 1985, Waite, through another loan-out company, entered into another agreement with Capitol, and, thereafter, Capitol released the album *Mask of Smiles* (collectively, the "Waite Albums").

26.     On April 15, 2015, Waite served a Notice of Termination (the "Waite Notice") upon UMG, and Waite caused the Notice to be recorded in the United States Copyright Office, on August 30, 2016, as document V9924 D957 P1 through P3. A true and correct copy of the Waite Notice is attached hereto as Exhibit A.

27.     The effective date of termination for the *Ignition* Album was May 22, 2017. Initially, UMG made an effort to cease the United States exploitation of the *Ignition* Album, and although UMG repeatedly informed Waite that UMG did not agree that Waite had presented a valid Notice of Termination, sought to negotiate a further grant from Waite, pursuant to §203(a)(5).

28.     On or about August 1, 2017, Waite rejected UMG's proposal, and thereafter began to exploit the *Ignition* Album himself, via digital outlets, through a record label that he owns.

29.     In May 2018, UMG, despite its previous decision to cease the United States exploitation of the *Ignition* Album, suddenly asserted that Waite's

10

exploitation of the *Ignition* Album was improper. On May 31, 2018, counsel for UMG sent Waite a letter setting forth UMG's legal positions for its claims that the Waite Notice was invalid, and, in addition, demanded that Waite "cease and desist from any and all unauthorized exploitation of the sound recordings, including the 'Ignition' Album." A true and correct copy of that letter is attached hereto as Exhibit B.

30.     In or about early July 2018, UMG issued a take-down notice against Waite's digital release of that album.

31.     After UMG had successfully caused Waite's release to be taken down from digital sites, UMG resumed the digital exploitation of the *Ignition* Album through UMG's normal digital outlets.

32.     The effective date of termination has passed for the *Ignition* Album. Despite this fact, and UMG's knowledge of the effective date, UMG willfully infringed upon the United States copyright belonging to Waite by continuing to exploit the sound recordings, as if the Waite Notice had not been sent at all, in complete disregard of the law.

33.     Under §106 of the Copyright Act, the copyright owner of a sound recording has the exclusive right to reproduce and distribute the sound recordings, including, but not limited to, in phonorecords, and to exploit or authorize the exploitation of interactive streams and digital downloads of the sound recordings through subscription or non-subscription online digital music services.

34.     Pursuant to the Waite Notice, Waite is currently the owner of the United States copyright in and to the sound recordings comprising the *Ignition* Album.

35.     By willfully continuing to exploit the sound recordings comprising the *Ignition* Album in the United States after the effective date, all of which

occurred within the past three years, UMG has infringed upon those recordings, and, furthermore, unlawful reproduction and distribution of the sound recordings owned by Plaintiff as alleged hereinabove constitutes copyright infringement under the Copyright Act.

The Ely Albums

36.    Ely entered into a recording agreement with MCA Records, Inc., a predecessor of UMG, in 1976. In February 1978, Ely's second album, *Honky Tonk Masquerade,* was released on the MCA label.

37.    On December 15, 2015, Ely served a Notice of Termination (the "Ely Notice") upon UMG, and Ely caused the Notice to be recorded in the United States Copyright Office, on August 30, 2016, as document V9921 D732 P1 through P3. A true and correct copy of the Ely Notice is attached hereto as Exhibit C.

38.    The effective date of termination for four albums on the Ely Notice, namely, *Honky Tonk Masquerade, Down the Drag, Live Shots*, and *Musta Notta Gotta Lotta* (the "Ely Albums") was December 16, 2017.

39.    On May 6, 2016, counsel for UMG sent Ely a letter setting forth UMG's legal positions for its claims that the Ely Notice was invalid, and, in addition, demanded that Ely "refrain from attempting to exploit the recordings yourself or taking any other actions interfering with UMG's continuing rights in the recordings that are the subject of your termination notice." A true and correct copy of that is attached hereto as Exhibit D.

40.    UMG failed and refused to cease the sale, distribution, and exploitation of the Ely Albums on the effective date of termination, that is, December 16, 2017, and continued such exploitation after that date.

41.    Despite UMG's knowledge of the effective date, UMG has willfully infringed upon the United States copyright belonging to Ely by continuing to

exploit the sound recordings, as if the Ely Notice had not been sent at all, in complete disregard of the law.

42.     Under §106 of the Copyright Act, the copyright owner of a sound recording has the exclusive right to reproduce and distribute the sound recordings, including, but not limited to, in phonorecords, and to exploit or authorize the exploitation of interactive streams and digital downloads of the sound recordings through subscription or non-subscription online digital music services.

43.     Pursuant to the Ely Notice, Ely is currently the owner of the United States copyright in and to the sound recordings comprising the Ely Albums.

44.     By willfully continuing to exploit the sound recordings comprising the Ely Albums in the United States after the effective date, which occurred within the past three years, UMG has infringed upon those recordings, and, furthermore, UMG's unlawful reproduction and distribution of the sound recordings owned by Ely as alleged hereinabove constitutes copyright infringement under the Copyright Act.

45.     Plaintiffs are further informed and believe, and on that basis allege, that the continued willful exploitation by UMG of sound recordings of members of the class in the United States after the effective dates of the Notices of Termination served on UMG pursuant to §203 by or on behalf of such class members, all of which effective dates occurred within the past three years, constitutes willful infringement by UMG.

46.     UMG's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs and the members of the class.

47.     As a direct and proximate result of Defendants' infringements of Plaintiffs' copyrights and the copyrights of the members of the class, pursuant to

17 U.S.C. §504(c), Plaintiffs and the class members are entitled to recover up to $150,000 in statutory damages for each sound recording infringed. Alternatively, at their election, pursuant to 17 U.S.C. §504(b), Plaintiffs and the class members are entitled to their actual damages, as well as all profits attributable to the infringement, including but not limited to UMG's profits from infringement, as will be proven at trial.

48.    Plaintiffs and the class members are also entitled to recover attorney's fees and costs pursuant to 17 U.S.C. §505, and prejudgment interest according to law.

49.    UMG is causing, and unless enjoined by the Court will continue to cause, Plaintiffs and the class members irreparable harm for which they have no adequate remedy at law. Plaintiffs and the class members are entitled to an injunction under 17 U.S.C. §502 prohibiting the continued infringement of their sound recordings.

### SECOND CLAIM FOR RELIEF
**(Declaratory Relief – Against All Defendants)**

50.    Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 49 above, as though fully set forth herein.

51.    Pursuant to 28 U.S.C. §§2201 and 2202, a case of actual controversy within the jurisdiction of this court has arisen and now exists between Plaintiffs and the class members on the one hand, and Defendants on the other hand, concerning their respective rights and duties, in that Plaintiffs and the class members contend that:

(A)    Sound recordings cannot be considered "works made for hire," as that term is defined in the Copyright Act, because the definition set forth in §101 of the Copyright Act does not include sound recordings as being one

14

of the types of works that can be a work made for hire;

(B)   The release of sound recordings that were created by a particular recording artist in "album" form, as is typical in the music industry, do not constitute a "contribution of a collective work," or a "compilation," as those terms are used in §101 of the Copyright Act, and do not transform the sound recordings into "works made for hire";

(C)   A foreign choice of law provision in a recording agreement has no effect upon the application of United States copyright law, exclusively, to issues relating to the application of the Copyright Act (and §203 specifically) to the United States copyright, and cannot support a claim of "breach of contract" by the recording artists for exercising their rights under United States law;

(D)   UMG's position regarding "work made for hire" clauses violates §203(a)(5) of the Copyright Act;

(E)   Sound recordings created and delivered pursuant to a recording agreement are not "commissioned works," as that terms is used in §101 of the Copyright Act, thereby transforming the sound recordings into "works made for hire";

(F)   Recording artists are not barred from exercising their rights under §203 of the Copyright Act, even if a "loan-out company," or, in the appellation utilized by UMG, a "Furnishing Company" was involved in the contractual transaction relating to the original grant;

(G)   The exercise by recording artists of their rights under §203 of the Copyright Act to terminate the original grant, and to thereafter exploit the sound recordings after the effective date of termination, does not constitute a breach of contract of the recording agreements; and

(H)   The assertion of rights by the recording artists under §203 of

the Copyright Act are not "time-barred, despite UMG's position that "claims regarding the initial ownership status of a work must be brought within three years of creation."

52.    Defendants, on the other hand, contend that:

(A)    The sound recordings at issue are "works made for hire," because the recording agreements at issue contain clauses that purport to be an agreement between the parties to those agreements that the sound recordings should be so characterized;

(B)    The sound recordings at issue are contributions to a "collective work" or "compilation," *i.e.,* record albums, and so are works made for hire;

(C)    If a recording agreement so provides, foreign law may be applied to the rights of recording artists in United States copyrights, and may be used to deny terminations that would be otherwise valid under the United States Copyright Act;

(D)    UMG's position regarding "work made for hire" clauses does not violate §203(a)(5) of the Copyright Act;

(E)    Sound recordings created and delivered pursuant to a recording agreement are "commissioned works," as that term is used in §101 of the Copyright Act, thereby transforming the sound recordings into "works made for hire";

(F)    Recording artists are barred from exercising their rights under §203 of the Copyright Act if a "loan-out company," or, in the appellation utilized by UMG, a "Furnishing Company" was involved in the contractual transaction relating to the original grant;

(G)    The exercise by recording artists of their rights under §203 of the Copyright Act to terminate the original grant, and to thereafter exploit the sound recordings after the effective date of termination, constitutes a

16

breach of contract of the recording agreements; and

(H)   The assertion of rights by the recording artists under §203 of the Copyright Act are "time-barred" because "claims regarding the initial ownership status of a work must be brought within three years of creation."

53.   Plaintiffs and the class members desire a judicial determination of their rights and duties, and a declaration that UMG's repeated disregard of the rights of Plaintiffs and the class members violates the Copyright Act.

54.   Such a judicial determination of the rights and duties of the parties is necessary at this time, in that Defendants have repeatedly denied Plaintiffs' rights, and the rights of hundreds of class members, and has denied all of them the right to own the United States copyright in and to the sound recordings for the post-termination period. By doing these acts in the past, and unless enjoined from engaging in like behavior in the future, UMG will be allowed to destroy the value and salability of the subject sound recordings, in direct contradiction of the second chance guaranteed by the Copyright Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all other members of the class, pray for Judgment against UMG and the Doe Defendants, and each of them, as follows:

A.   Determining that this is a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as class representatives and Plaintiffs' counsel as class counsel;

B.   For actual damages according to proof, or, at Plaintiffs' election, for statutory damages in an amount of $150,000 per infringed work, or according to proof;

17

C.    For declaratory relief, regarding the legal issues described in ¶¶ 51 through 54, above;

D.    A temporary, preliminary, and permanent injunction enjoining and restraining Defendants, and their respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with them or at their direction, and each of them, from continued denial and disregard of the Notices of Termination served by Plaintiffs and the members of the class, and each of them, upon UMG, to the extent that UMG bases said grounds on the legal and factual issues that are adjudicated in this suit;

E.    For pre- and post-judgment interest;

F.    For such fees and costs (including reasonable attorney's fees) incurred herein as permitted by law; and

G.    For such other and further relief as this Court deems just and proper.

**BLANK ROME LLP**

Dated:  February 5, 2019

_____*/s/ David C. Kistler*_____
David C. Kistler, Esquire
BLANK ROME LLP
The Chrysler Bldg., 405 Lexington Avenue
New York, NY  10174-0208
(212) 885-5000
Kistler@BlankRome.com

GREGORY M. BORDO (*pro ha vice to be filed*)
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA  90067
(424) 239-3404
GBordo@BlankRome.com

DAVID M. PERRY (*pro ha vice to be filed*)

18

BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103-6998
(215) 569-5767
Perry@BlankRome.com

and


EVAN S. COHEN (*pro ha vice to be filed*)
COHEN MUSIC LAW
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
(310) 556-9800
esc@cohenmusiclaw.com

MARYANN R. MARZANO (*pro ha vice to be filed*)
COHEN MUSIC LAW
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
(310) 556-9800
mmarzano@cohenmusiclaw.com


*Attorneys for Plaintiffs*

154498.00601/116929581v.1

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of the claims alleged in this Complaint.

**BLANK ROME LLP**

Dated:  February 5, 2019

*/s/ David C. Kistler*

David C. Kistler, Esquire
BLANK ROME LLP
The Chrysler Bldg., 405 Lexington Avenue
New York, NY  10174-0208
(212) 885-5000
Kistler@BlankRome.com

**GREGORY M. BORDO** (*pro ha vice to be filed*)
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA  90067
(424) 239-3404
GBordo@BlankRome.com

**DAVID M. PERRY** (*pro ha vice to be filed*)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103-6998
(215) 569-5767
Perry@BlankRome.com

and

**MARYANN R. MARZANO** (*pro ha vice to be filed*)
COHEN MUSIC LAW
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
(310) 556-9800
mmarzano@cohenmusiclaw.com

**EVAN S. COHEN** (*pro ha vice to be filed*)
COHEN MUSIC LAW
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
(310) 556-9800
esc@cohenmusiclaw.com

*Attorneys for Plaintiffs*

20