# EXHIBIT B



Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Thomas Kjellberg**
(212) 790-9202
txk@cll.com

May 31, 2018

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**

Mr. John Waite
c/o Bill Vulsteke
Provident Financial Management
2850 Ocean Park Blvd., Suite 300
Santa Monica, CA 90405

Mr. John Waite
Chief Executive Officer
No Brakes Tour Inc.
3130 Wilshire Blvd., Suite 600
Santa Monica, CA 90403

      Re:    John Waite Copyright Termination Notice
                "Ignition," "No Brakes" and "Mask of Smiles" Albums

Dear Mr. Waite:

      We represent Capitol Records, LLC f/k/a Capitol Records, Inc. ("Capitol"), the successor to Chrysalis Records, Inc. ("Chrysalis"), and write with reference to your notice dated April 20, 2015 (which notice Capitol has no record of having received, and of which it had no knowledge until late 2017) purporting to terminate Capitol's rights in John Waite sound recordings contained on the albums "Ignition," "No Brakes" and "Mask of Smiles" (the "Albums"). As set forth in detail below, your attempt to terminate Capitol's rights in and to these sound recordings under 17 U.S.C. § 203 is without legal or factual merit.

      As a threshold matter, your notice fails to comply with the requirement of "[a] brief statement reasonably identifying the grant to which the notice of termination applies." Your notice purports to identify a grant "dated in or about 1981 between the members of the recording group called The Babys and Chrysalis Records." There is no such agreement covering the sound recordings identified in Schedule A to your notice. Rather, as addressed below, those recordings appear to be governed by a series of agreements from 1981, 1983 and 1985 entered into by various furnishing companies providing your services to either Chrysalis or Capitol. Accordingly, while your notice purports to terminate rights in the sound recordings on the

Albums, you have failed to properly identify any grant covering such works. Certainly, a notice that references incorrect parties and dates cannot be considered a reasonable identification of the grants you purport to be terminating.

While your failure to provide a reasonable identification of the alleged grant is itself sufficient to render the purported notice ineffective, your termination attempt would fail even had you properly identified the controlling agreement. Accordingly, for purposes of efficiency, we proceed to address the absence of any right to terminate under the applicable agreements.

The relevant agreements that form the basis for the parties' relationship with respect to the Albums are: (1) with respect to "Ignition," a November 1, 1981 agreement (the "1981 Agreement") between Chrysalis and Heavy Waite, Inc. ("Heavy Waite"); (2) with respect to "No Brakes," a September 22, 1983 agreement (the "1983 Agreement") between Capitol and Moonwalk Music, Inc. ("Moonwalk"); and (3) with respect to "Mask of Smiles," a July 4, 1985 agreement (the "1985 Agreement") between Capitol and Diamond Stripe, Inc. ("Diamond"). Heavy Waite, Moonwalk and Diamond (referred to collectively herein as the "Furnishing Companies") were each engaged to furnish your recording services. Each of the agreements contains unambiguous language specifying that any recordings created during its term are works made for hire owned by the record company. The 1981 Agreement provides:

> All master recordings embodying the performances of Artist recorded during the term hereof, from the inception of the recording thereof, and all phonograph records and other reproductions made therefrom, together with the performances embodied therein and all copyrights therein and thereto, and any and all renewals and extensions thereof shall be entirely [Chrysalis's] property, free of any claims whatsoever by [Heavy Waite], Artist, or any other person, firm or corporation. For the purposes hereof, [Heavy Waite], Artist, and all other persons rendering services in connection with such master recordings shall be our employees for hire and all such master recordings shall be works made for hire under the United States Copyright Law.

1981 Agreement ¶ 4. The 1983 and 1985 Agreements contain a provision establishing the recordings covered by such agreements as works made for hire:

> With respect to any person whose services are furnished by [Moonwalk or Diamond] in connection with masters recorded hereunder, including, but not limited to, Artist and/or any person engaged to act as a Producer, [Moonwalk or Diamond] has or shall have a contract in which the person acknowledges that each master embodying the results and proceeds of his services is prepared within the scope of [Moonwalk's or Diamond's] engagement of his personal services and is a work made for hire, or as part of an lp-master constitutes a work specifically ordered by [Moonwalk or Diamond] for use as a contribution to a collective work and shall be considered a work made for hire.

1983 and 1985 Agreements ¶ 5(a); *see also* ¶ 18 (acknowledging Capitol as the "sole, exclusive, and perpetual owner of all masters from inception"). Accordingly, there is no operative grant to terminate, but simply a work made for hire relationship, which is not subject to termination under the statute.

Moreover, even if Chrysalis and/or Capitol were deemed to have acquired copyright rights to the sound recordings by virtue of a grant made by the Furnishing Companies, the result would still not be a transfer terminable under the Copyright Act because any such grant was made by the company that was signatory to such agreements, not by you. A copyrighted work of which a corporate entity is the legal author is *ipso facto* a work made for hire, and transfers of rights in works made for hire are categorically not terminable under § 203. The Furnishing Companies all represented, warranted and agreed that they had the proper authority to enter into the relevant agreement and to perform all of its terms, including granting the rights covered by the agreement. 1981 Agreement ¶ 9(a); 1983 and 1985 Agreements ¶¶ 2(i), (j), (k). Moreover, you personally signed inducement letters and/or declarations in which you joined in the representations and warranties made by the Furnishing Companies, confirmed the Furnishing Companies' right to perform their contracts with the record companies and/or acknowledged the work made for hire status of the recordings created under the relevant agreements. 1981 Agreement Exhibit A ¶¶ 1(a)-(c); 1983 Agreement Exhibit B ¶¶ 1-3, Declaration ¶ A; 1985 Agreement Exhibit A ¶¶ 1-3; Exhibit E ¶ A. Having permitted the Furnishing Companies to enter into these agreements and signed documentation confirming their authority to make such agreements, including most fundamentally the right to transfer the necessary rights, you cannot now turn around and claim that the rights all along belonged to you and not the entity that made the relevant agreements with Chrysalis and Capitol. The sound recordings were created by you within the scope of your employment by the Furnishing Companies, which presumably were formed for the purpose of permitting you to be treated as an employee of such companies. *See generally Caso v. Nimrod Productions, Inc.*, 77 Cal. Rptr. 3rd 313, 316-17 (2d Dist. 2008) (describing typical entertainment industry loan-out arrangement in which loan-out company furnishes services of its employee); *see also* 17 U.S.C. § 101(1) (defining a work made for hire as "a work prepared by an employee within the scope of his or her employment."); 17 U.S.C. § 201(b) (under which "the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright").

The sound recordings also constitute works made for hire under section 101(2) of the Copyright Act, which defines a "work made for hire" as

> a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101(2). The sound recordings were specially commissioned for use in compilations, *i.e.*, long-playing record albums. The 1981 Agreement provided in paragraph 2 for delivery of "sufficient Masters to constitute one (1) 12-inch, 33-1/3 rpm long-playing record, of no less than thirty-three (33) minutes in duration (hereinafter such a record is sometimes referred to by the term 'LP') plus, at our election, sufficient additional Masters to constitute a second LP." The 1983 and 1985 Agreements likewise provided for delivery of "lp-masters." 1983 and 1985 Agreement ¶ 1. An "lp-master" is defined as "a set of masters sufficient to constitute a lp-disc," and "lp-disc" is defined as "a 12 inch, 33-1/3 rpm, long playing disc-type record or its tape record equivalent, embodying thereon not less than eight (8) nor more than twelve (12) selections." *Id.* ¶¶ 14(e), (h).

> The Albums are compilations under the Copyright Act:
> 
> A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

17 U.S.C. § 101. "An album is a collection of preexisting materials—songs—that are selected and arranged by the author in a way that results in an original work of authorship—the album." *Bryant v. Media Right Prods.*, 603 F.3d 135, 140-41 (2d Cir. 2010). Accordingly, "[a]n album falls within the Act's expansive definition of compilation." *Id.* at 140. The sound recordings selected and arranged to comprise the Albums were subject to signed, written agreements deeming such sound recordings to be works made for hire. 1981 Agreement ¶ 4; 1983 and 1985 Agreements ¶ 5(a). In addition, the copyright registration for the Albums specifically identify Chrysalis (in the case of "Ignition") and Capitol (in the case of the other two Albums) as owning the copyright as "employer for hire." Accordingly, no indication of a transfer of copyright from you to Chrysalis or Capitol appears on the registrations, which have also never been amended since their issuance to reflect any such purported transfer that could potentially be subject to termination. The registrations were timely made under 17 U.S.C. § 410(c), and are thus *prima facie* evidence that the sound recordings are works made for hire. You would bear the burden of proving otherwise and rebutting the presumption that Chrysalis and/or Capitol owned all right, title and interest in the copyright to the sound recordings in their own names as works made for hire under § 101(2) of the Copyright Act from inception.

In any case, even if the sound recordings were not works made for hire, you would be time-barred from challenging that issue. Under the three-year statute of limitations for copyright claims, 17 U.S.C. § 507(b), claims regarding the initial ownership status of a work must be brought within three years of creation. *See, e.g.*, *Robles Vasquez v. Torres-Negron*, 2007 U.S. Dist. LEXIS 57872, *21 (S.D.N.Y. July 11, 2007) ("Since plaintiffs' claim … relates to a claim of copyright ownership, the normal three-year limitations period applies."). Accordingly, in *Aday v. Sony Music*, 44 U.S.P.Q.2d 1688 (S.D.N.Y. 1997), the recording artist Meat Loaf was held to be time-barred when in 1997 he sought to contest the work-for-hire provision in his 1977

recording agreement with Sony after a royalty dispute. The artist sought a declaration that he was not an employee for hire, but the Southern District of New York rejected the claim, stating the singer "had reason to know in 1977 about any of the problems with the work-for-hire provision that [he] now contend[s] violates the Copyright Act."

Finally, with respect to the "Ignition" Album, paragraph 11(b) of the 1981 Agreement prohibits you from making any use of the sound recordings, regardless of whether or not your purported termination notice is effective:

> Neither [Heavy Waite] nor Artist shall at any time manufacture, distribute, or sell or authorize the manufacture, distribution or sale by any person, firm, or corporation other than [Chrysalis] of phonograph records embodying ... any performance rendered by Artist during the term of this contract....

This provision is not a "grant or transfer or license of copyright or any right under a copyright" as section 203(a) requires, and thus it is not terminable. Clearly, the statute does not contemplate that a terminated assignment or license agreement is rescinded *in toto*, only that the grant of U.S. rights is terminated. The remainder of the provisions of the agreement arise under state contract law and are not affected by termination; the Copyright Act explicitly states in section 203(b)(5) that termination shall not affect "rights arising under any other Federal, State or foreign laws," such as state contract law. Courts have consistently recognized that parties are free to contract away rights they would otherwise enjoy under the Copyright Act. *See Bowers v. Baystate Technologies*, 320 F.3d 1317 (Fed. Cir. 2003) (contract waiving fair use rights); *Davidson Assocs. v. Jung*, 422 F.3d 630 (8th Cir. 2005) (same). Accordingly, you would continue to be bound by your contractual obligation to refrain from exploiting the "Ignition" recordings, or permitting others to exploit the works, even if your termination of any "grant" to Chrysalis were given effect. This is not an "agreement to contrary" under section 203(a)(5), because it does not prevent you from exercising whatever termination rights you may have.

For all these reasons, Capitol continues to possess the exclusive right to exploit the sound recordings comprising the Albums pursuant to its rights as outlined above. Any exploitation of those sound recordings by you or on your behalf would be in violation of Capitol's exclusive rights, and would render you, and any other individuals or entities involved in such exploitation, liable for a number of claims including copyright infringement, and subject to all of the remedies provided by the Copyright Act.

In fact, we are aware that at least one of the Albums ("Ignition") has been added to Spotify, Apple and other digital services by an entity named "No Brake Records," which we believe is controlled by or associated with you. Accordingly, we hereby demand that you cease and desist from any and all unauthorized exploitation of the sound recordings, including the "Ignition" Album, and take immediate steps to remove any such sound recordings from any digital services to which you, an entity with which you are associated, or an entity purporting to be acting upon authorization from you have added them without Capitol's authorization.

This letter is not intended to be a complete statement of the facts or the law, and is without prejudice to any of Capitol's rights, remedies, or defenses, all of which are expressly reserved.

Sincerely,

Thomas Kjellberg

cc: Evan S. Cohen, Esq. (via email)