UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JOHN WAITE, an individual; JOE ELY, an individual; KASIM SULTON, an individual; SUSAN STRAW HARRIS p/k/a SYD STRAW, an individual; LEONARD GRAVES PHILLIPS, an individual, STAN SOBOL a/k/a STAN LEE, an individual, and ISRAEL CABALLERO, an individual; and on behalf of all others similarly situated,

       Plaintiffs,

      v.

UMG RECORDINGS, INC., a Delaware corporation doing business as Universal Music Group, and DOES 1 through 10,

       Defendants.
-----------------------------------------------------------X

No. 1:19-cv-01091(LAK)

# DECLARATION OF ROLLIN A. RANSOM IN SUPPORT OF DEFENDANT UMG RECORDINGS, INC.'S MOTION TO DISMISS THE COMPLAINT

  I, Rollin A. Ransom, declare and state, pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.9 of the United States District Courts for the Southern and Eastern Districts of New York, that the following is true and correct:

  1.  I am an attorney at law, duly licensed and entitled to practice in the States of California, New York, and Illinois. I am a partner at Sidley Austin LLP ("Sidley"), and an attorney for Defendant UMG Recordings, Inc. ("UMG"). I submit this declaration in support of UMG's Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. If called upon to testify as a witness, I would testify as to the following:

2. In deciding a Rule 12 motion, the Court may properly consider "the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Where a complaint is based on an agreement, "the Court will consider the [a]greement as a part of the [c]omplaint." *Helprin v. Harcourt*, 277 F. Supp. 2d 327, 331 (S.D.N.Y. 2003); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002) (noting that recording contracts are integral to a copyright claim and thus were properly incorporated by reference on a motion to dismiss).

3. As explained in UMG's Motion to Dismiss the First Amended Complaint, Plaintiffs' termination notices failed to include a "brief statement reasonably identifying the grant to which the notice of termination applies" and a "clear identification" of the "date of execution of the grant being terminated," as required by 37 C.F.R. §§ 201.10(b)(2)(iii), (v), and are therefore invalid. UMG nonetheless endeavored to identify the agreements that were the subject of those notices, as set forth in the response letters that Plaintiffs included as part of their First Amended Complaint ("FAC"). *See* FAC Exs. B, D, F, H, J. As set forth below, each of those agreements is referenced in such letters and therefore incorporated by reference in the FAC for purposes of UMG's motion to dismiss.

4. The FAC states that "Waite, through a loan-out company, entered into a recording agreement with Chrysalis Records, Inc., a predecessor to UMG, in or about November 1981." *Id*. at ¶ 30. Attached hereto as **Exhibit A** is a true and correct copy of a November 1, 1981 Agreement between Heavy Waite, Inc. and Chrysalis Records, Inc., which I am informed and believe is the 1981 Agreement referenced in paragraph 30 of the FAC, and which is further referenced in Exhibit B to the FAC.

5. The FAC states that "[i]n September 1983, Waite, through another loan-out company, entered into another agreement with Capitol." *Id*. at ¶ 30. Attached hereto as **Exhibit B** is a true and correct copy of a September 22, 1983 Agreement between Moonwalk Music, Inc. and EMI America Records, a division of Capitol Records, Inc., which I am informed and believe is the 1983 Agreement referenced in paragraph 30 of the FAC, and which is further referenced in Exhibit B to the FAC.

6. The FAC states that "[i]n July 1985, Waite, through another loan-out company, entered into another agreement with Capitol." *Id*. at ¶ 30. Attached hereto as **Exhibit C** is a true and correct copy of a July 4, 1985 Agreement between Diamond Stripe, Inc., Anonymous Music, Inc., as successor-in-interest to Moonwalk Music, Inc. and EMI America Records, a division of Capitol Records, Inc., which I am informed and believe is the 1985 Agreement referenced in paragraph 30 of the FAC, and which is further referenced in Exhibit B to the FAC..

7. The FAC states that "Ely entered into a recording agreement with MCA Records, Inc., a predecessor of UMG, in 1976." *Id*. at ¶ 42. Attached hereto as **Exhibit D** is a true and correct copy of an August 26, 1976 Agreement between Joe Ely and MCA Records, Inc., which I am informed and believe is the 1976 Agreement referenced in paragraph 42 of the FAC, and which is further referenced in Exhibit D to the FAC.

8. Attached hereto as **Exhibit E** is a true and correct copy of a July 13, 1979 Agreement between South Coast Records, Inc. and MCA Records, Inc. ("1979 Ely Agreement"), which is referenced in Exhibit D to the FAC.

9. Attached hereto as **Exhibit F** is a true and correct copy of a July 1, 1980 Agreement between Joe Ely and South Coast Records, Inc., which is referenced in Exhibit D to the FAC.

10. Attached hereto as **Exhibit G** is a true and correct copy of a July 1, 1980 Amendment to the 1979 Ely Agreement, which is referenced in Exhibit D to the FAC.

11. The FAC states that "Sulton entered into a recording agreement with EMI America Records, Inc. ("EMI"), a predecessor to Capitol Records, Inc., which is currently known as Capitol Records, LLC, a division of UMG, on September 29, 1980." *Id*. at ¶ 52. Attached hereto as **Exhibit H** is a true and correct copy of a September 29, 1980 Agreement between Kasim Sulton and EMI America Records Inc. ("1980 Sulton Agreement"), which I am informed and believe is the 1980 Agreement referenced in paragraph 52 of the FAC, and which is further referenced in Exhibit F to the FAC.

12. Attached hereto as **Exhibit I** is a true and correct copy of an October 29, 1981 Artist Declaration to induce EMI to accept assignment of the 1980 Sulton Agreement to ICDA, Inc., which is related to the 1980 Agreement referenced in paragraph 52 of the FAC, and which is further referenced in Exhibit F to the FAC.

13. The FAC states that "Straw entered into a recording agreement with Virgin Records America, Inc. ("Virgin"), a predecessor of Capitol Records, LLC, which is currently a division of UMG, on July 20, 1987." *Id*. at ¶ 68. Attached hereto as **Exhibit J** is a true and correct copy of a July 20, 1987 Agreement between Susan Straw Harris and Virgin Records America, Inc., which I am informed and believe is the 1987 Agreement referenced in paragraph 68 of the FAC, and which is further referenced in Exhibit H to the FAC.

14. The FAC states that "The Dickies entered into a recording agreement with A&M Records, Inc. ("A&M"), a predecessor of UMG, on April 3, 1979." *Id*. at ¶ 75. It appears that this Agreement was actually entered into on April 3, 1978. *Id*. at Ex. J. Attached hereto as **Exhibit K** is a true and correct copy of an April 3, 1978 Agreement between The Dickies

(Leonard Phillips, Stan Sobol, William Remar, Robert Davis, and Carlos Caballero) and A&M Records, Inc., which I am informed and believe is the 1979 Agreement reference in paragraph 75 of the FAC, and which is further referenced in Exhibit J to the FAC.

15. Attached hereto as **Exhibit L** is a true and correct copy of relevant excerpts of the Copyright Law Revision Part 6, Supplementary Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law: 1965 Revision Bill.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on June 26, 2019, at Los Angeles California.

*/s/ Rollin A. Ransom*
Rollin A. Ransom