# EXHIBIT L



| 89th Congress<br>1st Session | HOUSE COMMITTEE PRINT |

# COPYRIGHT LAW REVISION
# Part 6

SUPPLEMENTARY REPORT OF THE
REGISTER OF COPYRIGHTS ON THE
GENERAL REVISION OF THE
U.S. COPYRIGHT LAW:

1965 REVISION BILL



MAY 1965

Printed for the use of the House Committee on the Judiciary

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1965

47–830

For sale by the Superintendent of Documents, U.S. Government Printing Office
Washington, D.C., 20402 - Price $1.00


Digitized by Google

Library Science
Z
642
.U576
1961
pt. 6
cop. 2

## COMMITTEE ON THE JUDICIARY

EMANUEL CELLER, New York, *Chairman*

| | |
|---|---|
| MICHAEL A. FEIGHAN, Ohio | WILLIAM M. McCULLOCH, Ohio |
| FRANK CHELF, Kentucky | RICHARD H. POFF, Virginia |
| EDWIN E. WILLIS, Louisiana | WILLIAM C. CRAMER, Florida |
| PETER W. RODINO, JR., New Jersey | ARCH A. MOORE, JR., West Virginia |
| BYRON G. ROGERS, Colorado | JOHN V. LINDSAY, New York |
| HAROLD D. DONOHUE, Massachusetts | WILLIAM T. CAHILL, New Jersey |
| JACK B. BROOKS, Texas | CLARK MacGREGOR, Minnesota |
| WILLIAM M. TUCK, Virginia | CHARLES McC. MATHIAS, JR., Maryland |
| ROBERT T. ASHMORE, South Carolina | CARLETON J. KING, New York |
| JOHN DOWDY, Texas | EDWARD HUTCHINSON, Michigan |
| BASIL L. WHITENER, North Carolina | ROBERT McCLORY, Illinois |
| HERMAN TOLL, Pennsylvania | |
| ROBERT W. KASTENMEIER, Wisconsin | |
| JACOB H. GILBERT, New York | |
| JAMES C. CORMAN, California | |
| WILLIAM L. ST. ONGE, Connecticut | |
| GEORGE F. SENNER, JR., Arizona | |
| DON EDWARDS, California | |
| WILLIAM L. HUNGATE, Missouri | |
| HERBERT TENZER, New York | |
| JOHN CONYERS, JR., Michigan | |
| GEORGE W. GRIDER, Tennessee | |
| ANDREW JACOBS, JR., Indiana | |

BESS E. DICK, *Staff Director*
WILLIAM R. FOLEY, *General Counsel*
GARNER J. CLINE, *Counsel*
MURRAY DRABKIN, *Counsel*
HERBERT FUCHS, *Counsel*
WILLIAM L. SHATTUCK, *Counsel*
BENJAMIN L. ZELENKO, *Counsel*
CHARLES J. ZINN, *Revision Counsel*

---

### SUBCOMMITTEE No. 3

General jurisdiction over judiciary bills as assigned.
Special jurisdiction over patents, trademarks, copyrights, and revision of the laws.

EDWIN E. WILLIS, Louisiana, *Chairman*

| | |
|---|---|
| RICHARD POFF, Virginia | WILLIAM M. TUCK, Virginia |
| JOHN V. LINDSAY, New York | ROBERT W. KASTENMEIER, Wisconsin |
| EDWARD HUTCHINSON, Michigan | WILLIAM L. ST. ONGE, Connecticut |
| DON EDWARDS, California | |
| HERBERT TENZER, New York | |

HERBERT FUCHS, *Counsel*

II

Digitized by Google

tives also seem to have serious disadvantages. If termination by one member of the class were to bind all of the other members against their will, there would be real danger of unfairness and abuse. On the other hand, if termination by one member did not bind the other members, the result would be the divided ownership and loss of exclusivity that bothers the owners of "split renewals" today. A requirement for all beneficiaries to join in a termination does have advantages of simplicity and certainty, but we have been persuaded that some solution should be sought to take care of the special problems of "holdouts" and unknown heirs. Such a solution will require careful working out, but one suggestion—that termination by a majority of the beneficiaries be permitted under certain conditions—deserves further consideration. Similarly, further thought should be given to the question of whether, in a case where joint authors of a work have signed a transfer or license jointly, they (or their beneficiaries) should all be required to sign the notice of termination. This would probably be the effect of the present bill, although its language on the point could be clearer.

(c) Section 101 defines the author's "widow" or "widower" as "the author's surviving spouse under the law of his domicile at the time of his death, whether or not the spouse has later remarried," and defines a person's "children" as "his immediate offspring, whether legitimate or not, and any children legally adopted by him." Illegitimate children are included in the definition in an effort to avoid the uncertainties, confusion, and possible injustices that would arise if the question were left entirely to a determination under the various State laws.

*3. When a Grant Can Be Terminated*

(a) In understanding the requirements for termination under the bill, it is important to bear in mind the distinction between the date on which the termination becomes effective and the earlier date on which the advance notice of the termination is served. With respect to the former, section 203(a)(2) contains two provisions: first, that termination generally "may be effected at any time during a period of five years beginning at the end of 35 years from the date of execution of the grant"; and second, as an exception, that "if the grant covers the right of first publication of the work, the period begins at the end of 35 years from the date of first publication of the work or at the end of 40 years from the date of execution of the grant, whichever term ends earlier." Take, for example, a case in which a book-publication contract is signed on July 1, 1970 while the book is in the process of being written, and in which publication does not take place until May 1, 1976. Since the grant covers the right of first publication, the 5-year period during which the contract could be terminated would begin on July 1, 2010 (40 years from the date of execution) rather than on July 1, 2005

Digitized by Google

(35 years from the date of execution) or on May 1, 2011 (35 years from the date of publication).

(b) The basic 35-year figure represents a compromise which, we believe, is short enough to be of benefit to authors and long enough to avoid unfairness to publishers and other users. The book publishers, among others, have argued that in many cases a straight period of 35 years from the execution of the grant would be illusory, since a number of publication contracts are signed before the work is written, and it may be years before it is completed and published. For this reason we have added the alternative period of 35 years from publication or 40 years from execution, thus, in effect, adding up to 5 years to the operative period in cases where the contract is signed long before publication.

(c) The effective date of termination must fall within the 5 years following the end of the specified 35- or 40-year period, but the "advance notice" of termination must be served earlier: "not less than two or more than ten years" before the effective date. In the example given above, the end of the 40-year period would fall on July 1, 2010; thus the termination could be made effective at any time between July 1, 2010 and July 1, 2015. Assuming in the example that the effective date chosen is the earliest possible—July 1, 2010—the advance notice would have to be filed after July 1, 2000 and before July 1, 2008. The thought behind the 2-to-10 year limitation on the time for serving a notice was to establish a definite period for filing the notice toward the end of the 35- or 40-year term, thus avoiding earlier, indiscriminate terminations, and to provide a fair period of advance notice to the grantee that his rights are to be terminated.

## 4. *Effect of Termination*

(a) Since termination is not automatic, all rights under the existing transfer or license continue unless they are effectively terminated during the 5 years allowed. Section 203(b)(4) also makes clear that termination affects only those rights arising under the U.S. copyright statute and has no effect, for example, on foreign rights that may be covered by the same contract.

(b) Section 203(b) provides that, with certain exceptions, "all rights under this title that were covered by the terminated grant revert," on the effective date of termination, "to the author or, if he is dead, to all of those entitled to terminate his grant under clause (1) of subsection (a)." Clause (3) of subsection (b) specifies that the "future rights that will revert upon termination of the grant become vested on the date the notice of termination has been served * * *," and goes on to provide for the division of reverted rights among the author's widow (or widower), children, and grandchildren.

