UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JOHN WAITE, an individual; JOE ELY, an
individual; KASIM SULTON, an individual;
SUSAN STRAW HARRIS p/k/a SYD STRAW,
an individual; LEONARD GRAVES PHILLIPS,
an individual, STAN SOBOL a/k/a STAN LEE,
an individual, and ISRAEL CABALLERO, an
individual; and on behalf of all others similarly
situated,

       Plaintiffs,

    v.

UMG RECORDINGS, INC., a Delaware
corporation doing business as Universal Music
Group, and DOES 1 through 10,

       Defendants.

-------------------------------------------------------------X

No. 1:19-cv-01091(LAK)


**REPLY IN SUPPORT OF DEFENDANT UMG RECORDINGS, INC.'S
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

I.     THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS ............................1

     A.    The "Premise" of Plaintiffs' Argument Is Wrong. ...................................1

     B.    Plaintiffs' Argument Respecting Accrual of Their Claims Is Inconsistent with Established Second Circuit Law. .....................................................3

          1.    The Contracts Do Not Violate 17 U.S.C. § 203(a)(5). ..............................4

          2.    "Belt and Suspenders" Language in the Contracts Does Not Prevent Commencement of the Statute of Limitations. ............................................6

          3.    Plaintiffs' Reliance on Out-Of-District Authority Is Unavailing. ...............7

II.    WAITE AND ELY ARE NOT GRANTORS ...................................................9

III.   PLAINTIFFS' TERMINATION NOTICES ARE FATALLY DEFICIENT ..................11

IV.   GAP GRANTS ARE NOT TERMINABLE PURSUANT TO 17 U.S.C. § 203 .............13

V.    PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS MUST FAIL ....................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aday v. Sony Music Entm't, Inc.*,
    1997 WL 598410 (S.D.N.Y. Sept. 25, 1997) .......................................................................7, 8

*Barnhart v. Sigmon Coal Co., Inc.*,
    534 U.S. 438, 122 S. Ct. 941 (2002) ......................................................................................14

*Bryant v. Media Right Productions, Inc.*,
    603 F.3d 135 (2d Cir. 2010) ....................................................................................................2

*Burroughs v. Metro-Goldwyn-Mayer, Inc.*,
    491 F. Supp. 1320 (S.D.N.Y. 1980), *aff'd*, 636 F.2d 1200 (2d Cir. 1980) ............................13

*Burroughs v. Metro-Goldwyn-Meyer, Inc.*,
    683 F.2d 610 (2d Cir. 1982) ..................................................................................................12

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837, 104 S. Ct. 2778 (1984) ....................................................................................14

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730, 109 S. Ct. 2166 (1989) ......................................................................................2

*Cooper v. NCS Pearson, Inc.*,
    733 F.3d 1013 (10th Cir. 2013) ...............................................................................................8

*Donaldson Pub. Co. v. Bregman, Vocco & Conn, Inc.*,
    375 F.2d 639 (2d Cir. 1967) ....................................................................................................2

*Gary Friedrich Enterprises v. Marvel Characters, Inc.*,
    716 F.3d 302 (2d Cir. 2013) ................................................................................................3, 6

*Horror Inc. v. Miller*,
    335 F. Supp. 3d 273 (D. Conn. 2018) ......................................................................2, 7, 12, 13

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011) ....................................................................................................3

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013) ............................................................................................6, 7, 9

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002) ........................................................................................ *passim*

*Merchant v. Levy*,
92 F.3d 51 (2d Cir. 1996) ..................................................................................3, 8

*Netzer v. Continuity Graphic Assocs., Inc.*,
963 F. Supp. 1308 (S.D.N.Y. 1997)....................................................................3, 9

*Penguin Group (USA) Inc. v. Steinbeck*,
537 F.3d 193 (2d. Cir. 2008)....................................................................................5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663, 134 S. Ct. 1962 (2014)......................................................................2

*Price v. Fox Entm't Grp., Inc.*,
473 F. Supp. 2d 446 (S.D.N.Y. 2007)......................................................................3

*Scorpio Music (Black Scorpio) S.A. v. Willis*,
2013 WL 790940 (S.D. Cal. Mar. 4, 2013) .............................................................7

*Sharkey v. Ultramar Energy Ltd.*,
867 F. Supp. 258 (S.D.N.Y. 1994), *rev'd on other grounds*, 70 F.3d 226 (2d
Cir. 1995) ...............................................................................................................10

*Siegel v. Warner Bros. Entm't Inc.*,
658 F. Supp. 2d 1036 (C.D. Cal. 2009) ...................................................................2

*Siegel v. Warner Bros. Entm't Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ...................................................................7

*Siegel v. Warner Bros. Entm't Inc.*,
690 F. Supp. 2d 1048 (C.D. Cal. 2009) .................................................................13

*Star Athletica, LLC v. Varsity Brands, Inc.*,
137 S. Ct. 1002 (2017)...........................................................................................14

*United States v. Kubrick*,
444 U.S. 111, 100 S. Ct. 352 (1979).........................................................................9

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
924 F.3d 32 (2d Cir. 2019).......................................................................................1

*WPIX, Inc. v. IVI, Inc.*,
691 F.3d 275 (2d Cir. 2012)...................................................................................14

**Statutes**

17 U.S.C. § 101...................................................................................................2, 6

17 U.S.C. § 203.............................................................................................. *passim*

17 U.S.C. § 204(a) ..................................................................................................10

17 U.S.C. § 304 ...................................................................................................5, 7

**Other Authorities**

37 C.F.R. § 201.10(b) ......................................................................................11, 12

37 C.F.R. § 201.10(f)(4) ..................................................................................11, 15

ANALYSIS OF GAP GRANTS UNDER THE TERMINATION PROVISIONS OF TITLE 17,
  U.S. COPYRIGHT OFFICE (Dec. 7, 2010), *available at*
  https://www.copyright.gov/reports/gap-grant-analysis.pdf)..............................14, 15

Peter S. Menell & David Nimmer, *Pooh-Poohing Copyright Law's Inalienable
  Termination Rights*, 57 J. Copyright Soc'y U.S.A. 799 (2010) .......................4, 5, 6

*United States Copyright Office and Sound Recordings as Work Made for Hire:
  Hearing Before the Subcomm. on Courts and Intellectual Property of the H.
  Comm. on the Judiciary*, 106th Cong. (2000)...........................................................2

Defendant UMG Recordings, Inc. ("UMG") respectfully submits this reply in support of its Motion to Dismiss the First Amended Complaint ("Motion") [ECF Doc. 49].

# I.    THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS

Plaintiffs' claims are necessarily and expressly tied to their contention that they are legal authors of the sound recordings at issue, and therefore entitled to terminate any grants respecting those works.  Under well-established Second Circuit authority, Plaintiffs' authorship claims accrued decades ago, when Plaintiffs agreed in writing that their contributions to sound recordings would be works made for hire, and that others – not Plaintiffs – were therefore the statutory authors of those works and owned the copyrights from the outset.   As a result, the statute of limitations on Plaintiffs' claims has long since run.  Although Plaintiffs raise a host of arguments in response, none of those arguments – most of which are not only unsupported by the law, but inconsistent with it – supports resurrecting Plaintiffs' time-barred claims.

## A.    The "Premise" of Plaintiffs' Argument Is Wrong.

Plaintiffs first assert that the "premise" of UMG's statute of limitations argument is wrong, arguing that to grant UMG's Motion, this Court must determine whether the sound recordings at issue were, in fact, works made for hire.  *See, e.g.*, Pls.' Opp. ("Opp.") [ECF Doc. 56] at 13, 15-16 (same).  In fact, it is the premise of Plaintiffs' argument that is wrong.  In considering a motion to dismiss on statute of limitations grounds, a court does *not* evaluate the merits of the underlying claim – instead, the court simply considers the date on which the claim accrued and whether, based on that date, the claim is time-barred.  *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49 (2d Cir. 2019) ("We do not reach the merits of this claim, however, because it is time-barred by the applicable statute of limitations.").

This fact renders the bulk of Plaintiffs' arguments irrelevant.  Plaintiffs assert that the Motion "presupposes that Plaintiffs' sound recordings are irrefutably 'works made for hire,'" Opp. at 10, but that is plainly incorrect.  *See* Mot. at 8 (noting that "[r]esolution of that dispute [*i.e.*, whether and under what circumstances a sound recording may be a work made for hire] is irrelevant to the [statute of limitations] argument").  Building off of that false premise, Plaintiffs

1

argue that this Court should engage in an "extensive examination [of] the relationship" of the parties.  Opp. at 15-16.[1]  But with one exception, *none* of the opinions that Plaintiffs cite in support of this argument addressed a statute of limitations defense; rather, each of them considered the *merits* of a work for hire claim.[2]  As noted above, such consideration is beyond the scope of UMG's motion.  Instead, the Court need (and should) consider only whether

---

[1] In this respect, Plaintiffs' motion is built upon a further fallacy:  that because sound recordings are not among the categories of commissioned works for hire specifically identified in 17 U.S.C. § 101(2), a sound recording can constitute a work for hire only if it is "prepared by an employee within the scope of his or her employment" under § 101(1).  *See* Opp. at 11.  That is exactly wrong.  "Some of the [§ 101(2)] categories … are generic in the sense that they could include types of works otherwise not named."  *United States Copyright Office and Sound Recordings as Work Made for Hire:  Hearing Before the Subcomm. on Courts and Intellectual Property of the H. Comm. on the Judiciary*, 106th Cong. 151 (2000) (statement of Prof. Marci Hamilton); *see id.* at 138 ("The contribution of an individual sound recording as one of several selections on a CD or other album will typically constitute a 'contribution to a collective work'….") (statement of Prof. Paul Goldstein).  Indeed, the Second Circuit has expressly held that an album of sound recordings constitutes a "compilation," which is one of the § 101(2) categories of works for hire.  *See Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 140 (2d Cir. 2010) ("An album falls within the Act's expansive definition of compilation.").

[2] The one exception is *Horror Inc. v. Miller*, 335 F. Supp. 3d 273 (D. Conn. 2018), though Plaintiffs ignore the portion of the opinion relating to the statute of limitations.  *See* Opp. at 16 (addressing discussion at pages 294-311 of *Horror Inc.*); *cf. Horror Inc.*, 335 F. Supp. 3d at 314-17 (addressing statute of limitations defense).  This is presumably because the case actually supports *UMG*, applying the statute of limitations standards articulated in the Motion to a § 203 termination claim.  *See Horror Inc.*, 335 F. Supp. 3d at 314; *see also infra* § I.B.  And while irrelevant to this motion, the merits discussion upon which Plaintiffs rely was necessary only because, unlike here, there was no evidence that "the parties [had] signed a written agreement that expressly provided that [the terminating party's] work was being commissioned as a work made for hire."  *Id.* at 284.  The remaining cases are likewise distinguishable.  *See, e.g.*, *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738, 109 S. Ct. 2166 (1989) ("no written agreement between the parties establishes [the project] as a work for hire"); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 282 (2d Cir. 2002) (case concerned "settlement agreement, entered into long after a work's creation"); *Donaldson Pub. Co. v. Bregman, Vocco & Conn, Inc.*, 375 F.2d 639, 642-43 (2d Cir. 1967) ("unequivocal language" in agreement that two others (but not plaintiff) were "employees"); *Siegel v. Warner Bros. Entm't, Inc.*, 658 F. Supp. 2d 1036 (C.D. Cal. 2009) (multiple agreements and portions of works created before execution).  Equally inapt is Plaintiffs' reliance on *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 134 S. Ct. 1962 (2014).  Opp. at 17.  *Petrella* merely held that the defense of laches could not bar an infringement claim brought within the three-year statute of limitations.  *Id.* at 677.  *Petrella* did not discuss when an authorship-based claim accrues, as the plaintiff in that action was the undisputed "sole owner" of the relevant copyright.  *Id.* at 663.

Plaintiffs' claims – *whatever* their merit – were timely brought.  As discussed further below, the answer to that question is "no."

**B.**    **Plaintiffs' Argument Respecting Accrual of Their Claims Is Inconsistent with Established Second Circuit Law.**

The well-established rule in the Second Circuit is that the statute of limitations begins to run "when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right."  *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (internal quotations and citation omitted).  Plaintiffs do not dispute that a critical (indeed, indispensable) element of their claims is that they are *authors* of the sound recordings at issue – if they are not authors, then even by their own analysis, Plaintiffs lack the right to terminate any grant respecting those sound recordings.  *See* Opp. at 26 (asserting that "Waite and Ely as authors had every right to send notices of termination" and that "[t]erminations are sent by *authors*") (emphasis in original).  Accordingly, the relevant inquiry for statute of limitations purposes is when Plaintiffs, exercising reasonable diligence, were put on inquiry notice as to the existence of their putative authorship claim.  *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996); *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997); *see also Kwan*, 634 F.3d at 229-30 (where plaintiff's assertion that she was author of copyrighted work formed the "backbone" of her infringement claim, statute of limitations began to run based on accrual of authorship/ownership claim, rather than later-accruing infringement claim).

It is also well-established in the Second Circuit that "[a]n express assertion of sole authorship or ownership will start the copyright statute of limitations running," *Netzer*, 963 F. Supp. at 1315, including "when alleged co-authors are presented with a contract identifying the defendant as the 'sole owner and copyright holder.'"  *Gary Friedrich Enterprises v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013) (citation omitted); *see also Price v. Fox Entm't Grp., Inc.*, 473 F. Supp. 2d 446, 457-58 (S.D.N.Y. 2007) (claim accrued and statute of limitations began to run when putative co-author "made an express assertion of sole authorship") (internal quotations and citation omitted).  While barely acknowledging this standard, Plaintiffs

mischaracterize their contracts as containing "scant few sentences characterizing the sound recordings as 'works for hire,'" Opp. at 11, and UMG's Motion as providing "cherry-picked examples" that are not "direct and clear," Opp. at 18.

Nonsense.  The language in each of Plaintiffs' contracts is clear, substantial, and express; states that the sound recordings to be made pursuant to the contract would be works made for hire; and declares that a predecessor of UMG or its affiliate would therefore be the sole and exclusive owner and copyright holder with respect to such works.  One such example is in the Waite 1981 Agreement:

> For the purposes hereof, *you, Artist*, and all other persons rendering services in connection with such master recordings *shall be our employees for hire* and *all such master recordings shall be works made for hire under the United States Copyright Law.  [Chrysalis] shall, accordingly, have the sole and exclusive right to copyright such master recordings . . . in our name, as the owner and author thereof* . . . .

Declaration of Rollin A. Ransom ("Ransom Decl.") Ex. A § 4 (emphasis added).  While the language varies from contract to contract, UMG quoted and discussed the relevant provisions in *every one* of the Plaintiffs' contracts, and Plaintiffs have failed to address *any* of that language.

These contractual provisions clearly meet the applicable standard for commencement of the statute of limitations in the Second Circuit, and Plaintiffs' failure to quote, discuss, or parse any of them is both telling and fatal to their claims.  Instead, Plaintiffs attempt to evade the consequences of these provisions in a variety of arguments scattered throughout their brief.  None of these arguments has merit.

### 1.    *The Contracts Do Not Violate 17 U.S.C. § 203(a)(5).*

Plaintiffs first assert that reliance on these provisions would violate § 203(a)(5) of the Copyright Act, which provides that termination may be effected "notwithstanding any agreement to the contrary."  Opp. at 13 (citing 17 U.S.C. § 203(a)(5)).  In support, Plaintiffs rely on two authorities:  the Second Circuit's decision in *Marvel Characters, Inc. v. Simon,* 310 F.3d 280 (2d Cir. 2002), and an article by Professors Nimmer and Menell.  Neither authority supports Plaintiffs' position; on the contrary, the Second Circuit has expressly rejected Plaintiffs'

4

construction of *Simon*, and the cited article actually supports *UMG*'s position.

In *Simon,* the court considered whether a 1969 settlement agreement that was "entered into long after a work's creation," stating that the signatory created the work "as an employee for hire," constituted an "agreement to the contrary" under § 304(c)(5) (which Plaintiffs characterize as comparable to § 203(a)(5)).  *Id.* at 282, 292.  The Second Circuit concluded that it did, on extremely narrow grounds:  "[W]e hold that an agreement made *subsequent* to a work's creation which *retroactively* deems it a 'work made for hire' constitutes an 'agreement to the contrary.'"  *Id.* at 292 (emphasis added).  On its face, *Simon* has no application here, as all of Plaintiffs' contracts were executed *before* the corresponding works were created.

Plaintiffs blithely ignore the limited scope of the *Simon* holding, arguing that it applies with equal force to *prospective* work-made-for-hire agreements (like those here).  However, in *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193 (2d. Cir. 2008) – a case that Plaintiffs cite (but then ignore) – the Second Circuit expressly rejected such reliance on *Simon* as "misplaced." Specifically, the court affirmed the narrow (and inapplicable) holding of *Simon*, stating that it "concludes only that *backward-looking* attempts to recharacterize existing grants of copyright so as to eliminate the right to terminate under section 304(c) are forbidden by section 304(c)(5)."  *Id.* at 203 (emphasis added) (noting that *Simon* involved a settlement agreement that "contractually recharacterized an already created work as a 'work made for hire,'" in an "after-the-fact relabeling of the nature of the work").  *Simon* therefore provides Plaintiff no aid.

The article by Professors Menell and Nimmer is of even less support to Plaintiffs. Plaintiffs cite pages 824 and 825 of the article for the proposition that "an agreement mischaracterizing the copyrighted work so as to avoid a termination right" violates § 203(a)(5), asserting that their contracts "will no doubt fit into [that] category."  Opp. at 14 (citing Peter S. Menell & David Nimmer, *Pooh-Poohing Copyright Law's Inalienable Termination Rights*, 57 J. Copyright Soc'y U.S.A., 799, 824-25 (2010) ("Menell & Nimmer")).  But they ignore that this discussion relates solely – as did *Simon* – to *post hoc* agreements recharacterizing previously-created works.  Menell & Nimmer at 827-28 & n. 160.  Later in the article, Professors Menell

and Nimmer affirm that a *prospective* agreement – *i.e.*, an agreement (like those here) that an as-yet-uncreated work will constitute a work made for hire – does *not* transgress § 203(a)(5) and therefore "will not be subject to termination." *Id.* at 836.[3]  Accordingly, the "authority" Plaintiffs cite actually supports UMG.

>    2.    *"Belt and Suspenders" Language in the Contracts Does Not Prevent Commencement of the Statute of Limitations.*

Plaintiffs next argue that the contracts include alternative assignment or other transfer language, and that this "belt and suspenders" approach undermines the "efficacy of the work for hire language" and the "express assertion of sole authorship or ownership."  Opp. at 18-19.  Not so.  Nothing in the variety of "belt and suspenders" provisions that Plaintiffs quote purports *in any way* to limit the clear and express statements of (1) work-for-hire status and (2) corresponding sole authorship and ownership by predecessors of UMG or its affiliate that Plaintiffs agreed to in the contracts.  As set forth above, these statements readily satisfy the well-established Second Circuit standard for commencement of the statute of limitations.[4]

Indeed, the Second Circuit has rejected an argument similar to that advanced by Plaintiffs here.  In *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013), the parties entered into an agreement that included both an acknowledgement that all of Kirby's works constituted works made for hire, and an assignment of his rights in certain of those works to Marvel.  In later

---

[3] In addition to the rationales provided by Professors Menell and Nimmer, this conclusion follows from the Copyright Act itself.  Under the "second prong" of the "work made for hire" definition, the parties must "expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."  17 U.S.C. § 101.  Having affirmatively required a written instrument to create certain works made for hire, and having *excluded* works made for hire from the termination right, *see* 17 U.S.C. § 203(a), there is no basis to believe that Congress then simultaneously (but indirectly) intended to *allow* a termination right for such works made for hire pursuant to § 203(a)(5); on the contrary, any such reading would be absurd.

[4] Plaintiffs also argue that "repudiation" of Plaintiffs' authorship claims (for purposes of triggering the statute of limitations) required the parties to affirmatively disagree respecting authorship at the time the contracts were signed.  *See* Opp. at 20.  Plaintiffs cite no support for this proposition and there is none.  On the contrary, as the Second Circuit has made clear, such "repudiation" is demonstrated simply by an express assertion of sole authorship or ownership, including "a contract identifying the defendant as the 'sole owner and copyright holder.'"  *Gary Friedrich Enterprises,* 716 F.3d at 317.

litigation, Kirby's heirs (like Plaintiffs here) argued that the alternative assignment language undermined Marvel's claim that the materials were works made for hire, and that they could therefore exercise a putative termination right under § 304 of the Copyright Act.  *Id.* at 143.  The district court granted Marvel summary judgment, and the Second Circuit affirmed.  In rejecting the heirs' assertion that the "belt and suspenders" language undermined the work-made-for-hire argument, the Second Circuit concluded that the "assignments . . . were redundancies insisted upon by Marvel to protect its rights," and "decline[d] to infer from Marvel's suspenders that it had agreed to give Kirby its belt."  *Id.*  This Court should reach the same conclusion.

> 3.    *Plaintiffs' Reliance on Out-Of-District Authority Is Unavailing.*

Plaintiffs berate UMG for failing to cite statute of limitations cases involving termination rights, Opp. at 20, but then the *only* such case that Plaintiffs cite (other than the inapposite discussion in *Horror Inc.*, *see supra* n. 1) is a district court case from the Ninth Circuit, *Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1136 (C.D. Cal. 2008) ("*Siegel I*").  Setting aside that it is not controlling, *Siegel I* is of no aid to Plaintiffs.  First, the 1938 contract at issue in *Siegel I* was an assignment agreement that did not include work made for hire language.  *Id.* at 1107, 1114 n.3.  Accordingly, there was no occasion for the court to consider whether such language triggers the statute of limitations.  Second, and in any event, even the *Siegel I* court recognized the possibility that a date "other than the termination effective date itself can serve as the accrual date in a case involving the right to termination of a grant," but concluded that it "need not resolve this question" given the particular factual record before it.  *Siegel I*, 542 F. Supp. 2d at 1134 n.7; *see also Scorpio Music (Black Scorpio) S.A. v. Willis*, 2013 WL 790940, at *2-5 (S.D. Cal. Mar. 4, 2013) (distinguishing *Siegel I* and holding that statute of limitations on § 203 termination claim brought by putative author commences upon repudiation of claim of authorship).  Accordingly, *Siegel I* is both factually and legally inapposite.

The case that *is* most applicable – and that is actually from within the Second Circuit, applying Second Circuit law – is *Aday v. Sony Music Entm't, Inc.*, 1997 WL 598410 (S.D.N.Y. Sept. 25, 1997).  As in *Aday*, Plaintiffs signed contracts stating that the sound recordings they

were creating were works made for hire.  As in *Aday*, Plaintiffs' "role[s] in the creation of the recordings and the disputed 'work for hire' provisions of the contracts were never uncertain." *Id.* at *5.  As in *Aday*, Plaintiffs "had reason to know [upon execution] about any of the problems with the 'work for hire' provision they now contend violates the Copyright Act." *Id.* (no subsequent action "affect[ed] when plaintiffs knew or should have known that the 'work for hire' provision was invalid").  As in *Aday*, Plaintiffs waited decades to bring claims premised on the alleged invalidity of the work for hire provision in their contracts.  And as in *Aday*, Plaintiffs' claims are barred by the statute of limitations.[5]

Plaintiffs' only substantive response to *Aday* is their assertion that it was "functionally overruled" by the Second Circuit in *Simon*.  This argument fails on multiple levels.  It fails because, as discussed above, Plaintiffs' reading of *Simon* is unsupported by the opinion itself and has been rejected by the Second Circuit.  *See supra* § I.B.1.  It fails because *Simon* makes no mention of *Aday* or the reasoning in that case.  And more broadly, it fails because *Simon* did not consider *any* issue relating to the Copyright Act's statute of limitations.  A case is not "functionally overruled" when the later case does not even address the issue at hand.

Plaintiffs also appear to suggest that the application of the Second Circuit's accrual rule, as articulated and applied in multiple cases, would somehow be unfair in the termination context. *See, e.g.*, Opp. at 23 (arguing that application of the Second Circuit's accrual rule, as articulated in *Aday*, would fail to accommodate the "federal policy that authors need protection").  More specifically, Plaintiffs suggest that they could not have known decades ago that the "work for

---

[5] The decision in *Aday* is consistent with the decisions from other circuits cited in the Motion. *See* Mot. at 10-11 (citing *Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, 819 F.3d 992, 995 (7th Cir. 2016); *Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013, 1016 (10th Cir. 2013). Plaintiffs dismiss these cases as co-ownership cases, and assert that here, "they would have had no reason to question the *ownership* of the sound recordings" prior to termination.  Opp. at 22. But that argument misses the point.  Whether the issue is ownership or authorship, the point is that the claim accrues, and the statute of limitations begins to run, as soon as a reasonably diligent plaintiff has reason to know of his or her claim.  And where the issue is *authorship* (as in the present case), that claim accrues when a plaintiff is faced with an express assertion by another of sole authorship and ownership.  *See supra* § I.B; *Merchant*, 92 F.3d at 56 ("A co-author knows that he or she jointly created a work from the moment of its creation.").

hire" language in their agreements "might be construed at some future time by the record label…as destroying his termination right." Opp. at 24. But it is not UMG's "construction" of the "work for hire" language that "destroys" a termination right – it is the express exclusion of works made for hire from the scope of § 203 that precludes any termination right for Plaintiffs. *See Kirby*, 726 F.3d at 137 ("Where a work is 'made for hire,' copyright law deems the *employer* to be the 'author' for purposes of copyright ownership.… The hired party, although the 'author' in the colloquial sense, therefore never owned the copyrights … It stands to reason, then, that there are no rights the assignment of which his or her heirs may now terminate.") (emphasis in original). And the existence of both § 203 and the exclusion of works made for hire from its scope is not a recent development – Plaintiffs cannot dispute that that provision (and its exclusion) was included when the current Copyright Act was first adopted in 1976.[6]

 As another judge in this District noted, in an opinion often cited by the Second Circuit:

> Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose…. We should not trivialize the statute of limitations by promiscuous application of the tolling doctrines. This is especially true in the area of copyright, where certainty and repose are essential to the functioning of the copyright market.

*Netzer*, 963 F. Supp. at 1318 (ellipses in original) (internal quotations and citations omitted). This observation applies with particular force here. Plaintiffs' claims are barred by the statute of limitations and should be dismissed.

## II.  <u>WAITE AND ELY ARE NOT GRANTORS</u>

 Waite and Ely attempt to sidestep UMG's argument that they are not grantors within the meaning of § 203 by again debating whether they were employees for hire. *See* Opp. at 25-28.

---

[6] These facts readily distinguish the "policy" arguments that Plaintiffs so fervently advance, particularly as articulated in *Simon*, upon which Plaintiffs repeatedly (but mistakenly) rely. Unlike here, the agreement at issue in *Simon* was executed in *1969*, years before adoption of the current Copyright Act and years before the *creation* of a termination right. *See supra* § I.B.1; *Simon*, 310 F.3d at 282. Also irrelevant is any claim that Plaintiffs lacked actual knowledge of the operation of § 203 when the contracts were executed – for statute of limitations periods, only the facts and circumstances need be known, not any legal rights that may flow from those facts or circumstances. *See United States v. Kubrick*, 444 U.S. 111, 123, 100 S. Ct. 352, 360 (1979).

As with their arguments respecting the statute of limitations, this debate is irrelevant.  The plain language of § 203 states that only grants "executed by the author" are terminable.  17 U.S.C. § 203(a).  Plaintiffs do not dispute that third-party companies executed all of the agreements pertaining to Waite's works and one of the agreements regarding Ely's works.  *See* Opp. at 25-28; *see also* Ransom Decl. Exs. A-E; Mot. at 22-23.  This is the beginning and the end of the inquiry.  Because Waite and Ely did not execute the contracts that they are now purporting to terminate, they have no right to terminate those agreements or any grant contained in them.

Recognizing this fatal flaw, Waite and Ely attempt to diminish the role of the companies that *did* execute the contracts, asserting that "the loan-out strategy was merely a tax-planning device," Opp. at 26, and characterizing use of production companies as a "common practice at the time," *id.* at 25 n.10.  "Such [a] recharacterization," however, "at the behest of the one creating a structure [must be] viewed with much greater skepticism, especially if [UMG] would be disadvantaged thereby."  *Sharkey v. Ultramar Energy Ltd.*, 867 F. Supp. 258, 259 (S.D.N.Y. 1994) (citation omitted), *rev'd on other grounds*, 70 F.3d 226 (2d Cir. 1995).  In all events, Waite and Ely's belated claim that the corporate form was merely a tax avoidance strategy does not alter the fact that the companies, and not Waite and Ely individually, executed the contracts.

Shifting gears, Waite and Ely claim that these third-party companies obtained the copyrights by way of *some other*, heretofore undocumented, grant from Waite and Ely, and that Waite and Ely are therefore the initial author-grantors entitled to exercise termination rights under § 203.  *See* Opp. at 26 ("The third-party companies are simply grantees of the sound recording copyrights of Waite and Ely; UMG's predecessor labels (such as MCA, in the case of Ely) are grantees of the rights of the third-party companies, and UMG is the ultimate grantee of the predecessor labels.").  However, this newfound claim is wholly unsupported by the FAC, which references only grants made to predecessors of UMG or its affiliate, and not some separate grants between Waite and Ely and other companies.  *See* FAC ¶¶ 30, 42.  Moreover, any such separate grant would have to have been in writing, 17 U.S.C. § 204(a), and Waite and Ely surely have not alleged the existence of a *written* transfer of rights from themselves to these third-party

10

companies (which in turn contracted with predecessors of UMG or its affiliate).  Waite and Ely cannot defend their FAC with reference to allegations that are not there.

In short, there is no dispute that third-party companies executed the relevant recording agreements referenced in the FAC.  Because any grants contained therein were not executed by Waite or Ely, as required by § 203, the Court should dismiss Waite's claims in their entirety and Ely's claims as to works that are subject to the 1979 Agreement.

## III.   PLAINTIFFS' TERMINATION NOTICES ARE FATALLY DEFICIENT

Plaintiffs' assertion that their termination notices provide the required information and/or that any error is "harmless" ignores the language of the applicable regulation, the language of the termination notices, and the arguments that Plaintiffs themselves make elsewhere in their brief.

*First,* Plaintiffs suggest that the only standard is whether the notices reasonably identify the putative grants at issue.  *See* Opp. at 30-32.  While this is *one* of the elements required by the governing regulation, it is not the only requirement.  Rather, the regulation specifically lists other information that termination notices "must include," and that list includes the "date of execution of the grant."  *See* 37 C.F.R. § 201.10(b)(2)(iii).  This requirement is crucial to understanding whether a grant is even terminable pursuant to Section 203, given that the statute applies only to grants executed on or after January 1, 1978 (an issue that impacts at least one of the agreements at issue here, *see infra* § IV).  *See* 17 U.S.C. § 203; see also Mot. at 20.  Plaintiffs do not dispute, because they cannot, that their notices do not contain this required and critical information.[7]

*Second*, Plaintiffs do not even attempt to account for (much less defend) the information in the notices that is either inaccurate or missing.  For example, Waite's termination notice purports to terminate the "grant dated in or about 1981 between the members of the recording group called The Babys and Chrysalis Records."  FAC at Ex. A.  But as UMG noted, and as

---

[7] Plaintiffs also assert that the Copyright Office recorded the notices, *see* Opp. at 31, as though that establishes their adequacy.  This claim, too, ignores the operative regulation, which states that "[t]he fact that the Office has recorded a notice is not a determination by the Office of the notice's validity or legal effect."  37 C.F.R. § 201.10(f)(4); *see also id.* (recordation is without prejudice to any claim that the requirements for effectuating termination have not been met).

Plaintiffs do not dispute, there is no agreement with "the Babys" covering any Waite sound recordings subject to the § 203 notice, and Waite has not advanced a claim as to recordings featuring that group in this action.  *See* Mot. at 18.  Indeed, UMG's Motion identified errors and omissions as to literally *every one* of the Plaintiffs' notices, *see* Mot. at 18-19, and Plaintiffs do not dispute any of them.

*Third*, in support of their contention that their notices were adequate and that any errors or omissions were "harmless," Plaintiffs note that UMG attached various agreements to its Motion.  Opp. at 2 (asserting that UMG "attach[ed] to its Motion the very agreements covering the grants at issue") (emphasis omitted); *see also id.* at 32 (same).  However, this argument ignores the fact Plaintiffs themselves have asserted elsewhere in their brief that there are still *other* grants – not yet identified by UMG (or with any specificity by Plaintiffs) – that are within the scope of their putative termination notices.  *See* Opp. at 26; *supra* at § II.  Plaintiffs cannot on the one hand argue that UMG correctly identified the putative grants at issue by attaching agreements to its Motion, and on the other hand argue that some other unidentified putative grants are actually determinative of UMG's rights to the works at issue.  As Plaintiffs now argue that the agreements that UMG provided to the Court do not contain the universe of putative grants at issue, then the notices certainly do not reasonably identify those alleged grants.

Also unavailing is Plaintiffs' effort to displace controlling Second Circuit precedent with the decisions of two district courts outside of this District.  Plaintiffs attempt to diminish *Burroughs v. Metro-Goldwyn-Meyer*, *Inc.,* 683 F.2d 610 (2d Cir. 1982), as inapplicable to the facts here, but its holding is directly relevant.  In *Burroughs*, the Second Circuit held that a termination notice was insufficient, and thus ineffective, because it omitted critical information expressly required by the governing regulation.  *See* 683 F.2d at 622 (citing 37 C.F.R. § 201.10(b)(1)(ii)).  As set forth above, that is exactly what Plaintiffs have done here.

Moreover, the out-of-District cases upon which Plaintiffs rely are distinguishable.  In *Horror Inc.*, the court held that a notice was valid as to a screenplay treatment that preceded the specifically-identified screenplay, because the notice stated that it applied to "each and every

12

prior draft or iteration of the Work." *Horror Inc.*, 335 F. Supp. 3d at 319-20.  The court reasoned that "[n]o party . . . could reasonably have believed that [the author] sought to terminate only the copyrights in the completed screenplays, and not the preliminary treatments." *Id.* at 320.  That is not the case here, where multiple, distinct albums are at issue.

Plaintiffs' reliance on *Siegel v. Warner Bros. Entm't Inc.*, 690 F. Supp. 2d 1048 (C.D. Cal. 2009) ("*Siegel II*") fares no better, as the distinguishable facts of that case were dispositive to the court's finding of harmless error.  In *Siegel II*, plaintiffs' termination notices "spann[ed] some 546 pages and concern[ed] literally tens of thousands of . . . works published from 1938 to 1997." *Id.* at 1050.  Taking into account this massive detail, the court found the error in failing to specifically identify a "miniscule number of works" was harmless given (among other things) "the nature of the property at issue (an iconic comic book superhero character exploited continuously in every form of media imaginable for the past seventy years) [and] the amount of effort [the author's] heirs took in carefully cataloging and identifying the vast universe of works potentially at issue." *Id.* at 1051 (citation omitted).  Here, Plaintiffs' notices were two-page letters, covering only a small handful of works, that were replete with errors and omissions.  *See* FAC Exs. A, C, E, G, I.  The works at issue are nowhere near the "iconic" status of Superman or identified from a "vast universe of works" such as the Superman collection.  When viewed in this context, the omitted and incorrect information is not harmless.  *See Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 491 F. Supp. 1320, 1326 (S.D.N.Y. 1980) (holding that failing to include five titles was not harmless error), *aff'd*, 636 F.2d 1200 (2d Cir. 1980).  The termination notices should be invalidated and the FAC dismissed for this reason as well.

## IV. GAP GRANTS ARE NOT TERMINABLE PURSUANT TO 17 U.S.C. § 203

Finally, Plaintiffs argue that the Court should ignore the plain language of the statute – *i.e.*, that Section 203 allows for termination only of grants "executed . . . on or after January 1, 1978," 17 U.S.C. § 203(a) – and permit termination of a putative grant based on when the work at issue was *created* rather than when the putative grant was signed.  *See* Opp. at 29-30. Although Plaintiffs summarily assert that the Court should defer to the "position" taken by the

Copyright Office in this regard, *see* Opp. at 29 (citing *WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275 (2d Cir. 2012)), Plaintiffs disregard the two-step process for ascertaining whether the Copyright Office's interpretation is *entitled* to deference. *See WPIX,* 691 F.3d at 279 (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984)).

At step one, a court must begin with the statutory text. *Chevron*, 467 U.S. at 842-843. If the language is clear, then that is the end of the inquiry, and courts "must give effect to the unambiguously expressed intent of Congress." *Id.*; *see also Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) (holding that the inquiry "begin[s] and end[s] . . . with the text, giving each word its 'ordinary, contemporary, common meaning'") (citation omitted); *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62, 122 S. Ct. 941, 956 (2002) ("[J]udicial inquiry is complete" "[w]hen the words of the statute are unambiguous."). Only if the court determines that the language is unclear does it then proceed to "step two," and consider whether and to what extent the Copyright Office's interpretation is entitled to deference, relying on the factors identified in Plaintiffs' opposition. *See WPIX*, 691 F.3d at 283.

Plaintiffs simply ignore step one of the inquiry – they provide no analysis of the statutory text, and make no argument that the term "executed" is ambiguous. UMG's Motion should be granted for that reason alone. In any event, such an argument would be unavailing – as set forth in the Motion, the ordinary and natural meaning of the term "executed" is "signed," a meaning that is confirmed by both dictionaries, case law, and legislative history. Mot. at 24-25. Plaintiffs' silence on the issue concedes the point, and necessarily ends the inquiry.

But even if the Court were to proceed to step two, the outcome is the same – rather than warranting deference, the Copyright Office has expressly stated that it intends to defer to *courts* and *Congress* as to the proper interpretation of the term "executed," and thus proper resolution of the so-called "gap grant" issue. *See* Mot. at 27 (citing ANALYSIS OF GAP GRANTS UNDER THE TERMINATION PROVISIONS OF TITLE 17 ("ANALYSIS OF GAP GRANTS") at iii, U.S. COPYRIGHT

OFFICE (Dec. 7, 2010), *available at* https://www.copyright.gov/reports/gap-grant-analysis.pdf).[8]
Moreover, as discussed at length in the Motion, and not addressed (much less controverted) by
Plaintiffs, there is good reason to call into question the reasonableness of the Copyright Office's
treatment of the issue, including the uniform weight of authority to the contrary and the
Copyright Office's own inconsistency respecting the issue.  *See* Mot. at 25-27.  As with
Plaintiffs' failure to address step one of the analysis, their failure to provide any meaningful
response as to the reasonableness of the Copyright Office's approach dooms their claim.

But even if so-called "gap grants" qualify for termination under § 203, Ely would still
have to allege that he "created" the works that are the subject of his 1976 agreement with MCA
after January 1, 1978.  *See* Mot. at 24, 27.  He has not done so.  Instead, Ely merely alleges that
MCA "released" the album that is apparently the subject of that agreement – *Honky Tonk
Masquerade* – in February 1978, *id.*, and that the "[p]ublication [d]ate" of certain related works
was in 1978, *id.* at Ex. C.  These are not allegations that he *created* those works after January 1,
1978, and Ely's failure in this regard precludes his putative termination claim respecting the
1976 MCA agreement.  That claim should therefore be dismissed.

## V.   PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS MUST FAIL

Plaintiffs agree that their copyright infringement claims are based entirely on the
proposition that their termination notices are proper and valid.  *See* Opp. at 33.  Because
Plaintiffs' alleged termination notices are invalid and claims based on their purported authorship
rights are time-barred, their infringement claims also fail as a matter of law.

Dated: New York, New York  
       August 28, 2019

       SIDLEY AUSTIN LLP

       By:*/s/ Steven M. Bierman*  
          Steven M. Bierman  
          sbierman@sidley.com

---

[8] Plaintiffs rely on the fact that the Copyright Office accepts termination notices of gap grants for
recordation.  *See* Opp. at 29.  As noted above, however, the Copyright Office has made clear that
recordation "is not a determination by the Office of the notice's validity or legal effect."  37
C.F.R. § 201.10(f)(4); *see also* ANALYSIS OF GAP GRANTS at iii ("[T]he fact that the Office has
recorded the notice does not mean that it is otherwise sufficient under the law.").

Melanie Berdecia
mberdecia@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Rollin A. Ransom
rransom@sidley.com
Lisa M. Gilford
lgilford@sidley.com
Adriane Peralta
adriane.peralta@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Richard S. Mandel
rsm@cll.com
Thomas Kjellberg
txk@cll.com
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036-1525
Telephone:  (212) 790-9200
Facsimile:  (212) 575-0671

*Attorneys for Defendant UMG Recordings, Inc.*