**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN WAITE, an individual; JOE ELY, an individual; KASIM SULTON, an individual; SUSAN STRAW HARRIS p/k/a SYD STRAW, an individual; LEONARD GRAVES PHILLIPS, an individual, STAN SOBOL a/k/a STAN LEE, an individual, and ISRAEL CABALLERO, an individual; and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>     v.<br><br>UMG RECORDINGS, INC., a Delaware corporation, and DOES 1 through 10,<br>                      Defendants. | Civil Action No. 1:19-cv-01091-LAK |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND....................................................................................3

III.    APPLICABLE LEGAL STANDARD ....................................................................6

IV.     THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO FILE THE SECOND
        AMENDED COMPLAINT. ....................................................................................8

        A.      PLAINTIFFS WAITE AND ELY HAVE VIABLE CLAIMS BASED ON
                THEIR DIRECT, PERSONAL GRANTS. ..............................................9

        B.      PLAINTIFFS ALLEGE ADDITIONAL FACTS SUFFICIENT TO
                WARRANT PROMPT DECLARATORY RELIEF...........................11

V.      CONCLUSION......................................................................................................17

154498.00601/123211579v.4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barrows v. Forest Laboratories, Inc.*,
   742 F.2d 54 (2d Cir. 1984) ...................................................................................... 8

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993) .................................................................................... 8

*Century of Progress Prods. v. Vivendi S.A.*,
   No. CV 16-7733 DMG (ASX), 2018 WL 4191340 (C.D. Cal. Aug. 28, 2018).......... 16

*Green v. Wolf Corp.*,
   50 F.R.D. 220 (S.D.N.Y. 1970) ................................................................................ 7

*Johl v. Johl*,
   788 F.2d 75 (2d Cir. 1986) ...................................................................................... 8

*Justice v. Ice King Enterprises LLC*,
   No. 14-CV-01767-WHO, 2015 WL 576693 (N.D. Cal. Feb. 10, 2015) .................... 14

*In re Martin-Trigona*,
   737 F.2d 1254 (2d Cir. 1984) .................................................................................. 8

*Marvel Worldwide, Inc. v. Kirby*,
   756 F. Supp. 2d 461 (S.D.N.Y. 2010), *aff'd in part, vacated in part, on other*
   *grounds sub nom. Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) .......... 13, 14, 15

*Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*,
   392 F.2d 380 (2d Cir. 1968) .................................................................................... 7

*Museum of Modern Art v. Schoeps*,
   549 F. Supp. 2d 543 (S.D.N.Y. 2008) ..................................................................... 15

*Richardson Greenshields Secs., Inc. v. Lau*,
   825 F.2d 647 (2d Cir. 1987) .................................................................................. 7, 8

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Bldg. 1 Dev. Fund Co.*,
   608 F.2d 28 (2d Cir.1979) ....................................................................................... 7

*Santiago v. Steinhart*,
   No. 89 Civ. 2069 (RPP), 1993 WL 410402 (S.D.N.Y. Oct. 13, 1993) ...................... 8

*State Teachers Retirement Bd. v. Flour Corp.*,
   654 F.2d 843 (2d Cir. 1981) .................................................................................... 7

154498.00601/123211579v.4

*Zeigan v. Blue Cross and Blue Shield*,
    607 F. Supp. 1434 (S.D.N.Y. 1985) ................................................................................. 7

**Statutes**

17 U.S.C. § 203(a) ....................................................................................................................... 10

17 U.S.C. § 502............................................................................................................................. 17

Plaintiffs John Waite, Joe Ely, Kasim Sulton, Susan Straw Harris, Leonard Graves Phillips, Stan Sobol, and Israel Caballero, on behalf of themselves and all others similarly situated ("Plaintiffs"), submit this Memorandum in Support of their Motion for Leave to File Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) and Fed. R. Civ. P. 21 (the "Motion").

## I.     INTRODUCTION

Plaintiffs seek leave of Court to file their proposed Second Amended Complaint ("SAC") making the following amendments to:

(1) join three additional named Plaintiffs (Steve Wynn, Dennis Mehaffey, and David Pellish, who performed together as a band called The Dream Syndicate) to assert copyright infringement claims against Defendant UMG Recordings, Inc. ("UMG"), as successor-in-interest to A&M Records, Inc., arising from their March 1, 2016 Notice of Termination for the work *Medicine Show*, which had an effective date of termination on May 8, 2019;

(2) join Capitol Records, LLC ("Capitol"), an affiliate of Defendant UMG within the Universal Music Group, as a defendant in this action based upon discovery and UMG's counsel's representations that Capitol is the proper party with respect to certain Plaintiffs' claims;

(3) assert copyright infringement claims with respect to the sound recordings previously identified in the First Amended Complaint for which the effective dates of termination have now occurred given the passage of time;

(4) streamline, modify and refine Plaintiffs' class action allegations to make clear that they are seeking to represent alleged Classes A and B, as more fully set forth in the SAC;

(5) clarify that Plaintiffs John Waite and Joe Ely continue to assert claims to the extent that the grants were made directly by them as authors and not by third parties;[1] and

(6) make further factual allegations regarding the importance, efficacy, utility and necessity of prompt declaratory relief on behalf of Plaintiff Straw and the putative class of recording artists who have sent UMG termination notices but for whom the effective dates of termination have not yet occurred and likely will not occur prior to class certification proceedings or trial of this action.

---

[1]     Plaintiffs also make similar additional clarifying amendments on behalf of other Plaintiffs. They also correct Ely's full legal name.

The first four categories of amendments reflect the passage of time in this litigation and the benefit of certain discovery. The factual amendments and clarifications in categories five and six are related to the Court's March 31, 2020 Memorandum Opinion and Order (the "March 31 Order"). Plaintiffs promptly advised UMG's counsel of their intent to amend and UMG's counsel indicated that they believed that Capitol should be joined as a defendant. Plaintiffs provided UMG's counsel with the proposed SAC (together with a redline to show the amendments) on April 21, 2020, approximately three weeks after the Court issued its March 31 Order.

On April 27, 2020, after reviewing the SAC, UMG refused to consent to the SAC's filing. In doing so, UMG asserted that Plaintiffs were seeking to resurrect certain claims dismissed by the Court with respect to Plaintiffs Waite and Ely. UMG also argued that it believed Plaintiffs' amendments were insufficient to address the Court's concerns with respect to its discretionary dismissal of Plaintiffs' request for declaratory relief.

Plaintiffs' counsel responded that Plaintiffs expressly were not seeking to resurrect the claims based on grants made by third parties. And, further, Plaintiffs believe the Court should evaluate the sufficiency of the allegations made with respect to the declaratory relief claim.[2]

As detailed below, all amendments are proper and should be allowed.[3] Focusing on the areas of disagreement, Plaintiffs are not seeking to resurrect Waite and Ely's "claims based on grants

---

[2]     Defendant UMG then chose to file an Answer to Plaintiffs' First Amended Complaint on April 30, 2020 (ECF No. 70) with full awareness that (a) Plaintiffs intended to seek leave to file the proposed SAC; and (b) notwithstanding Plaintiffs' counsel's previously expressed willingness to stipulate to the deferral of the answer deadline pending the Court's decision on the proposed SAC.
[3]     For the Court's convenience and reference, Plaintiffs have attached a "redline" comparison copy of the proposed Second Amended Complaint with the First Amended Complaint as **Plaintiffs' Exhibit 1** and a "clean" copy of the proposed Second Amended Complaint as **Plaintiffs' Exhibit 2**. These are identical to the copies provided to UMG's counsel on April 21, 2020, except Plaintiffs corrected a typographical error in the spelling of Plaintiff Mehaffey's name and two other typographical errors in the caption.

transferred by third parties."  ECF No. 68 at 24.  Plaintiffs make clear in the SAC that they continue to assert claims based on the *direct, personal grants* made by Plaintiffs Waite and Ely to Defendants, *not* based on grants made by third parties.  Plaintiffs' clarifying amendments in this regard elaborate on their prior arguments and are factually detailed with reference to the documents that UMG itself put into the record in this case.  The Court's March 31 Order was carefully worded to limit the scope of any dismissal and did not dismiss all claims asserted on behalf of Waite and Ely as plaintiffs.

With respect to the Court's *sua sponte* decision to exercise its discretion to deny Plaintiffs' request for declaratory relief, Plaintiffs were not aware of the Court's concerns prior to its March 31 Order.  Nor did Plaintiffs perceive any need to address those concerns given that UMG did not challenge the sufficiency of the declaratory relief claim.  Defendant UMG did not raise any issue or argument for dismissal with respect to the declaratory relief claim.  During the February 2020 oral argument on UMG's motion to dismiss, no issue arose or was raised by UMG or the Court with respect to the declaratory relief claim.  In the proposed SAC and in light of the Court's concerns, Plaintiffs supply the Court with additional, factual allegations to consider as to the importance, efficacy, utility and necessity of the declaratory relief.  The Court – not UMG – is best positioned to evaluate whether Plaintiffs' amended allegations sufficiently address the Court's concerns.

## II.      FACTUAL BACKGROUND

On February 5, 2019, Plaintiffs John Waite and Joe Ely filed their two-count, putative class action complaint against Defendant UMG.  *See* ECF No. 1.  Plaintiffs Waite and Ely asserted claims for copyright infringement and declaratory relief.  In response, UMG filed a motion to dismiss.  *See* ECF No. 38.  On June 5, 2019, Plaintiffs filed their First Amended Complaint adding Plaintiffs Kasim Sulton, Susan Straw Harris, Leonard Graves Phillips, Stan Sobol and Israel Caballero, as named plaintiffs.  ECF No. 45.  UMG responded on June 26, 2019 by filing a motion to dismiss as to the First Amended Complaint.  ECF No. 50.  The Court held oral argument on February 3, 2020.  *See* Dkt.

3

02/03/2020.  On March 31, 2020, this Court issued its Memorandum Opinion and Order granting in part and denying in part UMG's motion to dismiss.  *See* ECF No. 68.

The Court's March 31 Order granted UMG's motion to dismiss solely as to: "(1) plaintiffs' request for declaratory relief; (2) Waite and Ely's claims based on grants transferred by third parties; and (3) Ely's claim related to his 1976 agreement for sound recordings that were created prior to January 1, 1978."  ECF No. 68 at 24.  The Court denied UMG's motion to dismiss "in all other respects."  *Id.*

The current scheduling order, as amended, provides that expert disclosures shall be made by June 1, 2020, that discovery shall close on July 1, 2020, and that trial shall begin on November 9, 2020. ECF Nos. 65 & 72.  Through their counsel, the parties have worked cooperatively to resolve discovery disagreements and to work through issues arising due to the COVID-19 pandemic and the associated "shutdown" or "shelter in place" orders arising in March 2020.

The proposed amendments in the SAC fall into six categories.

First, the SAC joins three additional named Plaintiffs (Steve Wynn, Dennis Mehaffey p/k/a Dennis Duck, and David Pellish p/k/a David Provost, who performed together as a band called The Dream Syndicate) to assert copyright infringement claims against Defendant UMG arising from their March 1, 2016 Notice of Termination for the work *Medicine Show*, which had an effective date of termination on May 8, 2019.  Exs. 1-2, SAC ¶¶ 20-23, 63, 276-299.  The new Plaintiffs make the same copyright infringement claims as Plaintiffs Waite, Ely, Sulton and The Dickies.

Second, the SAC joins Capitol Records, LLC ("Capitol"), an affiliate of Defendant UMG within the Universal Music Group, as a defendant in this action based upon discovery and UMG's counsel's representations that Capitol is the proper party with respect to certain Plaintiffs' claims.  Exs. 1-2, SAC ¶¶29-40.  The joinder seeks to address Defendant UMG's contention that it does not own or control

4

Capitol, even though both UMG and Capitol are among the record labels included in the Universal Music Group, UMG's website directs all notices to UMG's offices and UMG has possession, access to and/or control of Capitol's documents, such as the termination notices and the underlying recording agreements.  Exs. 1-2, ¶¶25-27, 29-40, 42; *See* ECF No. 39 (UMG exhibits).  Defendant UMG has objected to discovery and refused to produce certain documents or information even though UMG admitted having possession, custody and control of relevant Capitol documents and/or information.  Plaintiffs amendments seek to remove this contrived obstacle to proceed with factual discovery.

Third, the SAC asserts copyright infringement claims with respect to the works previously identified in the First Amended Complaint for which the effective dates of termination have now occurred.  Exs. 1-2, SAC ¶¶ 115-116, 159-164, 265-275 (*No Breaks* and *Dawn of the Dickies*).[4] Defendants can claim no surprise or unfairness as to these works because they have been on notice of these claims since the filing of the original complaint.

Fourth, the SAC streamlines, modifies and refines Plaintiffs' class action allegations to make clear that they are seeking to represent alleged Classes A and B, as more fully set forth in the SAC. Exs. 1-2, SAC ¶¶47-49.  Specifically, "Class A" consists of recording artists who sent UMG termination notices with effective termination dates occurring on or after January 1, 2013 and prior to the date of class certification.  "Class B" consists of recording artists who sent UMG termination notices with effective termination dates occurring on or after the date of class certification but no later than December 31, 2030.  These amendments provide greater specificity with respect to the classes that Plaintiffs seek to represent.  They are respective subsets of the class alleged in the original complaint and First Amended Complaint.

---

[4]    Plaintiffs also make clear that Plaintiff Waite asserts a copyright infringement claim for any commercial exploitation by Defendants of *Mask of Smiles* on or after July 27, 2020, the effective date of termination as to that work.  Exs. 1-2, SAC ¶¶ 163-165.

Fifth, the SAC clarifies that Plaintiffs Waite and Ely continue to assert claims to the extent that the grants were made *directly* by them as authors and *not* by third parties. Exs. 1-2, SAC ¶¶ 64 & n.2, 65-176; 177 & n.4, 178-226.  Plaintiffs Waite and Ely previously explained that UMG had obtained direct grants from these (and other) recording artists. ECF No. 56 at 24-25 (brief at pp. 18-19).  UMG cannot claim surprise with respect to these allegations; nor can UMG deny that the grants were made directly to UMG, Capitol and/or their predecessors-in-interest. *See* Exs. 1-2, SAC ¶¶ 108-114, 135-136, 139-142, 173, 205-208.  And, the Court was very clear in its March 31 Order that it only dismissed Waite and Ely "claims based on grants transferred by third parties."  ECF No. 68 at 24.  Indeed, the SAC makes clear that Defendants' artifice of so-called "works made for hire" was ineffective because of the absence of any bona fide employment relationship.  Exs. 1-2, SAC ¶¶ 108-113, 136-140, 194-199, 202-207.

Sixth, the SAC makes specific additional allegations regarding the importance, efficacy, utility and necessity of prompt declaratory relief on behalf of Plaintiff Straw and the putative class of recording artists who have sent termination notices to UMG but for whom the effective dates of termination have not yet occurred and likely will not occur prior to class certification proceedings or trial of this action.  Exs. 1-2, SAC ¶¶64-176, 177-226 and 331-334.

### III.    APPLICABLE LEGAL STANDARD

The standard for grant of leave to amend a pleading is a liberal one.  Fed. R. Civ. P. 15(a)(2) allows amendment of a pleading before trial with opposing party's written consent or with the Court's leave.  When an opposing party refuses to consent, leave to amend should be "freely given when justice so requires" and the court should grant a motion to amend, unless there is "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Retirement Bd. v. Flour Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).  And, importantly, the

6

burden of proving the applicability of any of these exceptions falls on the party opposing the amendment, not the movant.  *Id.*[5]

The Court's review for futility of an amendment is governed by the same standards as a Fed. R. Civ. P. 12(b)(6) motion, including the acceptance of the factual allegations as true and the admonition that the court should construe any factual disputes in the movant's favor.  *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Bldg. 1 Dev. Fund Co., 608 F.2d 28, 42 (2d Cir.1979).*

Delay alone is an insufficient basis for denying a request for leave to amend and courts in the Second Circuit have allowed amendments even where the alleged delay was substantially greater.  *See Richardson Greenshields Secs., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir. 1987) (citing *State Teachers Retirement Bd.,* 654 F.2d at 856 (allowing amendment three years after the original complaint filing); *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.,* 392 F.2d 380, 383 (2d Cir. 1968) (allowing amendment three years after the original complaint filing and a notice of trial readiness); *Zeigan v. Blue Cross and Blue Shield,* 607 F. Supp. 1434, 1438 (S.D.N.Y. 1985) (allowing amendment three years after the original complaint filing); *Green v. Wolf Corp.,* 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (allowing amendment four-year after the original complaint filing).  The Second Circuit requires "undue delay" and the liberal timing standard has been permitted even when the amending party arguably could have amended earlier.  *See Middle Atl. Utils. Co.,* 392 F.2d at 385 (allowing submission of claims based upon facts plaintiff knew two years prior to filing the complaint); *Green,* 50 F.R.D. at 223 (allowing submission of claims based upon facts known at the time of the original complaint filing).  *See also Santiago v. Steinhart,* No. 89 Civ. 2069 (RPP), 1993 WL 410402 at *1 (S.D.N.Y. Oct. 13, 1993) (finding no undue delay or bad faith despite 4-year delay in plaintiff's clarification of claim).

---

[5]      Joinder of an additional party, such as Capitol, is governed by Fed. R. Civ. P. 21, which provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Capitol is an affiliate of UMG and part of the Universal Music Group.

Bad faith in this context is limited to circumstances where there is a demonstrable history of frivolous, vexatious litigation or a failure to comply with sanctions.  *See In re Martin-Trigona*, 737 F.2d 1254, 1261-62 (2d Cir. 1984) (discussing frivolous, vexatious litigation), *Johl v. Johl*, 788 F.2d 75 (2d Cir. 1986) (discussing failure to comply with sanctions) and *Richardson Greenshields Secs., Inc.,* 825 F.2d at 652 (stating "a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure").

To demonstrate unfair prejudice the opponent must not only show that the amendment involves a new claim, but also that the amendment would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay resolution of the dispute; or (iii) prevent a party from bringing a timely action in another jurisdiction.  *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993).  Unfair prejudice does not exist when discovery remains open and there is ample time prior to trial.  *See Richardson Greenshields Secs., Inc.,* 825 at 653-654 (reversing a trial court's decision to deny a motion for leave to amend made at a pre-trial conference, six months prior to trial), *Ansam Assocs., Inc. v. Cola Petroleum*, Ltd., 760 F.2d 442 (2d Cir. 1985) (finding amendment would require the reopening of discovery), and *Barrows v. Forest Laboratories, Inc*., 742 F.2d 54 (2d Cir. 1984) (same).

## IV.     THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO FILE THE SECOND AMENDED COMPLAINT.

Applying these legal standards here, justice requires that the Court grant Plaintiffs' Motion and permit them to file the SAC.  There is no undue delay, no bad faith and no history of vexatious conduct.  Nor is there any unfair prejudice to Defendants.

At the outset, Plaintiffs Waite and Ely's claims have been present since the original complaint's filing.  The joinder of The Dream Syndicate Plaintiffs does not materially change the scope of the case or the alleged classes.  They serve an important role in buttressing the claims alleged by other Plaintiffs.

8

And, members of The Dream Syndicate only recently sought to serve as named Plaintiffs following the Court's important March 31 Order.  Plaintiffs informed UMG's counsel of their potential amendment promptly after the Court's March 31 ruling.  Plaintiffs' counsel then supplied the proposed SAC to UMG's counsel approximately three weeks after the decision.  The parties then sought to resolve the amendment issue by consent.  UMG ultimately refused to consent.  Discovery is ongoing and does not close until July 1, 2020.  Moreover, since discovery has been proceeding on a class-wide basis without any bifurcation and the scope of the class has not changed, the amendments do not substantively affect the scope of discovery.  Trial is not scheduled until November 2020.  Defendants may dispute or deny Plaintiffs' allegations.  However, Defendants' dislike of, or disagreement with the factual allegations is insufficient grounds to disallow the amendments.  The parties are well-equipped to complete discovery.

Accordingly, none of these issues provides any substantial basis to deny leave to amend under the governing standards.  There are only two colorable issues for consideration: (1) whether the Court's dismissal of Plaintiffs Waite and Ely's "claims based on grants transferred by third parties" forecloses Plaintiffs Waite and Ely's claims based on their direct, personal grants to the Defendant; and (2) whether Plaintiffs have alleged sufficient factual allegations to support the request for declaratory relief.

### A.  Plaintiffs Waite and Ely Have Viable Claims Based on Their Direct, Personal Grants.

In the proposed SAC, Plaintiffs Waite and Ely provide extensive and detailed factual allegations demonstrating the existence of their direct, personal grants to Defendants.  Exs. 1-2, SAC ¶¶64-176, 177-226.  They also explain the lack of any bona fide employment relationship with Defendants and the specific reasoning why, factually, Defendants demanded these independent direct grants while seeking to create a "work made for hire" artifice.  *See, e.g., id.* ¶¶ 72, 74, 76-84, 188-206.  Specifically,

9

because Defendants recognized that the "work made for hire" language alone is insufficient to establish that a work is, in fact, made for hire, and that the yet-to-be created sound recordings may not qualify as "work made for hire" in the absence of a bona fide employment relationship, Defendants (or their predecessors-in-interest) demanded and obtained several provisions that effectuated direct personal grants by Waite and Ely of the copyrights in and to the sound recordings. *See, e.g., id.* ¶¶ 72-78, 76-84, 108-113, 136-140 194-199, 202-207.   Moreover, Defendants (or their predecessors) insisted on these direct grants because they needed to ensure that the recording artists would render the musical performance services.   Indeed, they knew that Waite or Ely would be the authors of the sound recordings and the direct grants of rights were the only way to ensure that Defendants received the contemplated grants of the exclusive rights to the sound recordings that were being created by the artists. *Id.*  Having enjoyed the benefits of certainty as to the effectiveness of these direct grants (for decades), Defendants cannot now disavow their existence or their effectiveness. *Id.* ¶¶ 108-114, 135-136, 139-142, 173, 205-208.[6]  Indeed, these detailed, factual allegations clarify or amplify Plaintiffs' prior allegations and there can be no question that Plaintiffs previously advanced claims premised on these direct grants (ECF 56 at 24-25 (brief at pp. 18-19)), and the Court did not dismiss these claims by Waite and Ely.  ECF No. 68.

These direct, personal grants were executed by the authors – Waite and Ely – in conformity with the statutory language of 17 U.S.C. § 203(a) and, therefore, they have exercised valid statutory termination rights and their termination notices sufficed to terminate the prior grants.  Accordingly, Defendants' continued exploitation of the works at issue after the effective dates of termination give

---

[6]      Contrary to UMG's contention, Plaintiffs expressly do not seek to resurrect any Waite or Ely claims based on grants transferred by third parties. *See* Exs. 1-2, p. 2 n. 1, ¶ 64 n.2, ¶ 178 n. 4. Likewise, Plaintiff Ely does not seek to resurrect his claim related to his 1976 agreement for sound recordings that were created prior to January 1, 1978. *Id.* ¶ 178 n. 4.

rise to cognizable copyright infringement claims.  Plaintiffs Waite and Ely's proposed amendments are not futile.  The amendments are more than sufficient to state a claim upon which relief can be granted premised on these direct grants and justice requires that the Court grant Plaintiffs' Motion.  The Court did not dismiss all claims made by Waite and Ely.  Nor did the Court dismiss Ely and Waite as Plaintiffs.  And, simply stated, UMG cannot point to any aspect of the Court's March 31 Order that dismissed these claims.

### B.  Plaintiffs Allege Additional Facts Sufficient to Warrant Prompt Declaratory Relief.

In its March 31 Order, the Court ruled *sua sponte* that it would exercise its discretion to deny Plaintiffs' request for declaratory relief.  ECF No. 68 at 15-17.  The Court hypothesized that UMG may proffer new arguments concerning the validity of the termination notices.  *Id*. at 16.  The Court reasoned that the "declaratory judgment plaintiffs seek now therefore could not guarantee that UMG would accept the termination notices and cease exploitation of the sound recordings after the effective date of the terminations."  *Id*.  Thus, the Court questioned the usefulness or efficacy of the declaratory relief. The Court also concluded that Plaintiffs had not alleged why, other than it would presently halt defendant's denial of the termination notice[s], the declaratory relief sought is necessary."  *Id.*  The Court declined to "speculate as to why it would be useful to resolve certain legal issues prior to the effective date of termination," the Court found that "no such reason has been alleged."  *Id.* at 17.

In the proposed SAC, Plaintiffs have substantively amended former paragraphs 84 through 86 of the First Amended Complaint with detailed factual allegations to support the importance, efficacy, utility and necessity of declaratory relief.  A prompt judicial determination of the rights and duties of the parties is presently ripe, useful and necessary at this time because Defendants have repeatedly refused to honor Plaintiffs' rights and those of both Classes – hundreds of recording artists.  In

particular, in paragraphs 328, 329(i)-(vii), and 330 through 332 of the SAC, Plaintiffs allege the

following facts in support of their request for declaratory relief:

- Plaintiff Straw and the members of Class B seek a present declaration that (a) their Notices of Termination are *valid*, (b) the dates of termination in the Notices are *effective*, (c) their termination rights *vested*, and (d) Defendants' disregard of their rights violates the Copyright Act (SAC ¶ 328);

- Plaintiffs and the class members' post-termination rights in the sound recordings became *vested* upon the *service* of the Notices of Termination (SAC ¶ 332);

- Defendants have engaged in substantially, identical conduct with respect to both Classes (SAC ¶ 329(i));

- Defendants have shown *no* willingness or intent to alter their behavior during this litigation absent a judicial order, judgment or declaration (SAC ¶ 329(i));

- Defendants' *primary* defense – that the sound recordings qualify as "works made for hire" – can be readily disposed of on a class-wide basis because Defendants are unable to prove the existence of bona fide employment relationships with Plaintiff Straw and the class members (SAC ¶ 329(ii));

- Defendants have created an actual and immediate disagreement with Plaintiff Straw and, on information and belief, members of Class B by accusing these recording artists of anticipatory breach of contract and/or asserting repudiation claims arising from Defendants' inclusion of "work made for hire" language and related representations in the underlying recording agreements (SAC ¶ 329(iii));

- Defendants have stated their clear intent *not* to honor the Notices of Termination served by Plaintiffs and class members (SAC ¶ 329(iv));

- Plaintiffs and class members – most of whom are well over 60 years of age – will be substantially aided in developing their estate plans with respect to their rights to the sound recordings in that there is a very real and genuine need to value the rights for purposes of their calculation of the gift and/or estate tax exemptions, depending on whether they make an *inter vivos* gift or a testamentary bequest to a beneficiary under his or her will (SAC ¶¶ 329(v), 331-332);

- Without the certainty of the requested declaratory relief, any estate or tax planning cannot be fully realized or relied upon, thereby causing present injury to Plaintiff Straw and the members of Class B (SAC ¶¶ 330-332); and

- The requested declaratory relief would determine in all material respects and/or completely the validity of the Notices of Termination, the effective dates of termination and the vesting of the termination rights (SAC ¶¶ 329(vi)).

12

Plaintiffs' amendments are directly tailored to meet the Court's concerns. As a threshold matter, Plaintiffs' rights (and those of the members of the Classes) vested upon the service of their Notices of Termination. Such vesting was not contingent upon or affected by UMG's actions. Thus, the post-termination rights to recapture the economic benefits of the copyrights belong to the Plaintiffs and the members of the Classes now and they should be permitted to seek a declaration of the parties' respective rights. In this concrete and specific respect, Plaintiffs and Class A members who have current copyright infringement claims have an identical interest as Plaintiff Straw and Class B members do – to vindicate and protect their vested federal rights. Moreover, in the SAC, Plaintiffs have amended their allegations to make clear that declaratory relief will serve to establish that (a) their Notices of Termination are *valid*, (b) the dates of termination in the Notices are *effective*, (c) their termination rights (and post-termination rights) *vested*, and (d) Defendants' disregard of their rights violates the Copyright Act. By seeking such a comprehensive declaration on a class-wide basis, Defendants necessarily will have to come forward with any purported defenses, such as the common "work-made-for-hire" defense, and these issues can be disposed of in this case promptly and efficiently.

Courts in this district have previously held that a party may seek declaratory relief regarding the validity of termination notices. *See, e.g. Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 467 (S.D.N.Y. 2010), *aff'd in part, vacated in part, on other grounds sub nom. Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).[7] In *Marvel*, the defendant heirs of a cartoonist named Jack Kirby served September 2009 termination notices on the Marvel plaintiff entities that purported to terminate the previously-granted rights with respect to 262 works created by Kirby and published by Marvel. *Marvel Characters*, 726 F.3d 119 at 127. Each termination notice stated an effective date of

---

[7]     The factual recitation of the *Marvel Characters* case is drawn largely from the more detailed factual discussion set forth in the Second Circuit opinion.

termination sometime in the future, presumably between 2014 and 2019. *Id.* On January 8, 2010,

Marvel filed suit against the defendant heirs seeking a declaration that the termination notices were

invalid under § 304(c) of the Copyright Act because Kirby's works were created as "works made for

hire", in which Marvel allegedly owned the copyrights. *Id.* The defendant heirs responded, asserting

multiple counterclaims, including a claim for declaratory relief to establish the validity of the

termination notices. *Marvel Worldwide,* 756 F. Supp. 2d at 467.[8]

The district court allowed Marvel to seek declaratory relief even though the earliest effective

date of the termination notices was 4 years in the future. *See Marvel Characters*, 726 F.3d at 128.[9]

The court also denied Marvel's motion to dismiss the heirs' declaratory relief counterclaim, reasoning

that while the termination notices would be invalid if Marvel prevailed on its claim, the termination

notices could also be invalid for reasons other than that the works were "works made for hire." *Marvel

Worldwide,* 756 F. Supp. 2d at 467. The court reasoned that by securing a declaration that the notices

are valid, the heirs "protect themselves from future litigation in the event that Marvel loses the work-

for-hire live dispute." *Id.* at 467–68. Likewise, here, Plaintiffs seek declaratory relief to protect

themselves from future claims by UMG that the termination notices served by Plaintiffs and the Class

members are invalid. In other words, by permitting the declaratory relief claim to proceed on behalf

---

[8]     *See also Justice v. Ice King Enterprises LLC*, No. 14-CV-01767-WHO, 2015 WL 576693, at
*7 (N.D. Cal. Feb. 10, 2015) (finding that plaintiff's request for a declaratory judgement that
plaintiff's termination of its agreement with defendant, which permitted defendant to distribute
plaintiff's songs, was proper where "[d]efendant refused to accept [p]laintiff's notices of termination
and continues to hold itself out to third parties as being in contract with [p]laintiff" and "the
uncertainty regarding the state of the [a]greement has harmed [plaintiff] by impeding his business
opportunities.").

[9]     The district court ultimately granted summary judgment in favor of Marvel on its declaratory
relief claim on July 28, 2011 even though the notices of termination did not become effective for at
least 3 more years. *Marvel Worldwide*, 777 F. Supp. 2d at 725.

of Plaintiff Straw and Class B members, the Court will promote and secure the just, speedy and cost-effective determination of the claims in this action.  Fed. R. Civ. P. 1.

Moreover, like the heirs in *Marvel*, Plaintiffs should not have to wait until Defendants infringe their rights to bring suit particularly when Defendants' conduct, including their continuing infringement during the pendency of this litigation, confirms that they will not abate their wrongful conduct until ordered to do so. Indeed, in *Museum of Modern Art v. Schoeps*, 549 F. Supp. 2d 543, 544 (S.D.N.Y. 2008), the district court held that two museums could pursue a declaratory judgment regarding the ownership of two paintings in their permanent collections after the defendant sent a letter to the plaintiffs stating that he was entitled to the paintings and demanded that plaintiffs return the paintings to him.  The court reasoned that defendant "stated his clear intent to pursue every avenue to obtain the [ ] paintings" and therefore the plaintiffs "as the possessors of two of those paintings, need not be obliged to sit on their hands while [defendant] decides when next to attack.*" Id.* at 548.  Here, Plaintiffs allege that they are the owners of the sound recordings at issue.  As noted above, Defendants have made clear that they do not intend to honor the termination notices of Plaintiffs or the Class.  The Class should not have to sit on their hands and wait until their respective termination dates to litigate the validity of their claims.  By waiting until those dates pass, Plaintiffs and the Class will not be able to license their copyrights, or otherwise exploit their rights, until well after the termination date because they will first have to litigate (likely for years) whether they own the copyrights at issue.

Plaintiffs also added allegations to the SAC regarding the reasons why the requested declaratory relief is necessary.  Such relief is necessitated because Plaintiff Straw and Class B members are powerless to recapture their rights or to plan effectively for the future without obtaining the requested declaratory relief.  In the absence of declaratory relief, Plaintiffs will not be able to properly value their rights to the sound recordings, including any future income that may arise from such rights, and

15

therefore they cannot fully develop their estate plans with respect to their rights to the sound recordings. As the Court noted, the ability to determine the value in the sound recordings is an additional basis for declaratory relief.  ECF No. 68 at 16 (citing *Ray Charles Found v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015).  *See also Century of Progress Prods. v. Vivendi S.A.*, No. CV 16-7733 DMG (ASX), 2018 WL 4191340, at *15 (C.D. Cal. Aug. 28, 2018) (denying defendant's motion to dismiss plaintiffs' declaratory relief claim, which sought a declaration that plaintiffs' termination notices were valid, where plaintiffs' royalties would be impacted by the requested relief).  And, in this case, such prompt declaratory relief is particularly important given the relatively advanced ages of the Plaintiffs and Class members.

While the Court is undoubtedly correct that no party can guarantee that an opposing party will comply with a judicial declaration, Plaintiffs come to this Court seeking prompt judicial relief to vindicate their already vested post-termination rights in the sound recordings and to enable them to undertake essential estate planning activities and determine how they can distribute the benefits of their creativity to their heirs or donees.  In the absence of prompt declaratory relief in this case, Defendants will be permitted to destroy the value and the ultimate salability of the sound recordings in direct contravention of the second chance guaranteed by the Copyright Act.  Plaintiffs should not be left to the mercy or whims of Defendants' scheme to await the benefits of their vested, federal rights.  They should be able to prove their claims and have this Court enforce a declaratory judgment against Defendants so that they will be compelled to abide by the statutory commands.  The risk of actual and/or statutory damages for copyright infringement has not caused Defendants to cease their willful

infringement.  Their conduct must be declared violative and they must be permanently enjoined from engaging in these practices.[10]

## V.    CONCLUSION

For all of the reasons discussed above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Leave to Amend and permit the filing of the Second Amended Complaint.

Date: May 8, 2020                              **BLANK ROME LLP**

                                               By:   */s/Ryan E. Cronin*_____

                                               Ryan E. Cronin
                                               Roy W. Arnold
                                               David M. Perry
                                               Gregory M. Bordo
                                               1271 Avenue of the Americas
                                               New York, NY 10020
                                               Telephone (212) 885-5000

                                               **COHEN MUSIC LAW**
                                               Evan S. Cohen
                                               Maryann R. Marzano
                                               1180 South Beverly Drive, Suite 510
                                               Los Angeles, CA  90035-1157
                                               Telephone: (310) 556-9800

                                               *Attorneys for Plaintiffs*

---

[10]     Additionally, because final injunctive relief is necessary and appropriate under 17 U.S.C. § 502, this Court is authorized to issue corresponding declaratory relief.  *See* Fed. R. Civ. P. 23(b)(2).