UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                              :

JOHN WAITE, an individual; JOE ELY, an        :
individual; KASIM SULTON, an individual;      :    No. 1:19-cv-01091(LAK)
SUSAN STRAW HARRIS p/k/a SYD STRAW, :
an individual; LEONARD GRAVES PHILLIPS, :
an individual, STAN SOBOL a/k/a STAN LEE,  :
an individual, and ISRAEL CABALLERO, an   :
individual; and on behalf of all others similarly  :
situated,                                   :
                                     :
                        Plaintiffs,       :
                                     :
                  v.                    :
                                     :
UMG RECORDINGS, INC., a Delaware          :
corporation doing business as Universal Music  :
Group, and DOES 1 through 10,             :
                                     :
                       Defendants.     :
-----------------------------------------------------------X

## DEFENDANT UMG RECORDINGS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO <u>FILE A SECOND AMENDED COMPLAINT</u>

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND RELEVANT TO THE MOTION ..................................................................3

APPLICABLE LEGAL STANDARD .......................................................................................5

ARGUMENT ............................................................................................................................7

I.     THE COURT SHOULD DENY LEAVE TO AMEND AS TO PLAINTIFFS'
ATTEMPT TO REINSTATE WAITE'S CLAIMS AND ELY'S CLAIMS
INVOLVING THIRD-PARTY AGREEMENTS..............................................................7

        A.     Plaintiffs Have Not Established Good Cause For The Proposed
Amendments ......................................................................................................7

        B.     In Any Event, The Proposed Amendments Are Futile ............................................8

II.    THE COURT SHOULD DENY LEAVE TO AMEND AS TO PLAINTIFFS'
ATTEMPT TO REINSTATE ELY'S CLAIM UNDER THE 1976 AGREEMENT........13

        A.     Plaintiffs Have Not Established Good Cause For The Proposed
Amendment .......................................................................................................13

        B.     In Any Event, The Proposed Amendment Is Futile ...............................................13

III.  THE COURT SHOULD DENY LEAVE TO AMEND AS TO PLAINTIFFS'
ATTEMPT TO REINSTATE THEIR CLAIM FOR DECLARATORY RELIEF ..........19

IV.  THE COURT SHOULD DENY LEAVE TO AMEND AS TO BELATEDLY
ADDING MORE NAMED PLAINTIFFS ....................................................................22

V.    ANY AMENDMENT TO ADD CAPITOL AS A DEFENDANT MUST NOT BE
PERMITTED TO PREJUDICE UMG ..........................................................................23

CONCLUSION.........................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bank of New York Corp. Forex Transactions Litigation*,
No. 12-MD-2335 LAK, 2014 WL 4494158 (S.D.N.Y. Sept. 4, 2014) ........................5, 6, 7, 8

*Barnhart v. Sigmon Coal Co., Inc.*,
534 U.S. 438, 122 S. Ct. 941 (2002) .......................................................................................16

*Cedar Swamp Holdings, Inc. v. Zaman*,
487 F. Supp. 2d 444 (S.D.N.Y. 2007)........................................................................................6

*Century of Progress Productions. v. Vivendi S.A., et al.*,
No. cv-16-7733 DMG, 2018 WL 4191340 (C.D. Cal. Aug. 28, 2018) ...................................21

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837, 104 S. Ct. 2778 (1984) ...............................................................................15, 16

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)........................................................................................................6

*Duran v. City of New York*,
No. 96 CIV 4219 (MBM) (HB), 1999 WL 294989 (S.D.N.Y. May 10, 1999) ........................9

*Emengo v. Stark*,
774 F. App'x 26 (2d Cir. 2019) ...............................................................................................22

*Fed. Deposit Ins. Corp. v. Meyer*,
510 U.S. 471, 114 S. Ct. 996 (1994) .......................................................................................16

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
139 S. Ct. 881 (2019) ...........................................................................................................2, 19

*Justice v. Ice King Enterprise LLC*,
No. 14-cv-01767-WHO, 2015 WL 576693 (N.D. Cal. Feb. 10, 2015) ...................................21

*Kwan v. Schlein*,
No. 05 CIV. 0459 (SHS) (JCF), 2008 WL 506337 (S.D.N.Y. Feb. 21, 2008) .......................15

*Lucente v. Int'l Bus. Machs. Corp.*,
310 F.3d 243 (2d Cir. 2002)......................................................................................................6

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013).....................................................................................................12

*Marvel Worldwide, Inc. v. Kirby*,
  756 F. Supp. 2d 461 (S.D.N.Y. 2010), *aff'd in part, vacated in part*, 726 F.3d
  119 (2d Cir. 2013)........................................................................................................21

*Milne v. Stephen Slesinger, Inc.*,
  430 F.3d 1036 (9th Cir. 2005) .....................................................................................18

*Museum of Modern Art v. Schoeps*,
  549 F. Supp. 2d 543 (S.D.N.Y. 2008)..........................................................................21

*Nat'l Westminster Bank, U.S.A. v. Ross*,
  130 B.R. 656 (S.D.N.Y. 1991).......................................................................................9

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000).......................................................................................6, 7

*Penguin Group (USA) Inc. v. Steinbeck*,
  537 F.3d 193 (2d Cir. 2008).........................................................................................17

*Radio Today, Inc. v. Westwood One, Inc.*,
  684 F. Supp. 68 (S.D.N.Y. 1988) .................................................................................10

*Ray Charles Found. v. Robinson*,
  795 F.3d 1109 (9th Cir. 2015) ......................................................................................21

*Sly Magazine, LLC v. Weider Publications LLC*,
  241 F.R.D. 527 (S.D.N.Y. 2007) .............................................................................22, 24

*Star Athletica, LLC v. Varsity Brands, Inc.*,
  137 S. Ct. 1002 (2017)............................................................................................16, 19

*TechnoMarine SA v. Giftports, Inc.*,
  758 F.3d 493 (2d Cir. 2014)...........................................................................................6

*WPIX, Inc. v. IVI, Inc.*,
  691 F.3d 275 (2d Cir. 2012).........................................................................................16

**Statutes**

17 U.S.C. § 111.................................................................................................................16

17 U.S.C. § 203...........................................................................................................*passim*

17 U.S.C. § 304.................................................................................................................18

28 U.S.C. § 2201........................................................................................................19, 21

**Other Authorities**

ANALYSIS OF GAP GRANTS UNDER THE TERMINATION PROVISIONS OF TITLE 17, at
  iii, U.S. COPYRIGHT OFFICE (Dec. 7, 2010) ............................................................................18

BLACK'S LAW DICTIONARY (Bryan A. Garner ed., 10th ed. 2014) ..............................................16

Fed. R. Civ. P. 12 .........................................................................................................................3, 6

Fed. R. Civ. P. 15 .................................................................................................................... * passim *

Fed. R. Civ. P. 16 .................................................................................................................... * passim *

Fed. R. Civ. P. 21 .....................................................................................................................22, 23

GENERAL GUIDE TO THE COPYRIGHT ACT OF 1976, U.S. COPYRIGHT OFFICE, at 6:6
  (1977), * available at * https://www.copyright.gov/reports/guide-to-copyright.pdf ...................18

H.R. REP. No. 94-1476 ....................................................................................................................17

REPORT OF THE REGISTER OF COPYRIGHTS ON THE GENERAL REVISION OF THE U.S.
  COPYRIGHT LAW: 1965 REVISION BILL (1965) ........................................................................18

Defendant UMG Recordings, Inc. ("UMG") respectfully submits this memorandum of law in opposition to Plaintiffs' motion (the "Motion") for leave to file a Second Amended Complaint (the "SAC") [ECF Doc. 73].

## PRELIMINARY STATEMENT

By Memorandum Opinion and Order dated March 31, 2020 [ECF Doc. 68] (the "Memorandum Opinion"), this Court granted in part UMG's motion to dismiss, dismissing Plaintiffs' claim for declaratory relief and effectively dismissing all claims of John Waite and Joe Ely.  In opposing UMG's motion, Plaintiffs did not seek to bolster their then-First Amended Complaint (the "FAC") by identifying any proposed additional allegations, or even seek permission to attempt to replead in the event the Court granted UMG's motion, and, in granting the motion, the Court did not permit them to replead.  Likewise, Plaintiffs did not timely move for reconsideration of any aspect of the Memorandum Opinion.

Now, more than a year after UMG first raised the challenges to Plaintiffs' claims that led to their dismissal, and more than a month since that dismissal and less than two months before July 1, 2020, the already-extended close of all discovery directed by this Court, (1) Plaintiffs impermissibly seek reconsideration of this Court's ruling dismissing the claims of Waite and Ely and of Plaintiffs' declaratory relief claim, a collateral attack masquerading as a motion for leave to amend; (2) Plaintiffs seek to add new putative class representatives, even though they could have been included in Plaintiffs' original complaint, or in their FAC (filed more than eleven months ago), and there is no excuse for Plaintiffs' delay in seeking their inclusion; and (3) Plaintiffs seek to add Capitol Records, LLC ("Capitol") as a defendant, some seven months after UMG first advised Plaintiffs that UMG is not a proper defendant as to a number of putative class members, and nearly five months after UMG first indicated its willingness to consider a proposed amendment to the FAC limited to addressing the issue.  As such, Plaintiffs' proposed

SAC is improper, untimely, futile, and prejudicial, and the Motion should largely be denied.[1]

*First*, Waite and Ely attempt an end-run around this Court's proper dismissal of their claims that relate to any grants received from third parties, asserting that Waite and Ely merely seek to terminate supposedly "direct, personal grants" made by each of them.  While Plaintiffs insist they are not thereby circumventing the Court's Memorandum Opinion, that is precisely what they are doing:  Waite and Ely can assert infringement claims only if they have effectively terminated grants that UMG or its affiliate (or their respective predecessors) received from third-party companies, and the Court expressly ruled that Waite and Ely *cannot* terminate any such grants.  Waite and Ely's wordplay to reframe their claims as arising solely out of personal grants therefore fails.

*Second*, the Memorandum Opinion precludes Ely's effort to resuscitate claims arising out of his 1976 Agreement.  The Court separately stated that the termination notice relating to recordings made under that agreement was both "insufficient" and "invalid."  Because a *valid* termination notice is a necessary condition to Ely's infringement claim, the Court's prior ruling necessarily precludes Ely's proposed amended claims under the 1976 Agreement.  Moreover, for reasons stated in UMG's prior motion to dismiss (and acknowledged but deferred by the Court in its Memorandum Opinion, at 22), Section 203 of the Copyright Act does not apply to Ely's 1976 Agreement in any event.  Ely's proposed amendments fail for this reason as well.

*Third*, Plaintiffs attempt to reassert their declaratory relief claim.  However, it is undisputed that the Court has "substantial discretion" in deciding whether to entertain a declaratory relief claim, and nothing in the proposed amendment alters this Court's rationale in declining to consider Plaintiffs' putative claim – on   the contrary, Plaintiffs' allegations and arguments actually further illustrate why declaratory relief is unsuitable here.

*Fourth*, Plaintiffs seek – at this late hour – to add additional named plaintiffs in this

---

[1] While reserving all defenses on the merits, UMG does not object to the Motion to the extent it seeks leave to assert an infringement claim as to the album *Dawn of the Dickies*, as the corresponding plaintiffs (Phillips, Sobol, and Caballero) remain in the action and the putative effective date of termination has passed since the filing of the FAC.

action.  They offer no explanation for their extraordinary delay in doing so, and thus cannot establish good cause for this amendment.

_Finally_, Plaintiffs belatedly seek to name Capitol as a defendant in this action.  As set forth in further detail below, Plaintiffs have known for _more than six months_ that they had not named the correct defendant as to a substantial number of artists (and that UMG accordingly was objecting to discovery as to such artists), and UMG first discussed with Plaintiffs' counsel the prospect of a potential amendment to name Capitol in _December 2019_.  Plaintiffs nonetheless waited until less than two months before the (extended) close of discovery to bring the present motion.  UMG nonetheless does not oppose the addition of Capitol, but on two conditions.  First, Plaintiffs should be required to articulate separate putative classes as to each of UMG and Capitol, especially given that the predecessors of these separate companies were competitors when the relevant agreements were executed and remained so for several decades afterwards. Second, the addition of Capitol cannot be used by Plaintiffs to attempt to justify a further adjustment to the case schedule or to otherwise prejudice UMG (or Capitol) in this action.  UMG has an interest in prompt resolution of the case and vindication of its position; Plaintiffs could have sought to add Capitol long ago but did not, and should not now be permitted to use their inexplicable and inordinate delay to protract these proceedings.

## BACKGROUND RELEVANT TO THE MOTION

Plaintiffs are recording artists (or their heirs) who sent notices to "Universal Music Group" purporting to terminate copyright transfers pursuant to Section 203 of the Copyright Act of 1976, 17 U.S.C. § 203, which permits an author to terminate certain grants of copyright rights executed on or after January 1, 1978, if specific conditions are met.  In their original Complaint, filed on or about February 5, 2019, plaintiffs Waite and Ely sought a declaration that those termination notices were valid, and they asserted related infringement claims against UMG.  On May 3, 2019, UMG filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF Doc. 37], demonstrating, _inter alia_, that (1) as to all of Waite's works and certain of Ely's works, predecessors of UMG or its affiliate had obtained rights pursuant to

3

agreements with third-party companies, and under the plain language of Section 203, Waite and Ely could not terminate any grants in connection with such agreements; and (2) as to the balance of Ely's works, any grant was executed prior to January 1, 1978, such that Section 203 was inapplicable.

Rather than respond to UMG's motion and address the original complaint's deficiencies, Plaintiffs elected to file their FAC on June 5, 2019 [ECF Doc. 45].  However, the FAC repeated *without change* the same failed allegations and claims as to Waite and Ely, with no effort to meet, much less cure, the deficiencies that UMG spelled out in its motion to dismiss.  Rather, the FAC merely added new plaintiffs who likewise sent notices purporting to terminate transfers of copyright rights pursuant to Section 203.  Except for allegations relating to these new plaintiffs, the FAC remained unchanged relative to the original complaint.  UMG therefore moved to dismiss the FAC as well, again asserting the above-referenced arguments as to Waite and Ely.

Discovery proceeded while this Court took UMG's renewed motion to dismiss under submission.  In its written responses to Plaintiffs' first set of discovery requests, served October 14, 2019, UMG objected to discovery relating to artists who contracted with Capitol or its predecessors, on the grounds that such entities are not predecessors of UMG, and therefore the recordings associated with those artists and referenced in the 203 notices are not owned by UMG; as a result, no relief could be afforded to those artists in an action against UMG. Notwithstanding this clear notice that at least certain Plaintiffs thus had sued the wrong defendant, and UMG's willingness, expressed thereafter in multiple communications with Plaintiffs' counsel, to entertain a potential amendment of the FAC limited to adding Capitol as a defendant, Plaintiffs sat on their hands until their present, belated, Motion filed seven months later.

The Court heard oral argument on UMG's motion to dismiss on February 3, 2020, at which it also extended pretrial deadlines, requiring completion of all discovery by July 1, 2020, summary judgment motions and pretrial filings by August 3, 2020, and trial commencing on November 9, 2020.  ECF Doc. 65.  The Court's resulting Scheduling Order did not provide for

further amendment of the FAC, the operative pleading.  The Court thereafter issued its Memorandum Opinion on UMG's motion to dismiss on March 31, 2020.  In relevant part, the Court granted the motion as to Waite and Ely's claims related to grants made by third parties (which accounted for *all* of Waite's claims, and a portion of Ely's claims), as well as Ely's remaining claim relating to his 1976 agreement as to pre-1978 sound recordings.  The Court also exercised its discretion and dismissed Plaintiffs' request for declaratory relief.

Promptly after the Court issued the Memorandum Opinion, UMG's counsel reached out to Plaintiffs' counsel respecting the status of the case and completion of discovery.  Plaintiffs' counsel advised that they were considering proposing an amendment to name Capitol as a defendant, and otherwise evaluating the impact of the Decision on the action.  UMG's counsel again advised that they were prepared to consider an amendment adding Capitol, and requested that Plaintiffs provide a proposed SAC and stipulation in that regard, which Plaintiffs' counsel agreed to do.

However, Plaintiffs did not transmit a proposed SAC for UMG's consideration until April 21, 2020.  Plaintiffs' proposed amendment went far beyond the discussed addition of Capitol as a defendant, and instead impermissibly and futilely also attempted to revive the dismissed claims of Waite and Ely and the dismissed declaratory relief claim, among other proposed changes.  UMG therefore declined to stipulate to the amendment presented, and so advised Plaintiffs' counsel on April 27.  Plaintiffs waited yet another ten days before filing the present Motion.

## APPLICABLE LEGAL STANDARD

Although Plaintiffs assert that their Motion is governed by Rule 15(a) of the Federal Rules of Civil Procedure, this Court has previously recognized that "[w]here. . . the court already has issued a scheduling order that does not contemplate further amendments, Rule 16 governs [rather than Rule 15(a)]."  *In re Bank of New York Corp. Forex Transactions Litigation*, No. 12-MD-2335 LAK, 2014 WL 4494158, at *2 (S.D.N.Y. Sept. 4, 2014) ("*Forex*").  It is not necessary that the scheduling order specifically address whether or when an amended complaint

5

may be filed; on the contrary, the absence of any such reference in the scheduling order itself means that the order "does not contemplate further amendments." *Id.* at 3-4 (holding that Rule 16, rather than Rule 15, governed plaintiffs' motion for leave to amend where the plaintiffs had previously amended their complaints and the scheduling order was silent as to any further amendments, even though the Court's order on the defendant's motion to dismiss set a deadline for plaintiffs to move for leave to amend).[2]    Under Rule 16, a moving party must establish "good cause" for its proposed amendment, which "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340-41 (2d Cir. 2000) (district court did not abuse its discretion in denying leave to amend, where plaintiff had all of the information necessary to support breach of contract claim when he commenced the action, and therefore failed to establish good cause for later amendment to add such a claim).

To the extent the Court nonetheless concludes that the Motion is governed by Rule 15(a), the Court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (internal quotations and citation omitted); *see also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 452 (S.D.N.Y. 2007) ("[T]he court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) would prejudice the opposing party, or (4) would be futile.").    "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002) (internal citation omitted).    A motion necessarily should also be denied if the original issues with the plaintiffs' causes of actions were "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal citations omitted).

As demonstrated below, whichever standard the Court applies, leave to amend in the

---

[2] Notably, in their April 1, 2019, joint letter to the Court in advance of the scheduling conference set for that afternoon, the parties' proposed that "[a]ny motion to amend or join additional parties shall be filed within 180 days…." ECF Doc. 31 at 2.    That time elapsed in late 2019.

circumstances of this case should be substantially denied.

<u>**ARGUMENT**</u>

I.    <u>**THE COURT SHOULD DENY LEAVE TO AMEND AS TO PLAINTIFFS'
ATTEMPT TO REINSTATE WAITE'S CLAIMS AND ELY'S CLAIMS
INVOLVING THIRD-PARTY AGREEMENTS**</u>

Notwithstanding the Court's dismissal of "claims related to grants executed by Waite's

loan-out companies or Ely's third-party company," Memorandum Opinion at 21, Plaintiffs seek

to reassert those same claims in the SAC, repackaged as claims supposedly "based on their

direct, personal grants." Pl. Mem [ECF Doc. 74-0] at 9. Regardless of whether Rule 16 or Rule

15 governs, Plaintiffs' proposed amendment fails and should not be allowed.

A.    <u>**Plaintiffs Have Not Established Good Cause for the Proposed Amendments.**</u>

The Court should reject Plaintiffs' gambit to reinstate the dismissed Waite and Ely claims

because they have not attempted to establish good cause for the amendment, nor could they. As

noted above, good cause "depends on the diligence of the moving party." *Parker v. Columbia

Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *see also Forex*, 2014 WL 4494158, at *3

(same). Moreover, "[g]ood cause cannot be established where the proposed amendment rests on

information that the party knew, or should have known" earlier. *Forex*, 2014 WL 4494158, at *3

(internal quotations and footnote omitted).

Plaintiffs have not attempted to demonstrate their diligence in asserting their "amended"

claim, nor could they. UMG moved to dismiss Plaintiffs' claims based upon the Waite loan-out

company agreements and the Ely/South Coast agreement – namely, that Waite and Ely were not

the grantors in those agreements, and thus could not terminate any grants in those agreements –

in its original motion to dismiss filed *over a year ago* [ECF Doc. 37]. Although Plaintiffs filed

their FAC rather than respond to UMG's motion, the FAC repeated the same inadequate

allegations and claims as to Waite and Ely without change, and made no reference to any other

putative grant purportedly underlying those claims. At least by that time, Plaintiffs had all of the

documents necessary to support the claim articulated in the proposed amendment, but they

nonetheless failed to advance it.[3]  And even after UMG again challenged their amended pleading in UMG's motion to dismiss the FAC in June 2019, Plaintiffs took no action to modify or bolster their deficient claims, and instead waited eleven more months before advancing their latest theory.  That is the *opposite* of diligence, and the *opposite* of good cause.  *Forex*, 2014 WL 4494158, at *3 (denying leave to amend, based on good cause standard, where "the plaintiffs do not dispute that these documents [underlying their proposed amended claims] were available to them well before [filing their earlier amended complaints], nor do they proffer any explanation for having failed to include them previously").  For this reason alone, Plaintiffs' motion should be denied.

### B.    In Any Event, The Proposed Amendments Are Futile.

Even if the Rule 15 standard applied, Plaintiffs' motion should be denied because the proposed amendments are futile.  Plaintiffs assert that their "clarifying amendments in this regard elaborate on their previous arguments" (Pl. Mem. at 3), which arguments this Court squarely rejected in dismissing these claims, and repackaging them while tacking on more unavailing verbiage cannot withstand scrutiny.

> 1.    *The Proposed Amended Claims Are Related to, and Premised on the Termination of, Third-Party Grants, and Therefore Impermissibly Conflict with the Decision.*

Plaintiffs repeatedly insist that they "do not seek to resurrect" the Waite and Ely claims

---

[3] Although Plaintiffs assert that they "previously advanced claims premised on these direct grants," Pl. Mem. at 10, they cite not to their original complaint or FAC (which contain no such claims or reference), but instead to pages 18-19 of ECF Doc. 56, their memorandum opposing UMG's second motion to dismiss.  Setting aside that reference in an opposition brief does not constitute "advancing a claim," the portion of the brief they cite did not even relate to UMG's challenge that Waite and Ely are not grantors, but instead addressed UMG's statute of limitations defense.  *See* ECF Doc. 56 at 17-20.  Plaintiffs *did* respond to UMG's argument that Waite and Ely are not grantors elsewhere in their opposition brief, claiming that Waite and Ely had made separate (apparently undocumented) grants of copyright to the relevant third-party companies, and that UMG and its affiliate are simply successor grantees.  *See* ECF Doc. 56 at 26.  Notably, the Court observed that the FAC did not support this allegation, *see* Memorandum Opinion at 20, and Plaintiffs now appear to have abandoned it, as the allegation appears nowhere in their proposed SAC.

that the Court dismissed in its Memorandum Opinion.  Pl. Mem. at 10.  However, that is

precisely what they attempt to do.  Plaintiffs assert that they can permissibly circumvent the

Court's ruling by contending that their amended claim relates to separate, "direct, personal

grants" that they ostensibly made to predecessors of UMG or Capitol.  Pl. Mem. at 9.  But the

Court dismissed claims "*related to* grants executed by Waite's loan-out companies or Ely's third

party company," Memorandum Opinion at 21 (emphasis added), and Plaintiffs' repackaged

claims are clearly and directly related to those agreements.  *See* ECF Doc. 74-2 at ¶¶ 64, 92,

121,182 (purporting to assert claims relating to contracts with Waite loan-out companies Heavy

Waite, Inc., Moonwalk Music, Inc., and Diamond Strife, Inc. and Ely third-party company South

Coast Records, Inc.).  Indeed, the contractual language that Plaintiffs cite in support of their

amended claim *comes directly from* the loan-out and third-party agreements and/or attachments

to those agreements.  *See, e.g.*, ECF Doc. No. 74-2 at ¶¶ 73, 74, 100, 101, 103, 128, 129, 131,

132, 191).  This Court's ruling that Waite and Ely have no termination claim "related to" these

agreements is law of the case that cannot be undone by a proposed amendment, rendering the

proposed SAC futile.  *See, e.g.*, *Duran v. City of New York*, No. 96 CIV 4219 (MBM) (HB),

1999 WL 294989, at *2 (S.D.N.Y. May 10, 1999) ("The doctrine of 'law of the case' instructs

that 'if a court decides a rule of law, that decision should continue to govern in subsequent stages

in the same case.") (citations omitted); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656,

685 (S.D.N.Y. 1991) ("Three of defendant's counterclaims – breach of contract, breach of

fiduciary duty and breach of duty to deal in good faith – have already been dismissed…. That

decision constitutes the law of the case and defendant cannot relitigate those claims absent

compelling circumstances.").

That Plaintiffs' proposed SAC constitutes a back-door attack on the Court's Decision is

further illustrated by the balance of the Waite and Ely claims.  Plaintiffs contend that, as a result

of the putative termination of Waite and Ely's alleged "direct, personal grants," UMG and

Capitol have engaged in copyright infringement through their continued exploitation of the

corresponding works.  Pl. Mem. at 10-11.  But that claim *necessarily posits* that any and all

grants made by the Waite loan-outs and the Ely third-party company themselves were *also* terminated; without such termination, UMG and Capitol could not be infringers.  *See* Memorandum Opinion at 20 ("It is undisputed that loan-out companies executed the Waite grants and that a third-party company, South Coast, executed the grant for Ely's recordings made under his 1979 agreement.").  However, it is precisely such grants that this Court held could *not* be terminated by Waite or Ely.  *Id.* at 21 ("The unambiguous text [of Section 203] precludes Waite and Ely from terminating the copyrights granted by third parties.").  These proposed amendments are futile.

        2.      *The Proposed Amended Claims Are Also Futile Because They Conflict with the Language of the Contracts on Which They Are Based.*

The Waite and Ely proposed amendments are also futile because they are unsupported by, and conflict with, the documents on which they are based.[4]  It is axiomatic that, even on a motion to dismiss, "to the extent there may be any contradiction between the text of [a] Complaint and [an] agreement, the agreement controls."  *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 69 n.1 (S.D.N.Y. 1988) (citation omitted).  Here, Plaintiffs assert that various agreements include "direct, personal grants," Pl. Mem. at 9, but they are conspicuously silent about the *nature* of the grant to which they refer.  And with good reason.  Section 203 relates only to a "grant of a transfer or license of *copyright* or *any right under a copyright*."  17 U.S.C. § 203(a) (emphasis added).  This language requires at least two things:  (1) an actual grant that (2) is of copyright or a right under a copyright.  Virtually none of the provisions that Plaintiffs cite fit the bill.

For example, Plaintiffs cite a provision of the Heavy Waite agreement that required Heavy Waite to "cause [Waite] to execute and delivery to [Chrysalis] any assignments of copyright…as [Chrysalis] may reasonably deem necessary."  ECF Doc. 74-2 at ¶ 73.  This

---

[4] As the Court previously noted, documents attached to a complaint or otherwise integral to a plaintiffs' claim are appropriately incorporated by reference into the pleading, and the Court may consider such documents without converting a motion to one for summary judgment. Memorandum Opinion at 4 n.10.

language itself is not a grant *by* Waite (or anyone else), nor do Plaintiffs allege that Waite ever executed and delivered any such assignment.  Plaintiffs also invoke the Inducement Letter accompanying the Heavy Waite agreement, but that document is likewise inapplicable.  It merely states that if Heavy Waite is no longer entitled to Waite's recording services during the term, then Waite would "at [Chrysalis'] request, do all such acts and things as shall give to [Chrysalis] the same rights, privileges and benefits as [Chrysalis] would have had under the" Heavy Waite agreement.  *Id.* at ¶ 75.  This does not reference a grant of copyright, nor do Plaintiffs allege that Chrysalis "request[ed]" any such grant from Waite, much less that Waite made any such grant.[5]

Likewise, Waite's allegations respecting the Moonwalk Music agreement are defeated by that agreement itself.  Plaintiffs reference paragraph 5(a) of that agreement, but it contains no grant of copyright (from Waite or anyone else), and instead obligates *Moonwalk* to deliver certain documents to Capitol's predecessor.  ECF Doc. 74-2 at ¶ 101.  Plaintiffs next reference a declaration that they attach as Exhibit 2 to the proposed FAC, pursuant to which they claim Waite granted a copyright interest to Capitol.  The document Plaintiffs attached, however, on its face was not signed by Waite, but instead by a "Richard B. Smith."  *See* ECF Doc. 74-2 at Ex. 2 (p. 78 of 155).  For obvious reasons, this document does not aid Plaintiffs – a document signed by "Richard B. Smith" cannot constitute a grant by John Waite.  Finally, Plaintiffs make the same inapt argument respecting an Inducement Letter that they make as to the Heavy Waite agreement (*see* ECF Doc. 74-2 at ¶ 103-04); for the same reasons set forth above, that argument fails.

Also futile are Plaintiffs' proposed revived claims respecting the Diamond Strife

---

[5] Plaintiffs allege that Heavy Waite ceased to be in good standing in or about March 1986, *see* ECF Doc. 74-2 at ¶ 88, apparently suggesting that the cited provision of the Inducement Letter was triggered at that time.  But even if that were so, then any "grant" in the Inducement Letter (though UMG disputes any such grant exists) would likewise have been made in 1986.  In that event, the May 22, 2017 effective date of termination contained in Waite's termination notice for *Ignition*, the album recorded under the Heavy Waite agreement, would been fatally premature, as that date is far less than the thirty-five year period required under Section 203.  *See* 17 U.S.C. 203(a)(3).

agreement; both the agreement itself and the Inducement Letter (ECF Doc. 74-2 at ¶¶ 129, 131-132) are similar to the corresponding elements of the Moonwalk Music agreement, and they provide no aid to Plaintiffs for the same reasons set forth above.  In this instance, however, the declaration referencing a conditional grant of copyright does appear to be signed by Waite.  However, this "belt and suspenders" language neither is inconsistent with nor undermines the rights that Capitol obtained from Diamond Strife, which the Court already ruled Ely could not terminate.  *See supra* § I.B.1; *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013) (rejecting reliance on "belt and suspenders" assignment language as putative support for a termination claim, noting that the "assignments . . . were redundancies insisted upon by Marvel to protect its rights" and "declin[ing] to infer from Marvel's suspenders that it had agreed to give Kirby its belt").

Finally, Plaintiffs' reliance on the Ely Inducement Letter (*see* ECF Doc. 74-2 at ¶ 191) fails for the same reason the claims based on the Waite Inducement Letters fail:  it presupposes a request from UMG-predecessor MCA, but Plaintiffs fail to allege that any such request was made, much less that Ely made any corresponding grant.  Moreover, to the extent any grant required by the Inducement Letter was triggered on South Coast's alleged cessation in 1984, the December 2017 effective date of termination for *Musta Notta Gotta Lotta* in Ely's termination notice was premature under Section 203(a)(3), rendering the notice invalid.[6]

In sum, new verbiage and repackaging notwithstanding, Plaintiffs' proposed reinstated claims on behalf of Waite and Ely could not withstand a motion to dismiss and cure none of the deficiencies upon which this Court already dismissed them.  Accordingly, leave to amend respecting those claims should be denied.

---

[6] Although the proposed SAC also references the Ely album *Hi-Res*, it does not contend that that album was recorded pursuant to *either* the Ely/South Coast agreement *or* the 1976 Ely Agreement (discussed further below), such that the basis for Ely's putative termination as to that album is fatally unclear.  In all events, any termination claim as to *Hi-Res* would fail for the same reasons set forth herein with respect to the other Ely works.

## II.     THE COURT SHOULD DENY LEAVE TO AMEND AS TO PLAINTIFFS' ATTEMPT TO REINSTATE ELY'S CLAIM UNDER THE 1976 AGREEMENT

Plaintiffs also attempt to reassert a claim respecting recordings made pursuant to the 1976 agreement with Ely (the "1976 Ely Agreement").  As with the other Ely claim and the Waite claims addressed above, Plaintiffs' proposed amendment fails under both the Rule 16 and the Rule 15 standards.

### A.     Plaintiffs Have Not Established Good Cause for the Proposed Amendment.

First, Plaintiffs have failed to establish good cause for their belated amendment – even though UMG first raised its challenges respecting the 1976 Ely Agreement over a year ago, Plaintiffs undertook no effort to replead claims respecting that agreement until filing their recent, untimely Motion.  Moreover, the Motion and supporting memorandum barely acknowledge their previously-failed claim under that agreement, much less articulate any argument supporting a claim of diligence in advancing their newly-constructed claim (there was none).  *Cf.* ECF Doc. 74-0, at 10 n. 6 (containing sole, passing reference to Plaintiffs' amended claim under the 1976 Ely Agreement).  Whether under the "good cause" standard of Rule 16 or the "undue delay" standard under Rule 15, Plaintiffs' motion fails utterly.

### B.     In Any Event, the Proposed Amendment Is Futile

Even if the Court were to overlook Plaintiffs' untimeliness and lack of diligence, the Court should disallow the proposed amendment with respect to the 1976 Ely Agreement, as it irreconcilably conflicts with the Memorandum Opinion and fails to state a claim in any event, and is therefore futile.

1.     *The Proposed Amendment Is Futile Because It Directly Conflicts with the Memorandum Opinion.*

In challenging Ely's previously-pled claim under the 1976 Ely Agreement, UMG advanced two arguments.  It first argued that so-called "gap grants" (*i.e.*, grants executed prior to January 1, 1978, respecting works created on or after January 1, 1978), are not terminable under Section 203, because the clear statutory language limits application of Section 203 to grants "executed...on or after January 1, 1978."  17 U.S.C. § 203(a).  ECF Doc. 50 at 24-28; ECF Doc.

50 at 13-15.  Alternatively, UMG argued that even if Section 203 applied to works *created* after January 1, 1978, regardless of the date of execution of the grant, Plaintiffs' FAC and Ely's corresponding termination notice referred solely to the date his works were "released" or "published," and thus did not satisfy this alternative requirement either.  ECF Doc. 50 at 27; ECF Doc. 50 at 15.

The Court granted UMG's motion and dismissed Ely's claim on the latter basis, expressly reserving any decision on the former.  Memorandum Opinion at 22 (noting that "the Court need not address [the former argument] here").  The Court granted the motion because, "[a]ssuming *arguendo* that the Court adopted the Copyright Office's view [that as to gap grants, Section 203 may apply to works created after January 1, 1978], the termination notice must still contain the requisite information." *Id.* at 23.  The Court acknowledged that Ely's termination notice, however, "includes only the publication date," and "is thus insufficient."  *Id.*

The Court also noted the possibility that the Ely works at issue may have been recorded in 1977.  The Court observed that if that date were correct, then the omission of the date from the termination notice would be "a harmless error, but outside the scope of Section 203." *Id.* at 24.  On the other hand, if "the date [were] incorrect" (*i.e.*, the works were created in or after 1978), then "the termination notice is invalid because the 'creation date' is not alleged, inhibiting UMG's ability to determine which grant and work Ely seeks to terminate."  *Id.*

In the proposed SAC, Plaintiffs have dropped one of Ely's works (*Honky Tonk Masquerade*), apparently conceding that it was created in 1977, but have attempted to reassert claims based on two other albums (*Down on the Drag* and *Live Shots*) that they allege were recorded pursuant to the 1976 Ely Agreement but created in or after 1978.  In so doing, the proposed SAC directly conflicts with this Court's prior finding that, as to such works, "the termination notice is invalid because the 'creation date' is not alleged." *Id.*  Plaintiffs do not dispute, because they cannot, that a valid termination notice is a necessary condition to effectively terminating a grant under Section 203.  *See* 17 U.S.C. § 203(a) (identifying conditions to termination, including service of a compliant notice of termination); § 203(b)(6) (stating that

"[u]nless and until termination is effected under this section, the grant, if it does not provide otherwise, continues in effect for the term of copyright provided by this title").  Nor do they challenge, because they cannot, the Court's prior finding that Ely's termination notice was "insufficient" and "invalid."

In short, Plaintiffs' proposed SAC in this respect is a collateral attack regarding an issue already considered and resolved against them by the Court.  Such an effort to relitigate is necessarily futile and leave should therefore be denied.  *See, e.g., Kwan v. Schlein,* No. 05 CIV. 0459 (SHS) (JCF), 2008 WL 506337, at *1 (S.D.N.Y. Feb. 21, 2008) (denying motion to amend to advance a previously-considered and rejected claim "as 'an untimely motion for reconsideration' of the decision on the motion to dismiss") (internal citations omitted).

> 2.  *In Any Event, The Proposed Amendment Is Futile Because It Fails to State a Claim.*

Alternatively, the Court should disallow Plaintiffs' proposed claim based on the 1976 Ely Agreement for the same good reason advanced by UMG in its motion to dismiss, which the Court did not previously reach:  Section 203 applies only to grants "executed . . . on or after January 1, 1978," 17 U.S.C. § 203(a), and it is undisputed that the 1976 Ely Agreement was executed in 1976.  *See* FAC ¶ 42 (alleging that "Ely entered into a recording agreement with MCA Records, Inc., a predecessor of UMG, in 1976"); *see also* ECF Doc. 50 at 24-28; ECF Doc. 59 at 13-15.

In its Memorandum Opinion, the Court noted that the Copyright Office has suggested that gap grants are nonetheless terminable under Section 203.  *See* Memorandum Opinion at 22 (citations omitted).  The Copyright Office reached this conclusion by interpreting the term "executed" to mean not only the signing of a grant, but also the creation of a corresponding work (such that a grant is not "executed" until the work that is the subject of the grant is created).  *Id.* However, because the Copyright Office's "interpretation" conflicts with the plain language of the statute (as well as its legislative history), it cannot stand.

In interpreting and applying a statute, a court must begin with the statutory text.  *Chevron*

15

*U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778 (1984). If the language is clear, then that is the end of the inquiry, and courts "must give effect to the unambiguously expressed intent of Congress." *Id.*; *see also Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) (holding that the inquiry "begin[s] and end[s] . . . with the text, giving each word its 'ordinary, contemporary, common meaning'") (citation omitted); *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62, 122 S. Ct. 941, 956 (2002) (noting that Supreme Court has "stated time and again" that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," and that "[w]hen the words of a statute are unambiguous, then, this first canon is also the last:  judicial inquiry is complete").  Only if the court determines that the language is unclear does it then consider whether and to what extent the Copyright Office's interpretation is entitled to deference. *See WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275 (2d Cir. 2012) (identifying factors to be considered in determining the proper amount of deference, if any, that is owed if statutory language is unclear).

Here, the term "executed" is unambiguous.  Where a term is not expressly defined by a statute, that term must be construed "in accordance with its ordinary or natural meaning." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 476, 114 S. Ct. 996, 1001 (1994).  The traditional definition of "executed" is "([o]f a document) that has been signed." BLACK'S LAW DICTIONARY (Bryan A. Garner ed., 10th ed. 2014).  Indeed, in multiple sections of the Copyright Act, "executed" is used synonymously with "signed."[7]  "The normal rule of statutory construction [is] that identical words used in different parts of the same Act are intended to have the same

---

[7] *See, e.g.*, 17 U.S.C. § 111(e)(1)(D) (requiring that "an owner or officer of [a] cable system execute[] an affidavit"); *id.* § 204(a) (stating under the heading "*[e]xecution* of transfers of copyright ownership," "[a] transfer of copyright ownership . . . is not valid unless an instrument of conveyance . . . is in writing and *signed* by the owner") (emphasis added); *id.* § 205(a) (authorizing recordation of a document pertaining to copyright "if the document filed for recordation bears the actual signature of the person who executed it"); *id.* § 406(a)(2) (referring to recordation of "a document executed by the person named in [a copyright] notice"); *id.* § 512(h)(4) (authorizing issuance of a subpoena based upon a sworn declaration if "the proposed subpoena is in proper form, and the accompanying declaration is properly executed"); *id.* § 903(c)(1) (authorizing recordation of a document pertaining to a mask work "if the document filed for recordation bears the actual signature of the person who executed it").

meaning." *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 203 n.6 (2d Cir. 2008)

(quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 562, 115 S. Ct. 1061 (1995)).

Likewise, the legislative history supports the traditional interpretation of "executed,"

namely, to mean the date on which the parties signed the contract.  For example, in discussing

Section 203 terminations, the legislative history includes an example of how the time limitations

would work:

> The effective date of termination . . . is required to fall within the 5 years
> following the end of the applicable 35- or 40-year period. . . .  As an example of
> how these time-limit requirements would operate in practice:
>
> Case 1:  Contract for theatrical production *signed* on September 2, 1987.
> Termination of grant can be made to take effect between September 2, 2022 (35
> years from *execution*) and September 1, 2027 (end of 5 year termination period).

H.R. REP. No. 94-1476 at 126 (emphasis added).  By calculating the accrual date from the date

the contract was signed, Congress clearly intended for the signature date to be the date of

execution.  Moreover, in further discussing the application of Section 203, Congress used the

terms "execution of the grant" and "signing of the contract" interchangeably:

> As an exception to this basic 35-year rule, the bill also provides that "if the grant
> covers the right of publication of the work, the period begins at the end of 35
> years from the date of publication of the work under the grant or at the end of 40
> years from the date of *execution of the grant*, whichever term ends earlier." This
> alternative method of computation is intended to cover cases where years elapse
> between the *signing of a publication contract* and the eventual publication of the
> work.

*Id.* (emphasis added).  Indeed, in this example, Congress actually makes clear that "execution" of

the grant means the date of the signing of the contract.

Further, in a report submitted to Congress in the years leading up to the Copyright Act of

1976, the Copyright Office also interpreted "executed" to mean the agreement's signature date.

In the report, the Copyright Office provided the following example pertaining to terminations:

> Take, for example, a case in which a book-publication *contract is signed* on July
> 1, 1970 while the book is in the process of being written, and in which publication
> does not take place until May 1, 1976.  Since the grant covers the right of first
> publication, the 5-year period during which the contract could terminate would
> begin on July 1, 2010 (40 years from *the date of execution*) rather than on July 1,
> 2005 (35 years from *the date of execution*). . . .

HOUSE COMM. ON THE JUDICIARY, 89TH CONG., 1ST SESS., COPYRIGHT LAW REVISION PART 6: SUPPLEMENTARY REPORT OF THE REGISTER OF COPYRIGHTS ON THE GENERAL REVISION OF THE U.S. COPYRIGHT LAW:  1965 REVISION BILL, at 73-74 (1965) (emphasis added) (*See* ECF Doc. 51-12).  Thus, at least in 1965, the Copyright Office believed that the date of execution was the date the contract was signed, even as to works that were later created.  Moreover, in a guide dated just after Congress enacted the Copyright Act of 1976, the Copyright Office explicitly considered an example concerning a grant where a "publishing company, on July 1, 1977, makes a contract with [a] Novelist for a new book," but "[t]he book is not written until July 20, 1979." GENERAL GUIDE TO THE COPYRIGHT ACT OF 1976, U.S. COPYRIGHT OFFICE, at 6:6 (1977), *available at* https://www.copyright.gov/reports/guide-to-copyright.pdf.  The Copyright Office concluded that such a grant would not be eligible for Section 203 termination, confirming that such grants are not included under the statute.  *Id.*

Court decisions are in accord.  For example, in *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005), the Ninth Circuit used the terms "executed" and "signed" interchangeably in a case concerning parallel terminology in Section 304.  The court found that because a grantor "*signed* on April 1, 1983 a more lucrative deal," that "grant [wa]s not subject to termination under section 304(d) because it was not '*executed* before January 1, 1978,' as the statute expressly requires."  *Id.* at 1043 (emphasis added) (citing 17 U.S.C. § 304(d)).  Indeed, no court has held that the term "executed" as used in the Copyright Act's termination sections means anything other than "signed," nor would the plain language of the statute support such a construction.[8]

---

[8] Even if the Court were to conclude that the statutory language is ambiguous, and thus consider whether and to what extent it should defer to the views of the Copyright Office, the outcome is the same.  Rather than warranting deference, the Copyright Office has expressly stated that it intends to defer to *courts* and *Congress* as to the proper interpretation of the term "executed," and thus proper resolution of the so-called "gap grant" issue.  *See* ANALYSIS OF GAP GRANTS UNDER THE TERMINATION PROVISIONS OF TITLE 17, at iii, U.S. COPYRIGHT OFFICE (Dec. 7, 2010), *available at* https://www.copyright.gov/reports/gap-grant-analysis.pdf); *see also* Memorandum Opinion at 22 ("[T]he Copyright Office noted that its decision to accept

As the Supreme Court has stated, copyright cases do not involve "a free-ranging search for the best copyright policy, but rather 'depend[] solely on statutory interpretation.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) (quoting *Mazer v. Stein*, 347 U.S. 201, 214, 74 S. Ct. 460 (1954)). Indeed, the Supreme Court unanimously reiterated the principle that courts must hew to the Copyright Act as written by Congress, regardless of whether the Act is working precisely as Congress intended or as courts or the Copyright Office believe it should. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019); *see also* Memorandum Opinion at 21 (citing *Fourth Estate* for this same proposition). Unless and until Congress amends Section 203, courts must follow its plain meaning, which precludes Plaintiffs' proposed revived claim based on the 1976 Ely Agreement. Leave should be denied on that basis as well.

## III.    THE COURT SHOULD DENY LEAVE TO AMEND AS TO PLAINTIFFS' ATTEMPT TO REINSTATE THEIR CLAIM FOR DECLARATORY RELIEF

In its Memorandum Opinion, the Court stated that "[t]he Declaratory Judgment Act bestowed a 'broad grant of discretion' on district courts to determine whether to exercise jurisdiction over an action for declaratory judgment." Memorandum Opinion at 16, quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). Concluding that it is unclear how declaratory relief in this action would help achieve the objectives to be served by such relief, the Court exercised its discretion to dismiss Plaintiffs' declaratory relief claim. Memorandum Opinion at 16-17. Plaintiffs attempt to resuscitate that claim in their proposed SAC, asserting that they have now included "detailed factual allegations" that support the Court's exercise of discretion in favor of considering it. While the proposed SAC is certainly longer than the FAC, ballooning from 86 paragraphs to 334, it decidedly is not "directly tailored to meet the Court's concerns" (Pl. Mem. at 13), but instead is no more supportive of the Court's exercise of discretion in favor of retaining jurisdiction over the declaratory relief claim than was

---

recordation of termination notices for gap grants was 'without prejudice to how a court might ultimately rule on whether the document is a notice of termination within the scope of Section 203.'") (citation omitted).

the deficient FAC.

In their memorandum, Plaintiffs cite a litany of "facts" from the proposed SAC in support of their request for declaratory relief, suggesting that the inclusion of these allegations should make the difference between considering the declaratory relief claim and dismissing it.  *See* Pl. Mem. at 12.  But *virtually all* of these allegations also appeared in the FAC – whereas they are now collected in paragraphs 328 through 332 of the proposed SAC, they were previously scattered across paragraphs 4, 5, 23, 25, 26, 71, 73, 83, 84, and 86 of the FAC, but they were there nonetheless.  Indeed, Plaintiffs' parting salvo in support of their repackaged claim – that in the absence of declaratory relief, defendants ostensibly will "be allowed to destroy the value and ultimate salability of the subject sound recordings, in direct contradiction of the second chance guaranteed by the Copyright Act," ECF Doc. 74-2 ¶ 331– comes almost *verbatim* from the FAC. *See* FAC ¶ 86 (same but for the use of the word "ultimate").  And just as the Court appropriately resolved not to exercise its discretion in favor of retaining the declaratory relief claim in that pleading, so too should it reject Plaintiffs' undisguised attempt to reargue in favor of that failed claim in the SAC.

Perhaps the only truly "new" allegations in the proposed SAC relating to the declaratory relief claim are the thrice-made assertion that many putative class members are over sixty years old, ECF Doc. 74-2 ¶¶ 329(a)(v), 331, 332, and speculation that declaratory relief may aid in estate planning.  The age range of the putative class was presumably apparent to the Court in dismissing the declaratory claim from the FAC (given the references to artists and works from the 1970's and 1980's and the statutory thirty-five year period before termination can be effected, *see* 17 U.S.C. § 203(a)(3)), and therefore provides no basis for a different outcome here.  And the surmise regarding estate planning is nonsensical.  As the Court previously noted, resolution of the various discrete issues identified in the proposed SAC does not and cannot ensure that UMG may not assert additional grounds to reject any given termination notice, or that UMG would (or would elect not to) exploit any particular sound recording following an effective date of termination.  In other words, to the extent there is uncertainty affecting a putative class

member's estate planning (beyond the inherent and substantial uncertainty in attempting to value intellectual property rights in any event), that uncertainty would not be fully and finally addressed through Plaintiffs' putative declaratory relief claim.[9]

The cases that Plaintiffs cite provide them no aid, as most do not even consider the question of whether the court should exercise its discretion in favor of retaining a declaratory relief claim. Instead, *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 467 (S.D.N.Y. 2010), *aff'd in part, vacated in part*, 726 F.3d 119 (2d Cir. 2013), considered solely whether the declaratory relief claim of defendants was "the mirror image" of Marvel's declaratory relief claim, and should therefore be dismissed as "duplicative or redundant." Finding that it was not, the court denied Marvel's motion to dismiss. *Id.* at 466-68. The court did not consider or address the discretionary aspect of the Declaratory Judgment Act. The out-of-circuit opinion in *Justice v. Ice King Enterprise LLC*, No. 14-cv-01767-WHO, 2015 WL 576693 (N.D. Cal. Feb. 10, 2015), merely considered whether to enter a default judgment on a declaratory relief claim, and its discussion was therefore limited to whether the plaintiff had stated a claim for such relief. *Id.* at *5, *7. Likewise, the out-of-circuits decisions in *Century of Progress Productions. v. Vivendi S.A., et al.*, No. cv-16-7733 DMG (ASx), 2018 WL 4191340, *14-*15 (C.D. Cal. Aug. 28, 2018), and *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015) considered the jurisdictional question of ripeness, not the prudential issue of the district court's discretion to decline to hear a declaratory relief claim. Finally, while the court in *Museum of Modern Art v. Schoeps*, 549 F. Supp. 2d 543 (S.D.N.Y. 2008), did reference the discretionary aspect of declaratory relief claims, that case is inapposite. There, Schoeps claimed ownership of two paintings in the plaintiff museum's collection, but it was not clear whether or when Schoeps

---

[9] Plaintiffs also suggest that putative class members are prejudiced by having to wait until after the effective dates of termination have passed "to license their copyrights, or otherwise exploit their rights." Mem. at 15. But that is a consequence not of any action taken by UMG, but of the dictates of Section 203 itself, which provides that prior to the effective date of termination, the terminating party may enter into an agreement to make a further grant *only* with the original grantee or its successor in title, and not with any other person. *See* 17 U.S.C. § 203(b)(4).

21

would take action on that claim, *i.e.*, there was no time certain that would trigger a claim by either party against the other.  Here, in contrast, Syd Straw's termination notice sets forth a specific effective date of termination in 2024.  If Capitol exploits the *Surprise* album after that date, then Straw will have a putative infringement claim when her arguments regarding the agreement can be raised and resolved.  There is simply no need or basis for earlier declaratory relief.

In sum, the Court appropriately exercised its discretion to dismiss Plaintiffs' declaratory relief claim, and the do-over proposed SAC provides no basis for the Court to alter its determination.  The Court should deny Plaintiffs leave to reinstate their claim for declaratory relief.

## IV.   THE COURT SHOULD DENY LEAVE TO AMEND AS TO BELATEDLY ADDING MORE NAMED PLAINTIFFS

Plaintiffs next seek to add three additional plaintiffs, Steve Wynn, Dennis Mehaffey, and David Pellis, who were members of a band called The Dream Syndicate.  Although Plaintiffs assert that joinder of an additional party is governed by Rule 21 of the Federal Rules of Civil Procedure (Pl. Mem. at 7 n.5), which provides that the court may "on just terms, add or drop a party," courts generally rely upon the standards of Rule 15 and 16 in applying this rule.  *See, e.g.*, *Sly Magazine, LLC v. Weider Publications LLC*, 241 F.R.D. 527 (S.D.N.Y. 2007); *see also Emengo v. Stark*, 774 F. App'x 26 (2d Cir. 2019) (applying Rule 16 "good cause" standard in affirming denial of motion for leave to add parties, where movant had been aware of their identities for over a year).  As with the bulk of Plaintiffs' other proposed amendments, Plaintiffs cannot remotely establish good cause for the delay in seeking to include Wynn, Mehaffey, and Pellis as named plaintiffs.

Plaintiffs clearly knew of these three putative class members prior to filing the original complaint in this action:  their termination notice was dated March 1, 2016 (nearly three years before this action was filed), and it was purportedly served by Plaintiffs' counsel Evan Cohen.  *See* ECF Doc. 74-2 at p. 145 of 155.  Moreover, the effective date of the notice was May 8, 2019,

before Plaintiffs filed their FAC in this action (in which they added several other named plaintiffs). In light of the Rule 16 standard addressed above, Plaintiffs have not demonstrated, and cannot demonstrate, the diligence required to establish good cause for this amendment. Moreover, Plaintiffs' sole justification for adding Wynn, Mehaffey, and Pellis as named Plaintiffs at this very late date is that the Dream Syndicate Plaintiffs "serve an important role in buttressing the claims alleged by other Plaintiffs," (Pl. Mem. at 8), which cannot be the case, as Plaintiffs insist throughout that their proposed revived claims require no such buttressing; the Dream Syndicate Plaintiffs are surplusage.

By contrast, UMG would be prejudiced by the amendment adding new named Plaintiffs at this late juncture. At the time briefing is completed on Plaintiffs' present Motion, just over five weeks will remain before the close of all discovery, and the parties are already planning substantial deposition activity and remaining discovery throughout the month of June. Adding at least three additional depositions, along with related document discovery, in the limited time remaining would impose an undue burden on UMG, particularly balanced against Plaintiffs' inexplicable delay in seeking to add these individuals as named plaintiffs. Thus, whether considered under any or all of Rule 15, Rule 16, and/or Rule 21, Plaintiffs' proposed amendment to include Wynn, Mehaffey, and Pellis as new named plaintiffs should be denied.

## V.   ANY AMENDMENT TO ADD CAPITOL AS A DEFENDANT MUST NOT BE PERMITTED TO PREJUDICE UMG

Finally, Plaintiffs seek leave to name Capitol as a defendant. As noted above, the proposed addition of a party is governed by Rule 21's "just terms" standard, along with reference to Rules 15 and/or 16. While there is no question but that Plaintiffs have inordinately delayed in seeking to name Capitol, UMG does not oppose the addition of Capitol, so long as it is done on the "just terms" contemplated by Rule 21. UMG respectfully submits that two such "terms" are appropriate here.

First, if the SAC is permitted to the extent of adding Capitol as a defendant, Plaintiffs should be required to plead articulable separate classes (or at least subclasses) as to each of UMG

and Capitol.  Although UMG and Capitol are affiliated, they are separate companies, each of which owns a distinct universe of sound recordings.  More importantly, although UMG and Capitol are *currently* affiliated, that was not the case in the 1970s and 1980s, when the agreements underlying Plaintiffs' claims were executed.  On the contrary, the respective predecessors of UMG and Capitol that existed at that time were not affiliated, but rather were competitors, with separate personnel, separate contracts, and separate policies.

Second, Plaintiffs should not be permitted to use their delay in seeking to add Capitol as a defendant to justify a further extension of the schedule in this action.  While UMG has long advised Plaintiffs of its willingness to consider an amendment to add Capitol, Plaintiffs elected not to proceed with such a proposed amendment until nearly the end of the (already extended) discovery deadline and pretrial proceedings set by this Court.  While UMG remains willing to agree to the addition of Capitol as reflected herein, UMG also has an interest in prompt resolution of the case, and would be prejudiced by further delay (*e.g.*, if the discovery period were extended and/or resolution of the case were delayed).  *See, e.g.*, *Sly Magazine, LLC v. Weider Publications LLC*, 241 F.R.D. 527 (S.D.N.Y. 2007) (prejudice may include reopening or extending fact discovery).

Indeed, Plaintiffs acknowledge in their supporting memorandum:  "The parties are well-equipped to complete discovery."  (Pl. Mem. at 9)  UMG respectfully requests that the Court hold Plaintiffs to that commitment, and that, to the extent the Court grants Plaintiffs leave to add Capitol, it condition that grant on maintaining the current pretrial and trial schedule.

## **CONCLUSION**

For the foregoing reasons, Defendant UMG respectfully submits that the Court should deny Plaintiffs' motion for leave to file a Second Amended Complaint consistent with UMG's

responses with respect to aspects of the proposed amendments as set forth hereinabove, and grant

UMG such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: New York, New York
      May 22, 2020

        SIDLEY AUSTIN LLP

      By:*/s/ Steven M. Bierman*
        Steven M. Bierman
        sbierman@sidley.com
        Melanie Berdecia
        mberdecia@sidley.com
        SIDLEY AUSTIN LLP
        787 Seventh Avenue
        New York, NY 10019
        Telephone: (212) 839-5300
        Facsimile: (212) 839-5599

        Rollin A. Ransom
        rransom@sidley.com
        Lisa M. Gilford
        lgilford@sidley.com
        Lauren De Lilly
        ldelilly@sidley.com
        SIDLEY AUSTIN LLP
        555 West 5th Street, Suite 4000
        Los Angeles, CA 90013
        Telephone: (213) 896-6000
        Facsimile: (213) 896-6600

        Richard S. Mandel
        rsm@cll.com
        Thomas Kjellberg
        txk@cll.com
        COWAN, LIEBOWITZ & LATMAN, P.C.
        114 West 47th Street
        New York, NY 10036-1525
        Telephone:  (212) 790-9200
        Facsimile:  (212) 575-0671

        *Attorneys for Defendant UMG Recordings, Inc.*

25