## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN WAITE, an individual; JOE ELY, an individual; KASIM SULTON, an individual; SUSAN STRAW HARRIS p/k/a SYD STRAW, an individual; LEONARD GRAVES PHILLIPS, an individual, STAN SOBOL a/k/a STAN LEE, an individual, and ISRAEL CABALLERO, an individual; and on behalf of all others similarly situated,<br><br>                                         Plaintiffs,<br><br>       v.<br><br>UMG RECORDINGS, INC., a Delaware corporation, and DOES 1 through 10,<br>                                         Defendants. | Civil Action No. 1:19-cv-01091-LAK |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

                                                                                                                                                           **Page**

I.     INTRODUCTION .................................................................................................................1

II.    THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO FILE THE SAC ................1

         A.     The Joinder of The Dream Syndicate Plaintiffs Are Not "Surplusage" And UMG Has Failed to Establish Any Undue Burden or Prejudice Caused By Their Prompt Joinder ........................................................................................................2

         B.     Plaintiffs Seek to Add Capitol, at UMG's Behest, to Avoid a Long-Running Discovery Dispute ................................................................................................2

         C.     Waite and Ely Have Viable Claims Based on Their Direct, Personal Grants. ...................................................................................................................4

         D.     Ely Has Viable Claims Based on Sound Recordings That Were Created After January 1, 1978 ............................................................................................7

         E.     Plaintiffs Allege Sufficient Additional Facts to Warrant Prompt Declaratory Relief. ...................................................................................................................8

III.   CONCLUSION..................................................................................................................10

## I.   INTRODUCTION

Defendant UMG Recordings, Inc. ("UMG") opposes the filing of Plaintiffs' Second Amended Complaint ("SAC") by engaging in misdirection and mischaracterization. <u>First</u>, UMG argues that the joinder of three additional named Plaintiffs (who comprise the musical group, The Dream Syndicate) is mere "surplusage." Yet UMG cannot dispute that these Plaintiffs have viable infringement claims and that UMG will suffer no prejudice from their joinder. <u>Second</u>, UMG mischaracterizes the reason for the joinder of Capitol Records, LLC ("Capitol") and seeks to argue "undue delay" based on the passage of a few months – all while UMG refused to produce documents corroborating its unsubstantiated assertions. <u>Third</u>, UMG advances a demonstrably flawed interpretation of the Court's March 31, 2020 Memorandum Opinion ("March 31 Opinion") and distorts the basis for the clarifying amendments made on behalf of Waite and Ely. Both have asserted viable claims. <u>Fourth</u>, Ely has alleged facts supporting viable claims based on sound recordings that were created after January 1, 1978. <u>Fifth</u>, UMG consciously disregards the additional factual allegations Plaintiffs have made in support of prompt declaratory relief.  Stripped of its self-serving rhetoric, UMG's Opposition merely amounts to a further delay tactic to try to slow the progress of this case. None of the proposed amendments change the scope of the claims in this class action lawsuit. Leave to amend should be granted expeditiously so that the parties can complete class-wide discovery, engage in prompt class certification proceedings and prepare for trial.

## II.   THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO FILE THE SAC.

Justice requires that the Court grant Plaintiffs' Motion and permit them to file the SAC.  There is no undue delay, no bad faith and no history of vexatious conduct on the part of Plaintiffs.  Nor is there any prejudice to Defendants, let alone any unfair prejudice.  As Plaintiffs have explained, the amendments reflect the passage of time, the benefit of certain discovery, an attempt to avoid certain discovery disputes, clarifying amendments following the Court's March 31 Opinion and factual

amendments to address the Court's *sua sponte* concerns about declaratory relief. It is of no consequence whether viewed under the rubric of Rule 15 or Rule 16.[1] Plaintiffs have presented good faith grounds for their proposed amendments. They have acted appropriately and diligently. And, there is more than "good cause" for the amendments sought.

### A. The Joinder of The Dream Syndicate Plaintiffs Are Not "Surplusage" And UMG Has Failed to Establish Any Undue Burden or Prejudice Caused by Their Prompt Joinder.

UMG does not dispute that The Dream Syndicate Plaintiffs have alleged viable copyright infringement claims against it in the proposed SAC. These Plaintiffs do not have any "loan-out company" issues. They were not UMG employees. UMG is indisputably the current grantee. They submitted a timely and valid Notice of Termination. UMG never responded. Yet, UMG continued to exploit the works and infringe their copyrights. SAC ¶¶ 276-299. These Plaintiffs sought to serve as class representatives after the Court issued its March 31 Opinion. Their documents are minimal, warranting less than two days of depositions. This is hardly a joinder that causes a massive company like UMG "undue burden." UMG has utterly failed to substantiate any professed burden or prejudice.

### B. Plaintiffs Seek to Add Capitol, at UMG's Behest, to Avoid a Long-Running Discovery Dispute.

UMG repeatedly has obstructed and/or stonewalled discovery and withheld responsive documents, notwithstanding admitting that it has possession, custody and/or control of the necessary documents.[2] As the parties were meeting and conferring attempting to resolve these discovery issues

---

[1]   The Court's decision in *In re Bank of New York Mellon Corp. Forex Transactions Litigation*, 2014 WL 4494158 (S.D.N.Y. Sept. 4, 2014), does not compel a different analysis. That case involved a complex MDL with multiple cases from different jurisdictions. The plaintiffs there had filed at least five prior amended complaints. Notably, discovery in the cases had been going on for several years before the Court issued its May 17, 2013 order directing any amendments by July 1, 2013. Then, on September 12, 2013, the Court issued a scheduling order that did not contemplate any further amendments. *Id.* at *2-3.

[2]   Universal Music Group – a group of various record labels including UMG and Capitol – has centralized ownership, control, and operations that are highly integrated, such that UMG's public website describes and holds out the various record labels as being part of the "Group" and directs *all notices* – including termination notices for all the labels – to UMG at the address of its business and legal affairs department in California. SAC ¶¶ 24-40.

in March and early April concerning UMG's stonewalling and continued foot dragging with respect to document production, the Court issued its March 31 Opinion. Thereafter, Plaintiffs promptly determined that they would seek leave to amend and provided UMG with their proposed SAC within approximately three weeks. While UMG's counsel made assertions in December 2019 about what they contended should be done regarding Capitol, they failed to produce any documents substantiating or corroborating their unverified contentions. No organizational chart was produced. No corporate transaction document was ever provided. Nothing. Plaintiffs still have not received a single document from UMG supporting its contention that Capitol is the current grantee of certain copyrights or otherwise showing that Plaintiffs "had sued the wrong defendant," as UMG contends. And, UMG and Capitol certainly did not deign to provide any such documents to the recording artists when they acquired their various predecessors-in-interest. To this day, UMG continues to withhold substantial responsive documents and data within its possession, custody and control, including documents about so-called "Capitol" artists.

Nevertheless, recognizing that Plaintiffs would seek to amend on other issues and attempting to avoid seeking the Court's intervention regarding UMG's discovery tactics, Plaintiffs decided to join Capitol, as UMG's counsel suggested. Nothing about the joinder of Capitol prejudices UMG – UMG, Capitol and their affiliate have known of the claims and scope of this case since it was filed. UMG and Capitol use the same lawyers and other UMG employees/representatives to deny valid termination notices and they insist that the notices of termination be sent to UMG's legal department. *See* SAC at ¶¶ 29-31; 35-36. Moreover, Plaintiffs have detailed the extensive and substantial intertwining of UMG and Capitol in their proposed Second Amended Complaint. *Id.* at ¶¶ 24-40.[3]

---

[3] UMG's attempt to "condition" joinder of Capitol amendments on its demands are without authority or any legitimate basis. ECF No. 75 at pp. 23-24. Moreover, UMG has acted as the centralized agent denying the valid termination notices for the various affiliated labels. SAC ¶¶ 35-42. To the extent that Defendants

3

UMG's claims of delay only highlight the fact that it is UMG's failure to comply with its discovery obligations along with UMG's incessant foot-dragging that has slowed the prosecution of this case. Indeed, UMG still has not produced all responsive documents for the Plaintiffs and Class Members in response to Plaintiffs' First Request for Production served on May 6, 2019 and initially "responded to" on October 14, 2019.  And, UMG has not produced a single document or piece of data responsive to Plaintiffs' Second Request for Production of Documents and Plaintiffs' First Set of Interrogatories served on March 12, 2020, and "responded to" on May 4, 2020.  Defendant UMG had committed to produce additional, critical financial information by May 15, 2020, then by May 22, 2020.[4]  But UMG has not met its commitment, still has not produced the requested data and apparently believes that it will gain some tactical advantage by its continued foot-dragging and obstinance.  If a final attempt at resolving these issues is unsuccessful, Plaintiffs will be filing a motion to compel.

### C.  Plaintiffs Waite and Ely Have Viable Claims Based on Their Direct, Personal Grants.

Plaintiffs could not have been clearer that they are not seeking to "circumvent," "collaterally attack" or "end run" the Court's March 31 Opinion.  They repeatedly made this clear in their Memorandum and proposed SAC.[5]  The Court's March 31 Opinion dismissed Waite and Ely's claims "based on grants transferred by third parties."  ECF No. 68 at 24.  The Court also dismissed "Ely's claim related to his 1976 agreement for sound recordings that were created prior to January 1, 1978."

---

produce documents that necessitate subclasses or modification of Plaintiffs' proposed classes, Plaintiffs can readily address such issues in connection with their motion for class certification.  Neither the Court nor Plaintiffs should be manipulated as UMG demands.  This is especially so when UMG has failed to produce any supporting documents and has been far from forthcoming in meeting its discovery obligations.

[4]  The parties stipulated to the change of the expert disclosure deadline from May 1 to June 1, 2020 because, among other things, UMG had not timely produced essential financial information and data that had been requested by Plaintiffs.  Plaintiffs' good faith cooperation with UMG has been met with further stonewalling and UMG's failure to meet its commitments.

[5]  Contrary to UMG's contention, Plaintiffs expressly do not seek to resurrect any Waite or Ely claims based on grants transferred by third parties.  *See* Exs. 1-2, p. 2 n. 1, ¶ 64 n.2, ¶ 178 n. 4.  Likewise, Plaintiff Ely does not seek to resurrect his claim related to his 1976 agreement for sound recordings that were created prior to January 1, 1978.  *Id.* ¶ 178 n. 4.

*Id*.  The Court was very careful and specific in describing the limited claims of Waite and Ely that were being dismissed.  The Court did not dismiss "all" claims alleged by Waite and Ely.  Nor did the Court dismiss Plaintiffs Waite and Ely as parties to this case.  The Court made clear that UMG's motion was "denied in all other respects." *Id.*

Ignoring the actual language of the March 31 Opinion, UMG argues that the Court "effectively" dismissed "all claims of John Waite and Joe Ely."  ECF No. 75 at p. 1.  UMG cannot identify any language in the March 31 Opinion supporting its revisionist and self-serving interpretation of the Court's rulings.  UMG itself put into the record the recording agreements and other documents, including the inducement letters and declarations.  While it is accurate that Plaintiffs' amendments seek to clarify and elucidate the direct, primary grants made by Waite and Ely, there is no doubt that these grants were not made by or "transferred by third parties."  Neither UMG nor Capitol can claim any prejudice by such clarifying amendments, particularly when they (or their predecessors) demanded these direct, personal grants to ensure they could exploit the works for more than thirty years.

As explained by Plaintiffs, Waite and Ely provide extensive and detailed factual allegations in the proposed SAC demonstrating the existence of their direct, personal grants to Defendants.  Exs. 1-2, SAC ¶¶64-176, 177-226.  They also explain the lack of any bona fide employment relationship with Defendants and the specific reasoning why, factually, Defendants demanded these independent direct grants while seeking to create a "work made for hire" artifice.  *See, e.g., id.* ¶¶ 72, 74, 76-84, 188-206.  Specifically, because Defendants recognized that the "work made for hire" language alone is insufficient to establish that a work is, in fact, made for hire, and that the yet-to-be created sound recordings may not qualify as "work made for hire" in the absence of a bona fide employment relationship, Defendants (or their predecessors-in-interest) demanded and obtained several provisions that effectuated direct personal grants by Waite and Ely of the copyrights in and to the sound

5

recordings. *See, e.g., id.* ¶¶ 72-78, 76-84, 108-113, 136-140 194-199, 202-207.  Moreover, Defendants (or their predecessors) insisted on these direct grants because they needed to ensure that the recording artists would render the musical performance services.

UMG's strenuous protestations that there were only third-party grants made is belied by the record that Defendants themselves created.  Specifically, for example and as detailed in paragraph 102 of the SAC, the declaration made by Waite, which was demanded by the record company, "provided in paragraph B that, notwithstanding the 'work made for hire' language added to the Agreement to create the artifice described above, Waite agreed '***to the extent, if any, that I may deemed an "author" of any Work, I grant and assign*** to EMIA [Capitol] all exclusive right, title and interest in and to such Work throughout the universe, including, but not limited to, all rights of the owner of copyright specified in 17 U.S.C. §106.'"  ECF No. 74, proposed SAC, ¶102, Ex. 2 (emphasis added).  This is a direct, personal grant – plain and simple.  Defendants demanded these grants for a reason – their "work made for hire" language was ineffective and thus they needed to obtain direct, personal grants from the recording artists.  What other purpose is there for the extensive inducement letters and declarations demanded by these record companies?  When Defendants' "work for hire" artifice is dismantled as factually unsupported, the only grants that exist to protect their 35-plus years of commercial exploitation of the works are the direct, personal grants or transfers by the artists.

Indeed, they knew that Waite and Ely (like the other recording artists) would be the authors of the sound recordings and the direct grants of rights were the only way to ensure that Defendants received the contemplated grants of the exclusive rights to the sound recordings that were being created by the artists.  *Id.*  Having enjoyed the benefits of certainty as to the effectiveness of these direct grants (for decades), Defendants cannot now disavow their existence or their effectiveness.  *Id.* ¶¶ 108-114, 135-136, 139-142, 173, 205-208.  Indeed, these detailed, factual allegations clarify or amplify

Plaintiffs' prior allegations and there can be no question that Plaintiffs previously advanced claims premised on these direct grants (ECF 56 at 24-25 (brief at pp. 18-19)), and the Court did not dismiss these claims by Waite and Ely.  ECF No. 68.

These direct, personal grants were executed by the authors – Waite and Ely – in conformity with the statutory language of 17 U.S.C. § 203(a) and, therefore, they have exercised valid statutory termination rights and their termination notices sufficed to terminate the prior grants.  Accordingly, Defendants' continued exploitation of the works at issue after the effective dates of termination give rise to cognizable copyright infringement claims.  Plaintiffs Waite and Ely's proposed amendments are not futile.  The amendments are more than sufficient to state a claim upon which relief can be granted premised on these direct grants and justice requires that the Court grant Plaintiffs' Motion.  Moreover, given the similar amendments made on behalf of the other Plaintiffs – amendments that UMG does not oppose or say anything about – there is no real benefit or fairness to rejecting the claims as to Waite and Ely while allowing the amendments as to the other Plaintiffs.

### D. Ely Has Viable Claims Based on Sound Recordings That Were Created After January 1, 1978.

Next, UMG argues mistakenly that Plaintiffs are attempting to "reinstate" Ely's dismissed claim under the 1976 Agreement.  ECF No. 75 at 13-14.  Once again, UMG seeks to change the Court's March 31 Opinion.  The Court dismissed only Ely's claim "related to the 1976 agreement for sound recordings that were created prior to January 1, 1978."  ECF No. 68 at p. 24.

Plaintiffs' proposed SAC details the direct, personal grants made by Ely with respect to the sound recordings that were created *after* January 1, 1978.  UMG admits that the SAC does so: "In the proposed SAC, Plaintiffs have dropped one of Ely's works (*Honky Tonk Masquerade*), apparently conceding that it was created in 1977, but have attempted to reassert claims based on two other albums (*Down on the Drag* and *Live Shots*) that they allege were recorded pursuant to the 1976 Ely Agreement

*but created in or after 1978*." ECF No. 75 at p. 14 (emphasis added).  *See also* proposed SAC at ¶¶ 178-180.  This concession, alone, acknowledges that these Ely claims related to *Down on the Drag* and *Live Shots* are outside of the Court's dismissal order.  The March 31 Opinion made it clear that, except for the limited dismissal of claims, UMG's motion was "denied in all other respects." ECF No. 68 at 24.[6]  Moreover, regardless of whether the recording agreements were created before January 1, 1978, these two works were created after 1977 and no prior grant could be effective until the work was fixed in a tangible medium of expression.  Therefore, these two works are subject to termination under section 203 of the Copyright Act, consistent with the Copyright Office's longstanding policy conclusion. ECF No. 56 at pp. 28-30.[7]

To the extent that UMG otherwise challenged the sufficiency of Plaintiffs' termination notices, the Court concluded that the alleged errors were harmless because it was "plausible that defendant can reasonably identify the grants and works plaintiffs seek to terminate." ECF No. 68 at p. 19. And, with respect to Ely, Plaintiffs have alleged additional viable infringement claims relating to the subsequent direct, personal grants made by Ely with respect to *Musta Notta Gotta Lotta* and *Hi-Res* – works that are *not* related to the 1976 Agreement and are *not* subject to any gap grant argument. SAC ¶¶ 182-208.

### E.  Plaintiffs Allege Sufficient Additional Facts to Warrant Prompt Declaratory Relief.

In its March 31 Opinion, the Court ruled *sua sponte* that it would exercise its discretion to deny Plaintiffs' request for declaratory relief.  ECF No. 68 at 15-17.  In the proposed SAC, Plaintiffs have substantively amended former paragraphs 84 through 86 of the First Amended Complaint with multiple, additional factual allegations to support the importance, efficacy, utility and necessity of

---

[6]     Because UMG distorts and ignores the actual language of the Court's March 31 Opinion, UMG's arguments that Plaintiffs are collaterally attacking, seeking an untimely reconsideration or relitigating a supposedly rejected claim are meritless and without any substance.

[7]     Ironically, as UMG falsely claims that Plaintiffs are seeking untimely reconsideration of the March 31 Opinion, it is UMG who offers 4 pages of "gap grant" re-argument, attempting to overthrow the Copyright Office.

declaratory relief. Declaratory relief is presently ripe, useful and necessary at this time because Defendants have repeatedly refused to honor Plaintiffs' *vested* rights and those of both Classes – hundreds of recording artists. In particular, in paragraphs 328, 329(i)-(vii), and 330 through 332 of the SAC, Plaintiffs allege the following detailed facts in support of declaratory relief:

- Plaintiff Straw and the members of Class B seek a present declaration that (a) their Notices of Termination are *valid*, (b) the dates of termination in the Notices are *effective*, (c) their termination rights *vested*, and (d) Defendants' disregard of their rights violates the Copyright Act (SAC ¶ 328);

- Plaintiffs and the class members' post-termination rights in the sound recordings became *vested* upon the *service* of the Notices of Termination (SAC ¶ 332);

- Defendants have engaged in substantially, identical conduct with respect to both Classes (SAC ¶ 329(i));

- Defendants have shown *no* willingness or intent to alter their behavior during this litigation absent a judicial order, judgment or declaration (SAC ¶ 329(i));

- Defendants' *primary* defense – that the sound recordings qualify as "works made for hire" – can be readily disposed of on a class-wide basis because Defendants are unable to prove the existence of bona fide employment relationships with Plaintiff Straw and the class members (SAC ¶ 329(ii));

- Defendants have created an actual and immediate disagreement with Plaintiff Straw and, on information and belief, members of Class B by accusing these recording artists of anticipatory breach of contract and/or asserting repudiation claims arising from Defendants' inclusion of "work made for hire" language and related representations in the underlying recording agreements (SAC ¶ 329(iii));

- Defendants have stated their clear intent *not* to honor the Notices of Termination served by Plaintiffs and class members (SAC ¶ 329(iv));

- Plaintiffs and class members – most of whom are well over 60 years of age – will be substantially aided in developing their estate plans with respect to their rights to the sound recordings in that there is a very real and genuine need to value the rights for purposes of their calculation of the gift and/or estate tax exemptions, depending on whether they make an *inter vivos* gift or a testamentary bequest to a beneficiary under his or her will (SAC ¶¶ 329(v), 331-332);

- Without the certainty of the requested declaratory relief, any estate or tax planning cannot be fully realized or relied upon, thereby causing present injury to Plaintiff Straw and the members of Class B (SAC ¶¶ 330-332); and

- The requested declaratory relief would determine in all material respects and/or completely the validity of the Notices of Termination, the effective dates of termination and the vesting of the termination rights (SAC ¶¶ 329(vi)).

UMG does virtually nothing to address these detailed and relevant factual allegations. Plaintiffs' rights (and those of the members of the Classes) *vested* upon the service of their Notices of Termination. § 203(b)(2). Such vesting was not contingent upon or affected by UMG's actions. Thus, the post-termination rights to recapture the economic benefits of the copyrights belong to the Plaintiffs and the members of the Classes now and they should be permitted to seek a declaration of the parties' respective rights. In this concrete and specific respect, Plaintiffs and Class A members who have current copyright infringement claims have an identical interest as Plaintiff Straw and Class B members do – to vindicate and protect their vested federal rights.

UMG's dismissive assertion that these factual allegations were previously made is simply inaccurate. The Court can discern this fact for itself by reviewing the "redline" of the proposed amendments and Plaintiffs need not address UMG's disdainfulness concerning the genuine estate planning problems created by UMG's wrongful conduct. And, in any event, the applicable standard of review requires these facts be accepted as true and all inferences construed in Plaintiffs' favor. UMG has utterly failed to distinguish Plaintiffs' allegations from those in Plaintiffs' cited cases.

The Court's *sua sponte* ruling derived from its evaluation of the ripeness of declaratory relief – a decision that is necessarily *without* prejudice – and is quintessentially the type of situation for which the Court should grant Plaintiffs leave to amend. UMG's own conduct has created this concrete, ripe and specific dispute that warrants declaratory relief now to enable Plaintiff Straw and Class B members to vindicate these important federal rights.

### III.   CONCLUSION

For all the reasons discussed above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Leave to Amend and permit the filing of the Second Amended Complaint.

Date: May 29, 2020

**BLANK ROME LLP**

By:  /s/Ryan E. Cronin

Ryan E. Cronin
Roy W. Arnold
David M. Perry
Gregory M. Bordo
1271 Avenue of the Americas
New York, NY 10020
Telephone (212) 885-5000

**COHEN MUSIC LAW**
Evan S. Cohen
Maryann R. Marzano
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
Telephone: (310) 556-9800

*Attorneys for Plaintiffs*