UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                                         :
JOHN WAITE, an individual; JOE ELY, an                   :   No. 1:19-cv-01091(LAK)
individual; KASIM SULTON, an individual;                 :
SUSAN STRAW HARRIS p/k/a SYD STRAW,                      :
an individual; LEONARD GRAVES PHILLIPS,                  :
an individual; STAN SOBOL a/k/a STAN LEE,                :
an individual; and ISRAEL CABALLERO, an                  :
individual; and on behalf of all others similarly        :
situated,                                                :
                                                         :
                                  Plaintiffs,            :
                                                         :
                    v.                                   :
                                                         :
UMG RECORDINGS, INC., a Delaware                         :
corporation doing business as Universal Music            :
Group, and DOES 1 through 10,                            :
                                                         :
                                  Defendants.            :
---------------------------------------------------------X


**DEFENDANT UMG RECORDINGS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
RECONSIDERATION OF AUGUST 10, 2020 MEMORANDUM OPINION (ECF NO. 89)**

**Table of Contents**

Page(s)

INTRODUCTION ...................................................................................................1

LEGAL STANDARD...............................................................................................2

ARGUMENT ...........................................................................................................2

    A.    The First Possible Interpretation Violates Principles of Statutory Construction .............3

    B.    The Second Possible Interpretation Is Inconsistent with Legislative History and May Invalidate Certain Termination Notices........................................................5

    C.    If the Court Does Not Reconsider Its Ruling, UMG Requests That The Court Clarify Its Interpretation of Section 203 ................................................10

CONCLUSION.......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Dorfman*,
  239 F.3d 415 (2d Cir. 2000) ............................................................................................ 2

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) ..................................................................................................... 7

*Medisim Ltd. v. BestMed LLC*,
  No. 10-cv-2463, 2012 WL 1450420 (S.D.N.Y. Apr. 23, 2012) ....................................... 2

*Penguin Group (USA) Inc. v. Steinbeck*,
  537 F.3d 193 (2d Cir. 2008) ............................................................................................ 5

*In re Platinum & Palladium Antitrust Litig.*,
  No. 1:14-CV-9391-GHW, 2020 WL 1503538 (S.D.N.Y. Mar. 29, 2020) ......................... 2

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
  137 S. Ct. 1002 (2017) .................................................................................................... 7

**Statutes**

17 U.S.C. § 203(a) ............................................................................................... *passim*

**Other Authorities**

Local Civil Rule 6.3 ..................................................................................................... 1, 2

HOUSE COMM. ON THE JUDICIARY, 89TH CONG., 1ST SESS., COPYRIGHT
  LAW REVISION Part 6 (1965) ........................................................................................ 6

## <u>INTRODUCTION</u>

Defendant UMG Recordings, Inc. ("UMG") respectfully submits this memorandum of law in support of its motion for reconsideration, pursuant to Local Civil Rule 6.3, with respect to one discrete aspect of the Court's Memorandum Opinion of August 10, 2020 (ECF No. 89, the "Memorandum Opinion"), granting in part Plaintiffs' motion for leave to file a Second Amended Complaint.

In Section IV of the Memorandum Opinion, addressing Plaintiff Joe Ely's ("Ely") claims under his 1976 agreement (the so-called "gap grant" issue), the Court "conclude[d] that works created on or after January 1, 1978 pursuant to agreements entered into before that date are terminable under Section 203."  Mem. Op. at 15-16.  UMG respectfully submits that the Court's analysis leading to this conclusion is subject to at least two possible interpretations, but neither adheres to controlling principles of statutory construction.  Instead, the Court's analysis either requires the same basic word ("executed" or "execution") to be interpreted differently at different points within Section 203 itself, and/or to be interpreted in a manner plainly inconsistent with the meaning intended by Congress.  Furthermore, at least one interpretation conflicts with the approach historically adopted by *both* artists and UMG, and would have the impact of invalidating termination notices as untimely, including at least one served by Plaintiffs' counsel in this action.

For these reasons, UMG respectfully requests that the Court reconsider its ruling granting Plaintiffs' motion to amend their complaint to include claims based on Ely's 1976 agreement. The construction advanced by UMG – that the date of execution of a putative grant under Section 203 is the date that putative grant is signed – is the interpretation of the statute that complies with principles of statutory construction, aligns with Section 203's legislative history, matches the routine conduct and understanding of both artists and UMG, and *avoids* creating the

untimeliness issue implicated by the Court's prior ruling. UMG therefore requests that the Court deny Plaintiffs' motion to amend as to Ely's claims under his 1976 agreement. In the alternative, UMG requests that the Court provide the parties with clarification as to the Court's intended interpretation of Section 203, so that they may account for that interpretation as they move forward in the litigation.

## LEGAL STANDARD

Motions for reconsideration are governed by Local Civil Rule 6.3, which requires that the moving party set forth the matters that counsel believes the Court has overlooked. The decision to grant a motion for reconsideration is "'committed to the sound discretion of the district court.'" *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-CV-9391-GHW, 2020 WL 1503538, at *26 (S.D.N.Y. Mar. 29, 2020) (citations omitted); *see also Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000) ("A district court has broad discretion in determining whether to grant a motion to alter or amend the judgment."). Such a motion is appropriate where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Medisim Ltd. v. BestMed LLC*, No. 10-cv-2463, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks omitted). A motion for reconsideration may also be granted to "correct a clear error or prevent manifest injustice." *Id.*

## ARGUMENT

In the Memorandum Opinion, the Court held that "in the context of Section 203's applicability to gap grants, 'execute' does not unambiguously mean 'to sign.'" Mem. Op. at 15. The Court stated that "execute" could also mean to "'put completely into effect,'" and that "[i]f a work does not exist when the parties enter into a transfer or assignment agreement, there is no copyright that an artist . . . can transfer, assign or, in other words, 'put into effect.'" *Id.* (quoting

2

Merriam-Webster.com, https://www.merriam-webster.com/dictionary/execute).  The Court further stated that "it seems unlikely that Congress intended to preclude authors from having [a termination right] simply because they 'signed' grants for works created in the 'gap' caused by the interaction between Sections 203 and 304."  *Id.*  The Court therefore "conclude[d] that works created on or after January 1, 1978 pursuant to agreements entered into before that date are terminable under Section 203."  *Id.* at 15-16.  However, the Court also included a footnote stating:

> For the sake of clarity, this is not a conclusion that "executed" is synonymous with "created" within the meaning of Section 203. . . . Instead, the analysis is limited to the question of how to determine whether an execution date falls "on or after January 1, 1978."

*Id.* at 16 n.52.

As explained below, the Court's holding is subject to two possible interpretations, but these interpretations violate principles of statutory construction, conflict with legislative history, and/or give rise to both legal and practical adverse consequences for artists (among others), including in determining which artists and sound recordings are members of the putative class and whether putative effective dates of termination are valid under Section 203(a)(3).  UMG therefore respectfully requests that the Court reconsider, or at a minimum clarify, its holding on these issues.

**A.    The First Possible Interpretation Violates Principles of Statutory Construction.**

The first possible interpretation of the Court's holding is that the statute's reference to "execution" of a grant incorporates consideration of the timing of creation of a work *only* in determining whether Section 203 is applicable (*i.e.*, for purposes of the introductory paragraph of Section 203(a)), but not for other purposes (*e.g.*, in calculating when a grant may be terminated pursuant to Section 203(a)(3)).  However, such an interpretation would violate settled and

controlling principles of statutory construction, and overlooks the interplay between two related provisions of Section 203.

Reference to the date on which a grant transferring a copyright is executed appears twice in Section 203. The first is in the opening paragraph of Section 203(a), which establishes a condition on the application of the Section 203 termination right – namely, it limits that termination right to a grant "executed by the author on or after January 1, 1978." 17 U.S.C. § 203(a). It was this portion of Section 203 on which the Court focused in its ruling. However, reference to the date of execution of the grant appears again later in the statute, where the statute establishes the timing requirements for termination of such a grant:

> Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the *date of execution of the grant*; or, if the grant covers the right of publication of the work, the period begins at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the *date of execution of the grant*, whichever term ends earlier.

17 U.S.C. § 203(a)(3) (emphases added).

Footnote 52 in the Memorandum Opinion suggests that the Court intended its holding to apply solely to the first use of the term "executed," but not to the later reference to "execution of the grant." However, at least a portion of the Court's stated rationale – that a transfer ostensibly cannot be "put into effect" (or "executed") until the work is created – would seem to apply equally to both references in Section 203. Under the Court's rationale, a grant is not "executed," and thus there is no "date of execution of the grant," until the underlying work is created. Accordingly, and in light of this stated rationale, there is no reasoned basis to interpret Section 203's two references to execution of the grant differently.[1]

---

[1] In the case of the Ely album *Live Shots*, for example, such an interpretation would lead to the incongruous result that the putative grant was "executed" in February 1980 when the album was recorded, but the "date of execution"

Moreover, such an interpretation would violate "[t]he normal rule of statutory construction that identical words used in different parts of the same Act are intended to have the same meaning." *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 203 n.6 (2d Cir. 2008) (quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 562, 115 S. Ct. 1061 (1995)).  While UMG acknowledges that the terms "executed" (in the first portion of Section 203(a)) and "execution of the grant" (in Section 203(a)(3)) are not "identical," there is absolutely no indication – in the statutory language, in the legislative history, or in any of the commentary – that Congress intended these variants of the same word "execute" to have a different meaning.  Stated simply, Section 203 authorizes termination of a "grant . . . executed by the author on or after January 1, 1978," and provides that "[t]ermination of the grant may be effected" a certain number of years "from the date of execution of the grant."  17 U.S.C. § 203(a).  There is simply no basis to interpret these two references in Section 203 to the date on which a grant is executed differently.[2]

### B.  The Second Possible Interpretation Is Inconsistent with Legislative History and May Invalidate Certain Termination Notices.

The foregoing conclusion leads to the other possible interpretation of the Court's holding, *i.e.*, that at least with respect to a work that is not yet in existence at the time a grant is signed, the term "executed" or "date of execution" is necessarily tied to the date of creation, *both* in determining the applicability of Section 203 and in implementing its provisions as to the timing of termination of a grant.  However, this interpretation is also unsustainable, as it is inconsistent

---

of that same putative grant was in 1976, when the agreement was signed.  *See* Proposed SAC (ECF No. 74-2) ¶¶ 177, 180.

[2] Another possible interpretation may be that the Court intends the terms "executed" and "execution of the grant" to mean the date of the creation of the work *only* as to so-called "gap grants," but not as to grants signed after January 1, 1978.  That interpretation – in which the same word *in the same precise spot* in the statute means different things as applied to different authors and works – would clearly transgress the statutory interpretation principles articulated above; indeed, UMG is aware of *no* authority that would permit such an "interpretation."

with Section 203's legislative history and with the directives of the Supreme Court on interpreting and applying the Copyright Act.  In addition, the Court may have inadvertently overlooked, or simply not appreciated, the practical and legal impact that such a ruling would have.

First, the Court's holding conflicts with the legislative history of Section 203.  In the years leading up to the Copyright Act of 1976, the House Judiciary Committee commissioned a series of reports on a proposed comprehensive revision to the copyright law.  One such report addressed the timing provisions ultimately adopted in Section 203(a)(3).  As noted above, Section 203(a)(3) provides alternative means of calculating the date on which termination of a grant may be effected when a grant covers the right of publication of the work:  "the period begins at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier." 17 U.S.C. § 203(a)(3).

The report made clear that, *even in the case of a work that was not yet completed*, the "date of execution" did not "roll" with the creation of the work, and instead referred solely to the date on which the grant was signed.  Specifically, the report provided the following example:

> Take, for example, a case in which a book-publication contract is signed on July 1, 1970 while the book is in the process of being written, and in which publication does not take place until May 1, 1976. Since the grant covers the right of first publication, the 5-year period during which the contract could terminate would begin on July 1, 2010 (40 years from the date of execution) rather than on July 1, 2005 (35 years from the date of execution) or on May 1, 2011 (35 years from the date of publication).

HOUSE COMM. ON THE JUDICIARY, 89TH CONG., 1ST SESS., COPYRIGHT LAW REVISION Part 6, at 74-75 (1965) (ECF No. 39-8).[3]  If Congress intended or understood that

---

[3] The draft of the Copyright Act at the time of this 1965 report contemplated that Section 203 would apply to grants executed on or after January 1, 1967, hence the reference to a contract signed in 1970.

"execution" first required the creation of a completed work, this example simply would not exist – it would instead refer to the date of execution as the date on which the book (which was still "in the process of being written" on July 1, 1970) was completed. That it nonetheless identified July 1, 1970 as the "date of execution" renders the second possible interpretation of the Court's ruling unsustainable.

Second, while the Memorandum Opinion appears to be substantially influenced by what the Court believes to be Congress's intent in light of the "'broader context' of Section 203" (*i.e.*, to provide at least certain authors with the "opportunity to share in the economic success of [their] works decades later"), Mem. Op. at 15, UMG respectfully submits that the Court's ruling departs from the Supreme Court's recent teaching respecting the role of courts in interpreting statutory provisions.

Although the Court suggests that "Congress did not intend for 'execute,' as used in [Section 203], to mean 'sign,'" *id.*, the contemporaneous evidence is that that is precisely what Congress intended, *see id.* at 14-15 (noting that "'executed' is used synonymously with 'signed' in other parts of the Copyright Act, and the legislative history reveals that Congress used 'execution of the grant' and 'signing' interchangeably"). While it is true that in so doing, Congress (perhaps unintentionally) created a "gap" as to the terminability of certain grants, the Supreme Court has made clear that it is not the role of courts to "revise . . . congressionally composed text," even when "the statutory scheme has not worked as Congress likely envisioned." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019); *see also Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) (quoting *Mazer v. Stein*, 347 U.S. 201, 214, 74 S. Ct. 460 (1954)) (explaining that copyright

cases do not involve "a free-ranging search for the best copyright policy, but rather 'depend[] solely on statutory interpretation'").  That role is for Congress, and Congress alone.

In addition, assuming the second interpretation of the Memorandum Opinion reflects the Court's intended holding, the Court may have overlooked the practical impact of that ruling.  If "execution of the grant" is not complete until "creation" of the work, then it is likely that the Court's ruling has rendered a number of termination notices (including notices served on UMG by Plaintiffs' counsel) invalid.

For example, the recording artist John Patitucci served a termination notice on UMG respecting sound recordings made pursuant to an agreement between Mr. Patitucci and GRP Records, Inc. (a UMG predecessor).  A true and correct copy is attached as Exhibit A.  The notice, which was prepared and sent on Mr. Patitucci's behalf by Evan Cohen, one of Plaintiffs' counsel in this action, identifies September 14, 1987 as the "Date of Execution of Contract" for each of five listed albums that were subsequently created and published over a period of nearly seven years.[4]

One of the listed works is an album entitled *Another World*, with a publication date of August 2, 1993, and a putative effective date of termination of September 15, 2027.  Mr. Cohen and Mr. Patitucci apparently arrived at the 2027 termination date by selecting the earlier of *2028* (which is 35 years after the date of publication in 1993), and *2027* (which is 40 years after the agreement was signed in 1987).  Assuming without conceding that the recording agreement contains a terminable grant, this approach is consistent with the plain language of Section 203(a)(3): "the period [for the effective date of termination] begins at the end of thirty-five years

---

[4] The referenced recording agreement was actually signed effective August 17, 1987, not September 14, 1987. Regardless, this notice clearly reflects that Plaintiffs' own counsel understands the "date of execution" to refer to when the contract was entered into, rather than when the works were created.

from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier." 17 U.S.C. § 203(a)(3).

However, if the 40-year window is calculated using the date of *creation* instead of the date the agreement was signed (as the Court's interpretation suggests), then 35 years from the date of publication would almost certainly be the "earlier" date for determining when termination may be effected.  Although the notice does not identify a date of creation, *Another World* was the fourth of Mr. Patitucci's albums released by GRP, and thus likely created long after the agreement was signed in 1987 and shortly before the album was published in 1993.  If, for example, the album was created in 1992, then the earliest permissible effective date of termination would be calculated based on the publication date, rather than the "execution" (*i.e.*, creation) date, and would be in 2028:  35 years after the 1993 date of publication is *2028*, while 40 years after the 1992 date of creation is *2032*.  Mr. Patitucci's notice as to *Another World*, which identifies the effective date of termination as *2027*, would therefore be invalid.  UMG raises this example because the Court may have overlooked that its holding could extend the time before which an author can terminate (or purport to terminate) a putative grant of copyright, and could render certain previously-served notices invalid.

The interpretation of Section 203 advanced by UMG – namely, that the words "execute" and "execution" as used in Section 203 refer to the date a grant is signed – would resolve the issues identified above.  This interpretation complies with principles of statutory construction, including in light of Congress' synonymous and interchangeable use of "executed" and "signed" both in other parts of the Copyright Act and in the legislative history associated with Section 203.  *See* ECF No. 75 at 21-23.  It would also avoid the (perhaps unintended) consequence of invalidating certain previously-served termination notices that relied on a contract's "execution"

9

(*i.e.*, signature) date in calculating the effective date of termination.  For these reasons, UMG respectfully requests that the Court reconsider that limited portion of its Memorandum Opinion granting Plaintiffs' motion to amend their complaint to include claims based on Ely's 1976 agreement, and instead deny Plaintiffs' motion in that regard.

**C.     If the Court Does Not Reconsider Its Ruling, UMG Requests That The Court Clarify Its Interpretation of Section 203.**

In the alternative, UMG requests that the Court clarify its interpretation of Section 203 as it relates to the terms "executed" and "execution of the grant."  Such clarification is necessary to aid *all* parties in determining, among other things, which artists and sound recordings may be within the putative class, and whether the purported effective date of termination selected by each artist as to each sound recording is valid in light of the provisions of Section 203(a)(3).  For example, to the extent the Court's interpretation of the phrase "date of execution of the grant" in that section necessarily includes consideration of the date of creation of the work, such an interpretation would require proof of such date of creation in *each* instance and as to *each* sound recording in a termination notice.  Clarification would also aid artists and lawyers who intend to serve termination notices in the future.  Nearly all of the notices received by UMG under Section 203 calculate the putative effective date of termination based upon the date the relevant agreement was signed or the publication date of the work at issue – not the date of creation.  To allow preparation of compliant Section 203 termination notices, and to allow UMG to reliably evaluate the validity of such notices, clarification of the Court's ruling would be both useful and valuable.

<u>**CONCLUSION**</u>

For the foregoing reasons, UMG respectfully requests that the Court reconsider its order granting Plaintiffs' motion to amend their complaint to include claims based on Joe Ely's 1976

agreement, or alternatively, clarify its ruling as to the meaning of Section 203 as it relates to the

date of execution of a grant.

Dated:  New York, New York
        August 24, 2020

                                        Respectfully submitted,

                                        SIDLEY AUSTIN LLP

                                        By:____/s/ Steven M. Bierman____
                                        Steven M. Bierman
                                        sbierman@sidley.com
                                        SIDLEY AUSTIN LLP
                                        787 Seventh Avenue
                                        New York, NY 10019
                                        Telephone: (212) 839-5300
                                        Facsimile: (212) 839-5599

                                        Rollin A. Ransom
                                        rransom@sidley.com
                                        Lisa M. Gilford
                                        lgilford@sidley.com
                                        Lauren M. De Lilly
                                        ldelilly@sidley.com
                                        SIDLEY AUSTIN LLP
                                        555 West 5th Street, Suite 4000
                                        Los Angeles, CA 90013
                                        Telephone: (213) 896-6000
                                        Facsimile: (213) 896-6600

                                        Richard S. Mandel
                                        rsm@cll.com
                                        Thomas Kjellberg
                                        txk@cll.com
                                        COWAN, LIEBOWITZ & LATMAN, P.C.
                                        114 West 47th Street
                                        New York, NY 10036-1525
                                        Telephone:  (212) 790-9200
                                        Facsimile:  (212) 575-0671

                                        *Attorneys for Defendant UMG Recordings, Inc.*

11