**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN WAITE, an individual; EARLE R. ELY, JR. p/k/a JOE ELY, an individual; KASIM SULTON, an individual; SUSAN STRAW HARRIS p/k/a SYD STRAW, an individual; LEONARD GRAVES PHILLIPS, an individual; STAN SOBOL a/k/a STAN LEE, an individual; STEVE WYNN, an individual; DENNIS MEHAFFEY p/k/a DENNIS DUCK, an individual; and DAVID PELLISH p/k/a DAVE PROVOST, an individual, on behalf of themselves and all others similarly situated,<br><br>                                        Plaintiffs,<br>         v.<br><br>UMG RECORDINGS, INC., a Delaware corporation doing business as Universal Music Group; CAPITOL RECORDS, LLC, a Delaware limited liability company; and DOES 1 through 10,<br><br>                                        Defendants. | Civil Action No. 1:19-cv-01091-LAK |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT UMG RECORDING, INC.'S MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................................2

III.   APPLICABLE LEGAL STANDARD ................................................................................3

IV.    ARGUMENT: UMG'S MOTION FOR RECONSIDERATION SHOULD BE DENIED .......4

       A.   UMG Has Failed to Assert Any Grounds for Reconsideration That Satisfy the
            Requirements of Local Rule 6.3 or Applicable Caselaw..................................4

       B.   UMG Asserted Its "First Possible Interpretation" Argument in *Two* Prior
            Briefs Citing the Same Cases ...........................................................................5

       C.   UMG's "Second Possible Interpretation" Argument is Unpersuasive and
            Attempts to Sow "Confusion" Where None Exists ..........................................6

       D.   The Court Need Not "Clarify Its Interpretation of Section 203," As UMG
            Suggests ............................................................................................................8

V.     CONCLUSION.............................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. Dorfman*,
　239 F.3d 415 (2d Cir. 2000) ..................................................................................................... 3

*Grand Crossing, L.P. v. U.S. Underwriters Ins. Co.*,
　No. 03-CV-5429 (RJS), 2008 WL 4525400 (S.D.N.Y. Oct. 6, 2008) ....................................... 3

*Gustafson v. Alloyd Co., Inc.*,
　513 U.S. 561 (1995) .................................................................................................................. 5

*Medism Ltd. v. Best Med LLC*,
　No. 10-CV-2463 (SAS), 2012 WL 1450420 (S.D.N.Y. Apr. 23, 2012) .................................... 3

*Montanile v. Nat'l Broad. Co.*,
　216 F. Supp. 2d 341 (S.D.N.Y. 2002) ....................................................................................... 3

*Penguin Group (USA) Inc. v. Steinbeck*,
　557 F.3d 193 (2nd Cir. 2008) ................................................................................................... 5

*Shrader v. CSX Transp., Inc.*,
　70 F.3d 255 (2d Cir. 1995) ....................................................................................................... 3

*Star Athletica, LLC v. Varsity Brands, Inc.*,
　137 S.Ct. 1002 (2017) ............................................................................................................... 6

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
　820 F. Supp. 2d 558 (S.D.N.Y. 2011) ....................................................................................... 3

*United States v. Treacy*,
　No. 08-CR-366 (RLC), 2009 WL 47496 (S.D.N.Y. Jan. 8, 2009) ............................................ 3

**Other Authorities**

Fed. R. Civ. P. 59(e) ........................................................................................................................ 3

Local Civil Rule 6.3 .................................................................................................................... 1, 3

## I.     INTRODUCTION

In granting in part and denying in part Plaintiffs' Motion for Leave to File their Second Amended Complaint ("Plaintiffs' Motion to Amend"), the Court expressly considered the opposition arguments raised by Defendant UMG Recordings, Inc. ("UMG"). ECF No. 89. Defendant UMG now asks the Court to "reconsider, or at a minimum clarify, its holding" on the "gap grant" issue. ECF No. 91 at p. 5. In arguing that the Court "overlooked" its arguments, UMG merely rehashes or repackages the same gap grant arguments UMG made in support of two prior motions to dismiss and in opposition to Plaintiffs' Motion to Amend. ECF No. 50 at p. 24-28; ECF No. 75 at 13-19. Contrary to UMG's mischaracterizations, the Court did not "overlook" UMG's arguments. The Court succinctly and soundly rejected UMG's gap grant arguments. ECF No. 89 at pp. 14-16. Thus, UMG has utterly failed to meet the heightened burden required to seek reconsideration under Local Civil Rule 6.3 and the stringent Southern District standard.

Moreover, UMG's newest spin in the form of so-called "practical considerations" is based on extraneous material that was neither part of the record nor appropriately considered in connection with Plaintiffs' Motion to Amend. Indeed, the material UMG submits (improperly) is an obvious red herring and does not even involve a gap grant issue. UMG's Motion for Reconsideration amounts to nothing more than a thinly veiled request for an advisory opinion concerning an absent class members' claim. Notwithstanding UMG's desperate portrayals, UMG's gap grant arguments seek to eviscerate certain Section 203 termination rights so as to reduce UMG's exposure. UMG's arguments are designed to sow confusion where none exists. While UMG may disagree with the Court's decision because it is unfavorable to UMG's position, that is no basis for reconsideration or clarification. Accordingly, the Court should deny UMG's Motion for Reconsideration as procedurally and substantively flawed.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 5, 2019, Plaintiffs John Waite and Joe Ely filed their two-count, putative class action complaint against Defendant UMG. *See* ECF No. 1. Plaintiffs Waite and Ely asserted claims for copyright infringement and declaratory relief. In response, UMG filed a motion to dismiss. *See* ECF No. 38. On June 5, 2019, Plaintiffs filed their First Amended Complaint adding Plaintiffs Kasim Sulton, Susan Straw Harris, Leonard Graves Phillips, Stan Sobol and Israel Caballero, as named plaintiffs. ECF No. 45. UMG responded on June 26, 2019 by filing a motion to dismiss as to the First Amended Complaint. ECF No. 50. The Court held oral argument on February 3, 2020. *See* ECF dated February 3, 2020. On March 31, 2020, this Court issued its Memorandum Opinion and Order granting in part and denying in part UMG's motion to dismiss. *See* ECF No. 68.

The Court's March 31 Order granted UMG's motion to dismiss solely as to: "(1) plaintiffs' request for declaratory relief; (2) Waite and Ely's claims based on grants transferred by third parties; and (3) Ely's claim related to his 1976 agreement for sound recordings that were created prior to January 1, 1978." ECF No. 68 at 24. The Court denied UMG's motion to dismiss "in all other respects." *Id.*

On May 8, 2020, Plaintiffs filed their Motion to Amend seeking permission to file their proposed Second Amended Complaint. ECF Nos. 73-74. In response, UMG filed a lengthy opposition, including extensive arguments seeking to preclude the assertion of claims with respect to so-called gap grants. ECF No. 75 at pp. 13-19. On August 10, 2020, the Court granted in part and denied in part Plaintiffs' Motion to Amend. ECF No. 89. In relevant part, the Court considered and overruled UMG's objections to the gap grants, concluding that "works created on or after January 1, 1978 pursuant to agreements entered into before that date are terminable under Section 203." *Id*. at 16.

In this case, UMG has repeatedly sought and failed to exclude gap grant works from the benefits of the Section 203 statutory termination right. Focusing on Plaintiff Joe Ely's claims (and those of

2

similarly situated putative class members), UMG has sought dismissal of such gap grant claims at each possible juncture. UMG first raised the issue in June 2019, devoting four (4) full pages to its arguments on the issue in its Memorandum in Support of UMG's Motion to Dismiss. ECF No. 50, at pp. 24-28. When the Court did not reach the gap grant issue in its March 31, 2020 Opinion (ECF No. 68 at p. 22), UMG next took the opportunity to extensively argue the gap grant issue over the course of more than five (5) pages in its Opposition Brief to Plaintiffs' Motion to Amend. ECF No. 75, at pp. 13-19. Dissatisfied with the Court's August 10, 2020 rejection of its gap grant arguments, UMG now seeks yet another bite at the apple.

### III. APPLICABLE LEGAL STANDARD

A motion for reconsideration is governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medism Ltd. v. Best Med LLC,* No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (quoting *Grand Crossing, L.P. v. U.S. Underwriters Ins. Co.*, No. 03-CV-5429 (RJS), 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008)). District courts "ha[ve] broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000). "The major grounds for justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

"The standard for granting [a motion for reconsideration] is strict, and [such a motion] will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 341 (S.D.N.Y. 2002) ("Reconsideration of a court's previous order

is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." (internal quotation marks omitted).  In short, Rule 59(e) and Local Civil Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *United States v. Treacy*, No. 08-CR-366 (RLC), 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (internal quotation marks omitted).

IV.   **ARGUMENT: UMG'S MOTION FOR RECONSIDERATION SHOULD BE DENIED.**

   A.   **UMG Has Failed to Assert Any Grounds for Reconsideration That Satisfy the Requirements of Local Rule 6.3 or Applicable Caselaw.**

The Court has considered UMG's prior arguments as to why it believes gap grants should not be subject to termination pursuant to Section 203 and has rejected them.  The Court's ruling treats works created on or after January 1, 1978 equally, regardless of whether the author entered into an agreement prior to January 1, 1978 evidencing an intent to effectuate a future assignment, transfer or grant.  Thus, the Court declined to create a carve-out for gap grants, concluding that to do so would be contrary to the statute and Congressional intent in granting authors this valuable statutory termination right.  In asking the Court to reconsider its latest ruling, UMG does not argue that there has been "'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" as required by the Second Circuit's decision in *Virgin Atl. Airways*.  Rather, UMG contends that the Court has "overlooked" certain arguments and, allegedly, that the Court's ruling is "subject to two possible interpretations" and therefore should be "reconsidered, or at a minimum clarify, its holding on these issues." ECF No. 91 at 6.

The record confirms that the Court has not "overlooked" UMG's arguments.  Indeed, UMG has made these same arguments before, devoting lengthy sections to these same issues in two previous briefs.  In each instance, UMG cited to basically the same line of cases and has asserted its views as to statutory construction. It is therefore inaccurate for UMG to argue that the Court has "overlooked"

these arguments. Now, in what constitutes its *third* brief on the gap grant issue, UMG submits its most lengthy attack on gap grants. Notwithstanding UMG's attempt to repackage its arguments in a slightly different way, there is nothing new about them presented here.

> B.  **UMG Asserted Its "First Possible Interpretation" Argument in *Two* Prior Briefs Citing the Same Cases.**

Ignoring other applicable rules of statutory construction relied upon by the Court, UMG argues once again that the Court's recognition of the termination right for gap grants would violate what UMG believes is a strict rule of statutory construction that provides that "identical words used in different parts of the same Act are intended to have the same meaning." ECF No. 91 at 8. In doing so, UMG cites to, and derives the same quotation from, the same two cases, *Penguin Group (USA) Inc. v. Steinbeck*, 557 F.3d 193 (2nd Cir. 2008), and *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 562 (1995), that it cited in two previous briefs; namely, its Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 50 at p. 25) and its Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 75 at p. 16-17).

There can be no doubt, however, that the Court considered and rejected UMG's arguments, ruling that Congress' use of the word "execute" in this context must have been intended to mean not just "the date of the documentation evidencing the intent to make a future grant, but, rather, when such grant achieves legal operation, namely, upon creation of the subject matter of the grant[.]" ECF No. 89 at pp. 15-16 (citation omitted).

Examining the statutory language and its context, and fully consistent with governing precedent and the undisputed purpose of the statutory termination provision, the Court has adopted a meaning of the word "execution" to address a specific issue in the context of the overall purpose of the statute. While also consistent with the U.S. Copyright Office's interpretation, the Court did not defer to the Copyright Office or its policy, but rather determined that works created on or after January 1, 1978

pursuant to agreements entered into before that date are terminable under Section 203. ECF No. 89 at 16. The Court rejected the manifestly unfair and counter-intuitive interpretation proffered by UMG. In doing so, the Court interpreted the language of Section 203 consistent with the overriding principle of copyright law that the work must *actually exist* before there can be a transfer or grant of the copyright to work. The Court's interpretation is one of first impression, but it is the only one that effectuates the clear intent of Congress when enacting Section 203. Indeed, UMG has never offered a persuasive reason why Congress would deprive certain authors the termination right merely based on the happenstance of when they may have entered into documentation evidencing an intent to make a future grant. The Court's recognition that all works created on or after January 1, 1978 are terminable is correct, logical and eminently well-reasoned.

   **C.**  **UMG's "Second Possible Interpretation" Argument is Unpersuasive and Attempts to Sow "Confusion" Where None Exists.**

In arguing that there exists a "Second Possible Interpretation" of the Court's ruling, UMG contends once again that the holding "conflicts with the legislative history of Section 203." ECF No. 91 at p. 6. UMG made this exact argument twice before, together with its "First Possible Interpretation" argument in its Motion to Dismiss (ECF No. 50, at p. 26) and in its Opposition to the Motion to Amend (ECF No. 75, at p. 16-17). There is nothing new in this repackaged argument. Indeed, UMG cites the same Congressional Report upon which it relied in the past and quotes the exact same paragraph (about a "book publication contract" from 1970) quoted in its two prior briefs. UMG also argues, for the third time, that such matters should not be taken up by the courts, but instead should be left to Congress, citing the same case. ECF No. 91 at p. 10-11, citing *Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S.Ct. 1002, 1010 (2017).

The only thing that is "new" is UMG's argument concerning the supposed "practical effects" of the ruling – effects that are apparently adverse to UMG because the Court rejected UMG's attempts

to truncate Section 203 termination rights for gap grant authors and thereby increased UMG's potential exposure. Specifically, in making its most recent argument, UMG has submitted (improperly) a Notice of Termination sent by Plaintiffs' counsel to UMG on August 28, 2019, for the recording artist James Patitucci (Motion, Ex. A), regarding works published from 1988 to 1995.[1] On its face, the Patitucci Notice of Termination does **not** involve any gap grant issue because the works at issue in his Notice were published at least ten years *after* any gap grant issue could arise. UMG does not assert that Mr. Patitucci entered into a recording agreement on or prior to December 31, 1977. Nor could UMG make any such assertion because the Patitucci Notice that UMG submitted expressly references the "Date of Execution of Contract" as September 14, 1987. ECF No. 91-1 at Schedule A.

In that Notice, Mr. Patitucci utilized both computations of time as authorized and defined in Section 203(a)(3), with regard to the selection of the effective date of termination. As set forth therein, that date is computed as being "at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant; or, if the grant covers the right of publication of the work, the period begins at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier."

Specifically, the Patitucci Notice terminates the grant of rights to five albums. The effective dates of termination for the first three are selected as being 35 years after publication. The effective dates of termination for the fourth and fifth albums were selected because those dates were after the 40th year after the date (which would be an *earlier* date than if the "35 years from publication" date

---

[1] UMG failed to cite any authority permitting it to submit this Notice of Termination in opposition to Plaintiffs' Motion to Amend. Mr. Patitucci is not a named Plaintiff. He is a member of Class B, the putative class seeking declaratory and injunctive relief. This procedural misstep by UMG alone is sufficient grounds to deny UMG's Motion for Reconsideration as it has nothing to do with the propriety of the named Plaintiffs' claims asserted in the Second Amended Complaint.

were used), as this Court has described it, "of the documentation evidencing the intent to make a future grant." Each of the effective termination dates conforms to the statutory text and none of the grants involves any gap grant issue.

### D. The Court Need Not "Clarify Its Interpretation of Section 203," As UMG Suggests.

Finally, UMG asserts, in the alternative, that the Court should "clarify" its interpretation of Section 203, "as it relates to" the terms "executed" and "execution of the grant." This is because, UMG believes, if the word "execution" means "creation of the work" in the gap grant context, UMG would be required to provide "proof of such date of creation in *each* instance as to *each* sound recording in a termination notice." ECF No. 91 at p. 10.

As an initial matter, UMG grossly mischaracterizes the Court's ruling on the gap grant issue. The overwhelming majority of the Notices of Termination do not involve any gap grants. First and foremost, Notices of Termination that list a date of a recording agreement or other grant on or after January 1, 1978 do not, obviously, involve gap grants. Those Notices of Termination that involve grants prior to January 1, 1978, are necessarily limited in nature because of the discrete time frame involved, and now, with the passage of time, are quite unlikely to be sent at this point in time, in late 2020. Grants of rights that are being terminated now, if the date to be utilized is 35 years after publication (plus a five-year window, less two years for notice) means that grants relating to any work first published prior to September 1982 can no longer be included in Notices of Termination. The chances of a 1982 work being created pursuant to a 1977 recording agreement are speculative, at best.

Ultimately, the clarity of the Court's ruling is plain, albeit adverse to UMG. The ruling constitutes a surgical and correct interpretation of the applicability of Section 203 to works created on or after January 1, 1978, regardless of any prior agreements, and is well aligned with legislative intent and the commensurate regulations. It does not redefine or rewrite the statute, nor does it succumb to

UMG's "parade of horribles." As such, UMG's contrived argument that it does should not entertained, and nothing UMG re-argues warrants reconsideration.

## V.     CONCLUSION

For all the reasons discussed above, Plaintiffs respectfully request that the Court deny UMG's Motion for Reconsideration. UMG has re-argued the same issue, added nothing substantively new to past arguments, and merely tries to create uncertainty where there is none.

Date: September 3, 2020

**BLANK ROME LLP**

By:  */s/ Ryan E. Cronin*

Ryan E. Cronin
Roy W. Arnold
David M. Perry
Gregory M. Bordo
1271 Avenue of the Americas
New York, NY 10020
Telephone (212) 885-5000

**COHEN MUSIC LAW**
Evan S. Cohen
Maryann R. Marzano
1180 South Beverly Drive, Suite 510
Los Angeles, CA  90035-1157
Telephone: (310) 556-9800

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

/s/ Ryan E. Cronin