UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JOHN WAITE, an individual; JOE ELY, an                      :  No. 1:19-cv-01091(LAK)
individual; KASIM SULTON, an individual;                    :
SUSAN STRAW HARRIS p/k/a SYD STRAW,                         :
an individual; LEONARD GRAVES PHILLIPS,                     :
an individual; STAN SOBOL a/k/a STAN LEE,                   :
an individual; STEVE WYNN, an individual;                   :
DENNIS MEHAFFEY p/k/a DENNIS DUCK,                          :
an individual; and DAVID PELLISH p/k/a                      :
DAVE PROVOST, an individual, on behalf of                   :
themselves and all others similarly situated,               :
                                                            :
                              Plaintiffs,                   :
                                                            :
                  v.                                        :
                                                            :
UMG RECORDINGS, INC.; CAPITOL                               :
RECORDS, LLC; and DOES 1 through 10,                        :
                                                            :
                              Defendants.                   :
------------------------------------------------------------X

**DEFENDANT UMG RECORDINGS, INC.'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**RECONSIDERATION OF AUGUST 10, 2020 MEMORANDUM OPINION (ECF NO. 89)**

Defendant UMG Recordings, Inc. ("UMG") respectfully submits this reply memorandum in support of its motion for reconsideration as to one limited aspect of the Court's August 10, 2020 Memorandum Opinion and Order (ECF No. 89, the "Memorandum Opinion"), to the extent it granted Plaintiffs' motion to amend their complaint to include claims based on Joe Ely's ("Ely") 1976 agreement, or alternatively, to clarify the Court's ruling as to the meaning of Section 203 as it relates to the date of execution of a grant.

A. **UMG Has Satisfied the Requirements of Local Rule 6.3.**

Rule 6.3 affords a court "broad discretion" to reconsider a prior order, including where there are "controlling decisions or data that the court overlooked" and to "correct a clear error" – "matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Medisim Ltd. v. BestMed LLC,* No. 10-cv-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012). The requirements of Local Rule 6.3 are readily satisfied here.

While Plaintiffs protest that UMG has previously raised the "gap grant" issue, that goes without saying – it would not be a motion to *re*consider if the matter had not previously been presented. Plaintiffs also dismissively assert that the Court "considered and rejected UMG's arguments," but the Memorandum Opinion did not address the interplay between the term "executed" in the introductory language of Section 203(a) and the phrase "execution of the grant" in Section 203(a)(3) (and the potential inconsistency stemming from the Court's ruling in this regard), nor did the Memorandum Opinion address the recent Supreme Court cases that UMG cited respecting the Court's role in "interpreting" the Copyright Act, *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019), and *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017). In short, Plaintiffs' opposition sidesteps the fact that, respectfully, the Memorandum Opinion: (a) appears to overlook both statutory language and Supreme Court decisions that conflict with the Court's ruling; and (b) itself gives

rise to ambiguity that cannot be squared with any proper reading of Section 203. Reconsideration is therefore entirely appropriate. *See Medisim Ltd.*, 2012 WL 1450420, at *2 (granting in part motion to reconsider order after "more fully" reviewing previously-identified materials and concluding that such materials adequately supported expert opinion); *see also In re: General Motors LLC Ignition Switch Litigation*, No. 14-MD-2543 (JMF), 2018 WL 1989572, at *1 (S.D.N.Y. Apr. 25, 2018) (reconsidering denial of summary judgment based on further consideration of previously-submitted evidence, "mindful of the particular importance in this litigation of making sure the Court's rulings are 'right' rather than final").

**B.      Plaintiffs Do Not (and Cannot) Defend the "First Possible Interpretation."**

In its opening memorandum, UMG noted that the Court's "gap grant" ruling is subject to two possible interpretations. While Plaintiffs do not expressly state which interpretation they believe the Court intended, it appears they favor the first-identified interpretation. *See* Opp. (ECF No. 96) at 6 (characterizing the second possible interpretation as "unpersuasive"). Under that construction, the statute's reference to "execution" of a grant incorporates consideration of the timing of creation of a work *only* in determining whether Section 203 is applicable (*i.e.*, for purposes of the introductory paragraph of Section 203(a)), but *not* for other purposes (*e.g.*, in calculating when a grant may be terminated pursuant to Section 203(a)(3)).

As set forth in UMG's opening memorandum, such a construction is fatally flawed: there is no basis for the conclusion that a form of the word "execute" means one thing in the introductory language of Section 203 (namely, the date of creation of a work), and something else entirely just three paragraphs later (namely, the date of documentation evidencing intent to make a future grant of a not yet created work). Plaintiffs neither explain nor defend this inconsistency because they cannot.

2

Plaintiffs assert that this outcome is (and was) supported by "[e]xamining the statutory language and its context," but the Memorandum Opinion manifests no such "examination," nor do Plaintiffs present one – indeed, neither the "gap grant" portion of the Memorandum Opinion nor Plaintiffs' opposition acknowledges Section 203's reference to the timing of the "execution of a grant" in Section 203(a)(3).  Plaintiffs also summarily contend that these differing interpretations of the same base word are "fully consistent with governing precedent," but conspicuously absent from their brief is citation to *any* such precedent – on the contrary, the only "governing precedent" is cited in *UMG*'s brief, and it is at odds with the approach taken in the Memorandum Opinion.  Finally, although Plaintiffs advance the notion that a "work must *actually exist* before there can be a transfer or grant of the copyright to work [sic]," Opp. at 6 (emphasis in original), they do not attempt to explain how or why that principle (if accurate) would apply solely to the *first* reference to "executed" in the introductory language of Section 203(a), but not to the *second* reference to "date of execution" in Section 203(a)(3).

In sum, the "First Possible Interpretation" falls under its own weight – there is no legitimate basis to interpret Section 203's two references to the timing of execution of a grant, mere lines apart in the statute, differently.

C.     **Plaintiffs Agree with UMG that the "Second Possible Interpretation" Is Unsustainable.**

The second possible interpretation referenced in UMG's opening memorandum is that the term "executed" or "date of execution" is necessarily tied to the date of creation, *both* in determining the applicability of Section 203 and in implementing its provisions as to the timing of termination of a grant.  UMG asserted that this interpretation (like the "first" interpretation) is unsustainable, and, at least in this respect, it appears that the parties agree:  Plaintiffs themselves characterize the "Second Possible Interpretation" as "[u]npersuasive."  *See* Opp. at 6.  Thus, to

3

the extent the "Second Possible Interpretation" is what the Court intended (recognizing the flaws in the "First Possible Interpretation"), then *both* parties agree that the Court's Memorandum Opinion should be reconsidered.

Plaintiffs nonetheless hurl a variety of attacks at UMG's arguments. Because Plaintiffs agree that the second interpretation (even if it is a *possible* construction of the Court's ruling) is legally unsupportable, these attacks are irrelevant and can be disregarded for that reason alone; however, they also fail on the merits. Plaintiffs first note that UMG previously cited certain of the authorities on which it relies in seeking reconsideration. However, the Memorandum Opinion did not refer to or analyze those authorities, prompting UMG's concern that the Court may have overlooked their significance. *See* Local Rule 6.3 (requiring that a party seeking reconsideration "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked").

Plaintiffs next complain that UMG "improperly" attached a Notice of Termination for recording artist John Patitucci. Nonsense. Plaintiffs *concede* that the notice was sent by one of Plaintiffs' counsel to UMG; they *concede* that Mr. Patitucci is a member of putative "Class B;" and they cannot dispute that the Notices of Termination sent by *all* putative class members are expressly referenced in and integral to the complaint. *See* Pls.' Proposed Second Am. Compl. (ECF No. 74-2), ¶ 47 (defining putative "Class B" as "[a]ll recording artists . . . who have served Defendants with Notices of Termination"); *see also id.* ¶ 6 (alleging that the named plaintiffs and "hundreds of other recording artists . . . have served Notices of Termination upon Defendants"); *see also Stoner v. Walsh*, 772 F. Supp. 790, 792, 796 (S.D.N.Y. 1991) (demand letters referenced in complaint deemed incorporated by reference and properly considered in connection with Rule 12(b)(6) motion); *cf. Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d. Cir. 2002) ("Even

where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotations and citation omitted).  In any event, UMG could have made the same points respecting timing under the "Second Possible Interpretation" using a hypothetical artist and hypothetical dates; the Patitucci notice is merely illustrative and demonstrates that the issue UMG raises is an actual one that would need to be resolved in this litigation, and not simply hypothetical.

Plaintiffs further assert that the Patitucci notice is irrelevant, ostensibly because it did not involve a "gap grant," but that exactly makes UMG's point.  The Court's Memorandum Opinion cannot conceivably be read to mean that the *exact same words* in the *exact same place* in Section 203 should be interpreted differently for different artists.  The terms "executed" and "date of execution" either require a created work or they do not.  If the Court intended the former, then that applies equally well to Mr. Patitucci and other non-gap grant artists.

Finally, Plaintiffs feel compelled to defend the timing calculation undertaken by their counsel in the Patitucci notice.  But as UMG previously demonstrated (and Plaintiffs do not dispute), that calculation is correct – and the notice timely – *only* if the "date of execution of the grant" refers *solely* to the date "'of the documentation evidencing the intent to make a future grant,'" Opp. at 8 (quoting Mem. Op. at 16), and *not* to the date of creation of the work, *see* Defs.' Mem. in Supp. of Mot. to Reconsider (ECF No. 91) at 8-9.  In other words, Plaintiffs' own defense of the Patitucci notice in fact is directly at odds with the Court's statement that execution of a grant does not occur until a work exists.  *See* ECF. No. 89 at 15.  Plaintiffs cannot have it both ways; their effort to defend the Patitucci notice illustrates the reason why UMG has brought this aspect of the Memorandum Opinion to the Court's attention, and supports UMG's

request that the Court reconsider and deny Plaintiffs' motion to amend their complaint to include claims based on Ely's 1976 agreement.

### D. If the Court Does Not Reconsider Its Ruling, Clarification Is Warranted.

Plaintiffs also take issue with UMG's alternative request that the Court clarify its interpretation of Section 203 as it relates to the terms "executed" and "execution of the grant." In support, Plaintiffs contend that the Court's ruling has limited application, repeating their earlier errant assertion that the Court's ruling has no impact on non-gap grant artists.[1] But if the Court denies UMG's motion for reconsideration, that is precisely an issue that requires clarification. As set forth in UMG's original memorandum and above, UMG does not believe that the Court's interpretation of statutory language respecting the timing of execution of grants can apply uniquely to "gap grant" artists, but instead must be read consistently with respect to *all* artists. But *whatever* the Court's interpretation, clarity is obviously critical – not only to UMG, but presumably to Plaintiffs and their counsel as well. In this action, it will be relevant in defining the putative class, in assessing the validity of notices, and in considering the scope of discovery. And more broadly, it could impact how Plaintiffs' counsel (and other artists' representatives and artists) prepare future notices and how UMG evaluates those notices upon receipt. Accordingly, if the Court declines to reconsider the Memorandum Opinion in the manner requested, UMG reiterates its request for, at a minimum, clarification of this aspect of the Memorandum Opinion.

---

[1] Having said that, Plaintiffs' position is not always clear. While suggesting that the Memorandum Opinion will not impact the "overwhelming majority" of Notices of Termination, which Plaintiffs contend "do not involve any gap grants," ECF No. 96 at 8, Plaintiffs go on to characterize the Court's ruling as constituting an "interpretation of the applicability of Section 203 to works created on or after January 1, 1978, regardless of any prior agreements." *Id.* This latter framing clearly encompasses both gap grants and non-gap grants alike, suggesting that even Plaintiffs acknowledge that the interpretation applies to *all* works "created on or after January 1, 1978."

## **CONCLUSION**

For the foregoing reasons, UMG respectfully requests that the Court reconsider its Memorandum Opinion granting Plaintiffs' motion to amend their complaint to include claims based on Joe Ely's 1976 agreement, or alternatively, clarify its ruling as to the meaning of Section 203 as it relates to the date of execution of a grant.

Dated:  New York, New York
        September 10, 2020

Respectfully submitted,

SIDLEY AUSTIN LLP

By:   */s/ Steven M. Bierman*
Steven M. Bierman
sbierman@sidley.com
Ariel Atlas
aatlas@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Rollin A. Ransom
rransom@sidley.com
Lisa M. Gilford
lgilford@sidley.com
Lauren M. De Lilly
ldelilly@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Richard S. Mandel
rsm@cll.com
Thomas Kjellberg
txk@cll.com

COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
Facsimile: (212) 575-0671

*Attorneys for Defendants UMG Recordings, Inc. and Capitol Records, LLC*