## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JOHN WAITE, an individual; KASIM
SULTON, an individual; SUSAN STRAW
HARRIS p/k/a SYD STRAW, an individual;
LEONARD GRAVES PHILLIPS, an
individual; STAN SOBOL p/k/a STAN LEE,
an individual; STEVE WYNN, an individual;
DENNIS MEHAFFEY p/k/a DENNIS DUCK,
an individual; and DAVID PELLISH p/k/a
DAVE PROVOST, an individual, on behalf of
themselves and all others similarly situated,

Civil Action No. 1:19-cv-01091-LAK

Plaintiffs,

v.

UMG RECORDINGS, INC., a Delaware
corporation doing business as Universal Music
Group; CAPITOL RECORDS, LLC, a
Delaware limited liability company; and DOES
1 through 10,

Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO SEVER DEFENDANTS' COUNTERCLAIMS

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................... II

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND .................................................................................. 2

        A.      The Operative Complaint ........................................................................ 2

        B.      UMG and Capitol's Counterclaims ........................................................ 4

III.    THE COURT SHOULD SEVER CAPITOL'S PERMISSIVE
        COUNTERCLAIMS FROM THIS CLASS ACTION LAWSUIT ......................... 5

        A.      The Counterclaims Arise Out of Entirely Different Transactions
                and/or Occurrences than Plaintiffs' Claim. .................................................. 6

IV.     THE SAC PRESENTS NO COMMON, PARTICULARIZED QUESTIONS
        OF LAW OR FACT WITH THE COUNTERCLAIMS. ......................................... 7

        A.      Plaintiffs' Claims Involve Different Witnesses and Documentary
                Proof Than the Counterclaims. ...................................................................... 7

        B.      Severance of the Counterclaims Would Facilitate Judicial Economy
                and Foster Expedited Resolution. .................................................................. 8

        C.      Severance Would Avoid Undue Prejudice to Plaintiffs and Cause No
                Prejudice to Defendants. ................................................................................ 9

V.      CONCLUSION ................................................................................................. 10

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Alessi v. Monroe Cty.*,
  No. 07-CV-6163T, 2008 WL 398509 (W.D.N.Y. Feb. 12, 2008) ................................................5

*Cestone v. General Cigar Holdings, Inc.*,
  No. 00 Civ. 3686 (RCC), 2002 WL 424654 (S.D.N.Y. Mar. 18, 2002)........................................5

*Community for Creative Non–Violence v. Reid*,
  490 U.S. 730 (1989)......................................................................................................................8

*Costello v. Home Depot U.S.A., Inc.*,
  888 F. Supp. 2d 258 (D. Conn. 2012) ...........................................................................................9

*Deskovic v. City of Peekskill*,
  673 F. Supp. 2d 154 (S.D.N.Y. 2009) ...........................................................................................9

*Lluberes v. City of Troy*,
  No. 11-CV-1346 CFH, 2014 WL 1123413 (N.D.N.Y. Mar. 21, 2014) .....................................5, 6

*Mendez v. K&Y Peace Corp.*,
  No. 16-CV-05562 (SN), 2019 WL 2223220 (S.D.N.Y. May 22, 2019) ........................................9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  214 F.R.D. 152 (S.D.N.Y. 2003)..............................................................................................9, 10

*N. Jersey Media Grp. Inc. v. Fox News Network, LLC*,
  312 F.R.D. 111 (S.D.N.Y. 2015)..........................................................................................5, 6, 9

*Rodriguez v. Winski*,
  973 F. Supp. 2d 411 (S.D.N.Y. 2013) ...........................................................................................6

*T.S.I. 27, Inc. v. Berman Enters., Inc.*,
  115 F.R.D. 252 (S.D.N.Y. 1987)....................................................................................................6

*U2 Home Entm't, Inc. v. Chun Pook Tan*,
  209 F. Supp. 2d 299 (S.D.N.Y. 2002) ...........................................................................................4

**Statutes**

Copyright Act § 101 ........................................................................................................................3, 7

Copyright Act § 203 .................................................................................................................1, 2, 3, 4

**Other Authorities**

Fed. R. Civ. P. 21...........................................................................................................................5

Plaintiffs John Waite ("Waite"), Kasim Sulton ("Sulton"), Susan Straw Harris p/k/a Syd Straw ("Straw"), Leonard Graves Phillips ("Phillips"), Stan Sobol p/k/a Stan Lee ("Sobol"), Steve Wynn ("Wynn"), Dennis Mehaffey p/k/a Dennis Duck ("Mehaffey"), and David Pellish p/k/a Dave Provost ("Pellish") (collectively, the "Plaintiffs"),[1] on behalf of themselves and all others similarly situated, respectfully submit this Memorandum in Support of their Motion to Sever the Counterclaims filed by UMG Recordings, Inc. ("UMG") and Capitol Records, LLC ("Capitol") (collectively, the "Defendants").

## I.    INTRODUCTION

Nearly two years after Plaintiffs first filed this class action lawsuit, Defendants filed permissive counterclaims against Straw (the "Counterclaims") that are completely unrelated to the underlying action in an effort to bully and intimidate her from pursuing her claim against Defendants and to confuse jurors by attempting to create an association between Plaintiffs' claims and the Counterclaims where none exists.  In this case, Plaintiffs' claims arise out of Defendants' systematic rejection of termination notices ("Notices") sent on behalf of Plaintiffs and similarly situated individuals pursuant to § 203 of the Copyright Act, terminating Plaintiffs' grants of copyrights to Defendants and/or their predecessors.  Plaintiffs and the class seek, among other things, a judicial determination that their respective Notices are valid and a finding that Defendants infringed the copyrights of certain Plaintiffs, Straw excluded, by continuing to exploit copyrights after the effective dates in the termination notices for those copyrights had passed.  In stark contrast, the Counterclaims arise out of Straw's, one of several Plaintiffs, purported distribution

---

[1]    Plaintiff Earle R. Ely, Jr. p/k/a Joe Ely ("Ely") and Defendants have stipulated to the voluntary dismissal with prejudice of their respective claims against one another on an individual basis pursuant to the terms of a confidential settlement that does not prejudice any other Plaintiffs' claims or any claims of any Class member. Plaintiffs therefore do not address Ely's claims against Defendants or Defendants' counterclaims against Ely.

and/or reproduction of the album *Surprise*.  The Counterclaims do not arise out of the same transaction or occurrence as Plaintiffs' claims, share sparse factual overlap and no questions of law with Plaintiffs' claims, and require different witnesses and documentary proof than Plaintiffs' claims. Trying the Plaintiffs' claims and the Counterclaims together will prejudice Plaintiffs because jurors are likely to infer that there is a relationship between the claims even though there is none or that the Counterclaims somehow impact Plaintiff's claims, when they do not.  Further, severing the Counterclaims from Plaintiffs' claims would facilitate judicial economy because severance would eliminate any potential for the Counterclaim litigation to delay or prolong the class litigation.  Plaintiffs therefore respectfully request that the Court sever the Counterclaims from Plaintiffs' claims.

## II.    FACTUAL BACKGROUND

### A.    The Operative Complaint

Plaintiffs' second amended class action complaint ("SAC") seeks remedies for Defendants' integrated and systematic corporate scheme to reject valid Notices, which terminate artists' grants of copyrights pursuant to 17 U.S.C. § 203, and Defendants' continued and unlawful commercial exploitation of artists' valuable works after the effective dates in the Notices. Dkt. No. 95. Plaintiffs entered into recording agreements with Defendants' predecessors and assigned rights in certain copyrights to Defendants' predecessors. *See id.,* ¶¶ 82, 106, 131, 161. Defendants' predecessors subsequently released albums that included sound recordings authored by the respective Plaintiffs, including the *Kasim* album by Sulton, the *Dawn of The Dickies* album by the Dickies (comprised of Phillip and Sobol, among other members), *Medicine Show* album by The Dream Syndicate (comprised of Wynn, Mehaffey, and Pellish, among other members) and the *Surprise* album by Straw. *See id.,* ¶¶ 95, 119, 144, 162. The SAC further alleges that Plaintiffs timely served valid Notices on Defendants pursuant to 17 U.S.C. § 203 in 2016 and 2017,

respectively, terminating Plaintiffs' respective grants in the copyrights to the sound recordings embodies in the above-referenced albums. *Id.*, Exs. 3, 5, 7, 8. Despite receiving valid Notices, Defendants have wrongfully taken the position that the Notices are invalid. *See id.,* ¶ 5. Plaintiffs allege that Defendants infringed the copyrights of several Plaintiffs and class members by continuing to exploit the sound recordings after the effective date in the Notices had passed. *Id.,* ¶ 9. Plaintiffs specifically allege that Defendants infringed, Sulton's copyrights in the sound recordings embodied in the *Kasim* album, the members of the Dickies' copyrights in the sound recordings embodied in the *Dawn of The Dickies* album, and the members of The Dream Syndicate's copyrights in the sound recordings embodied in the *Medicine Show* album. *Id.,* ¶¶ 82-159. Because the relevant effective date of termination has not yet occurred, Plaintiffs have not alleged that Defendants infringed any of Straw's copyrights. *Id.* Instead, Straw and the members of Class B seek a judicial determination of their rights and duties, and a declaration that their Notices are valid, the dates of termination in the Notices are effective, their termination rights vested and Defendants' disregard of the rights of Plaintiff Straw and the members of the class violates the Copyright Act. *Id.,* ¶ 183. In this regard, the SAC raises the following questions of law and fact:

> (A)     Whether sound recordings can ever be considered "a work made for hire," as that term is defined in the Copyright Act, where (1) the definition of "a work made for hire" set forth in § 101 of the Copyright Act does not include sound recordings as being one of the enumerated types of "specially ordered" or "commissioned" works that can be a work made for hire, and (2) none of the recording artists in the class was ever in an employer-employee relationship with the Defendants, their affiliated or related companies, or their predecessors-in-interest.
> (B)     Whether the release of sound recordings that were created by a particular recording artist in "album" form, as is typical in the music industry, constitutes a "contribution to a collective work," or creates a "compilation," as those terms are used in the definition of "a work made for hire" in § 101 of the Copyright Act;
> (C)     Whether a foreign choice of law provision in a recording agreement has any effect upon the application of United States copyright law to issues relating to the application of the Copyright Act (and § 203 specifically) to the United States copyrights at

issue, and whether such a clause raises viable claims of "breach of contract" against the recording artists for the act of exercising their rights under United States copyright law;

(D)     Whether the recording agreements upon which Defendants base their position regarding "work made for hire" clauses violate § 203(a)(5) of the Copyright Act;

(E)     Whether the exercise by recording artists of their rights under § 203 of the Copyright Act to terminate the original grant, and to thereafter exploit the sound recordings after the effective date of termination, is a breach of contract by the recording artists of a clause in the recording agreement that, according to Defendants, provides that recording artists may never exploit the sound recordings themselves, and whether such a clause violates § 203(a)(5) of the Copyright Act; and

(F)     The basis and method for determining and computing damages, including statutory damages.

*Id.,* ¶ 56.

## B.     UMG and Capitol's Counterclaims

On September 30, 2020, Defendants filed an answer to the SAC and counterclaims against Plaintiff Straw. Dkt. No. 101. Defendants allege that the recording agreement entered into by Straw and Capitol's predecessor, Virgin Records, Inc. ("Virgin"), provides that Straw will "not at any time, manufacture, distribute or sell, or authorize or knowingly permit the manufacture, distribution or sale in the Territory by any person other than [Virgin] of phonograph records embodying…any performance rendered in any manner by [Straw] during the term of this agreement." Defendants allege that Capitol is the owner of the copyrights in *Surprise* until at least June 22, 2024.[2] *Id.*, ¶ 24. Defendants further allege that, at some unidentified time, Straw reproduced *Surprise* and its individual tracks for distribution through sydstrawmusic.com (the "Straw Website") and bandcamp.com and allegedly authorizes the reproduction of *Surprise* and/or its individual tracks when a user "buys" *Surprise* or one its tracks through those sites (*id.*, ¶ 30), that Straw has the right and ability to supervise and control the infringing activities that occur through the use of bandcamp.com (*id.*, ¶ 51), and that Straw has derived a direct financial benefit

---

[2]     Because Defendants allege that Capitol is the sole owner of the copyrights in *Surprise*, only Capitol has standing to assert the copyright infringement counterclaims. *See U2 Home Entm't, Inc. v. Chun Pook Tan*, 209 F. Supp. 2d 299, 301 (S.D.N.Y. 2002) (Kaplan, L.).

from the infringement of Capitol's copyright. *Id.*, ¶ 51. Defendants allege that Straw's conduct directly infringed Capitol's copyrights, vicariously infringed Capitol's copyrights, and constitutes a breach of Straw's recording agreement. Defendants further allege that Straw's acts of infringement are willful and intentionally indifferent to Capitol's rights. *Id.*, ¶ 52.

## III.   THE COURT SHOULD SEVER CAPITOL'S PERMISSIVE COUNTERCLAIMS FROM THIS CLASS ACTION LAWSUIT.

Under Fed. R. Civ. P. 21, the Court, on motion or on its own, may at any time sever any claim against a party. District courts have "broad discretion" to sever any party or claim from an action. *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (citing *Compania Embotelladora del Pacifico v. Pepsi Cola Co.*, 256 F.R.D. 131, 133 (S.D.N.Y. 2009); *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1998)).

In deciding whether to sever a claim under Fed. R. Civ. P. 21, courts consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *N. Jersey Media Grp. Inc.*, 312 F.R.D. at 114 (quoting *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 501 (S.D.N.Y. 2013)). "Severance requires the presence of only one of these conditions." *Cestone v. General Cigar Holdings, Inc.*, No. 00 Civ. 3686 (RCC), 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002) (citations omitted). While severance is often warranted when fewer than all of these conditions are met (*see, e.g.*, *Alessi v. Monroe Cty.*, No. 07-CV-6163T, 2008 WL 398509, at *2 (W.D.N.Y. Feb. 12, 2008); *Lluberes v. City of Troy*, No. 11-CV-1346 CFH, 2014 WL 1123413, at *23 (N.D.N.Y. Mar. 21, 2014)), ***every single one*** of these conditions favors severance here.

5

**A.      The Counterclaims Arise Out of Entirely Different Transactions and/or Occurrences than Plaintiffs' Claim.**

"When counterclaims are based 'on an entirely different factual situation from that underlying plaintiff's claim for payment,' they are readily severable." *T.S.I. 27, Inc. v. Berman Enters., Inc.*, 115 F.R.D. 252, 254 (S.D.N.Y. 1987) (citation omitted); *see also Lluberes*, 2014 WL 1123413, at *23 (severance appropriate where the respective sets of claims "do not arise from a common nucleus of operative facts"); *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 430 (S.D.N.Y. 2013) (granting motion to sever in a multiple defendant, multi-plaintiff case where one plaintiff's claims against one defendant were "independent of plaintiffs' many unrelated allegations involving separate parties and spanning a much longer time period"). "Where, as here, plaintiffs' claims under the same statutory framework arise from different circumstances and would require separate analyses, they are not logically related." *N. Jersey Media Grp. Inc.*, 312 F.R.D. at 115 (quoting *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012)) (holding that "isolated instances of infringement of different copyrighted works" did not arise out of the same transaction or occurrence).

The Counterclaims are based on an entirely different factual situation from Plaintiffs' claims. Plaintiffs' claims arise out of their service of valid Notices in 2016 and 2017, Defendants' refusal to honor the Notices, and, in certain instances, Defendants' copyright infringement of certain sound recordings identified in the Notices. Plaintiffs do not allege that Defendants infringed Straw's copyrights in *Surprise*. In stark contrast, the Counterclaims arise out of Straw's purported unauthorized reproduction and distribution of *Surprise* on the Straw website and Bandcamp. Defendants do not allege that Waite, Sulton, the members of the Dickies, and the members of The Dream Syndicate had any involvement with Straw's purported copyright infringement or breach of contract. Accordingly, this factor favors severance.

6

## IV.   THE SAC PRESENTS NO COMMON, PARTICULARIZED QUESTIONS OF LAW OR FACT WITH THE COUNTERCLAIMS.

The pleadings present distinct questions of law and fact. The merits of Plaintiffs' copyright infringement and declaratory relief claims both turn broadly on whether the Notices are valid, and specifically on whether a sound recording can be considered "a work made for hire" under 17 U.S.C. § 101, whether the release of sound recordings that were created by a particular recording artist in "album" form constitutes a "contribution to a collective work" or creates a "compilation" under 17 U.S.C. § 101, and whether a foreign choice of law provision in a recording agreement has any effect upon the application of United States copyright law. Plaintiffs must also establish that Defendants exploited Sulton's copyrights in *Kasim*, the Dickies' copyrights in *Dawn of The Dickies*, and The Dream Syndicate's copyrights in *Medicine Show* after the effective date lapsed in the Plaintiffs' respective Notices to prevail on their copyright infringement claim. None of these legal or factual questions are relevant to Capitol's Counterclaims. ***Indeed, Capitol itself acknowledges that Straw's Notice has no bearing on its Counterclaims because the effective date in her notice is June 22, 2024***. Dkt. No. 101, ¶ 3. Instead, the merits of Defendants' claims depend on whether Straw owns, controls, or is otherwise responsible for the Straw Website, whether Straw distributed or reproduced *Surprise* or authorized the distribution or reproduction of *Surprise*, and when Defendants learned of Straw's purported reproduction or distribution of *Surprise*. Accordingly, this factor favors severance.

### A.   Plaintiffs' Claims Involve Different Witnesses and Documentary Proof Than the Counterclaims.

Plaintiffs' claims implicate witness testimony from each of the named Plaintiffs, employees of Defendants or their predecessors, whether current or former, that were involved with or have knowledge regarding facts necessary to support Defendants' work for hire defense. Plaintiffs' claims also implicate documentary proof regarding each of Plaintiffs' recording

7

agreements, royalties paid to Plaintiffs, Defendants' communications with Plaintiffs, Defendants' records of Plaintiffs' employment, salaries Defendants paid to the Plaintiffs, Social Security taxes paid on behalf of recording artists, insurance Defendants provided to Plaintiffs, Defendants' withholding of Plaintiffs' taxes, benefits Defendants provided to Plaintiffs, including medical benefits and a 401(k) plan, whether Defendants supplied equipment to Plaintiffs, all expenses incurred in connection with the recording of the sound recordings at issue, how the expenses were allocated, direction provided by Defendants to Plaintiffs regarding the creation of the sound recordings at issue, Defendants' exercise of control regarding how Plaintiffs made their sound recordings, Defendants' requirements that Plaintiffs make the sound recordings at issue on a specific schedule, Defendants' requirements that Plaintiffs work certain hours or on a schedule, the business relationship between Defendants and Plaintiffs, and Plaintiffs' damages. *See, e.g.*, *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751-52 (1989).

The Counterclaims implicate a single overlapping witness – Ms. Straw – and one overlapping document – Straw's recording agreement.   The evidence required by the Counterclaims are otherwise starkly distinct. The Counterclaims implicate documentary proof regarding the ownership, management, and control of the Straw Website, Straw's purported control of BandCamp, and Capitol's purported damages, if any. The limited overlap of witnesses and evidence favors severance.

### B.   Severance of the Counterclaims Would Facilitate Judicial Economy and Foster Expedited Resolution.

Severance of the Counterclaims would facilitate judicial economy because it would permit the parties to focus on the respective litigations appropriately without the interjection of the collateral counterclaim issues in the class action lawsuit.  Severance would allow the jury trial on

Plaintiffs' claims, which have been pending for nearly two years, to proceed against Defendants without introducing unrelated legal claims on completely unrelated facts and legal claims.

### C. Severance Would Avoid Undue Prejudice to Plaintiffs and Cause No Prejudice to Defendants.

Juror confusion will prejudice Plaintiffs and warrants severance. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009) (holding that defendants could be prejudiced if claims against a co-defendant ("Tweed") were not severed given the factual and legal differences between plaintiff's claims against Tweed and the other defendants because a joint trial "could lead to confusion of the jury" because "[t]he claims against [Tweed and against the non-Tweed Defendants will] ... involve separate witnesses, different evidence, and different legal theories and defenses."); *Mendez v. K&Y Peace Corp.*, No. 16-CV-05562 (SN), 2019 WL 2223220, at *3 (S.D.N.Y. May 22, 2019) (severing cross-claim where there was a "significant risk" that the cross-claim unduly prejudices a jury's deliberation of plaintiff's claims and vice versa); *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 265 (D. Conn. 2012). A single jury trial on all claims will prejudice Plaintiffs because the jury may confuse the relationship between Plaintiffs' claims and the Counterclaims, which is none, because they are being tried together. Indeed, Capitol purposely brought the permissive Counterclaims to confuse the jury, leading them to believe that the Counterclaims somehow impact Plaintiffs' claims or remedies, and gain a strategic advantage.

Trying the Counterclaims with Plaintiffs' claims will also prejudice Straw because there were no claims against her until nearly two years into the litigation. Straw will be forced to engage in accelerated discovery while preparing for trial that includes claims that have nothing to do with the Counterclaims and incur increased costs. *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 118-19 (S.D.N.Y. 2015). At the same time, Capitol will not be prejudiced by severance. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 156-

157 (S.D.N.Y. 2003) (holding that there was "no prejudice to the interests" of the plaintiffs whose claims against certain defendants were severed for bearing only a "tenuous" connection to their claims against other defendants because plaintiffs remained "free to pursue actively their claims."). These factors warrant severance. *Id.*

## V.    CONCLUSION

For all of these reasons, Plaintiffs' Motion to Sever should be granted.

Date: November 25, 2020                    **BLANK ROME LLP**

By:   */s/Ryan E. Cronin*

Ryan E. Cronin
Gregory M. Bordo
David M. Perry
1271 Avenue of the Americas
New York, NY 10020
Telephone (212) 885-5000

**COHEN MUSIC LAW**
Evan S. Cohen
Maryann R. Marzano
1180 South Beverly Drive, Suite 510
Los Angeles, CA 90035-1157
Telephone: (310) 556-9800

*Attorneys for Plaintiffs*