# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

X

JOHN WAITE, an individual; KASIM SULTON, an individual; SUSAN STRAW HARRIS p/k/a SYD STRAW, an individual; LEONARD GRAVES PHILLIPS, an individual; STAN SOBOL a/k/a STAN LEE, an individual; STEVE WYNN, an individual; DENNIS MEHAFFEY, p/k/a DENNIS DUCK, an individual; and JOEL DAVID PELLISH, p/k/a DAVID PROVOST, an individual; and on behalf of all others similarly situated,

Plaintiffs,

v.

UMG RECORDINGS, INC., a Delaware corporation doing business as Universal Music Group; and CAPITOL RECORDS, LLC, a Delaware limited liability company;

Defendants.

X

No. 1:19-cv-01091(LAK)

ORAL ARGUMENT REQUESTED

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' WORK MADE FOR HIRE DEFENSE

**BLANK ROME LLP**
Ryan E. Cronin
Roy W. Arnold (admitted *pro hac vice*)
Gregory M. Bordo (admitted *pro hac vice*)
David M. Perry (admitted *pro hac vice*)
Heidi G. Crikelair
Jillian M. Taylor (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000

**COHEN MUSIC LAW**
Evan S. Cohen (admitted *pro hac vice*)
Maryann R. Marzano (admitted *pro hac vice*)
104 West Anapamu Street, Suite K
Santa Barbara, CA  93101-3126

Telephone: (805) 837-0100

*Attorneys for Plaintiffs and the Classes*

## <u>TABLE OF CONTENTS</u>

**Page:**

ARGUMENT ....................................................................................................................3

I.      Section 410(c) Does Not Preclude Summary Judgment In this Action ............................3

II.     There is No Genuine Dispute of Material Fact that  Precludes Summary Judgment
        Pursuant to Section 101(1) ...........................................................................................5

III.    There is No Genuine Dispute of Material Fact Regarding Whether the sound
        recordings at issue Were Specially Ordered or Commissioned as Contributions to
        a Collective Work or COMPILATION Pursuant to Section 101(2) .................................14

        A.      Defendants Fail to Raise a Genuine Issue  of Material Fact Regarding
                Whether the Recordings  Were "Specially Ordered or Commissioned." ..............14

        B.      Defendants Fail to Raise a Material Issue  of Fact Regarding Whether the
                Recordings  Were "Specially Ordered or Commissioned for Use  as a
                Contribution to a Collective Work" or "Compilation." .........................................16

        CONCLUSION .............................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Pipe & Constr. Co. v. Utah,*
  414 U.S. 538 (1974)...................................................................................................3

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)........................................................................................6, 10, 11

*Aymes v. Bonelli,*
  980 F.2d 857 (2d Cir. 1992)............................................................................ *passim*

*Brecher v. Republic of Arg.,*
  806 F.3d 22 (2d Cir. 2015).........................................................................................3

*Bryant v. Media Right Prods. Inc.,*
  603 F.3d 135 (2d. Cir. 2010).............................................................................17, 18

*Carter v. Helmsley-Spear, Inc.,*
  71 F.3d 77 (2d Cir. 1995) ........................................................................................13

*Christians of California, Inc. v. Clive Christian New York, LLP,*
  4743422 WL 2014 (S.D.N.Y. 2014).........................................................................11

*Cmty. for Creative Non-Violence v. Reid,*
  490 U.S. 730 (1989)........................................................................................ *passim*

*Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.,*
  342 F.3d 149 (2d Cir. 2003).......................................................................................4

*Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.,*
  No. 08 CIV 6143 DLC, 2010 WL 3564258 (S.D.N.Y. Sept. 10, 2010)..................14

*Graham v. James,*
  144 F.3d 229 (2d Cir. 1998).....................................................................................10

*Heilweil v. Mount Sinai Hosp.,*
  32 F.3d 718 (2d Cir. 1994)..........................................................................................6

*Horror Inc. v. Miller,*
  15 F.4th 232 (2d. Cir. 2021) .........................................................................5, 7, 10, 13

*Kesey, LLC v. Francis,*
  No. CV 06-540-AC, 2009 WL 10693885 (D. Or. Aug. 17, 2009),
  *subsequently aff'd*, 433 F. App'x 565 (9th Cir. 2011)..............................................5

*Lee v. Karaoke City*,
No. 118CV03895PAESDA, 2020 WL 9815181 (S.D.N.Y. Dec. 18, 2020) ..........................5

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp.
Dance, Inc.*,
380 F.3d 624 (2d Cir. 2004)................................................................................11, 14

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013)........................................................................................15

*Oliver v. Johanson*,
357 F. Supp. 3d 758 (W.D. Ark. 2018)..........................................................................4

*Playboy Enterprises, Inc. v. Dumas*,
53 F.3d 549 (2d Cir. 1995)..........................................................................................15

*Psihoyos v. Pearson Educ., Inc.*,
855 F. Supp. 2d 103 (S.D.N.Y. 2012)............................................................................5

*Robertson v. Burdon*,
No. EDCV1800397JAKSHKX, 2019 WL 2141971 (C.D. Cal. Apr. 3, 2019) .....................5

*Sec. Exch. Comm'n v. Genovese*,
553 F. Supp. 3d 24 (S.D.N.Y. 2021)..............................................................................6

*SHL Imaging, Inc. v. Artisan House, Inc.*,
117 F. Supp. 2d 301 (S.D.N.Y. 2000)............................................................................9

*Smith v. Mikki More, LLC*,
59 F. Supp. 3d 595 (S.D.N.Y. 2014)............................................................................10

*Ulloa v. Universal Music & Video Distribution Corp.*,
303 F. Supp. 2d 409 (S.D.N.Y. 2004)..........................................................................10

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
618 F.3d 417 (4th Cir. 2010), *as amended* (Aug. 24, 2010)..................................2, 4

*W. World Ins. Co. v. Stack Oil, Inc.*,
922 F.2d 118 (2d Cir. 1990)..........................................................................................6

*Waite v. UMG Recordings, Inc.*,
450 F. Supp. 3d 430 (S.D.N.Y. 2020)..........................................................................18

**Statutes**

17 U.S.C. § 101(1) ...................................................................................... *passim*

17 U.S.C. § 101(2) ...................................................................................... *passim*

1909 Copyright Act..............................................................................................6, 14, 15

Section 203.......................................................................................................... *passim*

Section 410(c) ...........................................................................................................2, 4

**Other Authorities**

*Nimmer on Copyright* § 12.11 ...................................................................................4

**INTRODUCTION**

Defendants' Opposition fails to raise a single genuine issue of material fact that would preclude summary judgment with respect to Defendants' contrived "work made for hire" defense. Despite having all of the relevant records and information at their disposal, Defendants cannot point to *any* evidence of an actual employment relationship with any of the recording artists at issue. Indeed, there is not a single W-2 statement in the record establishing that taxes were withheld on behalf of an artist. Similarly, there is zero evidence of Defendants providing any artists with employment benefits such as medical or life insurance. Nor is there any evidence that the artists' work was ordered or commissioned to be a contribution to a collective work or compilation within the meaning of Section 101(2).

Desperate to avoid losing any more of the power they wielded for decades in the music industry before the advent of social media and streaming services, Defendants argue that because recording artists signed record deals that on paper granted labels broad control over their work, and allowed the labels to file copyright registrations containing boilerplate "work made for hire" language – an entire generation of recording artists has permanently relinquished their termination rights under Section 203. As a second line of defense to Section 203, Defendants argue all of the sound recordings are contributions to original albums and should be classified as contributions to "collective works" or "compilations" pursuant to Section 101(2) – despite the fact that if this were true, it would strip recording artist of all rights under Section 203.

Critically, Section 203 *exists* because Congress recognized that recording artists had little to no bargaining power and, as a result, were wholly dependent upon record labels for the publication and promotion of their music. Congress further recognized that this lack of bargaining power would necessarily result in aspiring artists entering one-

sided deals with the labels. Section 203 was intended to redress that situation and restore some equilibrium to the dynamic between labels and artists. Decades later, Defendants cannot be permitted to evade Section 203 simply by pointing to evidence of the very imbalance that Section 203 seeks to redress and relying upon boilerplate "work made for hire" language that was routinely inserted into artists' agreements or included in copyright registrations. Defendants' arguments to this effect are illogical, and the outcome sought by Defendants would eviscerate Section 203 and deprive recording artists of the "second chance" that Congress intended to provide.

*First*, boilerplate "work made for hire" language in copyright registrations does not create an irrebuttable *prima facie* presumption that precludes summary judgment pursuant to Section 410(c). To the contrary, the law is clear that this Court is free to "assess other relevant indicia of ownership" and that the presumption upon which Defendants seek to rely is easily rebuttable. *See, e.g.*, *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010), *as amended* (Aug. 24, 2010)(explaining that "the Copyright Office's practice of summarily issuing registrations (perhaps even the day of filing the application, as in this case) counsels against placing too much weight on registrations as proof of a valid copyright"). Here the evidence, including the evidence relied upon by Plaintiffs in their opening brief, results in the presumption being easily rebutted. As a result, the copyright registrations cannot provide Defendants with a way to escape the reach of Section 203.

*Second*, Defendants have failed to establish that *any* of the named Plaintiffs or other putative class members were employees during the course of their relationship with Defendants. Among other things, Defendants did not routinely provide employee benefits such as, for example, health insurance, or withhold or deduct taxes from artists' wages. ***This is because these recording artists are not and never have been***

***employees of the record labels that signed them***. Having intentionally and strategically elected to avoid the burdens of being an employer – Defendants cannot now be permitted to benefit from categorizing artists as employees decades later based on a specious argument that the issue of "control" is subject to "added weight[.]" ECF 213 ("Opp.") at p. 14.

*Finally*, despite Defendants' best efforts to push Section 101(2) to its logical breaking point, the sound recordings at issue in this action were not commissioned as contributions to "collective works" or "compilations." Moreover, despite trying to prop up their argument by misconstruing guidance from the Copyright Office and conflating the concepts of registering an album as a "collective work" and commissioning a work as a "*contribution to* a collective work" or "compilation" pursuant to Section 101(2) – Defendants fail to identify a single sound recording at issue that was registered in that manner.

For all of the reasons set forth herein and in Plaintiffs' opening brief, this Court should reject Defendants' specious arguments and grant summary judgment with respect to the "work made for hire" defense in this action. [1]

## **ARGUMENT**

## I.  **SECTION 410(C) DOES NOT PRECLUDE SUMMARY JUDGMENT IN THIS ACTION.**

---

[1]    Plaintiffs have expressly asked the Court to "first decide the Plaintiffs' Motion for Class Certification" and to subsequently "permit a period of time for notice and an opportunity to opt out" before deciding the instant Motion. ECF 167 ("MSJ") at n.1. Defendants' argument that summary judgment cannot issue on behalf of the putative class at this time ignores this. Opp. at 10-11. This will avoid any one-way intervention problem.  *See Brecher v. Republic of Arg.*, 806 F.3d 22, 26 (2d Cir. 2015) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (trial court erred in addressing defects in class definition after decision on liability rendered to insure "members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.). Regardless, Defendants cannot actually dispute that *none* of the recording artists at issue were issued W-2's at any point during their relationship with Defendants or provided with employee benefits by Defendants. Nor can Defendants dispute that the sound recordings at issue were not registered as "collective works" or "compilations." For these reasons alone, as well as those set forth in Plaintiffs' moving papers, Plaintiffs readily rebut any presumption and satisfy their burden with respect to every member of the putative class.

Contrary to Defendants' suggestion, the *prima facie* presumption that flows from Section 410(c) is easily rebutted and does not preclude summary judgment in this action. *See*, *e.g.*, *Oliver v. Johanson*, 357 F. Supp. 3d 758, 778 (W.D. Ark. 2018) (finding the plaintiff had "sufficiently rebutted the presumption that [the software at issue] was a work for hire"); *Nimmer on Copyright* § 12.11 ("Once the Register of Copyrights has issued a certificate, although certain *prima facie* presumptions are thereby created, the courts are free to examine the underlying facts and to rebut those presumptions, should the facts so warrant."). This is in part because "the Copyright Office's practice of summarily issuing registrations . . . counsel[s] against placing too much weight on registrations as proof of a valid copyright." *Universal Furniture*, 618 F. 3d at 428.

The Registrar of Copyrights has indicated its agreement with this assessment, explaining to the Second Circuit that "the Copyright Office's examination of copyright applications is 'necessarily limited'" and "should be 'distinguished from the Patent and Trademark Office's process for issuance of patents[.]'" *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 166 (2d Cir. 2003) (citation omitted). The Second Circuit went on to note:

> **The Register's letter specifically endorses the following passage from Judge Cote's opinion concerning the significance of the registrations: '[A] certificate of registration creates no irrebuttable presumption of copyright validity.** Extending a presumption of validity to a certificate of copyright merely orders the burdens of proof.' . . . . Furthermore, 'where other evidence in the record casts doubt on the question, validity will not be assumed.'

*Id.* at 166 (citations omitted) (emphasis added). In *Burne*, the Second Circuit ultimately found that the *prima facie* presumption had been adequately rebutted such that the works at issue *were* "works for hire" despite the absence of language to that effect in the registration at issue. *Id.* at 167. Logically, this means that the reverse can also be true and

4

in this case this Court can determine as a matter of law that the sound recordings at issue are *not* "works made for hire" despite the presence of formulaic language in copyright registrations that were filed as a matter of course by Defendants. *Kesey, LLC v. Francis*, No. CV 06-540-AC, 2009 WL 10693885, at *16 (D. Or. Aug. 17, 2009), *subsequently aff'd*, 433 F. App'x 565 (9th Cir. 2011) (granting summary judgment and explaining that even though a certificate of copyright indicated that a screenplay was a "work made for hire and that S&F [was] the author and owner of the entire Screenplay" that the court had "determined that the Screenplay was not a work made for hire and that S&F is neither the author nor owner of the Screenplay"). In fact, just last year, in *Horror Inc. v. Miller*, the Second Circuit affirmed a grant of summary judgment and rejected an argument, based in part on a copyright registration, that a work was "made for hire" explaining that "the presumption is rebuttable" and "was rebutted here." 15 F.4th 232, 243 (2d Cir. 2021).[2]

Here, Defendants seek to imply that somehow the existence of copyright registrations containing "work made for hire" language automatically enables them to avoid summary judgment on the issue. Not so. Rather, this Court must carefully consider whether the presumption has been rebutted. Here, Plaintiffs have easily done so.

## II.     THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT PRECLUDES SUMMARY JUDGMENT PURSUANT TO SECTION 101(1).

"It is black letter law that a non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture.'" *Psihoyos v. Pearson Educ., Inc.*,

---

[2] Cases cited by Defendants are readily distinguishable on the facts and procedural posture. *See Lee v. Karaoke City*, No. 118CV03895PAESDA, 2020 WL 9815181, at *4-5 (S.D.N.Y. Dec. 18, 2020) (declining to grant summary judgment at least in part because there were disputes about whether the copyright registration was valid at the time of filing or if the recordings at issue belonged to a third-party following the artist's death); *Robertson v. Burdon*, No. EDCV1800397JAKSHKX, 2019 WL 2141971, at *9-10 (C.D. Cal. Apr. 3, 2019) (declining to grant a motion to dismiss after finding that plaintiffs had standing to bring copyright infringement claims because of a registered copyright).

855 F. Supp. 2d 103, 117 (S.D.N.Y. 2012) (quoting *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990)). Even more importantly, "**[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment**." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis added). Thus, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* As the Supreme Court in *Anderson* further explained:

> This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. **That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.**

*Id.* (emphasis added); *Sec. Exch. Comm'n v. Genovese*, 553 F. Supp. 3d 24, 39-40 (S.D.N.Y. 2021) (explaining that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment") (quotation and citation omitted); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir. 1994) ("Only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.") Here, Defendants fail to identify any dispute of **material** fact with respect to whether the named Plaintiffs or any member of the putative class can be classified as "employees" under Section 101(1). *See* 17 U.S.C. § 101(1).

In deciding *Reid*, the Supreme Court observed that "[n]othing in the text of the work for hire provisions [in the Copyright Act] indicates that Congress used the words 'employee' and 'employment' to describe anything other than 'the conventional relation of employer and employe[e]." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740-41 (1989) (explaining that the "term 'employee' should be understood in light of the

general common law of agency"); *see also id.* at 751 ("whether a hired party is an employee [must be determined] under the general common law of agency"). Making such a determination in a given case involves the consideration of well-established and elementary factors. *See id.* (listing "*Reid* factors").

In *Horror Inc. v. Miller*, the Second Circuit looked to the *Reid* factors but emphasized that they are not to be applied "'in a mechanistic fashion.'" 15 F.4th 232, 248 (2d Cir. 2021) (citing *Aymes v. Bonelli*, 980 F.2d 857, 862 (2d Cir. 1992)). This is because:

> Courts can 'easily misappl[y]' the *Reid* test because *Reid* merely provided 'a list of possible considerations that may or may not be relevant in a given case' and gave 'no direction concerning how the factors were to be weighed.' [citation omitted] ***Thus, '[i]n balancing the Reid factors,' courts must take care to 'disregard those factors that, in light of the facts of a particular case, are (1) irrelevant or (2) of indeterminate weight—that is, those factors that are essentially in equipoise and thus do not meaningfully cut in favor of either the conclusion that the worker is an employee or the conclusion that he or she is an independent contractor.***'

*Id.* at 248-49 (citations omitted) (emphasis added).[3]

Critically, however, for purposes of the instant action, the Second Circuit has explained that "there are some factors that will be significant in virtually every situation" including "(1) the hiring party's right to control the manner and means of creation; (2) the skill required; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects to the hired party." *Aymes*, 980 F.2d at 861. Here, as Plaintiffs explained in their moving papers, all five of these factors (as well as the remaining *Reid* factors) weigh in favor of the named Plaintiffs and the Class Members. MSJ at pp. 24-35.

---

[3]      In their Opposition, Defendants attempt to distinguish *Horror* on its facts but do not (and cannot) dispute that it is well-settled that in any given case the various *Reid* factors are to be given vastly different weight and, in some instances, disregarded altogether. *See* Opp. at 15-16 & n.6.

In response, Defendants suggest that this Court should place special emphasis on "the hiring party's right to control the manner and means by which the product is accomplished." Opp. at p. 14 (claiming that the "right to control" factor is somehow entitled to "added weight" in this action).

Indeed, Defendants devote almost eight pages arguing that various clauses contained in named Plaintiffs' recording agreements granted Defendants "the right to control" or "the right to approve" or the "right to reject" recording artists' choices during the creative process and/or final finished product. Opp. at pp. 17-14. Among other things, Defendants argue that the record label "controlled the timing for delivery" of their sound recordings and had the power to decide when albums would be released and in what order (if at all). *Id*. at pp. 19-20. Defendants further claim that the record labels "approved, engaged, and/or paid" certain "producers and side musicians" and had the ability to control artists' press exposure. *Id*. at p. 17. With respect to the latter point, Defendants argue that the artists also frequently agreed to grant Defendants "the right to have [the recording artists] undertake additional actions" including, for example, appearing at photographic sessions, interviews, and on radio and television. *Id*. at pp. 18.[4] Plainly, Defendants hope to persuade this Court that disputes over any facts related to the issue of "control" preclude summary judgment in this case. Opp. at p. 13. But for all the reasons set forth in Plaintiffs' opening brief these sorts of general approval or control rights are insufficient to tip the "control" factor in Defendants' favor. *See* MSJ at pp. 25-26.

In the first instance, mere boilerplate contractual language granting Defendants power over the artists does not amount to control for purposes of Section 101(1). Brief at 24-26. Moreover, Defendants' claim that "Defendants' predecessors exercised control

---

[4]     Ironically, if nothing else, Defendants' arguments make it abundantly clear that the gross imbalance of power that Section 203 seeks to remedy was not imaginary.

over creative aspects ***of the recording process***" inadvertently highlights the very issue that Defendants want to gloss over when talking about their purported "control" or involvement with the sound recordings at issue in this case. Opp. at n.6 (emphasis added). Plainly, a "process" is not the "product." And involvement in the "recording process" – *i.e.*, suggesting (or even dictating) when or where a sound recording is recorded or assisting with that process – is not the same as actually composing music, writing lyrics, and singing that music in a particular way.

Here, despite contending, for example, that they had the right to "approve in writing all material aspects of the procedures for recording the sound recordings" or that they "had the sole authority to approve any sound recording as satisfactory for the manufacture and sale of phonograph records" Defendants do not (and cannot) point to any evidence that Defendants came up with the words, melodies, or rhythms present in a single one of the sound recordings at issue in this case. *See* Opp. at pp. 17-24. Nor do they (or can they) claim to have weighed in on how the artist should sing a song, or play musical instruments (*e.g.*, there is no evidence of Defendants demanding that a particular instrument be used or showcased on a particular track). *See id*. In other words, while Defendants may have had theoretical rights to control the publication and promotion of artists' work and may have had general supervisory authority, they had limited, if any, involvement in the means and methods of *recording* the artists' work. The actual work itself - *i.e.*, the writing and performance of a song – was completely up to the artists. And there is no evidence whatsoever that Defendants ever told any of the vocalists involved in the sound recordings what to sing or how or any of the musicians when or how to play certain chords.

This distinction is not only obvious to a lay person but fatal to the argument that Defendants had "control" of the recording artists for purposes of Section 101(1). *SHL*

*Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301 (S.D.N.Y. 2000) (explaining that for purposes of Section 101(1) "in order to determine whether the hired party is an employee rather than an independent contractor, **there must be evidence that the hiring party actually contributed to the aesthetic choices**") (emphasis added); *see also Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp. 2d 409 (S.D.N.Y. 2004) (finding no "control" for purposes of Section 101(a) where a vocalist "developed the Vocal Phrase herself—without input from Defendants—and 'used total discretion in creating her melody as well as the length of the vocal phrase.'"). Here, Defendants have failed to adduce any such evidence.

Regardless, despite Defendants' claim that it should be entitled to "added weight" the issue of the "right to control" is ***not*** outcome determinative – or even particularly relevant in this context. *See, e.g.*, *Anderson*, 477 U.S. at 248; Opp. at p. 14. To the contrary, this Court and the Second Circuit have repeatedly emphasized that in the context of copyright disputes the issue of whether a purported employee was paid wages and benefits and the tax treatment are of paramount importance to the analysis. *Aymes*, 980 F. 2d at 863; *see also Horror*, 15 F.4th at 248-255; *Graham v. James*, 144 F.3d 229, 235 (2d Cir. 1998) (explaining that in *Aymes* a "program was held not to be a work for hire, because – among other factors – the nonpayment of benefits or payroll taxes to or on behalf of the creator supported the conclusion that the creator was an independent contractor rather than an employee" and affirming a finding that a work was not made for hire where, among other things, the creator was "paid no benefits" and "no payroll taxes were withheld"); *Smith v. Mikki More, LLC*, 59 F. Supp. 3d 595, 611 (S.D.N.Y. 2014) (finding that a hired party was not an employee because, among other factors, they were not given employee benefits or treated as an employee for tax purposes).

In fact, according to the Second Circuit in *Aymes*, "**every case since *Reid* that has applied this test has found the hired party to be an independent contractor where the hiring party failed to extend benefits or pay social security taxes**." *Aymes*, 980 F. 2d at 863 (emphasis added). More recently, in *Christians of California, Inc. v. Clive Christian New York, LLP*, 4743422 WL 2014 (S.D.N.Y. 2014) this Court held that plaintiffs did not raise a triable issue of fact that defendant was an employee because, in part, they did not withhold taxes or social security, grant sick leave or vacation time, or pay for health and unemployment insurance. *Id.* at *2. Cases relied upon heavily by Defendants in their Opposition actually support ruling in favor of Plaintiffs and the Classes.

For example, in *Eisenberg*, the Second Circuit observed that it has held in "the copyright work-for-hire context" "that [] benefits and tax treatment factors deserve special consideration in determining whether a worker is an employee or independent contractor[.]" *Eisenberg*, 237 F. 3d 111, 117; *see* Opp. at pp. 14-15.  Similarly, in *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc.*, 380 F.3d 624 (2d Cir. 2004), the Second Circuit first "accorded particular significance" to the fact that the chorographer had "received employee benefits and reimbursements for personal expenses, travel, and medical benefits, and a regular salary" and that the alleged employer had "routinely withheld income and social security taxes from her salary" before discussing the issue of control. *Id.* at 641-42; *see* Opp. at pp. 14-15.

Thus, even crediting Defendants' argument about the abstract right of "control" – this "victory" on this one element would have no impact on the ultimate issue and as a result, these facts are not (and cannot be) material. *See Anderson,* 477 U.S. at 248. This is because Defendants cannot point to a single named Plaintiff (or any member of the Classes) to whom they extended employee benefits or a single instance of paying a named

11

Plaintiff (or any member of the Classes) wages and/or of withhold taxes on their behalf.[5] Again, **_Defendants_** are in possession of **_all_** of the relevant records and documentation, if any existed, regarding the existence of any employment relationship with the relevant recording artists.[6] But despite having access to vaults and warehouses of records, Defendants have failed to support the fiction that they had an employment relationship with any of the named Plaintiffs or any member of the putative Class pursuant to Section 101(1).

After arguing extensively about the issue of control, Defendants simply declare that "other evidence discussed above creates genuine disputes of material fact as to several of the _Reid_ factors." Opp. at 24. But there is no citation to the record, and the other factors identified by _Aymes_ are addressed in passing. With respect to the issue of "skill required," Defendants do not (and cannot) dispute that the named Plaintiffs are "highly skilled professionals" with skills and musical abilities that are both highly unique to each artist

---

[5]       Defendants' lack of relevant and probative evidence on these points is underscored by the fact that twenty-one pages into their Opposition, Defendants claim that there is "contrary evidence" regarding whether The Dickies were treated "as employees for tax purposes" and/or provided with "employee benefits." Opp. at p. 21. Defendants then go on to claim that, in fact, "A&M Ltd. paid both payroll and health and welfare costs associated with recording _Dawn of the Dickies_." _Id_. This claim is not accurate. The Dickies were _required_ to join the musicians' union (because A&M was a union signatory), and, as union members, received "union scale" from the union, which A&M paid out of the recording fund that "belonged" to The Dickies. It is true that Defendants present some W-4 tax forms, which appear to have been prepared by the artists' lawyers, as well as invoices and others records which simply show the payment of various costs associated with recording. But these payments were not "employee benefits," because The Dickies were not the employees of A&M, the record company. This truth is reinforced by the fact that Defendants have no W-2's indicating it was A&M – and not the musicians union – that paid The Dickies the "session fees" for the recording. That is because A&M has no copies of anything of that nature, including copies of paychecks, pay stubs, and the like. Indeed, a document that Defendants do present to the Court regarding The Dickies says exactly that: payments to The Dickies are to be made via the "[m]usicians' payroll through the appropriate union." _See_ ECF No. 208 (Declaration of Alasdair McMullan) at Ex. 50; _see also id._ at Ex. 42. Defendants are trying to create the illusion that The Dickies were on the record company payroll, when they were certainly not. Because if this were true, Defendants would have produced the W-2's sent to The Dickies at the end of the relevant tax year. None have been produced in this action, and the expenditure list for the recordings use "payroll" in the context of making payments to "the appropriate union." _See id._ at Ex. 50. Thus, this indicates _not_ that any of the relevant recording artists were on _A&M's payroll_, but that A&M was submitting session fees to the _union_ that all recording artists signed to major labels were required to join.

[6]       Tellingly, Defendants have failed to submit a single sworn declaration or affidavit from a single executive or person with first-hand knowledge of the work made for hire issue averring under oath that any of the artists were, in fact, employees. The absence of any such declaration speaks volumes.

and beyond those of the average person. Opp. at 14 & n.5 (declining to contradict or challenge the claim that the Plaintiffs "are 'highly skilled professional artists'" and instead attempting to claim that the artists' skill is irrelevant). And, finally, with respect to the "right to assign additional projects to the hired party" Defendants do not contend that they could automatically assign additional projects to the named Plaintiffs. Rather, Defendants claim that they had certain "option" rights pursuant to agreements with certain of the named Plaintiffs. (*See e.g.*, Opp. at p. 18 (asserting there was an "option to extend the term of [Sulton's] contract"); *id.* at p. 20 (asserting there was a "right to exercise four separate, consecutive, and irrevocable options to extend the term of the [Straw] agreement after the initial period"); *id.* at pp. 21-22 (asserting that "at least one option" was exercised under the terms of *The Dickies*' contract).) But an "option" to publish and promote additional sound recordings - *i.e.*, to enter into another agreement for the promotion and publication of additional original works - is plainly not what is being contemplated by the fifth factor identified in *Aymes*. In a recording agreement, an "option" is a specifically negotiated contractual right to extend the recording agreement for an additional period of time and to have the artist record additional works. It has nothing to do with the "right to assign additional projects" element, which involves the right to direct that "extra" projects not theretofore contemplated by the parties be completed during the same term. *See, e.g.*, *Horror*, 335 F. Supp. 3d at 306-07 (explaining that "[a] traditional employee . . . will typically be hired to create not just a single artistic project, but will instead be subject to the employer's ability to assign distinct artistic projects ***during the term*** of the employee's engagement") (emphasis added); *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 86 (2d Cir. 1995) (explaining that plaintiffs, during the course of their engagement, were "assigned additional projects, which they completed ***without further compensation***") (emphasis added).

13

As a result, the Court should grant summary judgment in favor of Plaintiffs and the Classes.

**III.  THERE IS NO GENUINE DISPUTE OF MATERIAL FACT REGARDING WHETHER THE SOUND RECORDINGS AT ISSUE WERE SPECIALLY ORDERED OR COMMISSIONED AS CONTRIBUTIONS TO A COLLECTIVE WORK OR COMPILATION PURSUANT TO SECTION 101(2).**

Defendants cannot dispute that pursuant to Section 101(2), a work can be classified as a work made for hire if: (1) it was specially ordered or commissioned, (2) "for use as a contribution to a collective work" or "compilation" (or one of the other seven types of finished products enumerated in Section 101(2)), and (3) there is an express agreement "in a written instrument" to that effect between the parties. *See* 17 U.S.C. § 101(2); *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738 (1989).

**A.  Defendants Fail to Raise a Genuine Issue of Material Fact Regarding Whether the Recordings Were "Specially Ordered or Commissioned."**

With respect to the first prong of this test, Defendants contend that the sound recordings at issue satisfy the "instance and expense" test, which they concede was the operative test under the 1909 Copyright Act (the "1909 Act"). Opp. at pp. 26-27. However, their argument quickly falls apart. The 1909 Act does not apply to any of the sound recordings at issue in this case. Nor does the "instance and expense" test have any impact in this case for the reasons set forth below. Defendants fail to cite a single case in which the "instance and expense" test was relied upon in connection with sound recordings that are not subject to the 1909 Act. *See Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*, No. 08 CIV 6143 DLC, 2010 WL 3564258 (S.D.N.Y. Sept. 10, 2010) (analyzing copyright of sound recordings under the 1909 Act); *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc.*, 380 F.3d 624 (2d Cir. 2004) (analyzing copyright of choreographed dances, including eleven that were subject to the

1909 Act); *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549 (2d Cir. 1995) (analyzing the copyright of paintings, including many subject to the 1909 Act); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) (analyzing copyrights to comic book illustrations, many of which were copyrighted under the 1909 Act).

A review of *Playboy Enterprises, Inc. v. Dumas*, which Defendants argue (incorrectly) makes the "instance and expense" test as developed under the 1909 Act relevant in this action, quickly reveals why Defendants' argument falls short. In *Playboy*, the Second Circuit was analyzing a series of drawings under both the 1909 Act and the 1976 Copyright Act. *Playboy*, 53 F.3d at 552. In connection with analyzing the applicability of Section 101(2), the Second Circuit observed that Nimmer stated that a "key factor" in determining whether a work was "specially ordered or commissioned" pursuant to the 1976 Act was whether "the motivating factor in producing the work was the person requesting preparation of the work who induced its creation[.]" *Id.* at 562 (quotation and citation omitted). The Second Circuit called this the "motivating factor" test and went on to say that this test appeared to be "an interpretation of the 'instance and expense' test under the 1909 Act." *Id.* at 562.

Critically, there was no dispute that the artist in *Playboy* had initially (for a period of approximately 2 to 3 years) made drawings for *Playboy* in response to "specific requests for illustrations." *Id.* at 562-63. However, there was also no dispute that, as the relationship between the parties evolved, the artist began to simply submit drawings to the magazine for potential publication. *See id.* As a result, the Second Circuit - applying the "motivating factor" test - found that there was an open question about whether the later drawings had also been "specially ordered or commissioned." *Playboy*, 53 F. 3d at 552. This is plainly a markedly different situation than the one confronting this Court.

Here there is no evidence whatsoever that any of the recording artists at issue submitted sound recordings that were intended to be a part of anything other than an album comprised solely of their own original work. Defendants do not (and cannot) contend, for example, that at any point they instructed any of the recording artists to write a song for a particular event or to be placed in a film or commercial.

As a result, there can be no credible argument that any of the sound recordings at issue were "specially ordered or commissioned" as that term has been interpreted by the Second Circuit. The argument that recording artists would not have recorded the sound recordings at issue in this case but for the fact that they had a deal with the record label and therefore the sound recordings were "specially ordered or commissioned" stretches the concept beyond its logical bounds and places the recording artists in an impossible position of having to prove what they would have done if they did not have a record deal.

### B. Defendants Fail to Raise a Material Issue of Fact Regarding Whether the Recordings Were "Specially Ordered or Commissioned for Use as a Contribution to a Collective Work" or "Compilation."

Ultimately, however, regardless of how the first part of the test is viewed, the second part of the test presents Defendants with an insurmountable hurdle. Specifically, Defendants cannot establish that the sound recordings at issue were "specially ordered or commissioned *for use as a contribution to* a collective work" or a "compilation." 17 U.S.C. § 101(2) (emphasis added). To hold otherwise would be to strip those enumerated categories of any rational meaning.

In discussing the debate leading up to the passage of what is now Section 101, the Supreme Court observed in *Reid* that there was objection to a preliminary draft bill because "[t]hose representing authors objected that the added provision [which covered commissioned works, without regard to the subject matter, 'if the parties so agree in writing'] would allow publishers to use their superior bargaining position to force authors

16

to sign work for hire agreements . . . as a condition of getting their books published." *Reid*, 490 U.S. at 745-46. In light of this concern, a "compromise" was reached that included "authors consent[ing] to a second subsection [Section 101(2)] which classified four categories of commissioned work as works for hire[.]" *Id*. at 746. Thus, there were specific carveouts placed within Section 101(2) for the purpose of preventing "publishing companies" from easily exploiting aspiring authors whose works they were agreeing to publish and promote. *See id*. Two of those carve-outs are for "collective works" and "compilations." 17 U.S.C. § 101(2).

Defendants would have this Court effectively find that recording artists are forever beyond the reach of Section 203 because every track recorded for inclusion in an album is able to be played by itself but released by the record label as part of a "collective whole" - *i.e.*, an original album. Opp. at pp. 34-35. It should be immediately obvious that this argument makes a mockery of the terms "collective work" or "compilation." By this reasoning, a legal treatise regarding statutory code provisions or procedural rules even if written by a single author would be a "collective work" since each section could in theory stand alone. This would plainly render the "compromise" referenced in *Reid* meaningless and nullify the observation by the Supreme Court in *Reid* that "the legislative history underscores the clear import of the statutory language: **only enumerated categories of commissioned works may be accorded work for hire status.**" *Reid*, 490 U.S. at 747-48 (emphasis added).

Nevertheless, Defendants seek to argue that their position is not only reasonable but has been endorsed by the Copyright Office.[7] This is incorrect. Circulars 14, 34, and 56

---

[7] In addition to pointing to Copyright Office circulars, Defendants also pretend that the Second Circuit has endorsed their definition of "compilation" for purposes of analyzing a "work made for hire" defense to a Section 203 demand by pointing to *Bryant v. Media Right Prods. Inc.*, 603 F.3d 135, 140-41 (2d. Cir. 2010). Opp. at p. 33 & n.12. This is misleading since as Defendants are forced to concede the Second Circuit in *Bryant* was analyzing the issue of statutory damages for copyright infringement -- it was not opining on whether a particular work was a "compilation" for purposes of qualifying as a "work made for hire." *See id.*;

were issued by the Copyright Office for the purpose of providing the public with general information about how to fill out copyright registration forms. *See* U.S. Copyright Office, Circular 14 Copyright in Derivative Works and Compilations Registration for Sound Recordings (revised July 2020) ("Circular 14"), available at https://www.copyright.gov/circs/circ14.pdf.; U.S. Copyright Office, Circular 34 Copyright Registration for Multiple Works (revised March 2021) ("Circular 34"), available at https://www.copyright.gov/circs/circ34.pdf; Circular U.S. Copyright Office, Circular 56 Copyright Registration for Sound Recordings (revised March 2021) ("Circular 56"), *available at* https://www.copyright.gov/circs/circ56.pdf. A review of Circular 56, reveals clearly why Defendants' position is incorrect. Circular 56 does indicate that there *is* a type of album – a so-called "Best Of" or "Greatest Hits" type of album – that could be registered as a Collective Work. Circular 56. For example, Circular 56 uses as an example an album entitled "Greatest Hits from the Age of Aquarius." *Id*. Plaintiffs do not dispute that this type of album could potentially be classified as a collective work for purposes of Section 101(2).

Circular 56 goes on to state in a section titled "Unit of Publication" that:

> You may register multiple sound recordings as well as accompanying text and artwork as a "unit of publication," if they were physically packaged or bundled together and if all of the recordings were first published together as that integrated unit. In addition, the entity that bundles the works together as the integrated unit must be the claimant in all the works that are submitted for registration.

(*Id*.) It then provides an example:

> ABC Records bundles ten sound recordings on a CD with an insert containing text and photographs, distributes the packaged unit to the general public, and owns the copyright in the sound recordings, text, and photographs. ABC Records

---

*Bryant*, 603 F. 3d at 140. Defendants also neglect to mention that this Court has already considered *Bryant* in connection with Defendants' Motion to Dismiss and concluded that "[t]he Circuit's conclusion in *Bryant* is thus not dispositive in the "works for hire" context." *Waite v. UMG Recordings, Inc.,* 450 F. Supp. 3d 430, n.23 (S.D.N.Y. 2020).

> may register the sound recordings, text, and photographs with
> one application as a unit of publication. The registration will
> cover all copyrightable content in the sound recordings, text,
> and photographs.

(*Id.*) It is ***this*** example that applies to the typical original album and, as a result, to essentially every sound recording in this case. There is a reason the Copyright Office provides separate headers to "Collective Work" and "Unit of Publication" to guide artists in the registration of sound recordings: because not all sound recordings constitute a collective work, and the typical original album (*e.g.*, "*Born in the USA*") is not a collective work. Circular 56 goes on to lend still further clarity to Plaintiffs' position when it describes the classic employer/employee work for hire scenario, stating:

> If the performer or producer created the sound recording
> during the course of his or her employment under a typical
> employment relationship, then the sound recording is a work
> made for hire, and the employer is the author of the sound
> recording.

(*Id.*) It then goes on to discuss the independent contractor work for hire scenario:

> If the performer or producer created the sound recording for
> a third party as a compilation or contribution to a collective
> work, and if the parties agreed in writing that the sound
> recording will be a "work made for hire," then the third party
> is the author of the work.

(*Id.*)

Read and understood in context and as a whole, Circular 56 ultimately supports ***Plaintiffs'*** position in this case. Plainly, an original album cannot be a compilation, as the recordings on it were not preexisting (and if they were, they would carry their own independent termination rights pursuant to Section 203). And an original album cannot be a contribution to a collective work, unless we were dealing with a box set collection of albums, in which case the box *set* (not the individual albums within it) is the collective work. Thus, Defendants cannot credibly contend that an original album is a compilation

or a contribution to a collective work pursuant to Section 101(2). Such a characterization would be absurd.

Circular 34 is no more helpful to Defendants. That Circular 34 permits a collective work registration for a combination of an album *plus* its musical compositions *plus* its sound recordings is no surprise. (Circular 34.) It does not, however, morph sound recordings themselves into works made for hire, shielding them from Section 203. Circular 14 is equally unsupportive of Defendants' argument. In fact, its example of a compilation references "[a] collection of sound recordings of the top hits of 2004" further illustrating the distinction between original albums like those at issue here, and the common example of a compilation greatest hits/best of album. To be sure, nearly every record store in the world has always maintained a section for "compilations." Perusing such a section will undoubtedly reveal collections and annual chart hits type albums ("The Best of 2001 Dance"), but never all-original album releases. Put another way, nobody with any appreciation for music would think to look for "*Rubber Soul*" in a compilations section, but they might look for "*The Best of the Sixties*" there. Defendants' arguments, while perhaps of some superficial appeal to an industry behemoth, are ultimately devoid of common sense and rigor. More importantly, they lack any basis in the law or facts.

## CONCLUSION

For all of the foregoing reasons and the reasons set forth in Plaintiffs' opening brief, summary judgment should be granted in Plaintiffs' and the Classes' favor on Defendants' "work made for hire" defense.

Dated: New York, New York
       June 24, 2022

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Ryan E. Cronin*
Ryan E. Cronin

20

Roy W. Arnold (admitted *pro hac vice*)
Gregory M. Bordo (admitted *pro hac vice*)
David M. Perry (admitted *pro hac vice*)
Heidi G. Crikelair
Jillian M. Taylor (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone (212) 885-5000

**COHEN MUSIC LAW**
Evan S. Cohen (admitted *pro hac vice*)
Maryann R. Marzano (admitted *pro hac vice*)
104 West Anapamu Street, Suite K
Santa Barbara, CA  93101-3126
Telephone: (805) 837-0100

*Attorneys for Plaintiffs and the Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2022, the foregoing was electronically filed through the Court's CM/ECF system and thereby served on the following recipients:

Melanie Berdecia, Esquire
mberdecia@sidley.com
Ariel Atlas, Esquire
aatlas@sidley.com
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

Rollin A. Ransom, Esquire
rransom@sidley.com
Lisa M. Gilford, Esquire
lgilford@sidley.com
Adriane Peralta, Esquire
adriane.peralta@sidley.com
Lauren M. De Lilly, Esquire
ldelilly@sidley.com
Sidley Austin LLP
555 West 5th Street, Suite 4000
Los Angeles, CA 90013

Richard Stephen Mandel, Esquire
rsm@cll.com
Thomas Kjellberg, Esquire
txk@cll.com
Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036

*Counsel for Defendants*

By: _/s/ Ryan E. Cronin_____
        Counsel for Plaintiffs