# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

X

|  |  |
|---|---|
| JOHN WAITE, an individual; KASIM SULTON, an individual; SUSAN STRAW HARRIS p/k/a SYD STRAW, an individual; LEONARD GRAVES PHILLIPS, an individual; STAN SOBOL a/k/a STAN LEE, an individual; STEVE WYNN, an individual; DENNIS MEHAFFEY, p/k/a DENNIS DUCK, an individual; and JOEL DAVID PELLISH, p/k/a DAVID PROVOST, an individual; and on behalf of all others similarly situated, | No. 1:19-cv-01091(LAK) |

Plaintiffs, :

v.

UMG RECORDINGS, INC., a Delaware corporation doing business as Universal Music Group; and CAPITOL RECORDS, LLC, a Delaware limited liability company;

X

Defendants.

### SUPPLEMENTAL DECLARATION OF EVAN S. COHEN
### IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN
### OPPOSITION TO MOTION FOR CLASS CERTIFICATION

I, Evan S. Cohen, declare pursuant to 28 U.S.C. §1746 as follows:

1.　　I am an attorney at law admitted *pro hac vice* to the bar of this Court. I own and operate the law firm of Cohen Music Law, and I am co-counsel with the law firm of Blank Rome LLP, attorneys for Plaintiffs Kasim Sulton, Susan Straw Harris p/k/a Syd Straw, Leonard Graves Phillips, Stan Sobol p/k/a Stan Lee, Steve Wynn, Dennis Mehaffey p/k/a Dennis Duck, and David Pellish p/k/a Dave Provost, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"). I make this supplemental declaration in Response to Defendants' Supplemental Opposition to Plaintiffs' Motion for Class Certification (the "Supplemental Motion" or "Supp. Mot") (Dkt. 233).

2.　　Throughout my career, I have represented numerous recording artists at all stages of their careers. It is common practice in the music industry for artists, many of whom have hectic tour schedules or other commitments, to employ agents or other people

1

they trust to manage their business and related legal affairs while they focus on creating and performing music, touring, and the like. As a result, I have often taken direction on behalf of clients from artists' managers, agents, or personal attorneys.

3.      In the Spring of 2018, my firm communicated with an individual named Stephen Mottershead who held himself out as the manager for Alexander O'Neal. This representation was supported at the time by public documents that indicated that Mr. O'Neal had signed to a label that Mr. Mottershead managed called Resurrection Records. (Supp. Mot. at Ex. 4 (Declaration of Lisa Gilford) at Ex. B thereto at p. 17.)

4.      The relationship between Mr. Mottershead and Mr. O'Neal was further supported by the fact that an October 26, 2017, on Mr. O'Neal's Facebook page consists of a press release from a publicity company called SJ Media, which is a company that was owned and/or controlled by Mr. Mottershead. Attached hereto as **Exhibit A** is a true ad correct copy of the Facebook page evidencing Mr. Mottershead's representation of Mr. O'Neal.

5.      More importantly, according to publicly available information Mr. O'Neal released a re-recording of his album *Hearsay* using the title *Hearsay 30* (ostensibly a nod to the thirtieth anniversary of its original release) through Resurrection Records on December 1, 2017.  In addition, Mr. Mottershead is listed as Executive Producer in the credits for *Hearsay 30*. Mr. O'Neal was actively promoting *Hearsay 30* after its release until at least June 30, 2018.

6.      Ultimately, Mr. Mottershead directed my firm to pursue terminating a grant of rights that Mr. O'Neal had given to Tabu Records (a predecessor to UMG). Critically, based on my experience, I agreed with Mr. Mottershead that terminating these rights could increase Mr. O'Neal's income and would be in the best interests of Mr. O'Neal.

7.      On April 30, 2018, one of my employees, William Caruso, sent Mr. Mottershead a Notice of Termination for Mr. O'Neal's review. (Supp. Mot. at Ex. 4 (Declaration of Lisa Gilford) at Ex. B thereto at p. 10.)  Mr. Caruso stated, among other

things, that "If this all looks good, I'll just need Alex to sign and you can send me back a scan." (*Id.*)

8.      On May 2, 2018, Mr. Mottershead emailed Mr. Caruso an executed notice of termination, saying: "Document attached, signed[.]" (Supp. Mot. at Ex. 4 (Declaration of Lisa Gilford) at Ex. B thereto at p. 2.)

9.      The notice of termination that Mr. Mottershead sent to my office had a date of May 1, 2018. (Supp. Mot. at Ex. 4 (Declaration of Lisa Gilford) at Ex. B thereto at p. 3.)

10.     The United States Copyright Office (the "Copyright Office") requires that the date on a notice of termination conform to the "Date of Service" in the notice itself, so that the "notice period" can be computed precisely. If the date of service is incorrect, the notice of termination may be rejected by the Copyright Office in the recordation process. Due to the timing of receipt of the signed draft notice of termination and when service was effectuated, the date was updated to the next business day to accurately reflect the service date.

11.     As a result, prior to service the date of the notice of termination that we had received from Mr. Mottershead was updated to "May 2, 2018" so that it would conform to the date that the notice was served.  No other changes were made.

12.     I served the executed notice of termination on May 2, 2018. (Supp. Mot. at Ex. 2 (Declaration of O'Neal) at Ex. A thereto.)

13.     At no time during my discussions with Mr. Mottershead did he indicate or suggest that he and Mr. O'Neal had parted ways or that he was no longer actively managing Mr. O'Neal's affairs or looking out for his best interests.

14.     To the contrary, at all relevant times, Mr. Mottershead's actions were in line with what I would expect from a manager based on my extensive experience in the industry and he seemed committed to taking steps that would increase Mr. O'Neal's earnings.

3

15.     Moreover, on December 7, 2018, Mr. Caruso contacted Mr. Mottershead to note that "[w]e still have to get the termination recorded in the US Copyright Office." (Supp. Mot. at Ex. 4 (Declaration of Lisa Gilford) at Ex. B thereto at p. 15.)

16.     Mr. Mottershead responded the following day. (*Id.*)   Rather than indicate that he no longer worked on behalf of Mr. O'Neal, Mr. Mottershead included on the correspondence two solicitors in the United Kingdom, Gez Orakwusi and James Collins of the firm Collins Long. (*Id.*)

17.     Specifically, Mr. Mottershead said he was copying "Gez and James from Collins Long" whom he introduced as "lawyers I have here in the UK" before asking Mr. Caruso to "explain to [Messrs. Orakwusi and Collins] what you have done so far please, and what are the next steps you see from your side needing to be done re the copyright termination[.]" (*Id.*)

18.     It should be observed that Messrs. Orakwusi and Collins -- who according to publicly available information about their backgrounds are both accomplished professionals with significant experience and expertise in the music industry -- never indicated that they had any reason to believe that Mr. Mottershead did not represent Mr. O'Neal's interests or that there was even a dispute or difference of agreement between Mr. Mottershead and Mr. O'Neal.

19.     Following this discussion in December 2018, we caused the notice to be recorded in the Copyright Office.

20.     When Defendants' counsel first raised the issue regarding Mr. O'Neal with Mr. Arnold, I immediately reviewed past emails to confirm that the signed notice of termination had been received directly from Mr. Mottershead.

21.     On August 5, 2022, prior to participating in conference call with UMG's counsel, I provided a set of emails to UMG's counsel in order to explain and demonstrate to them that the notice that was served on UMG had been received from Mr. Mottershead on May 2, 2018. (Supp. Mot. at Ex. 4 (Declaration of Lisa Gilford) at Ex. B thereto.) As

4

outlined above, the emails further demonstrate that Mr. Mottershead communicated with my firm about Mr. O'Neal and indicated that he represented Mr. O'Neal as recently as December 2018.

22.     During the August 5, 2022, call, UMG's counsel was informed that Plaintiffs' counsel would look into the issues that had been raised and told that Plaintiffs' counsel would be amenable to removing Mr. O'Neal from the putative class list.

23.     On August 9, 2022, Defendant's counsel requested I provide unredacted copies of my correspondence with Mr. Mottershead.  A copy of this email exchange is attached hereto as **Exhibit B**.

24.     Absent written instruction from Mr. O'Neal to do so, I declined to make this information directly available to UMG.  (*Id.*)

25.     UMG has never represented to me that it has any relationship with Mr. O'Neal that entitles them to these communications.  In addition, UMG has declined to provide any of its communications with Mr. O'Neal despite repeated requests for the same. (*Id.*)

26.     Mr. O'Neal has never contacted me directly to request that I send him my client files or that I turn over the same to UMG's counsel.

27.     I have never declined to communicate with Mr. O'Neal or his representatives, and never neglected to respond to messages left by Mr. O'Neal or his representatives. To the contrary, the emails that I have provided to UMG's counsel reveal that my firm has always responded promptly to communications from individuals whom we understood represented Mr. O'Neal and were authorized to speak with us on his behalf. (Supp. Mot. at Ex. 4 (Declaration of Lisa Gilford) at Ex. B thereto)

28.     I have been admitted to practice law in the State of California since December 1985, and I have never been the subject of any sort of investigation or charge of any sort of unethical or improper behavior, with the State Bar of California or any other similar agency or entity.

154498.00601/129556530v.5

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct.

Executed: Santa Barbara, California
Dated: September _12_, 2022

/s_____
Evan S. Cohen

6

# EXHIBIT A

/alexanderonealofficial

    

 Alexander O'Neal

## Intro

The Official Facebook page for Alexander O Neal

ⓘ Page · Musician/band

🌐 alexanderoneal.org

Bham Alabama we waiting on you Alex

Like    Reply    5y

View 11 more comments

Alexander O'Neal ✔
Poster based in the United Kingdom · August 11, 2017 · 🌐

Who would like a complete re recording of the Hearsay album for Christmas ..???

## Photos                    See all photos





Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More · Meta © 2022

            

/alexanderonealofficial

    

 Alexander O'Neal

## Intro

The Official Facebook page for Alexander O Neal

Page · Musician/band

alexanderoneal.org

### Photos

See all photos

 

  

  

Like   Reply   4y

 Alexander O'Neal ✔
October 27, 2017 · 🌐   ···

**SJ MEDIA**

26th October 2017

American soul legend Alexander O'Neal is re-releasing an exclusive new version of his multimillion selling album Hearsay - recorded with a full band and brand new vocals

The singer wanted to mark the 30th anniversary of his breakthrough album which includes songs Criticise, Fake and Never Knew Love Like This with a new twist on the classic hits.

Hearsay which was originally recorded in Minneapolis, Minnesota has now been re-worked with nine piece Mancunian funk band - Mamma Freedom - in a Manchester studio.

He is currently living in the city with his wife of 25 years Cynthia while touring and recording in the UK.

The tour called "30 Years Of Hearsay" - began on Friday 13th October in Clacton and ends December 9th in Peterborough.

Hearsay30 will be released in November and will be available to buy on CD from all good record shops and online at Amazon.co.uk. Digital format album will be available to download from iTunes, GooglePlay and all similar stores, and streaming platforms including Spotify, Apple Music and Deezer.

The brand new version of the smash hit single Criticise will be available to download across all platforms from Friday 27th October.

The tracks were co-written by Alexander, with legendary song writing duo Jimmy Jam and Terry Lewis back in the 80s.

Alexander said: "It's been a real blast recording the songs over with a fresh take and my producer Alexander Johnston and his wonderful band Mamma Freedom ,gave new life to the tracks and really did a great job.

"This album means so much to me and I know from taking the show on the road how much the fans still love to hear the songs, and the way we have recorded Hearsay30 , is virtually how the songs sound when played live

"I have to say I love being based in Manchester. It's a cool place and there's always a good vibe. I have also recorded a brand new album with the Mamma Freedom guys, and we hope to have that coming out around February time.

Editors Notes:   For further quotes or interviews please contact

contact@sjmediagroup.co.uk       Office +44 (0) 161 713 3651     Mobile +44 (0)7887 853 459

www.sjmediagroup.co.uk

**SJMEDIA**

26th October 2017

American soul legend Alexander O'Neal is re-releasing an exclusive new version of his multimillion selling album Hearsay - recorded with a full band and brand new vocals

The singer wanted to mark the 30th anniversary of his breakthrough album which includes songs Criticise, Fake and Never Knew Love Like This with a new twist on the classic hits.

Hearsay which was originally recorded in Minneapolis, Minnesota has now been re-worked with nine piece Mancunian funk band - Mamma Freedom - in a Manchester studio.

He is currently living in the city with his wife of 25 years Cynthia while touring and recording in the UK.

The tour called "30 Years Of Hearsay" - began on Friday 13th October in Clacton and ends December 9th in Peterborough.

Hearsay30 will be released in November and will be available to buy on CD from all good record shops and online at Amazon.co.uk. Digital format album will be available to download from iTunes, GooglePlay and all similar stores, and streaming platforms including Spotify, Apple Music and Deezer.

The brand new version of the smash hit single Criticize will be available to download across all platforms Friday 27th October.

The tracks were co-written by Alexander, with legendary song writing duo Jimmy Jam and Terry Lewis back in the 80s.

Alexander said: "It's been a real blast recording the songs over with a fresh take and my producer Alexander Johnston and his wonderful band Mamma Freedom ,gave new life to the tracks and really did a great job.

"This album means so much to me and I know from taking the show on the road how much the fans still love to hear the songs, and the way we have recorded Hearsay30 , is virtually how the songs sound when played live

"I have also recorded a brand new album with the Mamma Freedom guys, and we hope to have that coming out around February time.

Editors Notes:     For further quotes or interviews please contact

contact@sjmediagroup.co.uk       Office +44 (0) 161 713 3651       Mobile +44 (0)7887 853 459

/alexanderonealofficial

## Alexander O'Neal ···

### Intro

The Official Facebook page for Alexander O Neal

ⓘ Page · Musician/band

🌐 alexanderoneal.org

### Photos    See all photos



Like  Reply  4y                                    1 of 93

**Alexander O'Neal** ✓
November 30, 2017 · 🌐

http://www.musicrepublicmagazine.com/.../alexander-oneal.../ ⚠

MUSICREPUBLICMAGAZINE.COM
Alexander O'Neal: Hearsay 30 (Resurrection Records) 1st
December 2017 - Music Republic Magazine
I defy anyone to stick a fruit pastel sweet in their mouth, and not chew. To sit
in front of the TV when the X Factor is on and not lob the remote at the
screen or turn to another channel in a heartbeat. Or to hear the classic 198...

👍❤️ 70                                    2 Comments 4 Shares

👍 Like        💬 Comment        ↗ Share        ●▼

Most relevant ▼

Write a comment...        😶 😊 GIF 🎁

✏ Author
**Alexander O'Neal** ✓

👍

Like  Reply  4y

View 1 more comment

**Alexander O'Neal** ✓
November 30, 2017 · 🌐

http://justlistentothis.co.uk/.../alexander-o-neal.../ ✓


O'NEAL

Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More · Meta © 2022

/alexanderonealofficial

    

 Alexander O'Neal

···

## Intro

The Official Facebook page for Alexander O Neal

ⓘ Page · Musician/band

🌐 alexanderoneal.org

## Photos

See all photos



December 1, 2017 · 🌐

My brand new album 'Hearsay30' is out NOW!

Order your CD here: https://www.alexanderoneal.org/product-page/hearsay30 ✓

Download on Amazon: http://amzn.to/2BqEyv5 ✓... See more



👍❤️😮 1.5K                    127 Comments 101 Shares

Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More · Meta © 2022

/alexanderonealofficial



 Alexander O'Neal                                                                      

View more comments                                          1 of 57

## Intro

The Official Facebook page for Alexander O Neal

Page · Musician/band

alexanderoneal.org

## Photos                                          See all photos

  

  

  



Alexander O'Neal ✔
December 3, 2017 · 🌐

A few of the first batch of CD's ready to be signed and shipped!

All orders made up until midnight GMT today at the official online shop, will be signed by Alexander!

www.alexanderoneal.org ✅

👍❤️ 177                                    23 Comments  14 Shares

👍 Like            💬 Comment            ↗ Share

Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More · Meta © 2022



Alexander O'Neal

**Intro**

The Official Facebook page for Alexander O Neal

Page · Musician/band

alexanderoneal.org

**Photos**                                    See all photos



Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More · Meta © 2022

**Alexander O'Neal** ✔
March 9, 2018 · 🌐

Hey Guys... Hope you can tune in to Channel 5 tonight 9pm UK Time, you will see me on the Jane McDonald & Friends show, I will perform LIVE with my band a new version of CRITICIZE taken from Hearsay30, which is available now on CD from our official outlet

http://bit.ly/2HkAzn3

To celebrate the 30th anniversary of the release of Hearsay I went back to the studio and reworked all those fantastic songs from the album. I hope you enjoy it ❤️🎵



    

 **Alexander O'Neal**   ···

Like   Reply   4y

View 4 more comments

 **Alexander O'Neal** ✔
April 5, 2018 · 🌐   ···

#Glasgow #Manchester are you getting excited and ready for the Resurrection Tour this weekend? Official Merchandise including limited signed items can be purchased here http://bit.ly/2EftSkh ✔ and for Ticket info please see http://bit.ly/2IoZt5u ✔ #AlexanderO'Neal #R&B

### Intro

The Official Facebook page for Alexander O Neal

ℹ️ Page · Musician/band

🌐 alexanderoneal.org

### Photos

See all photos





Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More · Meta © 2022

/alexanderonealofficial

**Alexander O'Neal**

## Intro

The Official Facebook page for Alexander O Neal

ⓘ Page · Musician/band

🌐 alexanderoneal.org

### Photos

See all photos







Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More · Meta © 2022

View 3 more comments

**Alexander O'Neal** ✓
June 30, 2018 · 🌐

HEARSAY 30 is not simply a remastered version, it was Rerecorded to celebrate it's 30th Anniversary. It was great to revisit all those classics.
Get your copy now, we also have some limited signed copies. 🎵 🎶 🎵 ⓐ ⓐ ⓐ ⓐ
http://bit.ly/2EftSkh ✓ #AlexanderONeal #80sMusic #R&B



👍❤️ 40                    2 Comments  3 Shares

👍 Like        💬 Comment        ↪ Share

Most relevant ▼

Write a comment...

# EXHIBIT B

**From:**          Gilford, Lisa M. <lgilford@sidley.com>
**Sent:**          Thursday, August 11, 2022 11:58 PM
**To:**            esc@manifesto.com; Arnold, Roy; 'Maryann Marzano'; Perry, David M.; Crikelair, Heidi; Saunders, Caroline M.; Atlas, Ariel; Ransom, Rollin
**Subject:**       RE: Alexander O'Neal

Evan:

We have provided you with a sworn declaration from Mr. O'Neal that attests to the fact that:


1. You are not his lawyer, and he never provided any authority to Mr. Mottershead or anyone else to retain you for the purpose of serving a Notice of Termination, or for any other purpose; and


2.  The signature on the Notice of Termination was forged.


We understand from our discussion on Friday that you take the position that the forgery on a Notice of Termination that you transmitted and recorded with the Copyright Office for a putative class member you seek court approval to represent "has nothing to do with" you.  Nonetheless, we are duty bound to investigate the circumstances surrounding the serious concerns we have arising from the assertions in Mr. O'Neal's declaration.  To that end, we request all communications between you, Mr. Mottershead, and anyone else purporting to act on behalf of Mr. O'Neal.  And, since Mr. O'Neal has now sworn under oath that there is no attorney-client relationship between you, we request that you provide that information to us in an unredacted form, since the privilege you claim is non-existent.


As I told you on Friday, and as Mr. O' Neal affirms in his declaration, he approached UMG about this issue, whereupon Rollin reached out to Roy to obtain permission for us to speak with Mr. O'Neal directly and investigate further, which is exactly what we did and are continuing to do.  We would appreciate your cooperation in this regard.


I can confirm, again, that no one at UMG or Sidley, in the US or UK or anywhere else, has offered Mr. O'Neal any kind of financial compensation or incentive to withdraw the forged notice or for his declaration. There have not been any settlement discussions with Mr. O'Neal, other than through you. Your suspicions and accusations on that score are wholly unfounded.  Mr. O'Neal would testify to that fact, and would also testify that he has no medical condition that would impair his memory (an accusation that he finds remarkably offensive, particularly given that he has never met nor spoken with you and you have absolutely no basis to attack his mental acuity).

 Please advise me whether you will provide us with the information we seek to assist us with investigating further our concerns arising from the facts set forth in Mr. O'Neal's declarations.  Otherwise, we intend to raise these serious issues with the Court.

Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** esc@manifesto.com <esc@manifesto.com>
**Date:** Wednesday, Aug 10, 2022, 2:47 PM
**To:** Gilford, Lisa M. <lgilford@sidley.com>, 'Arnold, Roy' <roy.arnold@blankrome.com>, 'Maryann Marzano' <mmarzano@gradstein.com>, 'Perry, David M.' <david.perry@blankrome.com>, 'Crikelair, Heidi' <heidi.crikelair@blankrome.com>, 'Saunders, Caroline M.' <caroline.saunders@blankrome.com>, Atlas, Ariel <aatlas@sidley.com>, Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Lisa:

As you know, on Friday of last week, we had a conference call about these issues, and, attendant to that call, I provided to you written, indisputable proof that I received the executed Notice of Termination *directly* from Steve Mottershead, who, at that very time, was engaged by Mr. O'Neal as a manager or representative (and publicly announced as such, at that very time), and, in addition, the entire matter involved two solicitors, who also represented to me that they were representing Mr. O'Neal, at that time.

You stated that Mr. O'Neal disputes whether these individuals represented him, at that time, and that Mr. O'Neal even asserts that the signature on the Notice is a "forgery." However, as I noted on Friday, that has nothing to do with me. Mr. Mottershead, and the solicitors, certainly had *ample* apparent agency to arrange for a Notice of Termination to be drafted, signed, and served. As I noted on Friday, you are *very* well aware that sometimes recording artists are directly involved in such matters, but, most of the time, they are not.

As for your most recent request, it is immaterial what "unredacted" emails would show. If Mr. O'Neal has a dispute with Mr. Mottershead and the two solicitors, they can argue and fight it out as they see fit. And, as Mr. Arnold noted on Friday, the remedy for whatever this "dispute" is (which does not include me) is very simple: In that UMG is obviously in some sort of settlement negotiations with Mr. O'Neal, UMG can simply direct him to sign one of those "Withdrawal of Notice of Termination" forms that UMG apparently has no problem drafting. And that would be the end of it.

Finally, I must reiterate two more points that Mr. Arnold raised with you on Friday: (1) in light of the utter failure of UMG to show that I failed to provide Ms. Straw with a settlement proposal, despite your serious accusations, it might be prudent for UMG, and your firm, to approach these matters a little more carefully; and (2) Mr. O'Neal has admitted publicly that he was a drug addict for some thirty years, which may have affected his memory:

https://www.mirror.co.uk/3am/celebrity-news/alexander-oneal-admits-hes-been-6094560

But more importantly, as we also mentioned to you on Friday, we need to see **all** of the correspondence and emails between your firm, UMG, Mr. O'Neal, and Ms. Kampa. We need to understand how this "controversy" came about, and whether it is, as we suspect, the result of the ongoing efforts of UMG to settle with as many potential class members as possible, during the pendency of this case. In addition to that, we also need to know if UMG offered any sort of benefit, consideration, or inducement to Mr. O'Neal to withdraw his § 203 claim,

such as the waiver of his $2,000,000 unrecouped balance, cash advances, and any other favorable monetary terms.

Kindly let me know when such documents will be provided.

Thanks,

Evan

---

**From:** Gilford, Lisa M. <lgilford@sidley.com>
**Sent:** Tuesday, August 9, 2022 2:56 PM
**To:** 'esc@manifesto.com' <esc@manifesto.com>; 'Arnold, Roy' <roy.arnold@blankrome.com>; 'Maryann Marzano' <mmarzano@gradstein.com>; 'Perry, David M.' <david.perry@blankrome.com>; 'Crikelair, Heidi' <heidi.crikelair@blankrome.com>; 'Saunders, Caroline M.' <caroline.saunders@blankrome.com>; Atlas, Ariel <aatlas@sidley.com>; Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Evan:
To follow up on this:

1. What is your basis for claiming attorney client privilege on the information redacted from the emails you sent us?  Mr. O'Neal has affirmed under oath that he is not your client.  Would you please provide us unredacted versions of the emails?
2. Do you have any additional correspondence with Mottershead, Collins or Orakwumi regarding Alexander O'Neal, or have you provided us with everything?

---

**From:** esc@manifesto.com <esc@manifesto.com>
**Sent:** Friday, August 5, 2022 10:32 AM
**To:** 'Arnold, Roy' <roy.arnold@blankrome.com>; 'Maryann Marzano' <mmarzano@gradstein.com>; 'Perry, David M.' <david.perry@blankrome.com>; 'Crikelair, Heidi' <heidi.crikelair@blankrome.com>; 'Saunders, Caroline M.' <caroline.saunders@blankrome.com>; Atlas, Ariel <aatlas@sidley.com>; Gilford, Lisa M. <lgilford@sidley.com>; Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

---

Ariel –

Here are documents regarding these issues, redacted for attorney-client privilege.

As you will note, we received the **signed** Notice of Termination **directly** from Steve Mottershead, O'Neil's representative.

There were also two solicitors, representing O'Neil, involved with the entire matter, from a very respectable law firm in London.

Also, as you will note from the last page, on **February 9, 2018**, Mottershead's company confirmed, in a public statement, that he and his company were acting on O'Neil's behalf.

We can discuss this during our call, but it appears that O'Neil's perception and memory of the events of 2018 are extremely faulty.

If O'Neil has issues with the Notice that his manager had signed and sent to my office, perhaps he should take it up with Mottershead and his two solicitors.

**We reserve all rights to add to these facts, as I gather them**.

Evan

**From:** Atlas, Ariel <aatlas@sidley.com>
**Sent:** Friday, August 5, 2022 10:39 AM
**To:** Arnold, Roy <roy.arnold@blankrome.com>; Gilford, Lisa M. <lgilford@sidley.com>
**Cc:** Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Roy,

Please see the attached for discussion on our call this afternoon.

Thanks,
Ariel

**ARIEL ATLAS**
Managing Associate

**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
+1 212 839 5477
aatlas@sidley.com
www.sidley.com

---

**From:** Arnold, Roy <roy.arnold@blankrome.com>
**Sent:** Wednesday, August 3, 2022 8:12 PM
**To:** Gilford, Lisa M. <lgilford@sidley.com>
**Cc:** Ransom, Rollin <rransom@sidley.com>; Atlas, Ariel <aatlas@sidley.com>
**Subject:** RE: Alexander O'Neal

Sure, do you want me to have Evan and Maryann on the call?
I am pretty heavily involved in trial preparations for an upcoming trial so I would prefer to have others attend so I can eliminate multiple calls.
I can talk between noon Eastern and 2 pm Eastern on Friday.
Roy

**Roy W. Arnold** | BLANKROME
501 Grant Street | Suite 850 | Pittsburgh, PA 15219
M: 412.445.0067 |O: 412.932.2814 | F: 412.592.0959 | roy.arnold@blankrome.com

---

**From:** Gilford, Lisa M. <lgilford@sidley.com>
**Sent:** Wednesday, August 3, 2022 7:50 PM
**To:** Arnold, Roy <roy.arnold@blankrome.com>
**Cc:** Ransom, Rollin <rransom@sidley.com>; Atlas, Ariel <aatlas@sidley.com>
**Subject:** Alexander O'Neal

Roy:

I hope you are well.  As you discussed with Rollin a few weeks ago, we have been in touch with Alexander O'Neal to investigate the Notice of Termination that he did not sign nor authorize.

Are you available for a follow up meet and confer call on Friday?
Please let me know your availability.

Thanks
Sent with BlackBerry Work
([www.blackberry.com](http://www.blackberry.com))

**************************************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

**************************************************************************************************


**************************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

**************************************************************************************************

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

X

JOHN WAITE, an individual; KASIM
SULTON, an individual; SUSAN STRAW
HARRIS p/k/a SYD STRAW, an individual;
LEONARD GRAVES PHILLIPS, an
individual; STAN SOBOL a/k/a STAN LEE,
an individual; STEVE WYNN, an individual;
DENNIS MEHAFFEY, p/k/a DENNIS
DUCK, an individual; and JOEL DAVID
PELLISH, p/k/a DAVID PROVOST, an
individual; and on behalf of all others
similarly situated,

No. 1:19-cv-01091(LAK)

Plaintiffs,

v.

UMG RECORDINGS, INC., a Delaware
corporation doing business as Universal
Music Group; and CAPITOL RECORDS,
LLC, a Delaware limited liability company;

Defendants.

X

**SUPPLEMENTAL DECLARATION OF ROY W. ARNOLD
IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN
OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

I, Roy W. Arnold, declare pursuant to 28 U.S.C. §1746 as follows:

1.      I am an attorney at law admitted *pro hac vice* to the bar of this Court, and I

am a partner in the law firm of Blank Rome, LLP, co-counsel with the law firm of Cohen

Music Law, attorneys for Plaintiffs Kasim Sulton, Susan Straw Harris p/k/a Syd Straw,

Leonard Graves Phillips, Stan Sobol p/k/a Stan Lee, Steve Wynn, Dennis Mehaffey p/k/a

Dennis Duck, and David Pellish p/k/a Dave Provost, on behalf of themselves and all

others similarly situated (collectively, "Plaintiffs") herein. I make this supplemental

declaration in Response to Defendants' Supplemental Opposition to Plaintiffs' Motion for

Class Certification.

2.      On the afternoon of June 13, 2022, Defendants' counsel, Rollin Ransom

first contacted me to raise an issue concerning Alexander O'Neal's notice of termination.

He indicated to me that Mr. O'Neal's wife Cynthia O'Neal (*nee* Kampa) was now acting as

1

his business manager and that she had been in contact with personnel at UMG asserting that Mr. O'Neal's signature on his notice of termination seemed irregular and may have been forged.

3.      Promptly after Mr. Ransom's telephone call, I spoke to our co-counsel Evan Cohen and Maryann Marzano about the concerns raised by UMG about Mr. O'Neal's notice of termination.

4.      Mr. Cohen supplied me with the emails showing that he had been authorized to submit the notice of termination by Mr. Steven Mottershead, who he understood to be Mr. O'Neal's manager at the time.  After I reviewed the email correspondence, I called Mr. Ransom later on June 13, 2022, and informed him that the executed notice of termination was received by Mr. Cohen's firm directly from Mr. O'Neal's manager, Steven Mottershead, and further explained that two UK solicitors had also been involved in subsequent communications with Mr. Mottershead.

5.      I also informed Mr. Ransom that he should speak to Mr. Mottershead about the issue because Mr. Mottershead transmitted the signed notice of termination to Mr. Cohen via email.

6.      On August 3, 2022, Defendants' counsel Lisa Gilford requested a meet and confer call to discuss Defendants' ostensible ongoing concerns about Mr. O'Neal's notice of termination.  A true and correct copy of the August 3, 2022, email is attached hereto as **Exhibit A**. She did not identify any purported issue as to any other notice of termination.

7.      On August 5, 2022, shortly before the scheduled meet and confer, Defendants' counsel sent a declaration from Mr. O'Neal stating that he had terminated his business relationship with Mr. Mottershead in approximately February 2018.  (*Id*. at the attachment thereto.)

8.      Prior to the meet and confer call, Mr. Cohen provided to Defendants' counsel redacted copies of communications with Mr. Mottershead and the UK-based solicitors.

2

9.      During the meet and confer on August 5, 2022, we discussed the situation and Defendants' counsel stated that they had no evidence of any wrongdoing by Evan Cohen, were not saying that Mr. Cohen did anything wrong, and further stated that they were only following up on an issue that had been raised by Mr. O'Neal.

10.     In light of the apparent issue between Mr. O'Neal and his Mr. Mottershead and regardless of whether Mr. O'Neal did or did not terminate his relationship with Mr. Mottershead, I suggested that in light of Mr. O'Neal's declaration Mr. O'Neal could be removed from the putative class, just as other artists have been removed from the putative class list by agreement of counsel for various reasons. This was especially so if Mr. O'Neal and his wife intended to reach some sort of settlement with Defendants regarding the commercial exploitation of the works at issue.

11.     In a good faith effort to resolve this issue, I indicated that it seemed likely that Mr. O'Neal should be removed from the putative class list.  Defendants' counsel did not disagree with this simple solution and indicated that they would review the emails sent by Mr. Cohen.

12.     I further indicated that my law firm as Class Counsel would investigate the potential issue with Mr. Mottershead in a good faith effort to obtain some clarity for all counsel involved regarding the relationship between Mr. Mottershead and Mr. O'Neal.  At the time, I believed that Defendants' counsel was equally committed to fully investigating the situation and that all counsel involved were acting in good faith to understand what authority Mr. Mottershead may have had on behalf of Mr. O'Neal at the relevant time in an effort to resolve the issue without a need to raise the matter with the Court.

13.     Except for the issue pertaining to Mr. O'Neal, Defendants' counsel did not raise any issue concerning any other notice of termination and Defendants' counsel unequivocally stated that they were not accusing Mr. Cohen of any impropriety.  In my role as Class Counsel, I specifically inquired on this issue, and they reiterated that they understood the facts as we explained them.

3

14.     To date, I have never been contacted by Mr. O'Neal or his wife and I have never seen or received any written direction from Mr. O'Neal instructing Mr. Cohen to transmit client files to Defendants' counsel.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct.

Executed: Pittsburgh, PA                    /s/    Roy W. Arnold
Dated: September 12, 2022                          Roy W. Arnold

4

# EXHIBIT A

| | |
|---|---|
| **From:** | Gilford, Lisa M. <lgilford@sidley.com> |
| **Sent:** | Monday, August 22, 2022 11:39 AM |
| **To:** | Crikelair, Heidi |
| **Cc:** | Atlas, Ariel; Ransom, Rollin; esc@manifesto.com; Arnold, Roy; 'Maryann Marzano'; Perry, David M.; Saunders, Caroline M. |
| **Subject:** | RE: Alexander O'Neal |
| **Attachments:** | Declaration of Alexander O'Neal.pdf |

Heidi:

Blank Rome is certainly free to conduct its own investigation of the forgery of Mr. O'Neal's signature on the purported Notice of Termination; in fact, we assumed that you would have investigated when we first raised the issue with you several weeks ago.   As you know, we represent the Defendants in this action.  We spoke with Mr. O'Neal as a witness with information relevant to class certification and did so only after conferring with your firm and obtaining the go ahead to speak with him directly, as Mr. Cohen purported to represent him.  Of course, we have since learned that Mr. Cohen does not, in fact, represent Mr. O'Neal, and there is therefore no basis for Mr. Cohen or your firm to continue redacting or otherwise refusing to provide the communications referenced in your response.  Although we believe that Mr. O'Neal's prior declaration is more than adequate in this regard, attached is a revised declaration in which he expressly waives any purported privilege respecting Mr. Cohen's communications with Mr. Mottershead, and which further responds to the positions that Mr. Cohen and your firm have taken in connection with this matter.

As to the balance of your e-mail, we have kept you apprised of the results of our investigation, and contrary to your claim that we are being "evasive," we have provided you with the results of that investigation -- a declaration from Mr. O'Neal, which as noted above, Mr. O'Neal has now supplemented to take into account our recent communications with Mr. Cohen and your firm.  That declaration, we believe, provides ample evidence that Mr. Mottershead did not have the requisite authority to engage Mr. Cohen to send a Notice of Termination .  Mr. O'Neal attests that he did not engage Mr. Cohen and did not authorize the actions Mr. Mottershead took purportedly on his behalf, and perhaps most significantly, that it is not his signature on the Notice.  We can think of no better evidence on the lack of authority than that already provided by Mr. O'Neal.  Plaintiffs' counsel has had every opportunity to verify those facts since we raised the issue and are certainly free to do so now.

As we indicated in our prior discussions, we believe this issue goes well beyond the validity of the Notice of Termination and the dispute between Mr. O'Neal and Mr. Mottershead and raises issues relevant to class certification, and as such, we plan to raise it with the Court.

---

**From:** Crikelair, Heidi <heidi.crikelair@blankrome.com>
**Sent:** Monday, August 15, 2022 10:03 AM
**To:** Gilford, Lisa M. <lgilford@sidley.com>
**Cc:** Atlas, Ariel <aatlas@sidley.com>; Ransom, Rollin <rransom@sidley.com>; esc@manifesto.com; Arnold, Roy <roy.arnold@blankrome.com>; 'Maryann Marzano' <mmarzano@gradstein.com>; Perry, David M. <david.perry@blankrome.com>; Saunders, Caroline M. <caroline.saunders@blankrome.com>
**Subject:** RE: Alexander O'Neal

Hi Lisa,

We've been following the back and forth, and wanted to let you know that class counsel is in the process of conducting an independent investigation of Mr. O'Neal's allegations against Mr. Mottershead and the solicitors

who were involved in the discussions with Mr. Cohen's firm. Our goal is to understand the facts as they existed in or around 2018 and of the relationship between Mr. Mottershead and Mr. O'Neal at all relevant times.  Critically, at this time we are unaware of any evidence suggesting that Mr. Mottershead lacked the authority that he represented that he had with respect to Mr. O'Neal.  Indeed, publicly available media reports suggest that Mr. Mottershead did have the requisite authority.  Of course, if Sidley has any documents or communications in its possession that support the claim that Mr. Mottershead had in fact been terminated by Mr. O'Neal as of the date of his interactions with Mr. Cohen's firm we would appreciate seeing any such document.

More importantly with respect to the issue you've recently raised about the emails Mr. Cohen provided – we have no evidence at this time that either UMG or Sidley represent Mr. O'Neal.   Nor has Mr. O'Neal contacted either Mr. Cohen (or any of us) to request that those documents be provided to UMG or Sidley without regard to issues of privilege. In fact, we have asked you to produce all of your firm's correspondence with Mr. O'Neal and Ms. Kampa, but you are apparently refusing to do so and your most recent email (see below) is evasive on that topic. When will these documents be produced to us?

I would be glad to speak to Mr. O'Neal directly if he wishes to authorize the disclosure to you and your team. If Mr. O'Neal wishes to withdraw his section 203 claim and exclude himself from the pending class litigation, we also can facilitate such exclusion by merely confirming his understanding of the process and what rights he is potentially giving up. But given everything that has transpired to date, we cannot simply produce these communications to you absent direct instruction from Mr. O'Neal himself (or evidence that you are representing him in connection with this matter). To be clear, we are not intending to question your personal veracity or intent by making this demand, but I'm sure you can appreciate our position.

In the meantime, I can assure you that Blank Rome has reviewed the emails and that none of them contain any further information relevant or material to the current discussion. As you know, Mr. Cohen has already established, via the redacted emails, that he dealt with Mr. O'Neal's manager and solicitors (and who represented themselves to be in those roles), and obtained the executed Notice of Termination directly from them. The dispute between those individuals, whatever the nature or the ultimate outcome, is beyond an inquiry that would be relevant to this case or to our role as class counsel.

We will look forward to hearing from Mr. O'Neal and reviewing any contemporaneous documentary evidence that you can provide us with respect to his relationship with Mr. Mottershead and/or the U.K. solicitors. We also look forward to reviewing all of the communications between Sidley, UMG, Mr. O'Neal, and Ms. Kampa.

Best,
Heidi



**Heidi G. Crikelair** | BLANK**ROME**
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
Cell: 215-704-3400 | O: 215.569.5366 | F: 215.832.0418 | hcrikelair@blankrome.com

---

**From:** Gilford, Lisa M. <lgilford@sidley.com>
**Sent:** Thursday, August 11, 2022 11:58 PM
**To:** esc@manifesto.com; Arnold, Roy <roy.arnold@blankrome.com>; 'Maryann Marzano' <mmarzano@gradstein.com>; Perry, David M. <david.perry@blankrome.com>; Crikelair, Heidi <heidi.crikelair@blankrome.com>; Saunders, Caroline M. <caroline.saunders@blankrome.com>; Atlas, Ariel <aatlas@sidley.com>; Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Evan:

We have provided you with a sworn declaration from Mr. O'Neal that attests to the fact that:

1. You are not his lawyer, and he never provided any authority to Mr. Mottershead or anyone else to retain you for the purpose of serving a Notice of Termination, or for any other purpose; and

2. The signature on the Notice of Termination was forged.

We understand from our discussion on Friday that you take the position that the forgery on a Notice of Termination that you transmitted and recorded with the Copyright Office for a putative class member you seek court approval to represent "has nothing to do with" you.  Nonetheless, we are duty bound to investigate the circumstances surrounding the serious concerns we have arising from the assertions in Mr. O'Neal's declaration.  To that end, we request all communications between you, Mr. Mottershead, and anyone else purporting to act on behalf of Mr. O'Neal.  And, since Mr. O'Neal has now sworn under oath that there is no attorney-client relationship between you, we request that you provide that information to us in an unredacted form, since the privilege you claim is non-existent.

As I told you on Friday, and as Mr. O' Neal affirms in his declaration, he approached UMG about this issue, whereupon Rollin reached out to Roy to obtain permission for us to speak with Mr. O'Neal directly and investigate further, which is exactly what we did and are continuing to do.  We would appreciate your cooperation in this regard.

I can confirm, again, that no one at UMG or Sidley, in the US or UK or anywhere else, has offered Mr. O'Neal any kind of financial compensation or incentive to withdraw the forged notice or for his declaration. There have not been any settlement discussions with Mr. O'Neal, other than through you. Your suspicions and accusations on that score are wholly unfounded.  Mr. O'Neal would testify to that fact, and would also testify that he has no medical condition that would impair his memory (an accusation that he finds remarkably offensive, particularly given that he has never met nor spoken with you and you have absolutely no basis to attack his mental acuity).

 Please advise me whether you will provide us with the information we seek to assist us with investigating further our concerns arising from the facts set forth in Mr. O'Neal's declarations.  Otherwise, we intend to raise these serious issues with the Court.

Sent with BlackBerry Work
(www.blackberry.com)

**From:** esc@manifesto.com <esc@manifesto.com>
**Date:** Wednesday, Aug 10, 2022, 2:47 PM
**To:** Gilford, Lisa M. <lgilford@sidley.com>, 'Arnold, Roy' <roy.arnold@blankrome.com>, 'Maryann Marzano' <mmarzano@gradstein.com>, 'Perry, David M.' <david.perry@blankrome.com>, 'Crikelair, Heidi' <heidi.crikelair@blankrome.com>, 'Saunders, Caroline M.' <caroline.saunders@blankrome.com>, Atlas, Ariel <aatlas@sidley.com>, Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Lisa:

As you know, on Friday of last week, we had a conference call about these issues, and, attendant to that call, I provided to you written, indisputable proof that I received the executed Notice of Termination *directly* from Steve Mottershead, who, at that very time, was engaged by Mr. O'Neal as a manager or representative (and publicly announced as such, at that very time), and, in addition, the entire matter involved two solicitors, who also represented to me that they were representing Mr. O'Neal, at that time.

You stated that Mr. O'Neal disputes whether these individuals represented him, at that time, and that Mr. O'Neal even asserts that the signature on the Notice is a "forgery." However, as I noted on Friday, that has nothing to do with me. Mr. Mottershead, and the solicitors, certainly had *ample* apparent agency to arrange for a Notice of Termination to be drafted, signed, and served. As I noted on Friday, you are *very* well aware that sometimes recording artists are directly involved in such matters, but, most of the time, they are not.

As for your most recent request, it is immaterial what "unredacted" emails would show. If Mr. O'Neal has a dispute with Mr. Mottershead and the two solicitors, they can argue and fight it out as they see fit. And, as Mr. Arnold noted on Friday, the remedy for whatever this "dispute" is (which does not include me) is very simple: In that UMG is obviously in some sort of settlement negotiations with Mr. O'Neal, UMG can simply direct him to sign one of those "Withdrawal of Notice of Termination" forms that UMG apparently has no problem drafting. And that would be the end of it.

Finally, I must reiterate two more points that Mr. Arnold raised with you on Friday: (1) in light of the utter failure of UMG to show that I failed to provide Ms. Straw with a settlement proposal, despite your serious accusations, it might be prudent for UMG, and your firm, to approach these matters a little more carefully; and (2) Mr. O'Neal has admitted publicly that he was a drug addict for some thirty years, which may have affected his memory:

https://www.mirror.co.uk/3am/celebrity-news/alexander-oneal-admits-hes-been-6094560

But more importantly, as we also mentioned to you on Friday, we need to see **all** of the correspondence and emails between your firm, UMG, Mr. O'Neal, and Ms. Kampa. We need to understand how this "controversy" came about, and whether it is, as we suspect, the result of the ongoing efforts of UMG to settle with as many potential class members as possible, during the pendency of this case. In addition to that, we also need to know if UMG offered any sort of benefit, consideration, or inducement to Mr. O'Neal to withdraw his § 203 claim, such as the waiver of his $2,000,000 unrecouped balance, cash advances, and any other favorable monetary terms.

Kindly let me know when such documents will be provided.

Thanks,

Evan

**From:** Gilford, Lisa M. <[lgilford@sidley.com](mailto:lgilford@sidley.com)>
**Sent:** Tuesday, August 9, 2022 2:56 PM
**To:** 'esc@manifesto.com' <[esc@manifesto.com](mailto:esc@manifesto.com)>; 'Arnold, Roy' <[roy.arnold@blankrome.com](mailto:roy.arnold@blankrome.com)>; 'Maryann Marzano' <[mmarzano@gradstein.com](mailto:mmarzano@gradstein.com)>; 'Perry, David M.' <[david.perry@blankrome.com](mailto:david.perry@blankrome.com)>; 'Crikelair, Heidi' <[heidi.crikelair@blankrome.com](mailto:heidi.crikelair@blankrome.com)>; 'Saunders, Caroline M.' <[caroline.saunders@blankrome.com](mailto:caroline.saunders@blankrome.com)>; Atlas, Ariel <[aatlas@sidley.com](mailto:aatlas@sidley.com)>; Ransom, Rollin <[rransom@sidley.com](mailto:rransom@sidley.com)>
**Subject:** RE: Alexander O'Neal

Evan:
To follow up on this:

1. What is your basis for claiming attorney client privilege on the information redacted from the emails you sent us? Mr. O'Neal has affirmed under oath that he is not your client. Would you please provide us unredacted versions of the emails?
2. Do you have any additional correspondence with Mottershead, Collins or Orakwumi regarding Alexander O'Neal, or have you provided us with everything?

**From:** [esc@manifesto.com](mailto:esc@manifesto.com) <[esc@manifesto.com](mailto:esc@manifesto.com)>
**Sent:** Friday, August 5, 2022 10:32 AM
**To:** 'Arnold, Roy' <[roy.arnold@blankrome.com](mailto:roy.arnold@blankrome.com)>; 'Maryann Marzano' <[mmarzano@gradstein.com](mailto:mmarzano@gradstein.com)>; 'Perry, David M.' <[david.perry@blankrome.com](mailto:david.perry@blankrome.com)>; 'Crikelair, Heidi' <[heidi.crikelair@blankrome.com](mailto:heidi.crikelair@blankrome.com)>; 'Saunders, Caroline M.' <[caroline.saunders@blankrome.com](mailto:caroline.saunders@blankrome.com)>; Atlas, Ariel <[aatlas@sidley.com](mailto:aatlas@sidley.com)>; Gilford, Lisa M. <[lgilford@sidley.com](mailto:lgilford@sidley.com)>; Ransom, Rollin <[rransom@sidley.com](mailto:rransom@sidley.com)>
**Subject:** RE: Alexander O'Neal

Ariel –

Here are documents regarding these issues, redacted for attorney-client privilege.

As you will note, we received the **signed** Notice of Termination **directly** from Steve Mottershead, O'Neil's representative.

There were also two solicitors, representing O'Neil, involved with the entire matter, from a very respectable law firm in London.

Also, as you will note from the last page, on **February 9, 2018**, Mottershead's company confirmed, in a public statement, that he and his company were acting on O'Neil's behalf.

We can discuss this during our call, but it appears that O'Neil's perception and memory of the events of 2018 are extremely faulty.

If O'Neil has issues with the Notice that his manager had signed and sent to my office, perhaps he should take it up with Mottershead and his two solicitors.

**We reserve all rights to add to these facts, as I gather them**.

Evan

**From:** Atlas, Ariel <[aatlas@sidley.com](mailto:aatlas@sidley.com)>
**Sent:** Friday, August 5, 2022 10:39 AM

**To:** Arnold, Roy <roy.arnold@blankrome.com>; Gilford, Lisa M. <lgilford@sidley.com>
**Cc:** Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Roy,

Please see the attached for discussion on our call this afternoon.

Thanks,
Ariel

**ARIEL ATLAS**
Managing Associate

**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
+1 212 839 5477
aatlas@sidley.com
www.sidley.com

---

**From:** Arnold, Roy <roy.arnold@blankrome.com>
**Sent:** Wednesday, August 3, 2022 8:12 PM
**To:** Gilford, Lisa M. <lgilford@sidley.com>
**Cc:** Ransom, Rollin <rransom@sidley.com>; Atlas, Ariel <aatlas@sidley.com>
**Subject:** RE: Alexander O'Neal

Sure, do you want me to have Evan and Maryann on the call?
I am pretty heavily involved in trial preparations for an upcoming trial so I would prefer to have others attend so I can eliminate multiple calls.
I can talk between noon Eastern and 2 pm Eastern on Friday.
Roy

**Roy W. Arnold** | BLANKROME
501 Grant Street | Suite 850 | Pittsburgh, PA 15219
M: 412.445.0067 |O: 412.932.2814 | F: 412.592.0959 | roy.arnold@blankrome.com

---

**From:** Gilford, Lisa M. <lgilford@sidley.com>
**Sent:** Wednesday, August 3, 2022 7:50 PM
**To:** Arnold, Roy <roy.arnold@blankrome.com>
**Cc:** Ransom, Rollin <rransom@sidley.com>; Atlas, Ariel <aatlas@sidley.com>
**Subject:** Alexander O'Neal

Roy:
I hope you are well.  As you discussed with Rollin a few weeks ago, we have been in touch with Alexander O'Neal to investigate the Notice of Termination that he did not sign nor authorize.

Are you available for a follow up meet and confer call on Friday?
Please let me know your availability.

Thanks

Sent with BlackBerry Work
(www.blackberry.com)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This e-mail is sent by a law firm and may contain information that is privileged or
confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and
notify us
immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message and any attachments may contain confidential or privileged information and are
only for the use of the intended recipient of this message. If you are not the intended recipient,
please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return
email, and delete or destroy this and all copies of this message and all attachments. Any
unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is
prohibited and may be unlawful.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

JOHN WAITE, an individual; KASIM
SULTON, an individual; SUSAN STRAW
HARRIS p/k/a SYD STRAW, an individual;
LEONARD GRAVES PHILLIPS,  an
individual, STAN SOBOL a/k/a STAN LEE, an
individual, STEVE WYNN, an individual,
DENNIS MEHAFFEY p/k/a DENNIS DUCK,
an individual; and DAVID PELLISH p/k/a
DAVE PROVOST, an individual; and on behalf
of all others similarly situated,

       Plaintiffs,

     v.

UMG RECORDINGS, INC.; CAPITOL
RECORDS, LLC; and DOES 1 through 10,

       Defendants.

No. 1:19-cv-01091(LAK)

-------------------------------------------------------X

## DECLARATION OF ALEXANDER O'NEAL

I, Alexander O'Neal, declare and state, pursuant to 28 U.S.C. § 1746 and Local Civil
Rule 1.9 of the United States District Courts for the Southern and Eastern Districts of New York,
that the following is true and correct:

  1.  I have no medical condition that would impair my memory.  The facts herein are
true and correct to the best of my knowledge, and I would testify to them in Court.

  2.  I am a recording artist who is featured on several works, including an album titled
*Hearsay*. *Hearsay* was released in 1987 by Tabu Records, a record label that I understand is a
predecessor in interest of UMG Recordings, Inc. ("UMG").

3.      I am informed and believe that my name appears on Plaintiffs' Class A List,

Exhibit 22 (Dkt. 151-22), which Plaintiffs submitted in support of their Motion for Class

Certification in this litigation.

4.      In June 2022, I was informed by a friend that he could no longer access the album

*Hearsay* on any music streaming service.  I was previously unaware that the album was no

longer available, and was put in touch with a representative at UMG to find out why.

5.      UMG responded that it had received a purported Notice of Termination with my

name on it, purporting to terminate UMG's copyright interest in *Hearsay*.  That was the first time

I learned that any Notice of Termination had purportedly been prepared or sent on my behalf.

6.      At my request, UMG sent me a copy of the purported Notice of Termination,

which I understand was produced in this action as UMG0028093, and which is attached hereto as

Exhibit A.  Before UMG sent the purported Notice of Termination to me, I had never seen the

document.  Moreover, the signature on the purported Notice of Termination is clearly not my

signature, and I have never authorized anyone to sign or serve a Notice of Termination on my

behalf.  Aside from the fact that the signature on the purported Notice of Termination does not

remotely resemble by signature, the signature does not match the signature on my recording

agreement, which I understand was produced in this action as UMG0026191, and an excerpt of

which is attached hereto as Exhibit B.

7.      The signature on the purported Notice of Termination was forged and was signed

fraudulently without my consent.  The purported Notice appears to have been sent to UMG by a

lawyer named Evan Cohen.  I do not know Mr. Cohen, and, to the best of my recollection, I have

never met nor have I ever had any communications with him.  I never retained Mr. Cohen to file

2

a Notice of Termination on my behalf or for any other purpose.  In fact, I had never even heard
of Mr. Cohen until I received the forged Notice of Termination from UMG.

8.      I am informed and believe that Mr. Cohen claims that a person named Steve
Mottershead authorized Mr. Cohen to file the purported Notice of Termination on my behalf.  I
have reviewed redacted correspondence provided by Mr. Cohen to UMG's counsel regarding his
communications with Mr. Mottershead and two solicitors in the U.K., James Collins and Gez
Orakwusi.  I was unaware of these communications until they were provided to me by counsel
for UMG.  While Mr. Mottershead purports to transmit a Notice of Termination signed by me to
Mr. Cohen, the signature is a forgery and I was unaware that Mr. Mottershead was taking this
action.

9.      I became acquainted with Mr. Mottershead, in connection with a television
appearance on *Celebrity Big Brother 15* in the U.K.  Thereafter, I had a brief business
relationship with Mr. Mottershead, during which I learned that he was taking actions without my
knowledge or consent, interfering with my existing business relationships and diverting funds
due to me to his own accounts.  I was never aware of a 2018 press release claiming that Mr.
Mottershead represented me until I saw it in the correspondence sent to UMG by Mr. Cohen.  I
had previously advised that I terminated my relationship with Mr. Mottershead in February 2018.
However, I refreshed my recollection that my last contact with Mr. Mottershead was in 2019,
prior to my moving from the U.K. back to the United States.

10.      Despite Mr. Mottershead's representations, I never gave Mr. Mottershead
authority to communicate with Mr. Cohen on my behalf, never gave Mr. Mottershead authority
to retain Mr. Cohen on my behalf, never gave Mr. Mottershead or anyone else authority to sign a

3

purported Notice of Termination on my behalf, and never gave Mr. Mottershead authority to have Mr. Cohen send a Notice of Termination on my behalf to UMG (or anywhere else).

11.     I do not have and have never had an attorney-client relationship with Mr. Cohen. To the extent Mr. Cohen claims privilege over any communications with Mr. Mottershead as my purported agent, I waive that privilege.

12.     I had never heard of Mr. Collins or Mr. Orakwusi prior to receiving the correspondence. I have never met them nor communicated with them to my knowledge. I never retained them to act on my behalf as my solicitors.

13.     Moreover, Mr. Cohen never contacted me, never confirmed whether I wished to retain him, never confirmed whether I authorized him to send a Notice of Termination on my behalf, never sent me a purported Notice of Termination for my approval and signature, and never confirmed with me that Mr. Mottershead had any authority to interact with Mr. Cohen on my behalf (which he did not).

14.     I do not wish to terminate the rights to the sound recordings listed on the purported Notice of Termination. That purported Notice of Termination is a forgery and a fraud. I do not consent to having Mr. Cohen represent me as class counsel, or in any other capacity. To the contrary, I would like UMG to retain the rights to those sound recordings and to continue promoting those works and offering them to the public on streaming services.

15.     I have not had any communications regarding settlement with UMG representatives, and I have not received or been offered any financial incentive by anyone to provide this declaration.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

4

Dated: August 10, 2022
Minneapolis, Minnesota

_____
Alexander O'Neal

5

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td colspan="2" align="center">X</td></tr>
<tr><td>
JOHN WAITE, an individual; KASIM<br/>
SULTON, an individual; SUSAN STRAW<br/>
HARRIS p/k/a SYD STRAW, an individual;<br/>
LEONARD GRAVES PHILLIPS, an<br/>
individual; STAN SOBOL a/k/a STAN LEE,<br/>
an individual; STEVE WYNN, an individual;<br/>
DENNIS MEHAFFEY, p/k/a DENNIS<br/>
DUCK, an individual; and JOEL DAVID<br/>
PELLISH, p/k/a DAVID PROVOST, an<br/>
individual; and on behalf of all others<br/>
similarly situated,</td>
<td>:<br/>:<br/>:<br/>:<br/>:<br/>:<br/>:<br/>:<br/>:<br/>:<br/>:<br/>:<br/>:<br/>
No. 1:19-cv-01091(LAK)</td></tr>
<tr><td align="right">Plaintiffs,</td><td>:<br/>:</td></tr>
<tr><td>v.</td><td>:<br/>:</td></tr>
<tr><td>
UMG RECORDINGS, INC., a Delaware<br/>
corporation doing business as Universal<br/>
Music Group; and CAPITOL RECORDS,<br/>
LLC, a Delaware limited liability company;</td>
<td>:<br/>:<br/>:<br/>:<br/>:</td></tr>
<tr><td align="right">Defendants.</td><td>X</td></tr>
</table>

**SUPPLEMENTAL DECLARATION OF HEIDI G. CRIKELAIR**
**IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN**
**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

I, Heidi G. Crikelair, declare pursuant to 28 U.S.C. §1746 as follows:

1.       I am an attorney at law admitted to the bar of this Court, and I am a partner in the law firm of Blank Rome, LLP,  co-counsel with the law firm of Cohen Music Law, attorneys for Plaintiffs Kasim Sulton, Susan Straw Harris p/k/a Syd Straw, Leonard Graves Phillips, Stan Sobol p/k/a Stan Lee, Steve Wynn, Dennis Mehaffey p/k/a Dennis Duck, and David Pellish p/k/a Dave Provost, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"). I make this supplemental declaration in Response to Defendants' Supplemental Opposition to Plaintiffs' Motion for Class Certification.

2.       On August 9, 2022, I was included on an email from Defendants' counsel requesting that Mr. Cohen provide unredacted copies of his correspondence with Mr.

1

Mottershead regarding a notice of termination for an artist named Alexander O'Neal.  A copy of this email is attached hereto as **Exhibit A**.

3.      On August 11, 2022, in the same email thread, Defendants' counsel confirmed that there was no settlement or other similar discussions between Mr. O'Neal and UMG, stating:

> I can confirm, again, that no one at UMG or Sidley, in the US or UK or anywhere else, has offered Mr. O'Neal any kind of financial compensation or incentive to withdraw the forged notice or for his declaration. There have not been any settlement discussions with Mr. O'Neal, other than through you.

(*Id*.)

4.      On August 15, 2022, I responded to Defendants' counsel and informed them that Mr. O'Neal had made no effort to contact Evan Cohen, or any other counsel for Plaintiffs and that, as a result, we could not provide unredacted versions of communications with Mr. Mottershead and the UK-based solicitors. (*Id*.)

5.      Specifically, I stated:

> **I would be glad to speak to Mr. O'Neal directly if he wishes to authorize the disclosure to you and your team.**

(*Id*. (emphasis added).)

6.      I further stated:

> **If Mr. O'Neal wishes to withdraw his section 203 claim and exclude himself from the pending class litigation, we also can facilitate such exclusion** by merely confirming his understanding of the process and what rights he is potentially giving up.

(*Id*. (emphasis added).)

7.      Finally, I requested copies of communications between UMG, counsel, Mr. O'Neal, and Ms. Kampa. (*Id*.)  No such communications have been provided.

8.      I have never been contacted by Mr. O'Neal. Nor have I ever been sent a written authorization from Mr. O'Neal requesting that unredacted versions of emails or any other client related files be provided by Mr. Cohen directly to UMG's counsel.

2

9.      Instead, on August 22, 2022, UMG's counsel responded to my email and attached a declaration in which Mr. O'Neal purports to waive any purported privilege that he had with Mr. Cohen.  (**Ex. A** at the attachment thereto.)  Again, this declaration contains no direction from Mr. O'Neal to Mr. Cohen regarding his client files.

10.     Since August 5, 2022, I have made numerous attempts to reach Mr. Mottershead. Specifically, I have attempted to call, text, and email him using the contact information available to me.  To date, I have not heard back or received any indication that he has received my communications.  In addition, I have attempted to obtain updated contact information for Mr. Mottershead from, among others, James Collins, one of the UK-solicitors listed on communications involving Mr. Mottershead and Mr. Cohen.  Although Mr. Collins recalled Mr. Mottershead, he was unable to provide me with any additional contact information for him.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct.


Executed: Philadelphia, PA                           */s Heidi G. Crikelair*
Dated: September 12, 2022                          Heidi G. Crikelair

3

# EXHIBIT A

| | |
|---|---|
| **From:** | Gilford, Lisa M. <lgilford@sidley.com> |
| **Sent:** | Monday, August 22, 2022 11:39 AM |
| **To:** | Crikelair, Heidi |
| **Cc:** | Atlas, Ariel; Ransom, Rollin; esc@manifesto.com; Arnold, Roy; 'Maryann Marzano'; Perry, David M.; Saunders, Caroline M. |
| **Subject:** | RE: Alexander O'Neal |
| **Attachments:** | Declaration of Alexander O'Neal.pdf |

Heidi:

Blank Rome is certainly free to conduct its own investigation of the forgery of Mr. O'Neal's signature on the purported Notice of Termination; in fact, we assumed that you would have investigated when we first raised the issue with you several weeks ago.   As you know, we represent the Defendants in this action.  We spoke with Mr. O'Neal as a witness with information relevant to class certification and did so only after conferring with your firm and obtaining the go ahead to speak with him directly, as Mr. Cohen purported to represent him.  Of course, we have since learned that Mr. Cohen does not, in fact, represent Mr. O'Neal, and there is therefore no basis for Mr. Cohen or your firm to continue redacting or otherwise refusing to provide the communications referenced in your response.  Although we believe that Mr. O'Neal's prior declaration is more than adequate in this regard, attached is a revised declaration in which he expressly waives any purported privilege respecting Mr. Cohen's communications with Mr. Mottershead, and which further responds to the positions that Mr. Cohen and your firm have taken in connection with this matter.

As to the balance of your e-mail, we have kept you apprised of the results of our investigation, and contrary to your claim that we are being "evasive," we have provided you with the results of that investigation -- a declaration from Mr. O'Neal, which as noted above, Mr. O'Neal has now supplemented to take into account our recent communications with Mr. Cohen and your firm.  That declaration, we believe, provides ample evidence that Mr. Mottershead did not have the requisite authority to engage Mr. Cohen to send a Notice of Termination .  Mr. O'Neal attests that he did not engage Mr. Cohen and did not authorize the actions Mr. Mottershead took purportedly on his behalf, and perhaps most significantly, that it is not his signature on the Notice.  We can think of no better evidence on the lack of authority than that already provided by Mr. O'Neal.  Plaintiffs' counsel has had every opportunity to verify those facts since we raised the issue and are certainly free to do so now.

As we indicated in our prior discussions, we believe this issue goes well beyond the validity of the Notice of Termination and the dispute between Mr. O'Neal and Mr. Mottershead and raises issues relevant to class certification, and as such, we plan to raise it with the Court.

---

**From:** Crikelair, Heidi <heidi.crikelair@blankrome.com>
**Sent:** Monday, August 15, 2022 10:03 AM
**To:** Gilford, Lisa M. <lgilford@sidley.com>
**Cc:** Atlas, Ariel <aatlas@sidley.com>; Ransom, Rollin <rransom@sidley.com>; esc@manifesto.com; Arnold, Roy <roy.arnold@blankrome.com>; 'Maryann Marzano' <mmarzano@gradstein.com>; Perry, David M. <david.perry@blankrome.com>; Saunders, Caroline M. <caroline.saunders@blankrome.com>
**Subject:** RE: Alexander O'Neal

Hi Lisa,

We've been following the back and forth, and wanted to let you know that class counsel is in the process of conducting an independent investigation of Mr. O'Neal's allegations against Mr. Mottershead and the solicitors

1

who were involved in the discussions with Mr. Cohen's firm. Our goal is to understand the facts as they existed in or around 2018 and of the relationship between Mr. Mottershead and Mr. O'Neal at all relevant times.  Critically, at this time we are unaware of any evidence suggesting that Mr. Mottershead lacked the authority that he represented that he had with respect to Mr. O'Neal.  Indeed, publicly available media reports suggest that Mr. Mottershead did have the requisite authority.  Of course, if Sidley has any documents or communications in its possession that support the claim that Mr. Mottershead had in fact been terminated by Mr. O'Neal as of the date of his interactions with Mr. Cohen's firm we would appreciate seeing any such document.

More importantly with respect to the issue you've recently raised about the emails Mr. Cohen provided – we have no evidence at this time that either UMG or Sidley represent Mr. O'Neal.   Nor has Mr. O'Neal contacted either Mr. Cohen (or any of us) to request that those documents be provided to UMG or Sidley without regard to issues of privilege. In fact, we have asked you to produce all of your firm's correspondence with Mr. O'Neal and Ms. Kampa, but you are apparently refusing to do so and your most recent email (see below) is evasive on that topic. When will these documents be produced to us?

I would be glad to speak to Mr. O'Neal directly if he wishes to authorize the disclosure to you and your team. If Mr. O'Neal wishes to withdraw his section 203 claim and exclude himself from the pending class litigation, we also can facilitate such exclusion by merely confirming his understanding of the process and what rights he is potentially giving up. But given everything that has transpired to date, we cannot simply produce these communications to you absent direct instruction from Mr. O'Neal himself (or evidence that you are representing him in connection with this matter). To be clear, we are not intending to question your personal veracity or intent by making this demand, but I'm sure you can appreciate our position.

In the meantime, I can assure you that Blank Rome has reviewed the emails and that none of them contain any further information relevant or material to the current discussion. As you know, Mr. Cohen has already established, via the redacted emails, that he dealt with Mr. O'Neal's manager and solicitors (and who represented themselves to be in those roles), and obtained the executed Notice of Termination directly from them. The dispute between those individuals, whatever the nature or the ultimate outcome, is beyond an inquiry that would be relevant to this case or to our role as class counsel.

We will look forward to hearing from Mr. O'Neal and reviewing any contemporaneous documentary evidence that you can provide us with respect to his relationship with Mr. Mottershead and/or the U.K. solicitors. We also look forward to reviewing all of the communications between Sidley, UMG, Mr. O'Neal, and Ms. Kampa.

Best,
Heidi


**Heidi G. Crikelair** | BLANKROME
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
Cell: 215-704-3400 | O: 215.569.5366 | F: 215.832.0418 | hcrikelair@blankrome.com

---

**From:** Gilford, Lisa M. <lgilford@sidley.com>
**Sent:** Thursday, August 11, 2022 11:58 PM
**To:** esc@manifesto.com; Arnold, Roy <roy.arnold@blankrome.com>; 'Maryann Marzano' <mmarzano@gradstein.com>; Perry, David M. <david.perry@blankrome.com>; Crikelair, Heidi <heidi.crikelair@blankrome.com>; Saunders, Caroline M. <caroline.saunders@blankrome.com>; Atlas, Ariel <aatlas@sidley.com>; Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Evan:

We have provided you with a sworn declaration from Mr. O'Neal that attests to the fact that:

1. You are not his lawyer, and he never provided any authority to Mr. Mottershead or anyone else to retain you for the purpose of serving a Notice of Termination, or for any other purpose; and

2. The signature on the Notice of Termination was forged.

We understand from our discussion on Friday that you take the position that the forgery on a Notice of Termination that you transmitted and recorded with the Copyright Office for a putative class member you seek court approval to represent "has nothing to do with" you.  Nonetheless, we are duty bound to investigate the circumstances surrounding the serious concerns we have arising from the assertions in Mr. O'Neal's declaration.  To that end, we request all communications between you, Mr. Mottershead, and anyone else purporting to act on behalf of Mr. O'Neal.  And, since Mr. O'Neal has now sworn under oath that there is no attorney-client relationship between you, we request that you provide that information to us in an unredacted form, since the privilege you claim is non-existent.

As I told you on Friday, and as Mr. O' Neal affirms in his declaration, he approached UMG about this issue, whereupon Rollin reached out to Roy to obtain permission for us to speak with Mr. O'Neal directly and investigate further, which is exactly what we did and are continuing to do.  We would appreciate your cooperation in this regard.

I can confirm, again, that no one at UMG or Sidley, in the US or UK or anywhere else, has offered Mr. O'Neal any kind of financial compensation or incentive to withdraw the forged notice or for his declaration. There have not been any settlement discussions with Mr. O'Neal, other than through you. Your suspicions and accusations on that score are wholly unfounded.  Mr. O'Neal would testify to that fact, and would also testify that he has no medical condition that would impair his memory (an accusation that he finds remarkably offensive, particularly given that he has never met nor spoken with you and you have absolutely no basis to attack his mental acuity).

 Please advise me whether you will provide us with the information we seek to assist us with investigating further our concerns arising from the facts set forth in Mr. O'Neal's declarations.  Otherwise, we intend to raise these serious issues with the Court.

Sent with BlackBerry Work
([www.blackberry.com](www.blackberry.com))

3

**From:** esc@manifesto.com <esc@manifesto.com>
**Date:** Wednesday, Aug 10, 2022, 2:47 PM
**To:** Gilford, Lisa M. <lgilford@sidley.com>, 'Arnold, Roy' <roy.arnold@blankrome.com>, 'Maryann Marzano'
<mmarzano@gradstein.com>, 'Perry, David M.' <david.perry@blankrome.com>, 'Crikelair, Heidi'
<heidi.crikelair@blankrome.com>, 'Saunders, Caroline M.' <caroline.saunders@blankrome.com>, Atlas, Ariel
<aatlas@sidley.com>, Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Lisa:

As you know, on Friday of last week, we had a conference call about these issues, and, attendant to that call, I provided to you written, indisputable proof that I received the executed Notice of Termination *directly* from Steve Mottershead, who, at that very time, was engaged by Mr. O'Neal as a manager or representative (and publicly announced as such, at that very time), and, in addition, the entire matter involved two solicitors, who also represented to me that they were representing Mr. O'Neal, at that time.

You stated that Mr. O'Neal disputes whether these individuals represented him, at that time, and that Mr. O'Neal even asserts that the signature on the Notice is a "forgery." However, as I noted on Friday, that has nothing to do with me. Mr. Mottershead, and the solicitors, certainly had *ample* apparent agency to arrange for a Notice of Termination to be drafted, signed, and served. As I noted on Friday, you are *very* well aware that sometimes recording artists are directly involved in such matters, but, most of the time, they are not.

As for your most recent request, it is immaterial what "unredacted" emails would show. If Mr. O'Neal has a dispute with Mr. Mottershead and the two solicitors, they can argue and fight it out as they see fit. And, as Mr. Arnold noted on Friday, the remedy for whatever this "dispute" is (which does not include me) is very simple: In that UMG is obviously in some sort of settlement negotiations with Mr. O'Neal, UMG can simply direct him to sign one of those "Withdrawal of Notice of Termination" forms that UMG apparently has no problem drafting. And that would be the end of it.

Finally, I must reiterate two more points that Mr. Arnold raised with you on Friday: (1) in light of the utter failure of UMG to show that I failed to provide Ms. Straw with a settlement proposal, despite your serious accusations, it might be prudent for UMG, and your firm, to approach these matters a little more carefully; and (2) Mr. O'Neal has admitted publicly that he was a drug addict for some thirty years, which may have affected his memory:

https://www.mirror.co.uk/3am/celebrity-news/alexander-oneal-admits-hes-been-6094560

But more importantly, as we also mentioned to you on Friday, we need to see **all** of the correspondence and emails between your firm, UMG, Mr. O'Neal, and Ms. Kampa. We need to understand how this "controversy" came about, and whether it is, as we suspect, the result of the ongoing efforts of UMG to settle with as many potential class members as possible, during the pendency of this case. In addition to that, we also need to know if UMG offered any sort of benefit, consideration, or inducement to Mr. O'Neal to withdraw his § 203 claim, such as the waiver of his $2,000,000 unrecouped balance, cash advances, and any other favorable monetary terms.

Kindly let me know when such documents will be provided.

Thanks,

Evan

**From:** Gilford, Lisa M. <lgilford@sidley.com>
**Sent:** Tuesday, August 9, 2022 2:56 PM
**To:** 'esc@manifesto.com' <esc@manifesto.com>; 'Arnold, Roy' <roy.arnold@blankrome.com>; 'Maryann Marzano' <mmarzano@gradstein.com>; 'Perry, David M.' <david.perry@blankrome.com>; 'Crikelair, Heidi' <heidi.crikelair@blankrome.com>; 'Saunders, Caroline M.' <caroline.saunders@blankrome.com>; Atlas, Ariel <aatlas@sidley.com>; Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Evan:
To follow up on this:

1.  What is your basis for claiming attorney client privilege on the information redacted from the emails you sent us? Mr. O'Neal has affirmed under oath that he is not your client. Would you please provide us unredacted versions of the emails?
2.  Do you have any additional correspondence with Mottershead, Collins or Orakwumi regarding Alexander O'Neal, or have you provided us with everything?

**From:** esc@manifesto.com <esc@manifesto.com>
**Sent:** Friday, August 5, 2022 10:32 AM
**To:** 'Arnold, Roy' <roy.arnold@blankrome.com>; 'Maryann Marzano' <mmarzano@gradstein.com>; 'Perry, David M.' <david.perry@blankrome.com>; 'Crikelair, Heidi' <heidi.crikelair@blankrome.com>; 'Saunders, Caroline M.' <caroline.saunders@blankrome.com>; Atlas, Ariel <aatlas@sidley.com>; Gilford, Lisa M. <lgilford@sidley.com>; Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Ariel –

Here are documents regarding these issues, redacted for attorney-client privilege.

As you will note, we received the **signed** Notice of Termination **directly** from Steve Mottershead, O'Neil's representative.

There were also two solicitors, representing O'Neil, involved with the entire matter, from a very respectable law firm in London.

Also, as you will note from the last page, on **February 9, 2018**, Mottershead's company confirmed, in a public statement, that he and his company were acting on O'Neil's behalf.

We can discuss this during our call, but it appears that O'Neil's perception and memory of the events of 2018 are extremely faulty.

If O'Neil has issues with the Notice that his manager had signed and sent to my office, perhaps he should take it up with Mottershead and his two solicitors.

**We reserve all rights to add to these facts, as I gather them**.

Evan

**From:** Atlas, Ariel <aatlas@sidley.com>
**Sent:** Friday, August 5, 2022 10:39 AM

**To:** Arnold, Roy <roy.arnold@blankrome.com>; Gilford, Lisa M. <lgilford@sidley.com>
**Cc:** Ransom, Rollin <rransom@sidley.com>
**Subject:** RE: Alexander O'Neal

Roy,

Please see the attached for discussion on our call this afternoon.

Thanks,
Ariel

**ARIEL ATLAS**
Managing Associate

**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
+1 212 839 5477
aatlas@sidley.com
www.sidley.com

---

**From:** Arnold, Roy <roy.arnold@blankrome.com>
**Sent:** Wednesday, August 3, 2022 8:12 PM
**To:** Gilford, Lisa M. <lgilford@sidley.com>
**Cc:** Ransom, Rollin <rransom@sidley.com>; Atlas, Ariel <aatlas@sidley.com>
**Subject:** RE: Alexander O'Neal

Sure, do you want me to have Evan and Maryann on the call?
I am pretty heavily involved in trial preparations for an upcoming trial so I would prefer to have others attend so I can eliminate multiple calls.
I can talk between noon Eastern and 2 pm Eastern on Friday.
Roy

**Roy W. Arnold** | BLANKROME
501 Grant Street | Suite 850 | Pittsburgh, PA 15219
M: 412.445.0067 |O: 412.932.2814 | F: 412.592.0959 | roy.arnold@blankrome.com

---

**From:** Gilford, Lisa M. <lgilford@sidley.com>
**Sent:** Wednesday, August 3, 2022 7:50 PM
**To:** Arnold, Roy <roy.arnold@blankrome.com>
**Cc:** Ransom, Rollin <rransom@sidley.com>; Atlas, Ariel <aatlas@sidley.com>
**Subject:** Alexander O'Neal

Roy:
I hope you are well.  As you discussed with Rollin a few weeks ago, we have been in touch with Alexander O'Neal to investigate the Notice of Termination that he did not sign nor authorize.

Are you available for a follow up meet and confer call on Friday?
Please let me know your availability.

Thanks

Sent with BlackBerry Work
([www.blackberry.com](www.blackberry.com))

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This e-mail is sent by a law firm and may contain information that is privileged or
confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and
notify us
immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message and any attachments may contain confidential or privileged information and are
only for the use of the intended recipient of this message. If you are not the intended recipient,
please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return
email, and delete or destroy this and all copies of this message and all attachments. Any
unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is
prohibited and may be unlawful.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

JOHN WAITE, an individual; KASIM
SULTON, an individual; SUSAN STRAW
HARRIS p/k/a SYD STRAW, an individual;
LEONARD GRAVES PHILLIPS,  an
individual, STAN SOBOL a/k/a STAN LEE, an
individual, STEVE WYNN, an individual,
DENNIS MEHAFFEY p/k/a DENNIS DUCK,
an individual; and DAVID PELLISH p/k/a
DAVE PROVOST, an individual; and on behalf
of all others similarly situated,

                    Plaintiffs,

            v.

UMG RECORDINGS, INC.; CAPITOL
RECORDS, LLC; and DOES 1 through 10,

                Defendants.

-------------------------------------------------------X

No. 1:19-cv-01091(LAK)

## DECLARATION OF ALEXANDER O'NEAL

      I, Alexander O'Neal, declare and state, pursuant to 28 U.S.C. § 1746 and Local Civil

Rule 1.9 of the United States District Courts for the Southern and Eastern Districts of New York,

that the following is true and correct:

      1.      I have no medical condition that would impair my memory.  The facts herein are

true and correct to the best of my knowledge, and I would testify to them in Court.

      2.      I am a recording artist who is featured on several works, including an album titled

*Hearsay*. *Hearsay* was released in 1987 by Tabu Records, a record label that I understand is a

predecessor in interest of UMG Recordings, Inc. ("UMG").

3.      I am informed and believe that my name appears on Plaintiffs' Class A List,

Exhibit 22 (Dkt. 151-22), which Plaintiffs submitted in support of their Motion for Class

Certification in this litigation.

4.      In June 2022, I was informed by a friend that he could no longer access the album

*Hearsay* on any music streaming service.  I was previously unaware that the album was no

longer available, and was put in touch with a representative at UMG to find out why.

5.      UMG responded that it had received a purported Notice of Termination with my

name on it, purporting to terminate UMG's copyright interest in *Hearsay*.  That was the first time

I learned that any Notice of Termination had purportedly been prepared or sent on my behalf.

6.      At my request, UMG sent me a copy of the purported Notice of Termination,

which I understand was produced in this action as UMG0028093, and which is attached hereto as

Exhibit A.  Before UMG sent the purported Notice of Termination to me, I had never seen the

document.  Moreover, the signature on the purported Notice of Termination is clearly not my

signature, and I have never authorized anyone to sign or serve a Notice of Termination on my

behalf.  Aside from the fact that the signature on the purported Notice of Termination does not

remotely resemble by signature, the signature does not match the signature on my recording

agreement, which I understand was produced in this action as UMG0026191, and an excerpt of

which is attached hereto as Exhibit B.

7.      The signature on the purported Notice of Termination was forged and was signed

fraudulently without my consent.  The purported Notice appears to have been sent to UMG by a

lawyer named Evan Cohen.  I do not know Mr. Cohen, and, to the best of my recollection, I have

never met nor have I ever had any communications with him.  I never retained Mr. Cohen to file

2

a Notice of Termination on my behalf or for any other purpose. In fact, I had never even heard of Mr. Cohen until I received the forged Notice of Termination from UMG.

8.      I am informed and believe that Mr. Cohen claims that a person named Steve Mottershead authorized Mr. Cohen to file the purported Notice of Termination on my behalf. I have reviewed redacted correspondence provided by Mr. Cohen to UMG's counsel regarding his communications with Mr. Mottershead and two solicitors in the U.K., James Collins and Gez Orakwusi. I was unaware of these communications until they were provided to me by counsel for UMG. While Mr. Mottershead purports to transmit a Notice of Termination signed by me to Mr. Cohen, the signature is a forgery and I was unaware that Mr. Mottershead was taking this action.

9.      I became acquainted with Mr. Mottershead, in connection with a television appearance on *Celebrity Big Brother 15* in the U.K. Thereafter, I had a brief business relationship with Mr. Mottershead, during which I learned that he was taking actions without my knowledge or consent, interfering with my existing business relationships and diverting funds due to me to his own accounts. I was never aware of a 2018 press release claiming that Mr. Mottershead represented me until I saw it in the correspondence sent to UMG by Mr. Cohen. I had previously advised that I terminated my relationship with Mr. Mottershead in February 2018. However, I refreshed my recollection that my last contact with Mr. Mottershead was in 2019, prior to my moving from the U.K. back to the United States.

10.     Despite Mr. Mottershead's representations, I never gave Mr. Mottershead authority to communicate with Mr. Cohen on my behalf, never gave Mr. Mottershead authority to retain Mr. Cohen on my behalf, never gave Mr. Mottershead or anyone else authority to sign a

3

purported Notice of Termination on my behalf, and never gave Mr. Mottershead authority to
have Mr. Cohen send a Notice of Termination on my behalf to UMG (or anywhere else).

11.     I do not have and have never had an attorney-client relationship with Mr. Cohen.
To the extent Mr. Cohen claims privilege over any communications with Mr. Mottershead as my
purported agent, I waive that privilege.

12.     I had never heard of Mr. Collins or Mr. Orakwusi prior to receiving the
correspondence. I have never met them nor communicated with them to my knowledge. I never
retained them to act on my behalf as my solicitors.

13.     Moreover, Mr. Cohen never contacted me, never confirmed whether I wished to
retain him, never confirmed whether I authorized him to send a Notice of Termination on my
behalf, never sent me a purported Notice of Termination for my approval and signature, and
never confirmed with me that Mr. Mottershead had any authority to interact with Mr. Cohen on
my behalf (which he did not).

14.     I do not wish to terminate the rights to the sound recordings listed on the
purported Notice of Termination. That purported Notice of Termination is a forgery and a fraud.
I do not consent to having Mr. Cohen represent me as class counsel, or in any other capacity. To
the contrary, I would like UMG to retain the rights to those sound recordings and to continue
promoting those works and offering them to the public on streaming services.

15.     I have not had any communications regarding settlement with UMG
representatives, and I have not received or been offered any financial incentive by anyone to
provide this declaration.

I declare under penalty of perjury under the laws of the United States of America,
pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

4

Dated: August 10 , 2022
Minneapolis, Minnesota

_____
Alexander O'Neal

5