UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN WAITE, an individual, et al.,

                                 Plaintiffs,

              -against-

                                                                    19-cv-1091 (LAK)

UMG RECORDINGS, INC., et al.,

                                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/13/2022

## MEMORANDUM OPINION

Appearances:

        Ryan E. Cronin
        Gregory M. Bordo
        David M. Perry
        BLANK ROME LLP

        Evan S. Cohen
        Maryann R. Marzano
        COHEN MUSIC LAW

        *Attorneys for Plaintiffs*

        Steven M. Bierman
        Melanie Berdecia
        Rollin A. Ransom
        Lisa M. Gilford
        Adriane Peralta
        SIDLEY AUSTIN LLP
        *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

      Aspiring singers, musicians, authors and other artists – sometimes young and inexperienced and often not well known – tend to have little bargaining power in negotiating financial arrangements with recording companies, publishers, and others who promote and commercialize the artists' work.  They often grant copyright in that work as part of the bargain they strike for promotion and commercialization.  Accordingly, when an artistic work turns out to be a "hit," the lion's share of the economic returns often goes to those who commercialized the works rather than to the artist who created them.  Section 203 of the Copyright Act of 1976 established a limited opportunity for artists to terminate the copyright ownership that they had granted to commercializers decades earlier in order to address this issue.  The idea was that termination of these rights would more fairly balance the allocation of the benefits derived from the artists' creativity.  Termination is effectuated by serving the grantee with written notice.[1]

      This is a purported class action by recording artists  whose albums were released by predecessors in interest of defendant UMG Recordings, Inc. ("UMG"), and Capitol Records, LLC ("Capitol") pursuant to agreements the artists signed in the 1970s and 1980s that granted copyright in their works to UMG's and Capitol's predecessor recording companies. These grants allowed those companies (and now UMG and Capitol) ) to market, distribute, and sell the artists' sound recordings.

      Each member of the class allegedly has terminated that grant as to the sound recordings comprising certain albums.  Defendants dispute the validity of those terminations.  The matter, however, now is before the Court on a far more limited issue.  The defendants seek summary judgment dismissing the copyright infringement claim of plaintiff Kasim Sulton on the basis that

---

[1]     17 U.S.C. § 203(a)(4).

the defendants – even assuming that Mr. Sulton's putative notice of termination was effective on the date claimed, and thus that Mr. Sulton has held the copyright in question since then – have not violated Mr. Sulton's exclusive rights under the Copyright Act and therefore have not infringed his copyright.

*Facts*

The following facts are undisputed.

*The Sulton Recording Agreement*

On September 29, 1980, Sulton and EMI America Records, Inc. ("EMI") entered into a recording agreement for Sulton's exclusive personal services as a performer on phonograph records (the "Agreement").[2]   Paragraph 6(a) of the Agreement provided that EMI has:

> "the complete, unconditional, exclusive, perpetual, unencumbered and universe-wide" rights in "all results and proceeds of [Sulton]'s services and performances hereunder, including the exclusive ownership of any and all masters and all records and reproductions made therefrom together with all universal copyrights and copyright rights[.]"[3]

Capitol subsequently succeeded to EMI's rights and obligations under the Agreement, including ownership of the copyright to *Kasim*, an album published thereunder.[4]

---

[2]    Cronin Decl. (Dkt 172) ¶ 3 & Ex. 2; Pl. 56.1 St. (Dkt 204) ¶¶ 1-2.

[3]    Cronin Decl. (Dkt 172) ¶ 3 & Ex. 2 ¶ 6(a); Pl. 56.1 St. (Dkt 204) ¶ 3.

[4]    Pl. 56.1 St. (Dkt 204) ¶¶ 2, 4.

4

*The EMI-Demon License*

On December 1, 2011, EMI Records Ltd. and Demon Music Group Limited ("Demon") entered into an agreement pursuant to which Demon licensed the album *Kasim* for a three-year term from February 25, 2013 to February 24, 2016 (the "License"). The License applied to compact disc, or "CD," releases only (*i.e.*, no streaming or other digital rights) and the territory of the License was limited to the United Kingdom and Ireland. Pursuant to the License, Demon released a compact disc re-issue of *Kasim* through its label Edsel Records in the United Kingdom in 2013.[5]

*Sulton's Putative Notice of Termination*

On or about July 20, 2016, Sulton, through his representative and counsel Evan Cohen, transmitted a putative "Notice of Termination Under 17 U.S.C. § 203 and 37 C.F.R. § 201.10" to "Universal Music Group" (the "Notice").[6]  In the Notice, Sulton purported to terminate "[a]ll grants or transfers of copyright and all rights of the copyright proprietor" in the album *Kasim*, "including, without limitation the grant dated in or about 1981 between the recording artist Kasim [Sulton] and EMI America Records, a division of Capitol Records, Inc."[7]  The Notice also listed an "Effective Date of Termination" of July 21, 2018 for *Kasim*.[8]

---

[5]     Pl. 56.1 St. (Dkt 204) ¶¶ 5-7.

[6]     *Id.* ¶ 8.

[7]     *Id.* ¶ 9.

[8]     *Id.* ¶ 10.

5

*Sulton's Claims and Defendants' Motion*

On June 5, 2019, Sulton joined this action as a plaintiff asserting claims against Defendants for copyright infringement.[9] Sulton seeks to be appointed a class representative of a putative class of artists seeking compensatory damages for alleged copyright infringement against Capitol, defined as follows: "All recording artists (and statutory heirs and personal representatives of those recording artists, if applicable) who have served Defendants with Notices of Termination pursuant to § 203 of the Copyright Act describing an effective date of termination for a particular work (i) occurring on or after January 1, 2013 and (ii) occurring no later than the date the Court grants class certification of Class A."[10]

Sulton contends that Defendants allegedly continued to exploit *Kasim* and generate revenue from such exploitation after July 21, 2018, the album's putative termination date.[11] Defendants, however, have submitted a declaration asserting that they have "no record of having exploited *Kasim* in the United States on or after July 21, 2018, and likewise have no record of any revenue activity associated with exploitation of *Kasim* in the United States after July 21, 2018"[12] and, on that basis, assert in their Rule 56.1 Statement that they have neither exploited *Kasim* in the United States nor received any revenue associated with its exploration after the putative July 21,

---

[9]      *Id.* ¶ 11.

[10]      *Id.* ¶ 12.

[11]      *Id.* ¶ 14.

[12]      Harrington Decl. (Dkt 176) ¶¶ 3-4.

6

2018 termination date.[13]  Sulton has adduced no evidence to the contrary.  Indeed, Sulton's Rule

56.1 Statement does not dispute defendants' foregoing assertions.[14]


*Discussion*

*Summary Judgment Standard*

   The legal standard governing motions for summary judgment is well established,

aptly summarized in defendants' memorandum, and uncontroverted by Sulton:

> "Summary judgment must be granted when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While 'facts must be viewed in the light most favorable to the nonmoving party, that is true only if there is a "genuine" dispute as to those facts.' *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (internal quotation marks omitted). Mere 'conclusory allegations or unsubstantiated speculation' are insufficient to raise a dispute of material fact and defeat summary judgment. *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citation omitted).

> "Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' *El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016) (internal quotations and citations omitted); *see also* Fed R. Civ. P. 56(c). 'In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.' *Celotex*, 477 U.S. at 322-23 (citation omitted)."[15]

---

[13]  Pl. Rule 56.1 St. (Dkt 204) ¶ 15.

[14]  *Id.*

[15]  Def. Mem. (Dkt 170) at 3-4.

*Copyright Infringement - General Principles*

        The Intellectual Property Clause of the Constitution empowers Congress to "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their Respective Writings and Discoveries."[16]  The idea was to empower Congress to enumerate authors by "the least exceptionable way of remunerating them [– . . . ] is by [giving them a time-limited] monopoly."[17]

        The current manifestation of Congress's exercise of this power for the benefit of authors, including musical performers, is the Copyright Act of 1976 (the "Act").[18]  Section 106 of the Act, subject to the Act's other provisions, confers on the owner of copyright "the exclusive rights to do and to authorize," insofar as is relevant here, (1) reproduction of the copyrighted work, (2) prepare derivative works based on the copyrighted work, (3) distribution of copies or phonorecords of the work to the public, (4) perform the work publicly, (5) display the copyrighted work publicly, and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.[19]  Section 501(a) defines infringement of copyright, generally speaking, as "violat[ion] of the exclusive rights of the copyright owner.  Thus, assuming *arguendo* (as defendants do,  solely for the purposes of this motion) that Sulton's termination notice was effective

---

[16]
        U.S. CONST., Art. I, § 8.

[17]
        *See* 1 NIMMER ON COPYRIGHT § 1.05 n. 28 (quoting speech of Thomas MacCauley to the House of Commons on February 5, 1841).

[18]
        17 U.S.C. §§ 1 *et seq.*

[19]
        *Id.* § 106.

as of July 21, 2018, the question whether defendants are entitled to judgment as a matter of law dismissing Sulton's copyright infringement claim resolves into whether there is a genuine issue of material fact as to whether defendants have violated any of Sulton's exclusive rights after that date.

The plaintiff has the burden of proof of infringement.  He has adduced no evidence whatsoever that the defendants have exploited in the United States any of the exclusive rights conferred by Section 106 after the purported termination date.  Accordingly, by conventional standards, defendants are entitled to dismissal of the infringement claim.  Plaintiff, however, contends otherwise, offering three theories.   None has any merit.

*The First Theory – Contesting the Validity of the Termination Notice*

Sulton characterizes the first of his theories of copyright infringement as defendants' "wrongfully failing and refusing to relinquish the rights to Sulton in and to the sound recordings he created and as set forth in the Notice of Termination served on Defendants."[20]  In other words, he characterizes defendants' contention that the termination notice was ineffective as infringement.

As an initial matter, it is important to recognize that Section 203 of the Act did not categorically terminate, or categorically permit all transferors to terminate, transfers and licenses. It established limits to termination.  First, termination is not available in respect to "a work made for hire."  Moreover, the Act established conditions as to when, by whom and exactly how termination might be effected.[21]  That there might be disputes as to whether particular works had been made for hire or as to the satisfaction of all of the conditions was entirely foreseeable when the

---

[20]     Pl. Mem. (Dkt 201), at 1.

[21]     17 U.S.C. § 203(a).

Act was adopted, as this case makes quite evident.  Yet there is nothing in the exclusive rights of authors conferred by Section 106 nor in Section 501(a), which defines infringement, that transforms an assertion by a transferee or licensee that a putative notice of termination failed to come within or conditions of Section 203 an act of infringement.  Indeed, reading the Act in such a way, likely would give rise to serious constitutional questions.[22]  And plaintiff's attempt to stretch the limits of the Act by contending that defendants' action in contesting the efficacy of Sulton's notice of termination deprives him of the benefit of copyright ownership and therefore is inconsistent with Section 106 and constitutes infringement is unpersuasive.  Indeed, it assumes the very point at issue in this action – whether Sulton or Capitol owns the exclusive rights.

*The Remaining Theories – More of the Same*

Sulton characterizes his two remaining theories as in this way:  defendants are: "(2) preventing [him] from exercising any or all of the bundle of rights enumerated in Section 106 . . . " and "(3) threatening Sulton with litigation if he attempted to exercise those rights."  A moment's reflection, however, yields the conclusion that these amount to the same argument already rejected. This is a lawsuit about whether Sulton or Capitol owns the exclusive rights of which Sulton writes. Sulton's argument assumes that he owns those rights and, moreover, that anyone claiming otherwise is a copyright infringer because those claims may interfere with Sulton's ability to have the benefits

---

[22]   To be sure, there are circumstances in which the assertion of legal rights may be actionable. *See.g., Chevron Corp.v. Donziger,* 974 F. Supp.2d 362, 580-81 & nn. 1382-84 (S.D.N.Y. 2014) (corruption of legal proceedings not constitutionally protected), *aff'd,* 833 F.3d 74 (2d Cir. 2016), *cert. denied,* 137 S.Ct. 2268 (2017).  But the facts alleged here do not approach such a level.

10

of the exclusive rights in question.  While it theoretically might prove to be the case that Capitol's advocacy of its position is so baseless, so corrupt, and so otherwise devoid of legitimacy that its actions might give rise to some commercial tort or, perhaps, even infringement liability, there is nothing in Sulton's infringement claim that would permit such a conclusion at this point.

### *Conclusion*

I have considered Sulton's remaining arguments of found and them all wanting, essentially for the reasons advanced by defendants.  Accordingly, defendants' motion for summary judgment dismissing plaintiff Sulton's copyright infringement claim (Dkt 168) is granted.

SO ORDERED.

Dated:        September 13, 2022

_____
Lewis A. Kaplan
United States District Judge